## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE:** | * | **CASE NO.: 19-12337** |
| | * | |
| **ROYAL ALICE PROPERTIES, LLC** | * | **SECTION "A"** |
| | * | |
| **Debtor** | * | **CHAPTER 11** |
| **ARROWHEAD CAPITAL FINANCE, LTD.,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **Adv. Proc. No. _____** |
| **ROYAL ALICE PROPERTIES, LLC,** | * | |
| **Defendant** | * | |
| | * | |

## VERIFIED COMPLAINT OF ARROWHEAD CAPITAL FINANCE, LTD.

Plaintiff Arrowhead Capital Finance, Ltd. ("Arrowhead"), having obtained and holding judgments against Seven Arts Companies (as defined below) for more than $1.9 million and also contempt awards and sanctions against certain of the Seven Arts Companies and their principal Peter Hoffman, seeks against debtor Royal Alice Properties, LLC ("Debtor" or "Royal") (a) judgment as to, and payment of Debtor's joint and several liability to Arrowhead under, those unpaid judgments and awards pursuant to (among other things) the "single business enterprise", "alter ego" and "piercing the corporate veil" doctrines and (b) also an accounting from, damages, imposition of a constructive trust and other relief against Debtor and Debtor's property for funds which Debtor's principal Peter Hoffman and the Seven Arts Companies were required to hold "in trust for and as the sole and exclusive property of" Arrowhead, but instead were embezzled and otherwise diverted by and through Peter Hoffman, his wife Susan Hoffman and Seven Arts Companies to and for Debtor's predecessor Leeway Properties, Inc. ("Leeway"), Debtor, and properties purportedly owned by Debtor at 900-902, 906,

and 910-912 Royal Street in New Orleans' French Quarter (the "Royal Street Properties").

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334.

2. Venue in this Court is proper pursuant to 28 U.S.C. §§1408 and 1409(a).

3. This adversary proceeding is a core or related proceeding pursuant to (among other things) 28 U.S.C. §157(b)(2)(A), (H) and (O) and §157.

4. This adversary proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure and Local Rule 3007-1(E) of this Bankruptcy Court.

## THE PARTIES/KEY PERSONS

5. Plaintiff Arrowhead is a mutual fund company existing under Bermuda law; had its principal place of business at c/o Citco Fund Services (Bermuda) Limited, Washington Mall West, Second Floor, 7 Reid Street, Hamilton HM 11, Bermuda, and was placed into voluntary liquidation, its liquidator being W. William Woods, having an office at 175 Bloor St. East, North Tower, Suite 1316, Toronto, M4W 3R8, Canada.

6. According to records of the Secretary of State of Louisiana, defendant Debtor (Royal Alice) is a limited liability company organized under laws of the State of Louisiana; purportedly has its principal office at 900 Royal Street, New Orleans, 70116; and is "Not in Good Standing for failure to file Annual Report".[1]

7. Debtor's registered agent is Susan Hoffman, having an address of 900 Royal Street, New Orleans, LA 70116.

---

[1] References to ECF Doc. No.s in this Verified Complaint are to documents previously filed in Debtor's bankruptcy proceedings, Case No. 19-12337.

8. Debtor is the successor to Leeway, a Louisiana corporation which during November 2011 transferred all its real estate and other assets to Debtor for "no consideration", leaving Leeway "an empty shell" [April 2, 2013 opinion of Magistrate Judge Knowles of the U.S. District Court for the Eastern District of Louisiana in *Seven Arts Pictures, Inc. v. Jonesfilm* (Ex. 22 hereto at p. 3)].

9. Prior to transfer of all Leeway's assets to Debtor, Peter Hoffman was Leeway's President, Vice President, Secretary, director, and bank signatory on Leeway's bank accounts.

10. Peter Hoffman caused to be prepared, signed as Leeway's President, and arranged filing of Louisiana tax returns which stated Peter Hoffman was the owner of 100% of shares of Leeway [2008 Leeway tax return] and only holder of "50% or more" of shares of Leeway [2009, 2010, and 2011 Leeway tax returns] [Ex.s 19A-19D hereto].

11. The court in *Seven Arts Pictures, Inc. v. Jonesfilm*, 2011 WL 5078166 at *8 (E.D. La. 2011), found Peter Hoffman's wife "Susan Hoffman testified at an oral hearing on July 27, 2011 that she knew almost nothing concerning the activities of Leeway".

12. Although Susan Hoffman is now held out as sole member of Debtor, in reality Peter Hoffman has been and is the actual or beneficial owner of more than 50% (if not all) the membership interests in Debtor (Leeway's successor) and, as more fully described below, Peter Hoffman has exercised dominion and control over Debtor.

13. Peter and Susan Hoffman were convicted in a jury trial in the U.S. District Court for the Eastern District of Louisiana during 2015 of multiple wire fraud, mail fraud, and conspiracy felonies with respect to their false tax credit applications filed with the State of Louisiana relating to their interests in Esplanade Avenue, New Orleans real

estate, *U.S.A. v. Peter Hoffman et al*, 2015 WL 8306094; their convictions were affirmed by the Court of Appeals, 901 F.3d 523 (5th Cir. 2018), *certiorari denied* 139 S. Ct. 2615 (2019); and on February 19, 2020, Peter Hoffman was sentenced to a term of 20 months in prison, was ordered to report to prison on April 20, 2020, and, upon conclusion of his 20-month prison term, will be subject to another two years of supervised release.

14. Peter Hoffman (a graduate of Yale University Law School and an experienced attorney) has been suspended from the practice of law by the California Supreme Court.

**The "Seven Arts Companies".**

15  As used herein the term "Seven Arts Companies" refers to affiliates of Peter Hoffman and includes (without limitation) Seven Arts Pictures, Inc. ("SAP"), Seven Arts Pictures PLC ("PLC"), Seven Arts Entertainment, Inc. ("SAE"), Seven Arts Filmed Entertainment Limited ("SAFE"), Seven Arts Filmed Entertainment Louisiana, LLC ("SAFELA"), Seven Arts Future Flows I, LLC ("FFI"), Rectifier Productions, LLC, Deal Productions, LLC, Deal Investments, LLC, Pool Hall Productions, LLC, and PicturePro LLC ("PicturePro").

16. As more fully described below, the Seven Arts Companies (including, among others, judgment debtors SAP, SAE, and SAFELA and also PicturePro) prior to and during 2016 and continuing through the present time, have conducted business, received and transferred hundreds of thousands of dollars of funds (whether to and through accounts for SAFELA at Regions Bank or for SAE at Bank of America or otherwise), and diverted those funds for personal benefit of Peter and Susan Hoffman and their affiliates, including payments for or with respect to Royal Street Properties.

17. For instance, with respect to continuing business conducted by Seven Arts Companies, Arrowhead during 2020 obtained:

(i) Documents confirming that film distribution agent Uncork'd Entertainment continued through 2017 to distribute, receive and remit remuneration for the Seven Arts Companies with respect to films in the "Seven Arts" film library, including films whose proceeds were required to be held "in trust for and as the sole and exclusive property" of Arrowhead [see Ex. 7 hereto];

(ii) Documents confirming that Peter Hoffman after 2016 caused the Seven Arts film library to be assigned from SAE and SAFELA to PicturePro and by document dated January 1, 2019 [Ex. 8 hereto] directed that all proceeds be paid to PicturePro, although those proceeds were instead required to be held "in trust for and as the sole and exclusive property" of Arrowhead [Ex.3 hereto, Master Agreement, §5.1 (last sentence)]; and

(iii) December 2019 and January 2020 emails from Peter Hoffman seeking to discourage others from distributing films in the "Seven Arts" film library [see Ex. 9A through 9D hereto], so that all net proceeds could be diverted to and for himself and his affiliates rather than held "in trust for and as the sole and exclusive property" of Arrowhead [as required by the Master Agreement §5.1].

### Background as to Adjudications against, and Other Obligations of, Seven Arts Companies to Arrowhead.

18. During December 2006, Arrowhead's predecessor Arrowhead Consulting Group, Inc. ("ACG") entered into a financing/refinancing for certain of the Seven Arts Companies of motion pictures, pursuant to which those Seven Arts Companies issued a Secured Term Loan Promissory Note dated December 2006 (the "Arrowhead Note"), the Master Agreement dated as of December 22, 2006 (the "Master Agreement"), an

5

assignment of related Financing and Security Agreements, and other documents referred to in the District Court's June 5, 2018 Judgment [Exhibits 2 & 3 hereto]. The Arrowhead Note, Master Agreement, and related documents were signed by those Seven Arts Companies by Peter Hoffman as their chief executive officer and principal.

19.  As confirmed by a consent judgment entered December 23, 2008 of the New York Supreme Court, and as set forth in the District Court's June 5, 2018 Judgment, Arrowhead is successor to and entitled to enforce the rights of its predecessor ACG under the Arrowhead Note, the Master Agreement, related Financing and Security Agreements, and other documents [Ex. 2B].

20. The Arrowhead Note states in bold, capitalized letters [Ex. 2B(1) on p.2]:

> "**THIS NOTE, AND ALL MATTERS RELATED HERETO, AND/OR ARISING HEREFROM, SHALL BE GOVERNED AND CONTROLLED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK AS TO INTERPRETATION, ENFORCEMENT, VALIDITY, CONSTRUCTION, EFFECT, AND IN ALL OTHER RESPECTS, INCLUDING, WITHOUT LIMITATION, THE LEGALITY OF THE INTEREST RATE AND OTHER CHARGES**, and shall be binding upon the Undersigned and the Undersigned's legal representatives or successors." [emphasis in the original]

21. In the Arrowhead Note, each obligor irrevocably agreed that all proceedings "shall be litigated in courts having situs within", and "consents and submits to the jurisdiction of", the state and federal courts of New York, New York, and "waives any objection based on forum non-conveniens". In capitalized words of the Arrowhead Note [at p.3], each obligor:

> "(i) irrevocably agrees that, subject to Lender's [Arrowhead's] sole and absolute discretion, ALL ACTIONS OR PROCEEDINGS IN ANY WAY, MANNER OR RESPECT, ARISING OUT OF OR FROM OR RELATED TO THIS NOTE OR THE COLLATERAL SHALL BE LITIGATED IN COURTS HAVING SITUS WITHIN THE CITY OF NEW YORK, STATE OF NEW YORK, THE UNDERSIGNED HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURTS

LOCATED WITHIN SAID CITY AND STATE AND (II) WAIVES ANY OBJECTION BASED ON FORUM NON-CONVENIENS."

22. The Arrowhead Note further states (on p.1 thereof) it is:

"issued in connection with, … and is delivered pursuant to that certain Master Agreement bearing even date herewith, as it may hereafter be amended, modified, restated or replaced from time to time, together with all exhibits thereto, among Lender [Arrowhead], and is entitled to all of the benefits and security of the Agreement. All of the terms, covenants and conditions of the Agreement are hereby made a part of this Note and are deemed incorporated herein in full."

23. In turn, the Master Agreement [Ex. 3 §2.7] confirmed Arrowhead's rights in "Collateral" (as therein defined) including Arrowhead's continuing first priority perfected security interest in, lien on, assignment of, and right of set-off against all property and assets of the obligors and including such rights in and to (without limitation) the motion pictures (the "Pictures") *Deal* (starring Burt Reynolds), *Noise* a/k/a *Rectifier* (starring Tim Robbins), *Shooting Gallery* a/k/a *Pool Hall Prophets* a/k/a *Backspin* (starring Ving Rhames and Freddie Prinze, Jr.), distribution proceeds from "*Broken*" (starring Ted Sizemore), "*Boo*" and "*Mirror Wars*", and a security interest in the FFI film library.

24. Pursuant to the Master Agreement, all proceeds of the Pictures and other Collateral were and are required to be deposited in a designated Collection Account at Chase Manhattan Bank, New York (the "Collection Account"), "in trust and as the sole and exclusive property of" Arrowhead, and remitted to Arrowhead. See the Master Agreement [Ex. 3 hereto, §5.1 (last sentence)], which states:

"If the Borrowers [Obligors] or any Affiliated Person or any shareholder, officer, director, employee or agent of the Borrowers or any Affiliated Person, or any other Person acting for or in concert with the Borrowers shall receive any monies, checks, notes, drafts or other payments relating to or as proceeds from the exploitation of any of the Pictures or other Collateral, **the Borrowers and each such Person shall receive all such items in trust for, and as the sole and exclusive property of, the Bank [Arrowhead] and, immediately upon receipt**

7

**thereof, shall remit the same (or cause the same to be remitted) in kind to the Collection Account.**"[2]   [emphasis added]

25. Pursuant to the Master Agreement, Arrowhead is entitled to all fees and costs of Arrowhead and its external counsel incurred in enforcement of its rights and remedies. In the words of the Master Agreement [Ex. 3 hereto, §8], Arrowhead is to be reimbursed:

"reasonable out-of-pocket costs and expenses of … Arrowhead (including, without limitation, fees and expenses of external counsel) incurred in connection with the enforcement of any of its rights and remedies arising hereunder, in either case, promptly after demand."

26. On May 5, 2010, Arrowhead filed an action in New York State Court against a number of Hoffman affiliates, including (without limitation) obligors SAP, PLC and SAFE for their default (including failure to pay monies due and payable to Arrowhead) under the Arrowhead Note, the Master Agreement, and related documents. That action entitled *Arrowhead Capital Finance, Ltd. v. Seven Arts Pictures PLC*, Index No. 601199/2010 is referred to herein as the "New York State Court Action".

27. In that New York State Court Action, the New York Court entered Judgment on October 10, 2012 against Seven Arts Company judgment debtors including (among others) SAP and SAFE [Ex. 2B(2) hereto]; that Judgment was affirmed, *Arrowhead Capital Fin., Ltd. v. Seven Arts Pictures PLC*, 110 A.D. 3d 514, 972 NYS 2d 899 (1st Dept. 2013); that Judgment was domesticated in Louisiana and recorded with the Clerk of Court of Orleans Parish [Ex. 1 hereto]; and that Judgment in favor of Arrowhead remains unpaid in the amount of more than $1.9 million.

28. Throughout the New York State Court Action and thereafter, Peter Hoffman and his affiliates (including without limitation the defendants in the New York State

---

[2] The "Bank", as defined in the Master Agreement [Ex. 3 (§2.2)], means only Arrowhead, as the Cheyne Note has been satisfied and discharged.

Court Action) refused to provide Arrowhead any accounting or other information as to film or other proceeds collected that they were required to deposit in the designated Collection Account and hold "in trust for, and as the sole and exclusive property of," and remit to Arrowhead [Ex. 4 hereto, Response to Production Request No.s. 23, 25 & 27].

29. While the New York State Court Action was pending, Peter Hoffman arranged transfer of the assets of PLC and SAFE to a new Hoffman affiliate SAE (a Nevada corporation), leaving PLC and SAFE unable to satisfy the New York State Court Judgment or other obligations due Arrowhead.

30. In light of the asset transfers to SAE, Arrowhead filed suit on July 18, 2014 in the New York Supreme Court entitled *Arrowhead Capital Finance, Ltd. v. Seven Arts Entertainment, Inc*., which defendant SAE removed to the U.S. District Court for the Southern District of New York, 14-cv-6512-KPF (the "District Court Case").

31. After Arrowhead filed that suit against SAE, SAE transferred certain distribution and other rights to its affiliate "SAFELA" (Seven Arts Filmed Entertainment Louisiana, LLC, a Louisiana limited liability company), whereupon with leave of court Arrowhead filed an amended complaint in the District Court also naming SAFELA as a co-defendant with SAE in the District Court Case.

32. At all pertinent times, dominion and control over the respective Seven Arts Companies has been maintained and exercised by Peter Hoffman (the chief executive officer and controlling principal of the Seven Arts Companies) and members of his family, including without limitation Kate Hoffman a/k/a Kate Hedman (daughter of Peter and Susan Hoffman) who has served as an executive and chief operating officer of many of the Seven Arts Companies, including (among others) PLC, SAFE, SAE, and SAFELA.

9

33. Through Peter Hoffman's dominion and control over Seven Arts Companies (including without limitation SAP, PLC, SAFE, SAE, SAFELA, and PicturePro), Peter Hoffman has caused film distribution, collections and other business of the Seven Arts Companies to be conducted, under the trade name Seven Arts International, there being no company with the actual name "Seven Arts International".

34. Through his dominion and control over Seven Arts Companies, Peter Hoffman has caused the trade name "Seven Arts International" to be used by the Seven Arts Companies in order to facilitate payments by film distributors and others to be directed into and transferred through whichever Seven Arts Company may be convenient at the time for the Hoffman's and without observing corporate formalities.

35. Through his dominion and control over the Seven Arts Companies and with the assistance of members of his family, Peter Hoffman, without observance of corporate formalities, has caused film proceeds and other proceeds to be deposited in bank account(s) of whichever Seven Arts company was convenient at the time; has commingled funds; has caused bills, expenses and other obligations for the Hoffman's, the Royal Street Properties, and otherwise to be paid from whichever bank account(s) of whichever Seven Arts Company happened to have available funds or was otherwise convenient at the time; and has caused the business of the various Seven Arts Companies to be conducted as a "single business entity" without corporate formalities or boundaries.

36. Through and including the current time, the Hoffman's and Seven Arts Companies have failed to provide required accountings to Arrowhead of film and other proceeds required to be deposited in the designated Collection Account and held "in trust

10

for and as the sole and exclusive property of" and remitted to Arrowhead, but rather diverted for other purposes (whether for Royal Street Properties or otherwise).[3]

37. During the Federal Court Case and despite repeated orders of that federal court directing Peter Hoffman and his affiliates SAE and SAFELA to produce bank statements and other records of (among others), Hoffman, SAE and SAFELA failed to produce those bank statements and other records.

38. After Peter Hoffman and his affiliates failed to produce judgment debtor SAFLEA's bank statements, Arrowhead ultimately succeeded in identifying a SAFELA bank account at Regions Bank; then served a subpoena on Regions Bank for SAFELA bank statements and related bank documents with respect to that bank account; and so obtained SAFELA bank statements and related documents for that SAFELA bank account through January 2017 [see for instance Ex. 5 hereto]. Those bank statements and related documents confirm SAFELA's receipt of more than $232,000 from January 1, 2016 through January 31, 2017; that SAFELA continued to receive film proceeds and conduct business through at least January 2017; and that much of the remuneration was diverted for the benefit of the Hoffman's and their affiliates.

39. Likewise, after failure of Peter Hoffman and his affiliates to produce judgment debtor SAE's bank statements, Arrowhead ultimately succeeded in identifying a SAE bank account at Bank of America; then served a subpoena on Bank of America for SAE's bank statements and related bank documents; and thereby obtained SAE bank statements and related documents for that SAE bank account through December 2016 [see Ex. 6

---

[3] See for instance Ex. 4 hereto, Response No.s 23, 25, 27 to Arrowhead's production requests in which Seven Arts Companies refused to produce any documents concerning or accounting for revenues generated by Pictures or other Collateral.

hereto]. Those bank statements and related documents confirm SAE's receipt of at least approximately $295,000 during the 2016; that SAE continued to receive film proceeds and conduct business through at least December 2016; and that much of the remuneration was diverted for the benefit of the Hoffman's and their affiliates.

40. In light of disobedience of Peter Hoffman and affiliates of repeated orders of the District Court to produce those bank statements and other records, the District Court rendered judgment against defendant SAFELA (having already granted summary judgment against defendant SAE); held Peter Hoffman and affiliates SAE and SAFELA in contempt; and ordered payment of sanctions to Arrowhead. [*See Arrowhead Capital Finance, Ltd. v. Seven Arts Entertainment, Inc*., 2017 WL 1787819 at \*5-9 and fn. 6 (SDNY 2017), *affirmed* 739 Fed. Appx. 701, *supra*.] Hoffman and the Seven Arts Companies never paid any of the judgments or sanctions nor purged their contempt.

41. In its contempt decision against Hoffman and his affiliates, the District Court found that the bank statements and other documents obtained by Arrowhead from the banks, clearly showed there were substantial funds in "business accounts, held in Defendants' [judgment debtors SAE and SAFELA] names"; that the funds in those accounts included "funds generated by films" [including film proceeds required to be deposited in the Collection Account at Chase Manhattan Bank, New York and held "in trust for and as the sole and exclusive property of" and remitted to Arrowhead]; and those funds "should have been used for … payment of Defendants' … obligations in this litigation" (*supra* at \*6 & fn. 6), thereby belying Hoffman's contention that defendants had no funds with which to pay their discovery obligations or court-ordered sanctions.

12

42. The District Court's contempt decision further found (*supra* at *6) that Peter Hoffman had improperly sought to justify failure to produce those bank records on grounds that "the funds in the SAE and SAFELA accounts were exclusively for Hoffman's 'own business and income since he has no personal accounts'" [and thus that Hoffman had commingled personal funds with funds required to be held "in trust" for Arrowhead], and also cited Hoffman's own admission (*supra* at fn. 6) that the funds in the business accounts of judgment debtors SAE and SAFELA were instead used by Hoffman to "pay all his personal expenses including utilities, phone, cable, etc." and for "luxury purchases, such as spa expenditures".

43. In the District Court Case, the Court entered Judgment on June 5, 2018 in favor of Arrowhead against Hoffman affiliates SAE and SAFELA [Ex. 2B hereto]; that Judgment was affirmed, *Arrowhead Capital Finance, Ltd. v. Seven Arts Entertainment, Inc.*, 739 Fed Appx. 701 (2d Cir. 2018); that Judgment was domesticated in Louisiana and recorded with the Clerk of Orleans Parish [Ex. 2A hereto]; and that Judgment in favor of Arrowhead remains unpaid in the amount of more than $1.9 million.

44. The District Court's June 5, 2018 Judgment explicitly ordered, adjudged and decreed that SAE and SAFELA are both jointly and severally liable under the Arrowhead Note [Ex. 2B at pp.3-4] and that Arrowhead [at p.4]:

"has valid, first priority, and superior Copyright Mortgages and security interests in the Collateral (as defined in the Master Agreement) and is entitled to enforce all Arrowhead's rights and remedies with respect to the Collateral (whether under the Arrowhead Note, Master Agreement, Financing and Security Agreements, related agreements, June 2012 Decision, October 2012 [State Court] Judgment, or otherwise"

45. As set forth above, all proceeds from or with respect to the Pictures and other Collateral under the Master Agreement have been, are, and continue to be required to be

deposited in the designated Collection Account at Chase Manhattan Bank, New York, and held "in trust for and as the sole and exclusive property of", and remitted to Arrowhead [Ex. 3 (Master Agreement §5.1) and Ex. 2B].

46. However, the Hoffman's and their affiliates have not deposited in the designated Collection Account at Chase Manhattan Bank, New York, nor remitted to Arrowhead, the proceeds collected with respect to the Pictures or other Collateral which they were required to hold "in trust for and as the sole and exclusive property of" and remit to Arrowhead, but rather have caused the proceeds to be diverted for their own use and benefit, including without limitation to pay costs and expenses of and other payments for and with respect to Royal Street Properties (as more fully summarized below).

47. The funds and other property required to be held "in trust for and as the sole and exclusive property of" Arrowhead were and are "Property" under New York Penal Law §155.00. Transfer of those trust funds through Seven Arts Companies or other Hoffman affiliates for purposes other than payment to Arrowhead (and thus transfer of those funds for benefit of Leeway (Debtor's predecessor), Debtor, Royal Street Properties, or otherwise) constitutes larceny/embezzlement under Penal Law §155.05(1) & (2), which state:

"1. A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.
2. Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed ... (a) By conduct heretofore defined or known as ...embezzlement, ....:"[4]

---

[4] *See for instance People v. Stuart*, 51 A.D. 3d 547, 858 NYS 2d 158 (1st Dept. 2008) grand larceny conviction affirmed as victim had right of possession to funds in her corporation's bank account superior to that of defendant; *People v. Horney*, 103 A.D. 2d 891, 893, 478 NYS 2d 184 (3rd Dept. 1984) affirmed grand larceny conviction and sentence up to five years on each count for failing to remit funds as "defendant must be

48. Transfer of that property which had been mortgaged as "Collateral" to Arrowhead and the proceeds required to be deposited and held "in trust" in the "Collection Account" as the "sole and exclusive property of Arrowhead [Master Agreement §§2.7 & 5.1] also violates (among other things) New York Penal Law §185.05 (entitled "Fraud Involving a Security Interest")[5] and §185.10 (Fraudulent Disposition of Mortgaged Property).[6]

49. In Arrowhead's Proof of Claim filed in these bankruptcy proceedings against Debtor and in discovery proceedings in the District Court Case, Arrowhead has requested an accounting through a current date as to proceeds required to be held "in trust for and as the sole and exclusive property of" and remitted to Arrowhead (but which were instead diverted to, for the benefit of, and with respect to the Hoffman's and Royal Street Properties); in order to obtain such an accounting Arrowhead has served discovery requests on Seven Arts Companies for an accounting of those proceeds; but the Hoffman's and the Seven Arts Companies have failed to comply with such requests; and no such accounting has been provided to nor otherwise obtained by Arrowhead.

50. Through recent post-judgment discovery of non-party witnesses in the District Court Case, Arrowhead has discovered that (contrary to and belying Debtor Royal Alice's false assertions in its Objection that the Seven Arts Companies have been inactive and that rights in the films were assigned to Palm Finance):

---

considered a bailee, agent or trustee of such funds ..., ... larceny by embezzlement was completed by defendant's conversion of such funds", citing *People v. Yannett*, 49 NY 2d 296, 303, 425 NYS 2d 300, *People v. Lyon*, 82 A.D. 2d 516, 442 NYS 2d 538); *People v. Felber*, 264 A.D. 181, 184, 34 NYS 2d 609 (1st Dept. 1942) states that fraudulent conversion of monies collected by agent or trustee constitutes larceny.

[5] *See* for instance *People v. Jennings*, 69 NY 2d 103, 125-126, 512 NYS 2d 652 (1986).
[6] *See for instance People v. Prince*, 110 Misc. 2d 55, 441 NYS 2d 586 (Sup. Ct. Queens Co. 1981).

(i) the Hoffman's continue to conduct business, and continue to assert rights to and collect proceeds from the films through, the Seven Arts Companies, although the proceeds were required to be held "in trust for and as the sole and exclusive property of" Arrowhead. See the schedule obtained from film distribution agent Uncork'd Entertainment of such film proceeds collected through 2017 [Ex. 7 hereto] and the Agreement dated January 1, 2019 of SAE and SAFELA (signed by Peter Hoffman) in which they secretly directed such proceeds be diverted to PicturePro [Ex. 8 hereto];

(ii) December 2019 Hoffman emails with Uncork'd Entertainment/Darkstarpics with respect to distribution of film Collateral for, and proceeds required to be held "in trust for and as the sole and exclusive property of" and remitted to, Arrowhead [Ex. 9A];

(iii) Hoffman's January 10, 2020 email to Seth Kittay of All Channel Films (a film distribution agent) in which Hoffman writes, among other things [Ex. 9B]:

> "The Movie Group continues to falsely assert it has any distribution or other rights of any kind to any Seven Arts films. **I will send you next the chain of title to the Seven Arts films** for which TMG is making these false claims so there is no doubt about it. ...I hoped these fraudulent claims would stop once I had provided the proper documentation and fully responded to Venter's bogus claims but apparently not. If these claims are not properly withdrawn **Seven Arts will sue Venters, TMG and your company for infringement and interference with contractual relations and pursue that action to the maximum extent permitted by law**." [emphasis added]

(iv) Hoffman's subsequent January 10, 2020 email to Seth Kittay of All Channel Films in which Hoffman writes [Ex. 9C]:

> "Mr. Kittay see below for COT [chain of title] of all three [film] titles. In the terminated deal with TMG, **SEVEN ARTS AT NO TIME GRANTED ANY DISTRIBUTION RIGHTS**. TMG has no such grant. Please respond promptly so that we are not required to commence litigation." [emphasis added]

(v) Hoffman's January 14, 2020 email to Seth Kittay of All Channel Films in which Hoffman writes [Ex. 9D]:

16

"Mr. Kittay, apparently we had submitted all these titles to you in 2013 as Seven Arts titles. Please respond and desist from representing TMG [The Movie Studio] bogus claims to **our Seven Arts titles**." [emphasis added]

Background as to Peter Hoffman's Interest in the Royal Street Properties.

51. Peter Hoffman arranged and funded acquisition of, and has at all times owned and controlled an at least 50% interest in, the Royal Street Properties either directly or through his nominees [including without limitation Susan Hoffman, Leeway (Debtor's predecessor) or Debtor].

52. Peter Hoffman caused to be prepared and issued a Monthly Cash Flow for 2007 in which he stated he was then receiving cash flow from Royal Street Properties of $16,850 per month [Ex. 10 hereto]

53. On March 27, 2007 in order to facilitate a borrowing secured by his interest in Royal Street Properties, Peter Hoffman signed and had notarized a Power of Attorney authorizing his wife Susan Hoffman to mortgage the Royal Street Properties then owned in the name of himself and Susan Hoffman [Ex. 12 hereto].

54. Peter Hoffman caused to be prepared and faxed on June 3, 2009 a "Louisiana Monthly Rental Income" which showed his monthly rental income from the Royal Street properties to then be approximately $10,000 per month (including $4,500 from rental of 900-902 Royal Street, $5,500 from rental of 912 Royal Street to their restaurant Café Amelie, and no rent from 906 Royal Street, Unit E "owners use as gym") [Ex. 11 hereto].

55. In a November 19, 2009 Insurance Application for the Royal Street properties, signed by Peter and Susan Hoffman, they declared the Royal Street Properties were owned by Peter M. Hoffman and Susan Hoffman "individually", and further reported under "Nature of Business/Description of Operations" that [Ex. 13A hereto]:

"900-902 Royal ... 2, 3 &4th floor apartment/dwg (owner occupied by Mr. & Mrs. Susan Hoffman); 904-906 Royal – this is a condominium bldg that M/M Hoffman owns ... Unit E is occupied as exercise room/storage for Mr. & Mrs. Hoffman; 910-912 Royal St. (Front) is a condominium bldg. that M/M Hoffman owns Units"

56. The November 24, 2009 Insurance Binder for Royal Street Properties lists the

insureds for those properties as "Peter M. Hoffman and Susan Hoffman" individually and

lists the insureds' address as Hoffman-affiliate, judgment debtor SAP [Ex. 13B hereto]:

"Insured: Peter M. Hoffman and Susan Hoffman
c/o Seven Arts Pictures, Inc.
6121 West Sunset Blvd.
Suite 512
Hollywood, CA 90028"

57. The June 3, 2010 Insurance Application for the Royal Street Properties

described those properties as owned by Peter M. Hoffman and Susan Hoffman

"individually", and further reported under "Nature of Business/Description of

Operations" that [Ex. 14A hereto]:

"900-902 Royal ... 2, 3 &4th floor apartment/dwg (owner occupied by Mr. & Mrs. Susan Hoffman); 904-906 Royal – this is a condominium bldg that M/M Hoffman owns 2 units... Unit E is occupied as exercise room/storage for Mr. & Mrs. Hoffman; 910-912 Royal St. (Front) is a condominium bldg. that M/M Hoffman owns Units"

58. The June 9, 2010 Insurance Binder for the Royal Street Properties continued

to list the named insureds for those properties as Peter and Susan Hoffman and continued

to list the insureds' address as the then Hollywood, California address of Seven Arts

Company SAP as follows [Ex. 14B hereto]:

"Insured: Peter M. Hoffman and Susan Hoffman
c/o Seven Arts Pictures, Inc.
6121 West Sunset Blvd.
Suite 512
Hollywood, CA 90028"

18

59. A May 25, 2012 email from the Hoffman's insurance agent, for the purpose of insuring the Royal Street Properties, identified those properties as being owned by "Peter M. Hoffman and Susan Hoffman" [Ex. 15 hereto]:

> "Peter M. Hoffman and Susan Hoffman
> 900-902 Royal Street – **complete ownership by Peter & Susan** no condo or homeowners association involvement. This is a 4 story building. … the 2nd, 3rd, & 4th floors are all Susan's apartments. The 2nd and 3rd floor are more for show and the 4th floor is her primary dwelling.
> …
> 904-906 Royal Street – **1st floor and 4th floor are owned by Peter & Susan**. The 1st floor is occupied as Susan's personal gym 500 sq. ft.
> …
> 910-912 Royal Street – **1st floor and 4th floor are owned by Peter & Susan**." [emphasis added]

60. As recently as August 2, 2019, an insurance "Flood Declaration Page" continued to list the named insureds of the 900-902 Royal Street Property as Peter Hoffman and Susan Hoffman [Ex. 16 hereto].

61. Meanwhile, utility bills (such as Entergy bills), insurance premiums and other bills for the Royal Street Properties were addressed to the Seven Arts Companies at the then address of Peter Hoffman in Los Angeles, California and, with the knowledge and at the direction of Peter and Susan Hoffman, paid by the Seven Arts Companies.

62. As creditors pursued claims against Peter Hoffman, he and his wife Susan Hoffman sought to disguise his ownership in certain of the Royal Street properties through his nominee Leeway, but he continued to be Leeway's President, Vice President, Secretary, and co-director (together with his wife Susan Hoffman),[7] and bank signatory, and he and the Los Angeles staff of the Seven Arts Companies continued to maintain the

---

[7] As co-directors of Leeway, Peter and Susan Hoffman signed a Unanimous Consent of the Board of Directors of Leeway Properties, Inc. dated as of March 15, 2007 authorizing Leeway to borrow money and grant mortgages [Ex. 17 hereto].

books and records, receive and arrange payment of utility and other bills, arrange preparation of tax returns, and operate and manage the business, of Leeway.

63. Peter Hoffman's Balance Sheet dated as of December 31, 2009 states that he then had an investment of "$2,880,388.48" in Leeway, whose sole purported asset was its ownership of record of certain Royal Street Properties [Ex. 18 hereto].

64. Peter Hoffman arranged to have prepared, signed as President, and caused to be filed Leeway's Louisiana tax returns, including (among others):

(i) Leeway's tax return for the year ended December 31, 2008, on the last page of which he reported himself as the owner of 100% of Leeway [Ex. 19A hereto];

(ii) Leeway's tax return for year ended December 31, 2009 (last page under the heading "Shareholder of 50% or more" lists only Peter Hoffman [Ex. 19B];

(iii) Leeway's tax return for year ended December 30, 2010 (last page under the heading "Shareholder of 50% or more" lists only Peter Hoffman) [Ex. 19C]; and

(iv) Leeway's tax return for year ended December 31, 2011 (last page under the heading "Shareholder of 50% or more" lists only Peter Hoffman) [Ex. 19D].

65. In the course of litigation of another judgment creditor (Jonesfilm) against Peter Hoffman and certain Hoffman affiliates, schedules produced by and for Peter Hoffman and several Seven Arts Companies (and then filed with the Court) admit that Peter Hoffman transferred or caused to be transferred directly or through the Seven Arts Companies more than $3 million to Leeway during the period from August 2008 through January 2011, including [Ex. 20 hereto]:

(i) transfer to Leeway by Peter Hoffman of at least $552,304.72 from August 2008 through July 2010 (consisting of transfer of at least $7,130 from August through December 2008, at least $31,266 during 2009, and at least $513,908.72 during 2010);

(ii) transfer to Leeway by and through Seven Arts Filmed Entertainment Limited ("SAFE") of at least $2,028,424 from August 2008 through January 2011 (consisting of transfer of at least $1,018,302.81 during 2009, at least $959,531.58 during 2009, and $38,120.05 during January 2011); and

(iii) transfer to Leeway by and through Seven Arts Pictures, Inc. ("SAP") of at least $502,887.24 during 2009 and 2010 (consisting of $163,938.18 during 2019 and at least $338,949.06 during 2010).

66. Through 2011, Peter and Susan Hoffman continued to make and receive further inter-company transfers to, from, and through Leeway, including transfer of funds in a Leeway bank account which had been garnished by then creditor Jonesfilm.

67. In November 2011, the District Court for the Eastern District of Louisiana approved a Report and Recommendations of Magistrate Judge Daniel Knowles that Hoffman, his Seven Arts affiliates, and Leeway be held in contempt for their violation of that garnishment order against Leeway and related discovery orders as they sought to conceal Peter Hoffman's relationships and dealings with and hinder collection of funds held by and transferred through Leeway.

68. Rather than complying with the garnishment and contempt orders, Peter and Susan Hoffman instead caused to be prepared and Susan Hoffman signed a Deed of Conveyance to Corporation dated "as of November 23, 2011" and recorded on December 5, 2011, in which Leeway without consideration purported to assign its interest in Royal Street Properties to Hoffman's newly-formed company named Royal Alice Properties, LLC ("Debtor") [Ex. 21 hereto].

69. Magistrate Judge Knowles' April 2013 Order in those cases entitled *Seven Arts Pictures, Inc. v. Jonesfilm*, No. 09-4814 *et al*, described a series of judgments and

contempt adjudications obtained against Peter Hoffman and his affiliates and then wrote

[Ex. 22 hereto at pp. 2-3]:

> "The district court explicitly found that Hoffman lacked credibility and had a history of stone-walling and misrepresentation. … Judgment debtors have failed to honor the judgments.
>
> In 2010, Jonesfilm learned that Hoffman and the corporate judgment debtors own and control several limited liability companies … Jonesfilm also learned that Hoffman had transferred millions of dollars to and through the Louisiana companies.
>
> … The District Court's November 2011 Contempt Order (approving and adopting this court's October 26, 2011 Report and Recommendation) found that Hoffman, his co-judgment debtors, and their affiliated garnishees (including Leeway) disobeyed this Court's orders; ordered Hoffman and Leeway to immediately turn over $174,769.56 of garnished funds garnishee Leeway had wrongfully transferred to and for Hoffman and his co-judgment debtors (of which Hoffman had been chief executive officer and manager); and granted Jonesfilm judgment against Hoffman, Leeway, and the other co-judgment debtors and garnishees for legal fees and costs in the amount of $21,357.50. The Fifth Circuit had affirmed the District Court's and this Court's orders.
>
> **Less than a week after those orders issued, Hoffman and Leeway created Royal Alice Properties, LLC ("RAP") to which they transferred all assets of Leeway. Leeway thus became nothing more than an empty shell. Leeway received no consideration for the transfer.**
>
> Instead of complying with the earlier orders, Hoffman, Leeway and their affiliates have continued their disobedience of this Court's Charging Orders, Garnishment Order, and also the 2011 Contempt Order against them." [emphasis added]

70. In connection with and as a result of that transfer of all Leeway's assets to

Debtor, for which Leeway received "no consideration" and was left "an empty shell",

Debtor is bound by and liable for all obligations of Leeway, including (without

limitation) all obligations of Leeway to Arrowhead (whether obligations with respect to

or burdening assets transferred or otherwise).

71. At Debtor's 341 hearing on October 8, 2019, Peter Hoffman testified that,

prior to Debtor's August 28, 2019 bankruptcy filing (and thus for nearly eight years from

2011 through August 2019), Debtor never had a bank account of its own (all funds from tenants of Royal Street Properties being deposited and co-mingled in the bank account(s) of the Hoffman's) [ECF 109-9 (Tr. at pp. 8, 16, 17, 59-60)]; never had any books of records of its own [p. 59]; never had any financial statements of its own [pp. 13, 60]; never filed any tax returns [pp. 13, 60]; and never had any employees [pp. 16, 61].

72. At that 341 hearing, Peter Hoffman further testified that books and records for the properties now purportedly owned by Debtor are not kept in New Orleans, but rather by "a bookkeeper in Los Angeles" (where Peter Hoffman has been residing) who prepares the Hoffman's personal tax returns [ECF 109-9 (Tr. at pp. 11-12 & 59-60)].

73. At the 341 hearing, Peter Hoffman testified that shortly before Debtor Royal Alice's August 28, 2019 bankruptcy filing, his affiliate PicturePro entered into a "lease" from Susan Hoffman of the three floors (the second, third and fourth floor) in which his wife resides in Debtor's 900 Royal Street property; that the lease was back-dated to January 1, 2018; that the purpose of the lease was to make it appear the property is "entirely a 'commercial' property… for purposes of financing"; and that the lease was for 20 years at a stated rent of $10,000 per month [ECF 109-9 (Tr. at pp. 28-30)].

74. That back-dated Lease to Peter Hoffman's company PicturePro states that the three floors in which his wife Susan Hoffman resides were leased to PicturePro on January 1, 2018 for use only as a "bar and restaurant", as part of their efforts to make the property appear to be "entirely a commercial property", although PicturePro was not and is not qualified to do business in Louisiana and has no license or permit for sale of liquor or to operate a bar or restaurant and that Lease is in violation of applicable law.

75. Although that Lease to Hoffman's company PicturePro has a stated rental of $10,000 per month from January 1, 2018 for those three floors of the Royal Street Property in which his wife Susan Hoffman has been residing, no income from PicturePro has been received for those premises and so no payment from PicturePro reported on Debtor's monthly reports through February 29, 2020 filed in this Court; it appears PicturePro has not subleased those floors to anyone nor generated any rental therefrom; and Susan Hoffman continues to occupy, rent-free, those three floor residence premises as her home. [ECF 109-9 (Tr. at pp. 27-30, 73)].

76. In short, Debtor Royal Alice is successor to Peter Hoffman's nominee Leeway, in which Peter Hoffman admitted being owner of 100% [Ex. 19A (last page)], and in any event was the only owner of "50% or more" of [Ex.s 19B, C & D (last page)], the shares of Leeway; as a result of transfer of property by Leeway to Debtor for no consideration; Peter Hoffman has continued to be the only owner of "50% or more" of the interests in Debtor; Debtor has admitted having no pre-bankruptcy bank accounts or books or records of its own; Susan Hoffman leased three floors of the 900 Royal Street property to Peter Hoffman's company PicturePro as part of a sham and simulated transaction "for financing purposes" for which his affiliate PicturePro has paid no consideration to Debtor; and Susan Hoffman continues to occupy the three-floor residence in the Royal Street Properties rent-free.

77. Consistent with Peter Hoffman's overarching ownership interest in, management of, and dominion and control over Debtor and the Royal Street Properties, he testified at Debtor's 341 hearing that his wife Susan Hoffman appointed him "the authorized representative to deal with all the matters related to the financing of" the

Royal Street Properties; that he has "knowledge of the Debtor's financial affairs"; and that he "was involved in the preparation of" Debtor's bankruptcy documents (the petition, schedules and reports) with counsel [ECF 109-9 (Tr. at p. 2)].

78. Further evidencing Peter Hoffman's dominion and control over Debtor, the special attorney for Debtor in these proceedings is Phillip Stillman, who serves as counsel for Peter Hoffman and Hoffman's affiliated Seven Arts Companies (including judgment debtor SAE and PicturePro, which purported to enter into the sham lease for three floors of Debtor's 900-2 Royal Street Property immediately before Debtor's bankruptcy filing but made no security deposit and has never paid any of the $10,000 per month rental).

79. At all pertinent times, from and after the initial purchase by Peter Hoffman of his interest in the Royal Street Properties through the present time, he has resided at the Royal Street Properties during his frequent trips to New Orleans -- whether in connection with his meetings and visits with his wife Susan Hoffman or other family members, his business interests (for Seven Arts Companies or otherwise), legal proceedings (including without limitation pre-trial and jury trial of the criminal proceedings against him, his felony convictions, his unsuccessful appeals thereof, and his sentencing), or otherwise.

Failure to Provide an Accounting to, and Fraudulent Concealment from, *Cestui Que Trust* Arrowhead of Trust Funds Required to Be Deposited and Held "in Trust for and as the Sole and Exclusive Property of" and Remitted to, Arrowhead.

80. As beneficiary and *cestui que trust* of the proceeds required to be deposited in the Collection Account at Chase Manhattan Bank, New York and held "in trust for and as the sole and exclusive property of" Arrowhead, Arrowhead relied on the Seven Arts Companies and their officers, directors and affiliates to provide Arrowhead a true, proper

and complete accounting of and documents and information sought with respect to (among other things) all proceeds collected and any disbursement thereof.

81. Although Peter Hoffman [manager of Leeway (Debtor's predecessor) and Leeway] and his affiliated Seven Arts Companies are trustees and fiduciaries to Arrowhead of proceeds required to be deposited in the Collection Account and held "in trust for and as the sole and exclusive property of" Arrowhead, and although Leeway, Debtor and the Royal Street Properties received and had the benefit of those trust funds belonging to and the property of *cestui que trust* Arrowhead, they have:

(a) knowingly, intentionally, and fraudulent concealed from Arrowhead their receipt and disbursement of those funds;

(b) knowingly, intentionally, and fraudulently failed to provide Arrowhead the required accounting of their receipt and disbursement of those funds; and

(c) knowingly, intentionally, and fraudulently attempted to prevent Arrowhead's discovery of those funds by refusing to provide Arrowhead discovery of their receipt and disbursement of those funds and by improperly instructing other witnesses to not provide Arrowhead which Arrowhead has sought at to documents and information with respect to receipt and disbursement of those funds [see Ex. 4 and Ex.s 23A through 23H hereto].

82. For instance, Susan Hoffman signed and Debtor filed a "Verified Objection to Claim No. 1 filed by Arrowhead" [ECF Doc. No. 100] in which Debtor through Susan Hoffman misrepresented to Arrowhead and to the Court that:

(a) "By no later than August 28, 2014, Seven Arts (including all of its affiliates subject to the judgment alleged by Arrowhead) has ceased all business and transferred all its assets in satisfaction of its principal secured creditor's claim. Seven Arts may have had minor business activity thereafter, but such activity ceased no later than the end of calendar year 2015. As a result, Seven Arts could

not have made any payment to or for the benefit of [Debtor] or Mrs. Hoffman or in connection with their property after December 31, 2015." [Objection para. 6]

(b) "the Seven Arts had no assets after that time [after December 31, 2015] [Objection para. 11]; and

(c) "Debtor also denies Arrowhead's allegations regarding transfers from Seven Arts to pay costs or expenses incurred in connection with [Debtor's] property. Seven Arts had no bank account or income since prior to 2016" [Objection para. 15].

83. Arrowhead has sought discovery with respect to (among other things) receipt and disbursement of the funds by:

(i) discovery requests propounded on Peter Hoffman's affiliates, judgment debtors, in the State Court Action [Exhibit 4 hereto] and in the District Court Action SAE [Exhibit 23A hereto] and SAFELA [Exhibit 23B hereto];

(ii) Subpoena served on Peter Hoffman's affiliate, PicturePro [that Subpoena and Proof of Service thereof is Exhibit 23C hereto]; and

(iii) Subpoena served on Uncork'd Entertainment [that Subpoena and Proof of Service thereof is Exhibit 23D hereto].

84. However, as directed by Debtor's management (including without limitation Peter Hoffman and Debtor's special counsel Philip Stillman), judgment debtors have continued to fail and refuse to produce discovery (whether documents or interrogatory answers) to Arrowhead's discovery requests, and also Hoffman's affiliate PicturePro has refused to deliver to Arrowhead any subpoenaed documents.

85. For instance, Philip Stillman, Debtor's special counsel, delivered a March 19, 2020 letter [Exhibit 23E hereto] and an April 9, 2020 letter [Exhibit 23G hereto] in which he as counsel for PicturePro and affiliated companies recited spurious and false grounds

27

for improper refusal of Hoffman affiliates to produce the documents and information sought [see Arrowhead's responses which are Exhibit 23F & 23H].

86. Debtor's manager Peter Hoffman also asserted threats against Uncork'd Entertainment and its principal Keith Leopard, and Debtor's counsel Philip Stillman delivered his improper March 19, 2020 letter [Ex. 23E] to counsel for Uncork'd Entertainment, in order to deter and prevent them from complying, and has thereby deterred them from complying, with the Subpoena served on Arrowhead.[8]

87. As a result of continuing, knowing, intentional and fraudulent concealment by and fraudulent misconduct of Debtor's management (including among others Peter Hoffman and Debtor's special counsel Philip Stillman), and their affiliates, in refusing to provide, and in deterring others from providing, accountings, documents, and information with respect to funds required to be held "in trust for and as the sole and exclusive property of" Arrowhead but which instead have been disbursed for and with respect to Leeway (Debtor's predecessor), Debtor, and the Royal Street Properties, the receipt and disbursement of those funds continues to be knowingly, intentionally and fraudulent concealed from Arrowhead, and Arrowhead has been proximately injured thereby.

### COUNT 1.
### *(Debtor is Liable for the Obligations to Arrowhead of the Seven Arts Companies under the "Single Business Entity" Doctrine)*

88. Paragraphs 1 through 87 above and 93 below are incorporated herein as fully as if rewritten herein.

---

[8] Peter Hoffman has a history of such threats and witness intimidation referenced in *Seven Arts Pictures PLC v. Jonesfilm*, 311 F. Appx. 962, 965 (9th Cir. 2009) and *Hoffman v. Salke*, 2008 WL 2895966 (Cal. Ct. App. July 29, 2008), cited in *Arrowhead Capital Finance, Ltd. v. Seven Arts Entertainment, Inc.*, 739 F. Appx. 701, 704 (2d Cir. 2018).

89. As Debtor is a part of a "single business entity" with the Seven Arts Companies, its purported separate existence should be disregarded, and it is jointly and severally liable for, and its assets should be aggregated with assets of the Seven Arts Companies to satisfy, their obligations to Arrowhead in light of (among other things);

(i) substantial identity of ownership among Debtor and Seven Arts Companies, as Peter Hoffman who has dominion and control over the Seven Arts Companies also was owner of 100%, but in any event the only owner of "50% or more", of the shares of Leeway (as set forth in the Louisiana tax returns which Peter Hoffman caused to be prepared, signed and filed for Leeway [Ex.s 19A through 19D hereto]) and upon Leeway's transfer of all its assets without consideration to Debtor, Peter Hoffman succeeded to and has an ownership interest of at least "50% or more" of Debtor;

(ii) during the nearly eight-year period from purported organization of Debtor in 2011 through its August 28, 2019 bankruptcy filing, Debtor never had any bank accounts;

(iii) during the nearly eight-year period from purported organization of Debtor in 2011 through its August 28, 2019 bankruptcy filing, all purported rental remuneration or other funds for Debtor were commingled with funds in bank accounts of the Hoffman's and Seven Arts Companies;

(iv) during the nearly eight-year period from purported organization of Debtor in 2011 through its August 28, 2019 bankruptcy filing, Debtor never had any books and records of its own, nor any financial statements, nor filed any tax return;

(v) during the nearly eight-year period from the purported organization of Debtor in 2011 through its August 28, 2019 bankruptcy filing, Debtor and likewise SAFELA and other Seven Arts Companies, did not, comply with corporate formalities;

(vi) during the nearly eight-year period from purported organization of Debtor in 2011 through its August 28, 2019 bankruptcy filing and thereafter, Debtor relied on the credit of and funding provided to and for it and the Royal Street Properties by and through the Seven Arts Companies;

(vii) Debtor never had any employees of its own, but rather Debtor and the Royal Street Properties together with the Seven Arts Companies have been under common management and control of, Peter Hoffman using staff of, and paid for by, Seven Arts Companies;

(viii) centralized and unified administrative operation, management and control over Debtor and Seven Arts Companies has been provided from the common Los Angeles, California offices of and through the Seven Arts Companies;

(ix) Seven Arts Companies have been addressees of billings and other documents, and conduits to and through which payment has been made (whether by check, wire transfer, electronic funds transfer, or otherwise) for utilities, condominium fees, insurance, taxes, mortgage payments, and other expenses and obligations of and with respect to Debtor and Royal Street Properties;

(x) the books of account of and for Debtor and the Royal Street Properties have been and are maintained through centralized accounting at and through the common Los Angeles, California offices of the Seven Arts Companies;

(xi) financial materials for Debtor have been and are prepared under direction and control of Peter Hoffman (chief executive officer and principal of the Seven Arts Companies) through and with records kept and maintained by and using the bookkeeping, accounting, secretarial and other staff of the Seven Arts Companies;

30

(xii) insurance for the Royal Street Properties has been arranged through and addressed to Los Angeles offices of Seven Arts Companies, and for many years that insurance has listed the named insureds for the Royal Street Properties as Peter Hoffman and Susan Hoffman individually (rather than Debtor or Debtor's predecessor Leeway);

(xiii) Debtor and Seven Arts Companies shares the same counsel -- as Debtor's special counsel is Phillip H. Stillman, Esq. who also serves as counsel for Seven Arts Companies (including judgment debtor Seven Arts Entertainment, Inc. and PicturePro, which entered into the "sham" lease for three floors of Debtor's 900-902 Royal Street Property immediately before Debtor's bankruptcy filing but which paid no security deposit and has never paid any of the $10,000 per month rental due);

(xiv) Debtor and the Seven Arts Companies have been inadequately capitalized and so unable to pay their obligations (whether obligations to Arrowhead, Palm Finance, AMAG, Inc. or otherwise);

(xv) undocumented transfers of funds between Debtor and Seven Arts Companies, all under the direction, management, and control of their common manager and principal Peter Hoffman;

(xvi) Debtor and Seven Arts Companies have used each other's addresses and shared facilities – as, on the one hand, Debtor has used the Los Angeles, California address of Seven Arts Companies as mailing address for and payment of utility, insurance premiums, and other bills, and, on the other hand, SAFELA and other Seven Arts Companies have used the 900-902 Royal Street address of Royal Alice's property as a mailing address and as an address at which their common manager and administrator

Peter Hoffman frequently resides and from and through which they (whether through Peter Hoffman or otherwise) conduct or purport to conduct business;

(xvii) Because services and funding for Debtor and its properties have been provided by Seven Arts Companies without charge to or proper record-keeping for Debtor, and because Debtor has provided facilities for the address and use of but without charge to or proper record-keeping for Seven Arts Companies, the allocation of profits and losses between Debtor and Seven Arts Companies is unclear; and

(xviii) Transfers of proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead, have instead been disbursed by Seven Arts Companies for and with respect to the Royal Street Properties in violation of law and a wrong against Arrowhead.

90. As Debtor is part of a "single business enterprise" with the Seven Arts Companies, Debtor is jointly and severally liable for, and its assets available to satisfy, the obligations of the Seven Arts Companies to Arrowhead, including without limitation their obligations under (among other things and without limitation) the Arrowhead Note, the Master Agreement, the Financing and Security Agreements, and related documents, and also the New York State Court Judgment, the Federal Court Judgment, and otherwise.

91. The obligations of Debtor to Arrowhead, for which Debtor is liable with Seven Arts Companies, under the "single business enterprise" doctrine, are not barred by any prescriptive or preemption period.

WHEREFORE, Arrowhead seeks judgment against and payment from Debtor for the obligations of the respective Seven Arts Companies to Arrowhead in an amount of

not less than $1,933,809; in accordance with Master Agreement §8 [Ex. 3 hereto], Arrowhead's costs and expenses, including without limitation legal fees and other costs incurred in connection with enforcement of its rights and remedies; and such other and further remedies and relief as the Court may deem necessary or appropriate in the circumstances.

## COUNT II.
### (Debtor Is Liable for the Obligations to Arrowhead of the Seven Arts Companies and Peter Hoffman under the "Alter Ego" or "Piecing the Corporate Veil" Doctrines)

92. Paragraphs 1 through 91 above are incorporated herein as fully as if rewritten herein.

93. Peter Hoffman and his respective affiliated companies have repeatedly been held to be an "alter ego" of each other. For instance:

(i) As described by Judge Milazzo in *Seven Arts Pictures, Inc. v. Jonesfilm*, 2012

WL 5398439 at *1 (E.D. La. 2012):

"On March 18, 2005, the Los Angeles Superior Court amended its judgment [against NTTS Productions, Ltd. ("NTTS")] to include Hoffman as a Judgment Debtor in the action as the alter ego of NTTS, finding him jointly and severally liable for its obligation under the judgment"; and

(ii) Judge Milazzo further found in *Seven Arts Pictures, Inc. v. Jonesfilm, supra*,

2012 WL 5998439 at *11-12, that another Hoffman affiliate named Cinevision

("CV") "is an alter ego of Hoffman" after having observed that:

"a central figure to all these companies is Peter Hoffman ... In addition to CV's inter-relationship with Hoffman, CV also has a relationship with companies that Hoffman controls and is affiliated with, including SAP, PLC and Leeway. Hoffman has continually benefitted from these relationships. .. Moreover, it is evident that Hoffman and Hoffman's affiliates continue to utilize CV, ..."[9]

---

[9] Judge Milazzo's decision holding Cinevisions an "alter ego" of Peter Hoffman was affirmed, in *Seven Arts Filmed Entertainment Limited v. Jonesfilm*, 538 Fed. Appx. 444 at fn.4 (5th Cir. 2013), also affirming contempt adjudications against Hoffman and his affiliates for their disobedience of garnishment and discovery orders.

94. Debtor's separate existence should be disregarded, it is jointly and severally liable for, and its assets should be aggregated with assets of the Seven Arts Companies to satisfy, their obligations to Arrowhead under the "alter ego" or "piecing the corporate veil" doctrines, in light of (among other things);

(i) substantial identity of ownership among Debtor and Seven Arts Companies, as Peter Hoffman who has dominion and control over the Seven Arts Companies also was owner of 100%, but in any event the only owner of "50% or more", of the shares of Leeway (as set forth in the Louisiana tax returns which Peter Hoffman caused to be prepared, signed and filed for Leeway [Ex.s 19A through 19D hereto]) and upon Leeway's transfer of all its assets without consideration to Debtor, Peter Hoffman succeeded to and has an ownership interest of at least "50% or more" of Debtor;

(ii) during the nearly eight-year period from purported organization of Debtor in 2011 through its August 28, 2019 bankruptcy filing, Debtor never had any bank accounts, but rather all purported rental remuneration and other funds for Debtor were commingled with funds of, and routed through bank accounts of, the Hoffman's and Seven Arts Companies;

(iii) during the nearly eight-year period from purported organization of Debtor in 2011 through its August 28, 2019 bankruptcy filing, billings for Royal Street Properties and Debtor were sent to and paid by Peter Hoffman and the Seven Arts Companies (whether by check, wire transfer, electronic funds transfer, or otherwise) for utility, condominium fees, insurance, taxes, mortgage payments, and other expenses and obligations of and with respect to Debtor and Royal Street Properties;

34

(iv) during the nearly eight-year period from purported organization of Debtor in 2011 through its August 28, 2019 bankruptcy filing, Debtor never had any books and records of its own, nor any financial statements, nor filed any tax return;

(v) during the nearly eight-year period from purported organization of Debtor in 2011 through its August 28, 2019 bankruptcy filing, Royal Alice did not follow or comply with corporate formalities;

(vi) Debtor never had any employees of its own, but rather Debtor and the Royal Street Properties have been under common management of, Peter Hoffman with and using the staff of, and paid for by, Seven Arts Companies through common Los Angeles, California offices of Hoffman and Seven Arts Companies;

(vii) the books of account of and for Debtor and the Royal Street Properties have been and are maintained through centralized accounting at common Los Angeles, California offices of Peter Hoffman and Seven Arts companies;

(viii) insurance for Royal Street Properties was arranged through and addressed to the Los Angeles offices Peter Hoffman shared with Seven Arts Companies, and for many years that insurance listed the named insured for Royal Street Properties as "Peter Hoffman and Susan Hoffman" individually (rather than Debtor or Debtor's predecessor Leeway);

(ix) Debtor and Seven Arts Companies shares the same counsel -- as Debtor's special counsel is Phillip H. Stillman, Esq. who also serves as counsel for Peter Hoffman and Hoffman-affiliated Seven Arts Companies (including judgment debtor SAE and PicturePro, which entered into the "sham" lease for three floors Debtor's 900-902 Royal

35

Street Property immediately before Debtor's bankruptcy filing but which paid no security deposit and has never paid any of the $10,000 per month rental due);

(x) Debtor and the Seven Arts companies have been inadequately capitalized and so have purported to be unable to pay their obligations (whether to Arrowhead, Palm Finance, AMAG, Inc. or otherwise);

(xi) undocumented transfers of funds between Debtor, Peter Hoffman, and Seven Arts Companies, all under direction, management, and control of Peter Hoffman;

(xii) Debtor, Peter Hoffman, and Seven Arts Companies have used each other's addresses and shared facilities – as, on the one hand, Debtor has used the shared Los Angles, California address of Peter Hoffman and Seven Arts Companies as mailing address for utility, insurance, and other bills, and, on the other hand, Peter Hoffman, SAFELA and other Seven Arts companies have used the 900-902 Royal Street address of Royal Alice's property as their mailing address and an address at which their common manager and administrator Peter Hoffman frequently resides and from and through which they (whether through Peter Hoffman or otherwise) conduct or purport to conduct business; and

(xiii) Transfers of proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead, but which instead were disbursed by Peter Hoffman and Seven Arts Companies for and with respect to the Royal Street Properties in which the Hoffman's had an interest (whether directly or through Debtor or Debtors predecessor Leeway) were in violation of law and a wrong against Arrowhead.

95. As Debtor Royal Alice is an "alter ego" of the Hoffman's and the Seven Arts Companies and, alternatively, the "piercing the corporate veil doctrine" applies, Debtor is

jointly and severally liable for, and its assets available to satisfy, their obligations to Arrowhead, including without limitation their obligations under (among other things and without limitation) the Arrowhead Note, the Master Agreement, the Financing and Security Agreements, and related documents, and also the State Court Judgment, the Federal Court Judgment, and otherwise.[10]

96. The obligations of Debtor to Arrowhead, for which Debtor is liable with the Hoffman's and Seven Arts Companies, under the "alter ego" or "piercing the corporate veil" doctrine, are not barred by any prescriptive or preemption period.

WHEREFORE, Arrowhead seeks judgment against and payment from Debtor for the obligations of the respective Seven Arts Companies to Arrowhead in an amount of not less than $1,933,809; in accordance with Master Agreement §8 [Ex. 3 hereto], Arrowhead's costs and expenses, including without limitation legal fees and other costs incurred in connection with enforcement of its rights and remedies; and such other and further remedies and relief as the Court may deem necessary or appropriate in the circumstances.

## COUNT III.
### *(Breach of Trust/Request for Accounting and Damage Remedies)*

97. Paragraphs 1 through 96 above are incorporated herein as fully as if rewritten herein.

98. Pursuant to its express terms, the Arrowhead Note and all matters relating to or arising from the Arrowhead Note [including all matters under the Master Agreement

---

[10] *See for instance WM. Passalaqua Builders, Inc. v. Resnick Developers South, Inc*., 933 F.2d 131 (2d Cir. 1991); *Solow v. Domestic Stone Erectors*, 229 A.D.2d 312, 645 NYS 2d 17 (1st Dept. 1996), citing NY CPLR 211(b); *County of Suffolk v. Love'm Sheltering, Inc*., 27 Misc. 3d 1127, 899 NYS 2d 809 (Sup. Suffolk Co. 2010), citing NY CPLR 211(b).

which as stated in the Arrowhead Note, is "made a part of" and "deemed incorporated in full" in the Arrowhead Note], "shall be governed and controlled by the internal laws of the State of New York as to interpretation, enforcement, validity, construction, effect, and in all other respects".

99. As set forth in Master Agreement §5.1, the Seven Arts Companies, their affiliates, "any officer, director, employee, or agent" of any Seven Arts Company or its affiliates, or "any other person acting for or in concert with any" of them, was and is required to deposit the proceeds of the Pictures and other Collateral in the designated Collection Account at Chase Manhattan Bank, New York, and hold those proceeds "in trust for and as the sole and exclusive property of", and remit them to, Arrowhead.

100. The monies and other property required to be held "in trust for and as the sole and exclusive property of" Arrowhead were and are "Property" under New York Penal Law §155.00. Transfer of those trust funds and property (whether by the Hoffman's or the Seven Arts Companies or otherwise) for purposes other than payment to Arrowhead, and thus transfer of those funds for the benefit of Leeway (Debtor's predecessor), Debtor, the Royal Street Properties, or otherwise, constitute breach of trust in addition to larceny/embezzlement under Penal Law §155.05(1) & (2).

101. The Royal Street Properties and Debtor are impressed with a trust for and are fiduciaries to Arrowhead as to proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead, but which instead were disbursed for Royal Street Properties.

102. Debtor, which now purports to be owner of the Royal Street Properties, is trustee for and fiduciary to Arrowhead with respect to the trust impressed on Royal Street

38

Properties for those proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead, but which instead were disbursed for Royal Street Properties (whether for payment of utilities, condominium fees, taxes, insurance premiums, mortgage payments, or otherwise).

103. Arrowhead has been and is entitled to receive, has requested, but has not received, an accounting with respect to the proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead, but which instead were disbursed for Leeway (Debtor's predecessor), Debtor, Royal Street Properties (whether for payment of utilities, condominium fees, taxes, insurance premiums, mortgage payments, or otherwise).

104. Arrowhead hereby reiterates its demands for an accounting from Debtor with respect to the proceeds which were required to be held "in trust for and as the sole and exclusive property of" Arrowhead, but which instead were disbursed for Leeway, Debtor, or Royal Street Properties (whether for payment of utilities, condominium fees, taxes, insurance premiums, mortgage payments, or otherwise).

105. Arrowhead is also entitled to, and hereby demands, damages from and against Debtor with respect to and in the amount of proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead, but which instead were disbursed for Leeway, Debtor, or Royal Street Properties (whether for payment of utilities, condominium fees, taxes, insurance premiums, mortgage payments, or otherwise).

106. Because Arrowhead has not received an accounting from Debtor or anyone else with respect to the proceeds required to be held "in trust for and as the sole and

exclusive property of" Arrowhead, but which instead were disbursed for Leeway, Debtor, or Royal Street Properties (whether for payment of utilities, condominium fees, taxes, insurance premiums, mortgage payments, or otherwise), Arrowhead's claim for an accounting and damages has not prescribed and is not preempted.

WHEREFORE, Arrowhead seeks judgment against Debtor for an accounting and payment to Arrowhead with respect to all proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead, but which instead were disbursed for Leeway, Debtor, or Royal Street Properties (whether for payment of utilities, condominium fees, taxes, insurance premiums, mortgage payments, or otherwise); for payment by Debtor to Arrowhead of the amount of those proceeds; for impression of a trust on the Royal Street Properties in the amount of such proceeds due and owing to Arrowhead until such proceeds are paid in full to Arrowhead; for Arrowhead's costs and expenses, including without limitation legal fees and other costs incurred in connection with enforcement of its rights and remedies; and for such other and further remedies and relief as the Court may deem necessary or appropriate in the circumstances.

## COUNT IV.
### *(Nullity for Misappropriation of Embezzled Trust Funds)*

107. Paragraphs 1 through 106 above are incorporated herein as fully as if rewritten herein.

108. Pursuant to its express terms, the Arrowhead Note and all matters relating to or arising from the Arrowhead Note (including all matters under the Master Agreement, which as stated in the Arrowhead Note is "made a part of" and "deemed incorporated in full" in the Arrowhead Note), "shall be governed and controlled by the internal laws of

40

the State of New York as to interpretation, enforcement, validity, construction, effect, and in all other respects".

109. As set forth in the Master Agreement (§5.1), each of the Seven Arts Companies, their affiliates, "any officer, director, employee, or agent" of any Seven Arts Company or its affiliates, or "any other person acting for or in concert with any" Seven Arts Company, was and is required to deposit proceeds of the Pictures and other Collateral in the designated Collection Account at Chase Manhattan Bank, New York, and hold those proceeds "in trust for and as the sole and exclusive property of", and remit them to, Arrowhead.

110. The monies and other property required to be held "in trust for and as the sole and exclusive property of" Arrowhead were and are "Property" under New York Penal Law §155.00. Transfer of those trust funds and property (whether by the Hoffman's, the Seven Arts Companies or otherwise) for purposes other than payment to Arrowhead, and thus transfer of those funds for the benefit of Debtor, the Royal Street Properties, or otherwise, constitute breach of trust in addition to larceny/embezzlement under Penal Law §155.05(1) & (2).

111. Transfer of those trust funds in breach or violation of fiduciary duties to Arrowhead (whether under the Arrowhead Note, Master Agreement and related Financing and Security Agreements or applicable law), was intended to be and was effected for illicit and immoral purposes, including denying Arrowhead the benefit of those trust funds, putting those trust funds beyond the reach of Arrowhead, rendering the transferor Seven Arts Companies more insolvent, and thereby impeding, prejudicing and impairing Arrowhead's ability to collect monies due Arrowhead (whether trust funds or

41

monies due under the State Court Judgment, the Federal Court Judgment, the federal court's contempt and sanctions orders, or otherwise).

112. Transfer of those trust funds to or for the benefit of Leeway, Debtor, or Royal Street Properties and thus benefiting Debtor in breach of trust and fiduciary obligations to Arrowhead constitutes a nullity (whether under Louisiana Civil Code article 2030, 2031 or otherwise) and is not prescribed or preempted.

WHEREFORE, Arrowhead seeks judgment against Debtor for an accounting and payment to Arrowhead with respect to all proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead, but which instead were disbursed for Leeway, Debtor, or Royal Street Properties (whether for payment of utilities, condominium fees, taxes, insurance premiums, mortgage payments, or otherwise); for payment by Debtor to Arrowhead of the amount of those proceeds; for impression of a trust on the Royal Street Properties in the amount of such proceeds due and owing to Arrowhead until such proceeds are paid in full to Arrowhead; for Arrowhead's costs and expenses, including without limitation legal fees and other costs incurred in connection with enforcement of its rights and remedies; and for such other and further remedies and relief as the Court may deem necessary or appropriate in the circumstances.

## COUNT V.
### *(Debtor Never Acquired a Right to or Interest in Embezzled Proceeds or Transfers Thereof)*

113. Paragraphs 1 through 112 above are incorporated herein as fully as if rewritten herein.

114. Because the proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead were instead embezzled or otherwise misappropriated

in violation of law and because each person or entity who so acquired those funds in breach of trust (namely the Seven Arts Companies, the Hoffman's, Leeway, Debtor or their other affiliates) did not purchase those funds for value:

(i) on the one hand, each such person or entity did not acquired any right, title or ownership interest in those funds; and

(ii) on the other hand Arrowhead (the entity to which those funds belong and from those funds were embezzled or otherwise misappropriated) acquired a claim against any property to or for which those embezzled or otherwise misappropriated funds were applied. *See for instance Harris Trust and Savings Bank v. Salomon Smith Barney Inc*., 530 U.S. 238, 250, 120 S. Ct. 2180, 2189 (2000); *Succession of Onorato*, 219 La. 1, 24-33, 51 So. 2d 804 (1951); *Haynesville Oil Co., Inc. v. Beach (Beach Drilling Co., Inc.),* 159 La. 615, 618-20, 105 So. 790 (1925).

115. Because the proceeds required to be held "in trust for and held as the sole and exclusive property of" Arrowhead were instead embezzled, diverted or otherwise misappropriated in violation of law and each person or entity who so acquired those funds (namely the Seven Arts Companies, the Hoffman's, Debtor, Debtor's predecessor Leeway, or any of their affiliates) did not acquire any right, title or ownership interest in those funds, Arrowhead (the entity to which those funds belong and from those funds were embezzled, diverted or otherwise misappropriated) acquired and has a claim against any property to or for which those embezzled, diverted or otherwise misappropriated funds were applied, and so has a claim against Debtor and the Royal Street Properties (whether to pay utilities, condominium fees, taxes, insurance, mortgage payments or

43

otherwise) for the amount of funds so embezzled, diverted or otherwise misappropriated and any proceeds thereof.

116. Neither the statute of limitations nor any prescriptive or preemption period has run with respect to proceeds of Pictures or other Collateral required to be held "in trust for and as the sole and exclusive property of" and remitted to Arrowhead, but which were never remitted to Arrowhead and were instead applied for the benefit of Leeway, Debtor or Royal Street Properties.

WHEREFORE, Arrowhead seeks judgment against Debtor for an accounting and payment to Arrowhead with respect to all proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead, but which instead were disbursed for Leeway, Debtor, or Royal Street Properties (whether for payment of utilities, condominium fees, taxes, insurance premiums, mortgage payments, or otherwise); for payment by Debtor to Arrowhead of the amount of those proceeds; for impression of a trust on the Royal Street Properties in the amount of such proceeds due and owing to Arrowhead until such proceeds are paid in full to Arrowhead; for Arrowhead's costs and expenses, including without limitation legal fees and other costs incurred in connection with enforcement of its rights and remedies; and for such other and further remedies and relief as the Court may deem necessary or appropriate in the circumstances.

## COUNT VI.
### (*Simulation*)

117. Paragraphs 1 through 116 above are incorporated herein as fully as if rewritten herein.

118. The transfers of, and other transactions with respect to, Royal Street Properties and other assets and funds hereinabove summarized or described, effected

directly or indirectly by, with under direction of or through Peter Hoffman pursuant to which he intended to, did and continued to maintain dominion and control, directly and indirectly, over Royal Street Properties, Leeway and Debtor and over proceeds and benefit of proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead but transferred into, for or with respect to Royal Street Properties, Debtor, and Debtor's predecessor Leeway constitute one or more "simulations" (whether under Louisiana Civil Code art. 2025 *et seq.* or otherwise) and are not prescribed or preempted.

WHEREFORE, Arrowhead seeks judgment against Debtor for an accounting and payment to Arrowhead with respect to all proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead, but which instead were disbursed for Leeway, Debtor or Royal Street Properties (whether for payment of utilities, condominium fees, taxes, insurance premiums, mortgage payments, or otherwise); for payment by Debtor to Arrowhead of the amount of those proceeds; for impression of a trust on the Royal Street Properties in the amount of such proceeds due and owing to Arrowhead until such proceeds are paid in full to Arrowhead; for Arrowhead's costs and expenses, including without limitation legal fees and other costs incurred in connection with enforcement of its rights and remedies; and for such other and further remedies and relief as the Court may deem necessary or appropriate in the circumstances.

## COUNT VII.
### *(Receipt of Fraudulent Transfers after Commencement of the New York State Court Action and the District Court Case)*

119. Paragraphs 1 through 118 above are incorporated herein as fully as if rewritten herein.

120. In accordance with their terms and as hereinabove described, the Arrowhead Note and Master Agreement are governed by the internal laws of the State of New York.

121.  On May 5, 2010, Arrowhead commenced its New York State Action against obligors under the Arrowhead Note, the Master Agreement and related documents.

122. On July 18, 2014, Arrowhead commenced the Federal Court Case against defendant SAE to which defendant SAFELA was, with leave of court, later added as a co-defendant.

123. Subsequently, in the District Court Case, Judgment was rendered in which SAE and SAFELA were held jointly and severally liable to Arrowhead for the obligations to Arrowhead of their predecessors PLC and SAFE and were further adjudged liable to Arrowhead for the obligations under (among other things) the Arrowhead Note, the Master Agreement, the Financing and Security Agreements, and related documents.

124. The Judgments entered in Arrowhead's favor in the New York State Action and in the District Court Case remain due and owing against the judgment debtors (including without limitation SAP, SAFE, SAE and SAFELA) jointly and severally in the amount of more than $1.9 million.

125. Pursuant to Debtor and Creditor Law (including without limitation New York Debtor and Creditor Law §273-A), any conveyance made without fair consideration by any of the obligors after May 5, 2010 (the date of filing the New York State Court Action) and after July 14, 2014 (the date of filing the District Court Case) is a fraudulent conveyance as to which the statute of limitations has not run.  For instance, New York Debtor and Creditor Law §273-A states:

> "Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment."

126. The conveyances made by Seven Arts Companies and their affiliates of funds or property for the benefit of and with respect to Leeway, Debtor or Royal Street Properties (whether to pay utility bills, taxes, insurance premiums, mortgage payments, or otherwise) were made without fair consideration after the May 5, 2010 date Arrowhead commenced the New York State Action and after the July 18, 2014 date Arrowhead commenced the District Court Case.

127. Neither the statute of limitations nor any prescriptive or preemption period has run under New York's Debtor and Creditor Laws §273-A or other fraudulent transfer or similar statute or law.

WHEREFORE, Arrowhead seeks judgment against Debtor for all amounts transferred by Seven Arts Companies to, for or with respect to Leeway, Debtor or Royal Street Properties (whether to pay utility charges, condominium fees, taxes, insurance premiums, mortgages, or otherwise) as damages suffered by Arrowhead and fraudulent conveyances under New York Debtor and Creditor Law §273-A and similar statutes or laws; in accordance with Master Agreement §8 [Ex. 3 hereto], Arrowhead's costs and expenses, including without limitation legal fees and other costs incurred in connection with enforcement of its rights and remedies; and such other and further remedies and relief as the Court may deem necessary or appropriate in the circumstances,

## COUNT VIII.
### (*Receipt of Fraudulent or Voidable Transfers from the Seven Arts Companies although Knowing the Seven Arts Companies Were Insolvent and with Intent to Deprive Arrowhead of Proceeds Required to be Held in "Trust for and as the Sole and Exclusive Property of" Arrowhead*)

128. Paragraphs 1 through 127 above are incorporated herein as fully as if rewritten herein.

47

129. In the New York State Action, Judgment was entered on October 10, 2012 in which Seven Arts Companies (including without limitation SAP and SAFE) were held and are jointly and severally liable to Arrowhead.

130. In the District Court Case, Judgment was entered on June 5, 2018 which held Seven Arts Companies SAE and SAFELA jointly and severally liable to Arrowhead for the obligations to Arrowhead of their predecessors PLC and SAFE and further adjudged SAE and SAFELA jointly and severally liable to Arrowhead for the obligations under (among other things) the Arrowhead Note, the Master Agreement, the Financing and Security Agreements, and related documents.

131. The Judgments entered in Arrowhead's favor in the New York State Action and in the District Court Case remain due and owing against the judgment debtors (including without limitation SAP, SAFE, SAE and SAFELA) jointly and severally in the amount of more than $1.9 million.

132. At all times after October 10, 2012 entry of the New York State Judgment, through entry of the June 5, 2018 Federal Court Judgment and continuing thereafter, the respective Seven Arts Companies have been and continue to be insolvent, as each of them has been unable to pay their obligations as and when due and the amount of their obligations has exceeded the fair value of their assets.

133. At all pertinent times, Peter Hoffman and the Seven Arts Companies knew the respective Seven Arts Companies were insolvent, as each of them was and continued to be unable to pay its obligations as and when due and as the amount of its obligations exceeded the fair value of its assets.

134. Despite insolvency of each of the respective Seven Arts Companies, they knowingly transferred funds to and for payment of obligations of, for and with respect to Leeway, Debtor and Royal Street Properties (including without limitation for utility charges, condominium fees, taxes, insurance premiums, mortgages and otherwise) without receipt of corresponding fair value to the Seven Arts Companies.

135. The payments made by the respective Seven Arts Companies to, for and with respect to Leeway, Debtor, or Royal Street Properties (including without limitation for utility charges, condominium fees, taxes, insurance premiums, mortgages and otherwise) further deepened, and were known to the Seven Arts Companies to deepen, their insolvency.

136. Debtor was benefitted by the payments made by respective Seven Arts Companies to, for and with respect to Leeway, Debtor and Royal Street Properties (including without limitation for utility charges, condominium fees, taxes, insurance premiums, mortgages, and otherwise) which increased the value of and lessened the obligations with respect to and burdening the Royal Street Properties and Debtor.

137. The payments made by the respective Seven Arts Companies to, for and with respect to Leeway, Debtor or Royal Street Properties (including without limitation for utility charges, condominium fees, taxes, insurance premiums, mortgages, and otherwise) were made knowingly and intentionally to deprive, and did deprive and so proximately caused damages to Arrowhead in the amount of monies so paid and so were not available to pay obligations of the Seven Arts Companies to Arrowhead (including without limitation obligations due Arrowhead under the Arrowhead Note, the Master Agreement,

related Financing and Security Agreements, the New York State Court Judgment, the Federal Court Judgment, or otherwise).

138. The payments made by the respective Seven Arts Companies to, for or with respect to Royal Street Properties, Debtor and Debtor's predecessor Leeway (including without limitation for utility charges, condominium fees, taxes, insurance premiums, mortgages, and otherwise) constitute fraudulent or voidable conveyances or transfers under applicable law.

139. Arrowhead's claims against Debtor for the fraudulent or voidable conveyances or transfers made to, for and on behalf of the Royal Street Properties purportedly acquired or owned by Debtor, are not barred by any prescriptive or preemption period.

WHEREFORE, Arrowhead seeks judgment against Debtor for the amounts transferred by the Seven Arts Companies to, for or with respect to the Royal Street Properties and Debtor (whether to pay utility charges, condominium fees, taxes, insurance premiums, mortgages, or otherwise) as damages suffered by ; in accordance with Master Agreement §8 [Ex. 3 hereto], Arrowhead's costs and expenses, including without limitation legal fees and other costs incurred in connection with enforcement of its rights and remedies; and such other and further remedies and relief as the Court may deem necessary or appropriate in the circumstances.

## COUNT IX
### (Unjust Enrichment)

140. Paragraphs 1 through 139 above are incorporated herein as fully as if rewritten herein.

141. Leeway (Debtor's predecessor), Debtor and the Royal Street Properties have been unjustly enriched by transfers to, for or with respect to Leeway, Debtor, or Royal Street Properties of proceeds which, as required by the Arrowhead Note and the Master Agreement (§5.1, last sentence) were required to be held "in trust for and as the sole and exclusive property of" Arrowhead.

142. The transfers to, for or with respect to Leeway, Debtor and the Royal Street Properties of proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead were without cause and without their payment of "fair value".

143. The transfers of proceeds to, for or with respect to Debtor's predecessor Leeway, Debtor, or Royal Street Properties have benefitted and so unjustly enriched Debtor by relieving Leeway, Debtor and Royal Street Properties, of the burden of obligations or debt otherwise required to be paid for fees, costs and charges incurred in connection with or otherwise arising with respect to Royal Street Properties (including without limitation utility charges, condominium fees, taxes, insurance premiums, mortgage payments, or otherwise).

144. Transfers of proceeds for the Royal Street Properties of proceeds required to be held "in trust for and as the sole and exclusive property of" have impoverished and proximately damaged Arrowhead by the amount of proceeds so required to be held "in trust for and as the sole and exclusive property of" Arrowhead, but which were not remitted to Arrowhead and instead were diverted and paid to, for or with respect to Debtor's predecessor Leeway, Debtor or the Royal Street Properties (including without limitation for payment of utility charges, condominium fees, taxes, insurance premiums, mortgage payments or otherwise).

51

145. The amount of compensation due Arrowhead is the dollar amount of proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead which was instead diverted and paid to, for or with respect to Debtor's predecessor Leeway, Debtor, and Royal Street Properties (including without limitation for payment of utility charges, condominium fees, taxes, insurance premiums, mortgage payments or otherwise).

146. No prescriptive or preemption period has run with respect to proceeds required to be held "in trust for and as the sole and exclusive property of" and remitted to Arrowhead, but which were never remitted to Arrowhead and were instead applied to, for or with respect to Leeway, Debtor, or Royal Street Properties.

WHEREFORE, Arrowhead seeks judgment against Debtor for an accounting of and payment to Arrowhead with respect to all proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead, but which instead were disbursed to, for or with respect to Leeway, Debtor, or Royal Street Properties (whether for payment of utilities, condominium fees, taxes, insurance premiums, mortgage payments, or otherwise); for payment by Debtor to Arrowhead of the amount of those proceeds; for impression of a trust on the Royal Street Properties in the amount of such proceeds due and owing to Arrowhead until such proceeds are paid in full to Arrowhead; in accordance with Master Agreement §8 [Ex. 3 hereto], Arrowhead's costs and expenses, including without limitation legal fees and other costs incurred in connection with enforcement of its rights and remedies; and such other and further remedies and relief as the Court may deem necessary or appropriate in the circumstances

## COUNT IX
### (Fraud/Fraudulent Concealment)

147. Paragraphs 1 through 146 above are incorporated herein as fully as if rewritten herein.

148. As beneficiary and *cestui que trust* of the funds required to be deposited in the Collection Account at Chase Manhattan Bank, New York and held "in trust for and as the sole and exclusive property of" Arrowhead, Arrowhead relied on the Seven Arts Companies and their officers, directors and affiliates to provide Arrowhead a true and proper accounting of and documents and information sought with respect to (among other things) proceeds collected and any disbursement thereof.

149. Although Peter Hoffman (manager of Debtor and of Debtor's predecessor Leeway) and his affiliated Seven Arts Companies are trustees and fiduciaries to Arrowhead of proceeds required to be deposited in the Collection Account and held "in trust for and as the sole and exclusive property of" Arrowhead, and although Leeway, Debtor and Royal Street Properties received and had the benefit of those trust funds belonging to and the property of *cestui que trust* Arrowhead, they have:

(a) knowingly, intentionally, and fraudulent concealed from Arrowhead their receipt and disbursement of those funds;

(b) knowingly, intentionally, and fraudulently failed to provide Arrowhead an accounting of their receipt and disbursement of those funds; and

(c) knowingly, intentionally, and fraudulently attempted to prevent Arrowhead's discovery of those funds by refusing to provide Arrowhead discovery of their receipt and disbursement of those funds and by improperly instructing other witnesses to not provide Arrowhead which Arrowhead has sought at to documents and information with respect to receipt and disbursement of those funds.

150. For instance, Susan Hoffman signed and Debtor filed a "Verified Objection

to Claim No. 1 filed by Arrowhead" [ECF Doc. No. 100] in which Debtor through Susan

Hoffman falsely verified and misrepresented to the Court and to Arrowhead that:

(a) "By no later than August 28, 2014, Seven Arts (including all of its affiliates subject to the judgment alleged by Arrowhead) had ceased all business and transferred all its assets in satisfaction of its principal secured creditor's claim. Seven Arts may have had minor business activity thereafter, but such activity ceased no later than the end of calendar year 2015. As a result, Seven Arts could not have made any payment to or for the benefit of [Debtor] or Mrs. Hoffman or in connection with their property after December 31, 2015." [Objection ¶6]

(b) "the Seven Arts had no assets after that time [after December 31, 2015] [Objection ¶11]; and

(c) "Debtor also denies Arrowhead's allegations regarding transfers from Seven Arts to pay costs or expenses incurred in connection with [Debtor's] property. Seven Arts had no bank account or income since prior to 2016" [Objection ¶15].

151. Furthermore, Arrowhead has sought discovery with respect to (among other

things) receipt and disbursement of the funds by:

(i) discovery requests propounded on Peter Hoffman's affiliates, judgment debtors, in the State Court Action [Exhibit 4 hereto] and in the District Court Action  SAE [Exhibit 23A hereto] and SAFELA [Exhibit 23B hereto];

(ii) Subpoena served on Peter Hoffman's affiliate, PicturePro [that Subpoena and Proof of Service thereof is Exhibit 23C hereto]; and

(iii) Subpoena served on Uncork'd Entertainment [that Subpoena and Proof of Service thereof is Exhibit 23D hereto].

152. However, as directed by Debtor's management (including without limitation

Peter Hoffman and Debtor's special counsel Philip Stillman), judgment debtors have

continued to fail and refuse to produce discovery (whether documents or interrogatory

answers) to Arrowhead's discovery requests, and Hoffman's affiliate PicturePro also has

refused to deliver to Arrowhead any subpoenaed documents.

153. For instance, Philip Stillman, Debtor's special counsel, delivered a March 19, 2020 letter [Exhibit 23E hereto] and an April 9, 2020 letter [Exhibit 23G hereto] in which he as counsel for PicturePro and affiliated companies has recited spurious and false grounds for the improper refusal of Hoffman's affiliates to produce the documents and information sought [see Arrowhead's responses which are Exhibit 23F & 23H].

154. Debtor's manager Peter Hoffman also asserted threats against Uncork'd Entertainment and its principal Keith Leopard, and Debtor's counsel Philip Stillman has delivered his improper March 19, 2020 letter [Ex. 23E] to counsel for Uncork'd Entertainment, in order to deter and prevent them from complying with, and Uncork'd Entertainment has thereby been deterred from complying with, the Subpoena served on Arrowhead [see fn. 8 above].

155. As a result of continuing, knowing, intentional and fraudulent concealment by and fraudulent misconduct of Debtor's management (including among others Peter Hoffman and Debtor's special counsel Philip Stillman), and their affiliates, in refusing to provide, and in deterring others from providing accountings, documents, and information with respect to funds required to be held "in trust for and as the sole and exclusive property of" Arrowhead but which instead have been disbursed for and with respect to Leeway (Debtor's predecessor), Debtor, and Royal Street Properties, the receipt and disbursement of those funds continues to be knowingly, intentionally and fraudulently concealed from Arrowhead, and Arrowhead has been proximately injured thereby.

WHEREFORE, Arrowhead seeks judgment against Debtor for an accounting of and payment to Arrowhead with respect to all proceeds required to be held "in trust for and as the sole and exclusive property of" Arrowhead, but which instead were disbursed

to, for or with respect to Leeway, Debtor, or Royal Street Properties (whether for payment of utilities, condominium fees, taxes, insurance premiums, mortgage payments, or otherwise); for payment by Debtor to Arrowhead of the amount of those proceeds; for impression of a trust on the Royal Street Properties in the amount of such proceeds due and owing to Arrowhead until such proceeds are paid in full to Arrowhead; in accordance with Master Agreement §8 [Ex. 3 hereto], Arrowhead's costs and expenses, including without limitation legal fees and other costs incurred in connection with enforcement of its rights and remedies; and such other and further remedies and relief as the Court may deem necessary or appropriate in the circumstances.

Respectfully submitted,

/s/ Barry L. Goldin        and
BARRY L. GOLDIN, ESQ.
3744 Barrington Drive
Allentown, PA 18104-1759
Telephone: (610) 336-6680
Fax: (610) 336-6678
Email: barrygoldin@earthlink.net

PEIFFER WOLF CARR & KANE
BY:  /s/ Daniel J. Carr
1519 Robert C. Blakes, Sr. Drive, 1st Floor
New Orleans, Louisiana 70130
Telephone: (504) 586-5270
Fax: (504) 523-2464
Email: dcarr@pwcklegal.com

*Attorneys for Arrowhead Capital Finance, Ltd.*

EXHIBITS

Tab    Document
*Judgments*

1.     Document Recordation Information of the Clerk of Court and Recorder of
       Orleans Parish, Louisiana for Judgment in favor of Arrowhead domesticating
       Judgment and Order of the Supreme Court of the State of New York, New York
       County (Index No. 601199/2010) in favor of Arrowhead for $2,496,159.50
       against Seven Arts Filmed Entertainment Limited ("SAFE"), Seven Arts Pictures,
       Inc. ("SAP"), Deal Investments, LLC, Deal Productions, LLC, Rectifier
       Productions LLC and Pool Hall Productions, LLC, jointly and severally

2A.    Document Recordation Information of the Clerk of Court and Recorder of
       Orleans Parish, Louisiana for Judgment in favor of Arrowhead domesticating
       Judgment of the U.S. District Court for the Southern District of New York, case
       number 14-cv-06512, in favor of Arrowhead for $1,933,809 plus interest from
       and after January 3, 2020 at the rate of 9% per annum against Seven Arts
       Entertainment, Inc. ("SAE") and Seven Arts Filmed Entertainment Louisiana,
       LLC ("SAFELA") jointly and severally

2B.    Judgment entered June 5, 2018 of the United States District Court for the
       Southern District of New York in *Arrowhead Capital Finance, Ltd. v. Seven Arts
       Entertainment, Inc. and Seven Arts Filmed Entertainment Louisiana, LLC*, 14 cv
       06512, entered June 5, 2018 and attached exhibits consisting of:

           1. Secured Term Loan Promissory Note in favor of Arrowhead; and
           2. Judgment and Order entered October 10, 2012 in favor of Arrowhead of
           the Supreme Court of New York for New York County, Index No.
           601199/2010

3.     Master Agreement dated as of December 22, 2006 with Arrowhead of obligors
       Seven Arts Pictures PLC, SAFE, SAP, Seven Arts Future Flows I ("FFI"), Deal
       Investments, LLC, Deal Productions, LLC, Rectifier Productions, LLC, and Pool
       Hall Productions, LLC.  See Section 5.1 (last sentence) pursuant to which each of
       the obligors agreed to hold all proceeds of the Pictures and other Collateral "in
       trust for, and as the sole and exclusive property of" Arrowhead.

*Failure of the Seven Arts Companies to Provide Requested Accountings*
4.     Defendants Response to Plaintiff Arrowhead's First Set of Document Demands
       In Index No. 601199/10 [NYSCEF Doc. No. 8]

*Post-September 1, 2016 Business Activities of and with respect to Seven Arts Companies
SAE and SAFELA*
5.     Certificate of Origin and Authenticity of Regions Bank and accompanying bank
       statements for SAFELA bank account for September 2016 through January 2017

(i)

6.      Affidavit of Bank of America and accompanying bank statements for SAE bank account for September through December 2016

7.      Report of income collected by Uncork'd Entertainment (film distribution agent) through December 31, 2017 from part of the Seven Arts film library (including *Boo*, *Deal, Back in the Day* and *Cemetary Gates*)

8.      Agreement dated January 1, 2019 between Uncork'd Entertainment and SAE, SAFELA, and PicturePro LLC and accompanying Guaranty and Personal Undertaking by Peter Hoffman

9A-9D. December 2019 and 2020 Emails from Peter and Kate Hoffman to Seth Kittay (All Channel Films), Keith Leopart (Uncork'd Entertainment) and Michael Repsch (Darkstar pics) with respect to distribution of films in the Seven Arts film library (including *A Broken Life*, *Pool Hall Prophets* a/k/a *Shooting Gallery*, and *The Pool Boys*)

*Exhibits relating to Peter Hoffman's Direct Interest in the Royal Street Properties*
10.     "Peter M. Hoffman – Monthly Cash Flow -2007" (shows cash flow to Peter Hoffman of $16,850 per month from Royal Street Properties)

11.     Louisiana Monthly Rental Income and appraised value as faxed on June 3, 2009 with respect to Royal Street Properties

12.     Power of Attorney dated March 22, 2007 signed by Peter Hoffman to "Sell Real Estate, Borrow, and Guarantee Payment of Funds, and Mortgage Real Estate" (for borrowing against Royal Street Properties)

13A.    Insurance Application dated November 19, 2009 signed by Peter and Susan Hoffman as owners and named insureds of the Royal Street Properties

13B.    Insurance Binder dated November 24, 2009 showing Peter and Susan Hoffman as the named insureds for the Royal Street Properties

14A.    Insurance Application dated May 24, 2010 of Peter and Susan Hoffman as the owners and named insureds of the Royal Street properties

14B.    Insurance Binder dated June 9, 2010 showing Peter and Susan Hoffman as the named insureds of the Royal Street Properties

15.     May 25, 2012 email of the insurance agent for Peter and Susan Hoffman describing them as the owners of the Royal Street Properties

16.     August 2, 2019 Insurance Renewal showing Peter Hoffman and Susan Hoffman (not Debtor) as the named insureds with respect to the 900-902 Royal Street Property

*Exhibits relating to Peter Hoffman's Interest in the Royal Street Properties through Leeway*

17.     Unanimous Written Consent of the Board of Directors of Leeway dated as of March 15, 2007 signed by Peter and Susan Hoffman as co-directors        .

18.     Peter Hoffman Balance Sheet as of December 31, 2009 stating his Leeway Investment as $2,880,383.48

19A.    Leeway's Louisiana Tax Return for 2008 dated November 3, 2009 as signed by Peter Hoffman as President (last page states Peter Hoffman is the owner of 100% of Leeway's shares)

19B.    Leeway's Louisiana Tax Return for 2009 signed on December 1, 2010 by Peter Hoffman as President (last page under shareholder of "50% or more" of Leeway lists only Peter Hoffman)

19C.    Leeway's Louisiana Tax Return for 2010 dated August 6, 2012 as signed by Peter Hoffman as President (last page under shareholder of "50% or more" of Leeway lists only Peter Hoffman)

19D.    Leeway's Louisiana Tax Return for 2011 dated August 7, 2012 as signed by Peter Hoffman as President (last page under shareholder of "50% or more" of Leeway lists only Peter Hoffman)

20.     Statement of fund transfers to Leeway (August 2008-December 2012) from Peter M. Hoffman, Seven Arts Filmed Entertainment and Seven Arts Pictures, Inc.

*Transfer by Leeway of Royal Street Properties to Debtor Royal Alice Properties, LLC*

21.     Deed of Conveyance by Leeway to Debtor dated as of November 23, 2011

22.     Order filed April 2, 2013 of Magistrate Judge Daniel E. Knowles in *Seven Arts Pictures, Inc. v. Jonesfilm, et al* (U.S. District Court for the Eastern District of Louisiana, No. 09-4814 *et al*) denying a motion of Susan Hoffman, Leeway Properties Inc. and Royal Alice Properties, LLC to intervene. The Order states (at p.3) that:

"The District Court's November 11, 2011 Contempt Order (approving and adopting this Court's October 26, 2011 Report and Recommendation) found that [Peter] Hoffman, his co-judgment debtors, and their affiliated garnishees (including Leeway) disobeyed this court's orders; ordered Hoffman and Leeway to immediately turn over $174,769.56 of garnished funds garnishee Leeway had wrongfully transferred to and for Hoffman and his co-judgment debtors (of which Hoffman has been chief executive officer and manager); and granted Jonesfilm judgment against Hoffman, Leeway, and the other co-judgment debtors and

(iii)

garnishees for legal fees and costs in the amount of $21,357.50.  The Fifth Circuit has affirmed the District court's and this Court's orders.

**Less than a week after these orders issued, Hoffman and Leeway created Royal Alice Properties, LLC ("RAP") to which they transferred all assets of Leeway.  Leeway thus became nothing more than an empty shell.  Leeway received no consideration for the transfer.**

Instead of complying with the earlier orders, Hoffman, Leeway and their affiliates have continued their disobedience of this Court's Charging Orders, Garnishment Order, and also the 2011 Contempt Order against them, and so again were held in contempt by the District Court's November 1, 2012 Contempt Order." [emphasis added]

*Continuing Refusal to Comply with Arrowhead's Discovery Requests*

23A    March 10, 2020 enforcement discovery requests served on judgment debtor Seven Arts Entertainment, Inc. and email acknowledgement of March 10, 2020 of Raymond Markovich, Esq. that the discovery requests have been "forwarded to client".

23B    March 10, 2020 enforcement discovery requests served on judgment debtor Seven Arts Entertainment, Inc. and email acknowledgement of March 10, 2020 of Raymond Markovich, Esq. that the discovery requests have been "forwarded to client".

23C    Subpoena for production of Documents by PicturePro LLC and Proof of Service of March 10, 2020 service of that Subpoena on hand on Peter Hoffman

23D.   Subpoena for production of Documents on Uncork'd Entertainment and Affidavit of March 4, 2020 service on Keith Leopard of Uncork'd Entertainment

23E    March 19, 2020 letter to Arrowhead's counsel Barry L. Goldin, Esq. from Philip Stillman, Esq., special counsel for the Debtor and also counsel for PicturePro LLC and on behalf of Seven Arts Entertainment, Inc.

23F    March 24, 2020 letter from Arrowhead's counsel Barry L. Goldin, Esq. to Philip Stillman

23G    April 9, 2020 letter to Arrowhead's counsel Barry L. Goldin, Esq. from Philip Stillman, Esq., special counsel for the Debtor and also counsel for PicturePro LLC and on behalf of Seven Arts Entertainment, Inc.

23H    April 10, 2020 letter from Arrowhead's counsel Barry L. Goldin, Esq. to Philip Stillman

ARR000411.1VCOMPLRAP

## **VERIFICATION**

The undersigned Barry L. Goldin hereby declares:

1. I have been serving since 2014 (and thus for approximately six years) as and am counsel for Arrowhead Capital Finance, Ltd. ("Arrowhead").

2. I have authority to execute this verification on behalf of Arrowhead's liquidator, W. William Woods, whose office is located and who resides in Toronto, Canada.

3. I have prepared the foregoing Verified Complaint based on publicly available information and also documents and information which I have obtained during my representations of Arrowhead and other clients in matters with respect to or concerning Peter Hoffman, Susan Hoffman, Leeway Properties, Inc., Royal Alice Properties, LLC and the Seven Arts Companies (as defined in the Verified Complaint at ¶15).

4. I have reviewed, have personal knowledge of, and conducted due diligence as to the assertions in the foregoing Verified Complaint and so am informed and believe that the factual allegations contained in the Verified Complaint are true and correct to the best of my knowledge, information and belief.

5. I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 13, 2020

Barry L. Goldin