UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CASE NO.: 19-12337 |
| | * | |
| ROYAL ALICE PROPERTIES, LLC | * | SECTION "A" |
| | * | |
| Debtor | * | CHAPTER 11 |
| ****************************************** | | |
| ARROWHEAD CAPITAL FINANCE, LTD., | * | |
| | * | |
| Plaintiff | * | Adv. Proc. No. 20-01022 |
| v. | * | |
| | * | |
| ROYAL ALICE PROPERTIES, LLC, | * | |
| | * | |
| Defendant | * | |
| _____ | * | |

## DEBTOR ROYAL ALICE PROPERTIES LLC'S MOTION AND INCORPORATED MEMORANDUM TO DISMISS COMPLAINT OF ARROWHEAD FINANCE CAPITAL LTD. [FRBP 7012; FRCP 12(b)(6)]

NOW INTO COURT, through undersigned counsel, comes Debtor Royal Alice Properties LLC ("Debtor") who moves to dismiss the Complaint ("Complaint") [Dkt. 133] of Arrowhead Capital Finance Ltd. ("Arrowhead") pursuant to FRBP 7012 incorporating FRCP 12(b)(6). Like its improper Claim No. 1, Arrowhead's Complaint is a baseless effort to interrupt these proceedings and prejudice *real* claims of Louisiana creditors with an entirely unrelated dispute regarding the financing of three motion pictures in 2006 in which Debtor (not even then in existence) had no involvement whatsoever, even under the conclusory allegations of the Complaint. As stated in Debtor's Reply [Dkt. 124] to Arrowhead's "Opposition" [Dkt. 123] to Debtor's Objection [Dkt. 100] to Claim No. 1, Arrowhead's Complaint does not allege any plausible claim against Debtor arising within any prescriptive period and does not meet the basic requirements to state a plausible claim for relief as required by FRCP 9(b).

1

Arrowhead's Complaint.  Arrowhead's Complaint is divided into two sets of claims. First ("Counts" I and II), Arrowhead claims that through application of the single business enterprise doctrine (SBE) or related claims of "alter ego," Debtor is liable on a Judgment dated September 16, 2016 ("Arrowhead Judgment") against Seven Arts Entertainment Inc. ("SAE") and Seven Arts Filmed Entertainment Louisiana LLC ("SAFELA") entirely unrelated to Debtor.

As shown in Part B below, Arrowhead's claims of SBE and "alter ego" are barred by claim preclusion and the prescriptive period. In addition, Arrowhead's Complaint fails to allege the elements of SBE sufficient to invoke that doctrine. The Complaint makes only conclusionary allegations contradicted by documents of which this Court can take judicial notice as requested in Debtor's Request For Judicial Notice ("RJN") filed contemporaneously herewith.

Second ("Counts" III through IX with IX being duplicated), Arrowhead makes conclusory allegations that monies allegedly due to it from assets of SAE or SAFELA were somehow diverted at unspecified times and in unspecified amounts to Debtor or to pay expenses in connection with the Debtor's Real Property Assets.[1]  Arrowhead claims that at some unspecified points in time, staff of SAE and SAFELA provided services to Debtor or in connection with the Real Property Assets.

As argued in Part A below, Arrowhead's allegations are grossly insufficient under FRCP 9(b) as a matter of law to allege any claim of revocatory transfer or other "fraud" concerning Debtor within any applicable prescriptive period.  The only specific allegation is based on false allegations contradicted by documents subject to judicial notice pursuant to the RJN and long outside the prescriptive period even as falsely alleged.

---

[1] As defined in Debtor's Amended Disclosure Statement ("ADS") [Dkt. 134].  All defined terms used herein not otherwise defined shall have the meanings assigned in the ADS.

Arrowhead's conclusory allegations of "simulation" ("Count" VI), its effort to avoid the obvious prescription of its claims, are legally insufficient on their face, contradicted by documents provided in the RJN and no more than a restatement of its legally insufficient SBE theory. As shown below, the one "contract" alleged to be a "simulation" was given for consideration, properly authenticated as a donation in any event and not a "simulation" as a matter of law.

Mr. Hoffman Has No Interest In Debtor Or Any Real Property Assets.  As set forth in the attached RJN Ex. 1A and B, Mr. and Mrs. Hoffman have been legally separated since 1999 as confirmed in a Judgment of Legal Separation dated July 16, 2007 and a Marital Separation Agreement dated July 7, 2003.  As confirmed in the RJN Ex. 2A and B, Mrs. Hoffman and Debtor are the only holders of title to the Real Property Assets.  Mr. Hoffman's marital interests in the Real Property Assets were terminated almost 17 years ago.

Mr. Hoffman donated all his interest in 900 Royal to Mrs. Hoffman on February 24, 1997. Mr. Hoffman waived all his interest in the balance of Mrs. Hoffman property, including Unit E 906 and Unit C 912 Royal, on July 7, 2003, in connection with the Marital Separation Agreement, under which he transferred his interests in those assets to Leeway Properties Inc. ("Leeway") in consideration for Mrs. Hoffman's transfer to him of her community property interest in their multi-million dollar home in Los Angeles.  Debtor acquired Leeway's interest in these two Units by deed on November 23, 2011. RJN Ex. 2C.

These transfers are all valid donations, also given for consideration, confirmed by the Judgment of Legal Separation and recorded in the Orleans Parish property office. An inter vivos donation is valid under LA. CIV. CODE Art. 1542 if the property is specifically described and the instrument is properly authenticated as required by LA. CIV. CODE Art. 1833. As the Court can

see, both transfers of Mr. Hoffman's interests in the Real Property Assets are properly authenticated.

Arrowhead does not allege that Mrs. Hoffman was ever a director, officer, employee or shareholder of either SAE or SAFELA because she never held any of those positions. Arrowhead does not allege that Mr. Hoffman, SAE or SAFELA were members or managers of Debtor because they never were. Arrowhead has no basis in law to mash together separate individuals and business entities for its convenience, solely to hold Debtor or Mrs. Hoffman liable for a million-dollar judgment arising out of transaction in which neither had any role or participation whatsoever.

No Identity Of Ownership. Arrowhead's entire claim is premised on the legally frivolous, conclusory allegation, Complaint, ¶89(i), that there is "substantial identity of ownership among Debtor and the Seven Arts Companies." Arrowhead bases this allegation on the further allegation that Mr. Hoffman "was owner of 100%, but in any event the only owner of '50% of more' of the shares of Leeway [Properties Inc.] . . . and upon Leeway's transfer of all of its assets without consideration to Debtor, Peter Hoffman succeeded to and has an ownership interest of at least '50% or more' of Debtor." This allegation is entirely without basis in law or fact and contradicted by documents of which this Court can take judicial notice.

A transfer of assets (some of the Real Property Assets) from Leeway to Debtor in February 2011 (included as RJN Ex. 2C) does not somehow magically make Mr. Hoffman an owner or manager of any interest in Debtor and he is not, as conclusively established by the Articles and Operating Agreement of Debtor, attached as RJN No. 7A and B. No provision of Louisiana or other law authorizes this baldly false legal conclusion, particularly when the assets transferred are assets for which Mr. Hoffman waived all ownership interest in the Marital Settlement Agreement in 2003 and confirmed in the Judgment of Legal Separation in 2007, both as authentic acts under

4

Louisiana law.  And the Debtor's most valuable Real Property Asset (900 Royal) was never owned by Leeway nor does Arrowhead allege it was. In fact, Mr. Hoffman donated that property to Mrs. Hoffman in 1997.

This Court has no authority under any principle of law to nullify the Marital Settlement Agreement made more than 16 years ago and to reverse the Judgment of Legal Separation by declaring that Mr. Hoffman owns more than 50% of Debtor. Arrowhead's conclusory allegations of "simulation" are insufficient as a matter of law to support such a radical revision of Mrs. Hoffman's settled property interests relied on by all creditors including AMAG, Inc. ("AMAG"), the holder of the Secured Claim attached as RJN Ex. 6A and B.  Arrowhead has not and cannot allege either an absolute simulation or a relative simulation to which it can object under clear Louisiana law.

Arrowhead's allegations regarding the deed from Leeway to Debtor are incoherent on their face, since of course Debtor received consideration on the transfer of certain Real Property Assets to it, *i.e.* title to those Assets, which is itself sufficient to refute a claim of "simulation."  If Arrowhead meant to allege that Leeway received no consideration, that allegation is false since Debtor assumed the then-existing first mortgages and is now irrelevant.  Debtor assumed the entire first mortgage granted to AMAG, the Secured Claim in this proceeding, and Leeway was released on payment of the existing first mortgages.  Only Debtor not Leeway is liable on that Secured Claim as shown on RJN Ex. 6A.

Finally, as established by the organization documents of Leeway, in fact Mr. Hoffman never owned any interest in that corporation, as 100% of the stock of Leeway was at all times owned by Mrs. Hoffman, as required by the Marital Settlement Agreement. RJN Ex. 4C.  Mr. Hoffman was an officer and director of Leeway but Leeway's transfer of assets to Debtor in 2011

does not magically make Mr. Hoffman a manager or member of Debtor when he clearly is not. Mistakes by the tax return preparer on a return filed more than eight years ago cannot change the legal ownership of Leeway or the legal effect of the Marital Settlement Agreement and the Judgment of Legal Separation.

Arrowhead Judgment.  In order for the Court to understand how far off course Arrowhead's "frolic and detour" seeks to divert these proceedings, Debtor provides some background on the Arrowhead Judgment.  The Arrowhead Judgment dated September 16, 2016 found that SAE and SAFELA were liable under a theory of "de facto" merger on a judgment against Seven Arts Pictures plc ("PLC") obtained by Arrowhead's predecessor in an Order dated June 20, 2012 issued by the New York Supreme Court affirmed in Arrowhead Capital Finance v. Seven Arts Pictures plc, 110 A.D. 3d 514, 972 N.Y.S. 2d 899 (1st Dist. 2013) ("Prior Action").

The Prior Action was based on a Senior Subordinated Note ($1,000,000) issued by PLC dated December 3, 2006, as part of an investment by Arrowhead in three motion pictures produced by PLC, Deal, Noise and Pool Hall Prophets aka Shooting Gallery ("Pictures").  The dispute adjudicated in the Prior Action arose when PLC acquired the Senior Promissory Note ($6,500,000) on April 22, 2008 and claimed it was entitled to the subordination clause as to right and remedy against Arrowhead contained in a Master Agreement executed by Arrowhead as part of this film financing.  In a case of first impression, the New York state courts rejected that position, much to PLC's astonishment, erasing the subordination provisions of the Master Agreement and allowing Arrowhead to vault into a senior position despite an affiliate's acquisition of the Senior Promissory Note at par.

SAE did not merge with PLC but acquired its assets, intending to protect itself from liability, before judgment was entered in the Prior Action, on what SAE believed was a

subordinated claim.  In substantial expansion of the "de facto" merger doctrine, the Federal court held SAE and SAFELA were nevertheless liable on the New York judgment as parties to a "de facto" merger.  The Second Circuit affirmation on June 29, 2018 of the SDNY Order of September 16, 2016 occurred long after Mr. Hoffman's indictment and conviction for wire fraud, effectively ending SAE's business, and after SAE and SAFELA had already transferred all of their film assets in August 2014 to an affiliate of AMAG in settlement of that affiliate's senior claims against those assets. RJN Ex. 3.

What possible connection is there between Debtor or the Real Estate Assets, on the one hand, and the Arrowhead Judgment, on the other hand?  Of what relevance to this proceeding is a dispute between Arrowhead, PLC and SAE regarding the Subordinated Senior Promissory Note issued on December 2, 2006 for a film financing transaction concerning three motion pictures in which the Debtor or Mrs. Hoffman had no involvement or interest whatsoever?

Obviously, none at all.  Debtor is not now and has never been in the motion picture business.  Debtor acquired Unit E 906 Royal and Unit C 912 Royal on its formation in early 2011 and further acquired 900 Royal in August 2019.  Mrs. Hoffman was a successful film producer before moving to Louisiana but had no involvement in the Pictures, which in any event were produced in 2006, long before Debtor was even formed in 2011. Arrowhead makes no allegations to the contrary.

Standard For Grant Of A Motion To Dismiss.  This Court should dismiss a claim pursuant to FRCP 12(b)(2) unless the allegations of the claim show a legal right to relief "that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Court is "not bound to accept as true 'a legal conclusion couched as a factual allegation.'"  In re Ondova Corp. v. Sherman, 914 F.3d 990, 992 (5th Cir. 2019) quoting Papasian v. Allain, 478 U.S. 265, 286 (1986).

"[A] formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

As shown below, all of the allegations of the Arrowhead Complaint are strands of mischaracterized evidence or false statements which are then packaged as a legal conclusion without specific allegations supporting any plausible claim against Debtor. In reviewing the legal inadequacy of Arrowhead's Complaint, this Court may consider documents subject to the RJN and documents referred to in the Complaint itself which contradict allegations of Arrowhead's Complaint. Telllabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

In addition, FRCP 9(b) applies in bankruptcy adversary proceedings and requires specificity of allegations of "fraud," as are all of Arrowhead's allegations. Life Partners Creditor Trusts v. Cowley, 926 F.3d 103, 116-17 (5th Cir. 2019) ("Life Partners"). Arrowhead's confusing bundle of claims ("Counts" III to Count IX twice) apparently seek to avoid expressly alleging a valid revocatory claim under Louisiana law (all clearly barred) but its claims of non-specific "fraud" or breach of "fiduciary duty" are clearly subject to the Rule 9(b) requirement that the claim must allege the "who, what, where, when and how" of the alleged "fraud" and all are equally insufficient. In re Haber Oil Co., 12 F.3d 426, 439 (5th Cir. 1994) followed Bennett v. Lindsey, 733 Fed. Appx 190, 192-93 (5th Cir. 2018).

In Life Partners, the Fifth Circuit declined to hold that Rule 9(b) applied to claims of actual or constructive fraudulent or revocatory transfers, noting however that its sister circuits have all so held. 926 F.3d at 118-19, 121. However, the Court approved the pleadings in that case only because the claimant alleged the "transferor, transferee, amounts and time period" so that claims outside of the limitation period could be and were dismissed. That holding establishes the critical baseline for allegations of fraudulent or revocatory transfers: who, where, what, when and how

was money or property transferred from the judgment debtor or obligor to the party sought to be charged. To the same effect, see In re Gulf Fleet Holdings, Inc., 491 B.R. 747, 761 (Bankr. W.D. La. 2013) ("Gulf Fleet").

As the Fifth Circuit had stated earlier: "It is simply not enough that the property claimed may have been the product of trust funds at one time." Bradley v. Ingalls, 501 F.3d 421, 430 (5th Cir. 2007). The same rules of specificity apply to dismiss allegations where there are "no quantifiable damages suffered . . ." Torch Liquidating Trust v. Stockhill, 561 F.3d 377, 389 (5th Cir. 2009).[2] In a statement directly applicable to this case, a complaint must be dismissed when "no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." American Waste & Pollution Control Co. v. Browning-Ferris, Inc., 949 F.2d 1384, 1386 (5th Cir. 1991).

As shown below, Arrowhead's Complaint meets none of these standards in either of its two groups of claims and is also barred by the applicable prescription period and claim preclusion. Arrowhead alleges that Peter Hoffman owns the Debtor when he clearly does not. Arrowhead asks this Court to invent a doctrine of "alter ego" of two natural persons who have legally separated their property interests, imputing "beneficial" ownership of assets in direct contradiction of a Martial Settlement Agreement reduced to a Judgment of Legal Separation executed and entered more than a decade ago. All of Arrowhead's allegations devolve back to this legally preposterous, objectively frivolous claim, all long since prescribed and preempted and not saved by legally

---

[2] All Arrowhead's claims of "fraud" are subject to the rigorous pleading requirements of LA. CODE CIV. PROC. Art. 856 as well as FRCP 9(b). See In re JCC Environment Inc., 575 B.R. 692, 699-70 (E.D. La. 2017); Rodriguez v. Cyr, 602 B.R. 315, 326 (Bankr. W.D. Tex. 2019). Even if the more relaxed standards of FRCP 8(a) are applied to merely voidable transfers, Arrowhead's conclusory allegations do not constitute legally sufficient allegations of "fraud." See Hill v. Oria, 2010 Bank. LEXIS 4826 (Bankr. S.D. Tex., Dec. 16, 2010) at *18-21 & n. 6, 57, 68.

insufficient, conclusory allegations of a "simulation" contradicted by authentic acts included in RJN Ex. 2.

## ARGUMENT

A.    <u>Arrowhead Has Not Alleged Any Claim Of "Fraud" Or Revocatory Transfer Within The Prescriptive Period</u>.

<u>Arrowhead's Complaint Does Not Alleged An Indebtedness</u>.  Arrowhead does not allege any contract with Debtor or its predecessor-in-title Susan Hoffman, at any point in time and certainly not within any applicable limitation period.  Arrowhead does not allege any provision of services, goods or money to Debtor or Mrs. Hoffman at any point in time or again within any applicable limitation period.  Arrowhead does not allege any other basis for any obligation of Debtor or Mrs. Hoffman to Arrowhead based on a writing at any point in time or again within any applicable limitation period.

Since Arrowhead has alleged no written evidence of any obligation of Debtor or Mrs. Hoffman, the Complaint must be dismissed absent some other basis of liability.  See <u>In re Pearce</u>, 411 B.R. 303, 306 (E.D. La. 2008).  Arrowhead's claim is apparently based on proof of a judgment but neither Debtor nor Mrs. Hoffman are judgment debtors under that judgment.  As Arrowhead's Complaint alleges, only SAE and SAFELA are judgment debtors.  Arrowhead does not allege that Debtor or Mrs. Hoffman are an officer, director, shareholder or employee of either SAE or SAFELA and neither were.

<u>Arrowhead's Complaint Does Not Allege "Fraud" With Specificity</u>.  Arrowhead's Complaint contains 155 allegations ranging over the entire decade or so of disputes between it, SAE and Mr. Hoffman.  But there are no allegations of specific money or property of SAE or SAFELA transferred to Debtor or Mrs. Hoffman for or in connection with the Real Property Assets in any quantifiable amount or any designated point in time.  Arrowhead claims "undocumented

transfers" and use of SAE "staff" to pay bills or provide accounting (never happened) but does not allege "who, where, when, how and why," necessary to state a legally sufficient claim of "fraud" or a revocatory transfer under Rule 9(b) and <u>Life Partners</u>.

"Counts" III, VII, VIII, and IX (repeated twice) in substance repeat the same claims, apparently based on New York law and not pled as claims under Louisiana civil practice.  "Count" III claims "breach of trust" in that alleged "trust funds" due to Arrowhead from SAE were "transferred" for the benefit of Leeway, Debtor and the Real Property Assets, but with no specific allegations of who, what, where, when and how.  Arrowhead's Opposition [Ex. 5 and 6] admit that no such "transfers" could have occurred after August 28, 2018 because neither SAE nor SAFELA had open bank accounts in that period.  Arrowhead's real claim is for an accounting against Mr. Hoffman or Picture Pro LLC. However, neither are defendants. Claims against both are precluded as discussed below.

"Count" IV, VIII and IX (twice) repeat the same allegations as "Count" III and are equally non-specific <u>as to any transfers of money or property from SAE or SAFELA to Debtor or Mrs. Hoffman with respect to her real property business</u>.  No such specific allegations are made because no such transfers occurred.  Debtor is constrained to reject Arrowhead's scurrilous use of the term "embezzlement" for monies earned by the Pictures in <u>2006-08</u> which were paid to <u>the senior note holder, who was substantially paid in full as discussed above when PLC acquired the senior note</u>. Later proceeds actually belonged to another secured creditor, an affiliate of AMAG as discussed above.

But whatever Arrowhead's rights or lack of rights to income from the Pictures might have been more than a decade ago, those rights have nothing to do with Debtor or this proceeding.  The only revocatory or "fraudulent" transfer alleged with any specificity is the transfer in February of

*2011* of certain of the Real Property Assets from Leeway to Debtor. That transfer as shown above was not gratuitous, was for value and was not preferential.

But whatever claims could be made about that transfer (which itself proves nothing relevant to this proceeding), any revocatory or "fraudulent" transfers claims are prescribed and preempted on the face of the Complaint, as discussed next. Finally, Arrowhead's "Hail Mary" allegations of "simulation" or "nullity" alleged in "Counts" IV, V and VI are insufficient on their face as discussed further below.

Arrowhead's Complaint Does Not Allege A Claim Not Barred By Prescription Or Peremption.  Arrowhead's Complaint does not allege any indebtedness of Debtor or Mrs. Hoffman arising by any act of SAE, SAFELA, Debtor, Mr. Hoffman or Mrs. Hoffman occurring before expiration of any Louisiana prescriptive or peremption period. Its claim must therefore be rejected. In re Lytell, 2012 U.S. Dist. LEXIS 8994 (E.D. La. Jan. 26, 2012) at *6-7 (reversing denial of objection to claim); See also B-Real LLC v. Roger, 405 B. R. 428, 430-31 & n. 12 (M.D. La. 2012).   Indeed, Arrowhead's Opposition did not include even one citation or argument that supports any claim arising in favor of Arrowhead against the Debtor or Mrs. Hoffman within any Louisiana prescriptive period, the sole exception being its conclusory, legally insufficient claims of "simulation" discussed below.

In this case, as stated in Debtor's Objection to Claim No. 1 [Dkt. 87], the prescriptive period in Louisiana for any claim of a revocatory or "fraudulent" transfer is one year, which is tolled upon the filing of the Petition. LA. CIV. CODE Art. 2041; 11 U.S.C. § 108(c).  Since the Petition was filed on August 28, 2019, all claims of Arrowhead arising based on alleged payments or transfers to or for the benefit of Debtor (even though none in fact occurred) prior to August 28, 2018 are therefore prescribed.  The same prescriptive period applies to general delictual claims

such as the wide range of "fraud" and "breach of fiduciary duty" alleged in the Arrowhead Complaint. LA. CIV. CODE Art. 3499.

Arrowhead alleges no basis to toll the limitation period for any late discovery of its claims of voidable or revocatory transfers by SAE or SAFELA (extending back to August 28, 2016) and the Complaint's allegations show complete awareness of Mr. and Mrs. Hoffman's business for more than fifteen years.  As its own production of bank records shows and its lengthy recitations of facts in its Opposition, Arrowhead has had full knowledge of all the purported "wrongdoing" by SAE, SAFELA or Mr. Hoffman and has done nothing about it.  The Complaint has no allegations of late "discovery" because Arrowhead's counsel has been engaged in a jihad against Mr. Hoffman for almost 20 years.

In addition, Arrowhead is deemed to be on inquiry notice of any claims against Debtor no later than the date of the Arrowhead Judgment (September 16, 2016).  Nicholson Mgmt. & Consultants, Inc. v. Bergman, 96-0557, 96-0558, (La. 4 Cir., Sept. 25, 1996), 681 So. 2d 471, 476, writ denied 92-1131, (La., June 19, 1996), 685 So. 2d 126.  Any claims of voidable or revocatory transfers or other "frauds" affecting Debtor are therefore subject to peremption or repose and barred as to both right and remedy.  LA. CIV. CODE Art. 3458.

Arrowhead's vague "mud-slinging" is not a substitute for a legally sufficient allegations of a *specific* alleged revocatory or voidable transfer which is within the prescriptive and peremptive periods provided by Louisiana law.  See Basic Capital Management v. Dynex Capital, Inc., 2019 U.S. Dist. LEXIS 186739 (N.D. Tex., Oct. 28, 2019) at *8-14.  As Arrowhead's Complaint concedes in paragraph after paragraph, Arrowhead complains of events long in the past and prescribed if not perempted by Louisiana law.

Louisiana Law Determines The Prescriptive And Peremptive Period.   Apparently acknowledging that Louisiana law would prescribe (indeed perempt) any claim of "fraud" or revocatory transfer arising prior to August 28, 2018, even if one were properly alleged, Arrowhead alleges ["Count" VII, ¶¶119-127] that New York law should apply in determination of the statute of limitations applicable to its attempts to collect the Arrowhead Judgment.  This bald legal conclusion is also incorrect as a matter of law.

Whatever law may be relevant to Arrowhead's attempts to collect the Arrowhead Judgment against SAE and SAFELA, only Louisiana law determines the prescriptive and preemption periods for Arrowhead's claims against Debtor in this proceeding.  LA. CIV. CODE Art. 3549A.  The substantive law of the forum applies to claims of revocatory transfer or "fraud" themselves based on Louisiana not federal law.  Janvey v. Brown, 767 F.3d 430, 434 (5th Cir. 2014); Gulf Fleet, 491 B.R. at 773.  In any event, New York "has no interest in the dispute" because none of the alleged (non-existent) transfers or "fraud" occurred in New York, nor does Arrowhead allege they did.

Reference to New York law would be just the sort of "false conflict" rejected in Janvey. Even if the Court were to apply a Federal "most significant contacts" analysis (not applicable), that would only point the Court to a choice between California law (which Arrowhead acknowledges was the place of business of SAE) and Louisiana law.  MC Asset Recovery, LLC v. Commerzbank A.C., 675 F.3d 530, 536 (5th Cir. 2012).  "Count" VI is thus legally insufficient and "Counts" III, VII and IX (repeated twice) fall with it, because all allege claims like "Count VII" premised on the same New York claims and New York statute of limitations alleged in "Count" VII.

Arrowhead Has No Claim Of "Simulation" Or "Nullity" As A Matter Of Law.  Apparently recognizing its claims of revocatory or "fraudulent" transfers are all prescribed and preempted,

Arrowhead seeks to avoid any prescriptive or preemption period by alleging ("Counts" IV, V and VI) in conclusory form that everything Mr. Hoffman, Mrs. Hoffman, SAE, SAFELA and Debtor did since 1997 are "simulations" or a "nullity" entitling Arrowhead to seek a complete re-writing of Mr. and Mrs. Hoffman's Marital Settlement Agreement and Judgment of Legal Separation based on . . . well, nothing except Arrowhead's wish that this Settlement be redone for its benefit. These allegations and "Counts" are insufficient as a matter of law to state a claim against Debtor.

LA. CIV. CODE Art. 2025 broadly provides that any "contract" is a "simulation" if it "does not express the true intent of the parties." Articles 2026 and 2027 distinguish between claims of "absolute" simulation and "relative" simulation, the first being that no contract was ever made and the second being that the contract did not express what the parties really intended. The party alleging simulation "must plead and prove that the parties on both sides of the transaction intended that the transaction be something else" and conclusory allegations are not sufficient. Gulf Fleet, 491 B.R. at 774 (rejecting trustee allegations for this reason); Scott v. Sneed, 210 So.3d 872, 874 (La. 2d Cir. 2006).

Arrowhead "lumps together" all of its claims of transfers of value of every conceivable party into conclusory allegations [¶¶115, 118] of "nullity" and "simulation" which are therefore insufficient to allege any particular transfer is either a "contract" or not "the intent of the parties." See Najor v. Plaquemines Clay Co., LLC, No. 16-15412, 2019 Bkcy LEXIS 64086 (E.D. La., Jan. 16, 2019) at *20-25 ("Najor"). Alleged transfers of money or property from SAE or SAFELA to Debtor or Mrs. Hoffman related to the Real Property Assets (none occurred) are on their face not "contracts" that could even be "simulations" (all really occurred and really transferred money or value if Arrowhead's allegations are credited) but merely purported revocatory or voidable transfers, all of which are insufficiently alleged and prescribed and preempted as discussed above.

Arrowhead's bogus claims of "embezzlement" of "trust funds" at unspecified times, prior to PLC's acquisition of the Senior Secured Note in 2008 (entitling it to those funds), adds nothing to its claims. These allegations do not allege a "contract" and are at best a claim of relative nullity. But even if so construed that claim is barred by the five-year prescriptive period of LA. CIV. CODE Art. 2032, applicable to such claims, as held in <u>Najor</u> at *25. Arrowhead cannot and does allege any transfers of such "embezzled funds" from SAE or SAFELA to Debtor or in connection with the Real Property Assets after August 28, 2013.

Under Arrowhead's implausible reasoning, every claim of revocatory transfer of value may be transformed into an absolute "nullity" or a "contract" which is a "simulation" with no prescriptive period merely by a conclusory allegation to that effect. No authority supports this evisceration of the prescriptive period of Articles 2032 and 2041. The rule against a relative "nullity" is not a substitution for revocatory actions prescribed by Article 2041 and no authority supports such a claim.  Arrowhead alleges no absolute "nullity," a claim which applies only to illegal contracts against public policy. LA. CIV. CODE Art. 2030.

The sole remaining "simulation" alleged is the transfer of title to two of the Real Property Assets (Unit E 906 Royal and Unit C 912 Royal) from Leeway to Debtor in 2011. This allegation fails as a matter of law because in fact title to those Assets was legally transferred by an authentic act with the consideration being the Marital Settlement Agreement itself. See <u>Johnson v. Unopened Succession of Covington,</u> Nos. 42,488, 42,489 (La 2 Cir., Oct. 31, 2007), 969 So. 2d 733, 741. This transfer is a not a presumed simulation because Mrs. Hoffman was in possession of the Units. LA. CIV. CODE Art. 2480.

Further, Arrowhead does not and cannot allege any "counter letter" as required by LA. CIV. CODE Art. 1849, to establish claims of absolute simulation, a provision designed to eliminate

just these types of claims. And the principles of recordation apply, LA. CIV. CODE Art 3338(1), to claims of absolute simulation, so that no claim of absolute simulation or nullity lies against a recorded deed. LA. CIV. CODE art. 2035. See In re Duplessis, Civ. Action No. 08-4937, 2009 U.S. Dist. LEXIS 86860 (E.D. La., May 28, 2009) at 10 & n.13. Here all transfers of the Real Estate Assets are recorded in the Orleans Parish property records.

A relative simulation is a claim that a true transfer of title was a donation or gift (perhaps in derogation of the rights of certain heirs) and not a purported sale. Arrowhead as a putative creditor has no claim for relative simulation because a gift made by authentic act is not a relative simulation (not "what the parties intended"). A creditor has a right only to claim that the signature on the gift is forged, not alleged in this case. These principles are discussed in the leading case of Ridgedell v. Succession of Kyrkendall, No. 98 CA 1224, (La 1 Cir., May 19, 1999), 740 So.2d 173, 179-82. Arrowhead has not alleged and cannot allege that any transfer of Real Property Assets was a relative simulation.

The transfer of these Assets to Debtor reflected the true intent of the parties as a matter of law because it reflects the intent of the Marital Settlement Agreement and Judgment of Legal Separation. "Both parties," Mr. and Mrs. Hoffman, "intended that the transaction be" exactly what it is, a transfer of Real Property Assets from Leeway, owned by Mrs. Hoffman, to Debtor, owned by Mrs. Hoffman in consideration of Mrs. Hoffman's transfer of her community property interest in the marital residence in Los Angeles. See Rao v. Rao, No. 2005-0059 (La 1 Cir., Nov. 4, 2005), 927 So.2d 356, 364, writ den. 2005-2453 (La., March 24, 2006), 925 So.2d 1232.

In sum and substance, Arrowhead's conclusory allegations of "simulation" seek cancellation of the transfers of the Real Property Assets in the Marital Settlement Agreement and Judgment of Legal Separation, transfers confirmed by authentic acts and entered into long before

the dispute between PLC and Arrowhead arose in 2008. Such a cancellation would be a blatant violation of Debtor's and Mrs. Hoffman's rights as well as those of the creditors who relied on these transfers. In particular, AMAG relied on that ownership in entering into the Loan Agreement and Note included as RJN No. 6 [¶13].

Debtor is constrained to note that even if somehow it were to revoke Mrs. Hoffman's rights and hand equitable ownership of Debtor to Mr. Hoffman, that act alone establishes nothing relevant to this proceeding. The Real Property Assets in issue (formerly owned by Leeway) are all in fact assets of the Debtor and available to satisfy claims. SAE or Mr. Hoffman did not whisk them away from this proceeding. Cancellation of the transfer of two Units from Leeway to Debtor does not make Mr. Hoffman a member or manager of Debtor but in fact takes assets out of the estate in this proceeding, to the arguable prejudice of AMAG.

Claims Against Peter Hoffman Are Not Claims Against Debtor. Arrowhead's Complaint further devolves to implications that SAE and SAFELA sometime prior to the end of 2016 made payments to or for the account of *Mr.* Hoffman and therefore those payments should be deemed payments to Debtor or *Mrs.* Hoffman, again with no specific allegations of any particular transfer or even whether any such transfers were entirely valid transfers for value given. But even if such transfers were specifically alleged (none are), such transfers would not be a sufficient allegation of a revocatory or voidable transaction with respect to either Debtor or Mrs. Hoffman.

The fact that Mr. Hoffman may have received a voidable or revocatory transfer from SAE or SAFELA (he didn't) is immaterial to Debtor or Mrs. Hoffman, absent allegations and proof of some transfer from Mr. Hoffman to either of Debtor or Mrs. Hoffman. There are no specific allegations of such transfers in Arrowhead's Complaint or the Arrowhead Complaint, just implications. A claim against Mr. Hoffman is not a claim against either Debtor or Mrs. Hoffman.

Claims related to improper subpoenas issued in the Seven Arts litigation are even further afield having no discernable relationship to this proceeding.

_Arrowhead's Alleged Claims Against PPL Are Immaterial To Debtor_.  Ranging still further afield, Arrowhead takes aim at Mr. Hoffman's current employer, Picture Pro LLC ("PPL"), as having received monies derived from distribution of films formerly owned by SAE, which Arrowhead believes should have been paid to SAE or SAFELA and then to Arrowhead.  Again, Arrowhead makes only implications and invective, not specific allegations of monies actually received by PPL or Mr. Hoffman from distribution of these films.

Even if such transfers were proven, Arrowhead would face yet another hurdle it cannot clear.  Arrowhead must prove it is actually entitled to levy on those sums, if collected by SAE, which could then be the basis for any claim against Mr. Hoffman or PPL.  Any such claims against monies received by PPL would in any event be entirely immaterial to the Debtor which did not receive any such funds. As Arrowhead is aware, and as shown in the RJN Ex. 3, SAE's senior secured creditor, an affiliate of AMAG, levied on all Seven Arts films pursuant to an Agreement dated August 28, 2014, after Mr. Hoffman's indictment for wire fraud.  Any claim to revenues from these titles belongs to that affiliate as owner of the films, not Arrowhead.

Arrowhead does not address these fundamental barriers to its claim in its Complaint.  As the Court has no doubt ascertained, counsel for Arrowhead and Mr. Hoffman have a contentious and hostile relationship and likely that will lead to more litigation, charges and countercharges. This decades-long dispute has nothing to do with the Debtor or Mrs. Hoffman, both of whom are incidental victims of counsel's jihad against Mr. Hoffman.  There is no basis in law for this Court to allow those disputes to be dragged into this proceeding based on nothing more than the allegations of the Complaint that are completely extraneous to these proceedings.

B.  <u>Arrowhead Has Not Alleged A Plausible Claim Based on Single Business Enterprise</u>.

Arrowhead's Single Business Enterprise theory as alleged in the Complaint is legally insufficient on its face, not only because prescribed and barred by both the limitation period and claim preclusion, as shown below, but equally insufficient because Arrowhead has not alleged and cannot allege the elements necessary to make any plausible SBE claim against Debtor.  Arrowhead really has no SBE claim but only attempts to treat Mr. and Mrs. Hoffman as interchangeable or one person, but they are not.  Each is a separate individual whose property interests were divided long ago.  There is no doctrine of SBE or alter ego among natural persons permitting the revocation or cancellation of a Judgment of Legal Separation and a Marital Settlement Agreement.

<u>Bar By Claim Preclusion And Prescription</u>.  Arrowhead's apparent attempt to hold Debtor liable on the Arrowhead Judgment under an SBE theory, even if properly alleged (it is not), is barred by claim preclusion and prescription.   Under Arrowhead's SBE theory, Debtor or its predecessors had some privy relationship with SAE and SAFELA, allowing Debtor to be added to the Arrowhead Judgment as if all were the same juridical person.  But if the Debtor and SAE are privies as Arrowhead alleges, then any claim now by Arrowhead against Debtor is barred by claim preclusion and the applicable prescriptive period.

Arrowhead seeks to treat Debtor as a privy of SAE, in substance using the Arrowhead Judgment as a sword. Arrowhead claims that Debtor is bound by the Arrowhead Judgment and is foreclosed from re-litigating the issues therein adjudicated. But if it is a privy, then Debtor is entitled to use the Arrowhead Judgment as a shield against liability. Arrowhead cannot have it both ways, claiming the *res judicata* benefit of the Arrowhead Judgment but seeking to escape the burden of *res judicata* arising from the Arrowhead Judgment.

As has long been Federal law regarding claim preclusion, any privy to a defendant is entitled to the benefits as well as the burdens of claim preclusion.  Russell v. SunAmerica Securities, Inc., 962 F.2d 1169, 1173-76 (5th Cir. 1992) ("Russell") following RESTATEMENT (SECOND) Judgments §41(1).[3]  The claims asserted by Arrowhead leading to the Arrowhead Judgment were  in existence since 2008, as were the relationships among Leeway, Mr. Hoffman and Mrs. Hoffman.  Arrowhead's claims could have and should have been asserted against all privies of PLC, SAE or SAFELA when Arrowhead first claimed against those companies or certainly long before the Arrowhead Judgment was entered on September 16, 2016.

The Arrowhead Judgment is final and on the merits. It therefore precludes all claims against all privies arising from the same nucleus of operative facts, as held in Russell. With full knowledge of the Real Properties Assets (as is clear from the Arrowhead Opposition) and the relationships among Debtor, Mrs. Hoffman and Mr. Hoffman, Arrowhead's claims (if any) against Debtor as a purported privy, based on either the Senior Subordinated Note or the Arrowhead Judgment, are now precluded by the finality of the Arrowhead Judgment.

Arrowhead apparently argues that its SBE theory trumps prescription of any claims against Debtor.  Here the underlying claim, on which the Arrowhead Judgment is based, arises from the Subordinated Senior Secured Note issued in December 2006.  All claims against any possible Louisiana defendant arising under that Note are long since barred.  Arrowhead offers no basis for its assumption that the prescription period for such claim is somehow tolled against Debtor, as a Louisiana person, nor is there any basis for such an argument if in fact Arrowhead so claims.  Even

---

[3] Russell was followed a few weeks ago in Butler v. Endeavor Air, Inc., 2020 U.S. App. LEXIS 6920 (5th Cir. March 4, 2020) at *5-9 and also recently applied per curiam in Alexander v. Hood, 714 Fed. Appx 435, 436 (5th Cir. 2017), both establishing the strong precedential force of Russell. Claim preclusion arising from the Arrowhead Judgment bars any claims against Mr. Hoffman as a privy as well.

if Arrowhead's claim were for some alleged "fraudulent" or "delictual" avoidance of the Arrowhead Judgment issued on September 16, 2016, that claim too is prescribed.[4]

SBE Doctrine As Developed In Louisiana.   SBE as a theory of liability under Louisiana law was formulated in Green v. Champion Ins. Co., 577 So. 2d 249, 257-58 (La. 1st Cir.) writ denied 580 So. 2d 668 (1991) ("Green") and a series of court of appeal cases following Green.   As the Fifth Circuit has observed, the Louisiana Supreme Court has never expressly approved this doctrine but noted it with apparent approval in a case in which the separate status of business entities was presumptively recognized.   Brown v. ANA Ins. Group, 994 So. 2d 1265, 1266 n.2, 1272 (La. 2008) ("Brown").   See Energy Coal S.P.A. v. Citgo Petroleum Corp., 836 F.3d 457, 460 (5th Cir. 2016) ("hodgepodge of cases" in the different Louisiana circuit courts of appeal).

Louisiana law emphasizes that holding one business entity liable for the debts of another is a "drastic remedy" to be used "in exceptional circumstances."   Riggins v. Dixie Shoring Co., 590 So. 2d 1164, 1168 (La. 1991).   As a result, the proponent claiming SBE has the burden to show the elements of SBE by "clear and convincing evidence."   Grayson v. R. B. Ammon & Assoc., 778 So. 2d 1, 18 (La. 1st Cir. 2000); Miller v. Entergy Servs. Inc., 913 So. 2d 143, 148 (La. 4th Cir. 2005) ("Miller').   When the elements of SBE are not clearly in favor of a finding of SBE then the balance "tips in favor of finding that the entities are not alter egos."   Jackson v. Tanfoglio Guiseppe, S.R.L., 615 F.3d 579, 588 (5th Cir. 2010).

Green, 577 So. 2d at 257, listed 18 elements to be evaluated in determining SBE, a list which was not intended to be exclusive.   Green stated that the inquiry is whether "one corporation

---

[4] Louisiana provides a 10-year prescriptive period for contract claims, LA. CIV. CODE §3492, and a 1-year prescriptive period for "delictual" claims LA. CIV. CODE Art. 3499, based on the nature of the claim asserted.   Roger v. Dufresne, 63 So. 2d 947, 948 (La. 1993).   Here either period prescribes new claims against a Louisiana resident based on the Senior Subordinated Note or "fraud" in obtaining assets from SAE or SAFELA.   See, e.g., reasoning in Tealwood Properties LLC v. Graves, No. 45,975 (La. 2 Cir., April 27, 2011), 64 So. 3d 397, 404-05; McClendon v. Security Ins. Co., 470 So. 2d 329, 331 (La. 4th Cir. 1985).

is wholly under the control of another" so that the "corporations represent exactly the same single

interest."  An SBE is found when the corporations or business entities are "managed by a dominant

or parent entity" and "functioned as a single economic activity."  Dominance and control are the

controlling factors in this inquiry.  See <u>Baker v. Raymond Int'l Inc.</u>, 656 F. 2d 173, 181 (5th Cir.

1981).

Among the elements listed by <u>Green</u> are:  1. "identity or substantial identity of ownership;"

2. "common officers and directors;" 3. "unified administrative control of corporations whose

business functions are similar or supplementary;" 5. "corporation funding another corporation;" 8.

"corporation paying salaries and expenses or losses of another corporation;" 10. "using property

of another corporation as its own;" 12. "common employees;" 17. "unclear allocation of profits

and losses."

The leading case in the Fourth Louisiana Circuit is <u>Lee v. Clinical Research Center of

Florida, L.C.</u>, No. 2004-CA-0428 (La 4 Cir., Nov. 17, 2004), 889 So. 2d 317, 325-27 ("<u>Lee</u>").

There the Court rejected a claim of SBE because one of the business entities did not own enough

stock to have a controlling interest in the other entity, citing <u>Green</u>, and because each entity paid

their own bills kept their own books and filed their own tax returns.   To the same effect, <u>Miller</u>,

913 So. 2d at 149.

As stated in <u>Wooley v. Lucksinger,</u> Nos. 2006-1140, 1145, 1158 and 1163 (La. 1 Cir., Feb.

13, 2009), 14 So.3d 311, 491-92, <u>rev'd other ground,</u> No. 2009-0571, 0584, 0585, 0586 (La., April

29, 2011), 61 So.3d 507, any ownership "less than the control which a parent corporation has over

a subsidiary. . . does not create a single business enterprise." Two similar managing officers and

one meeting was not enough to establish SBE in <u>Volentine v. Raeford Farms of La., LLC</u>, No. 50,698 (La 2 Cir., Aug. 15, 2016), 201 So.3d 325, 356.[5]

The Eastern District has dismissed several cases on the pleadings because the relevant allegations as a matter of law did not allege sufficient elements of SBE. In <u>Andretti Sports Mktg. La. v. Nola Motorsports Host Comm. Inc.</u>, 147 F. Supp. 3d 537, 557-61 (E.D. La 2015), the Court rejected allegations of SBE even with common ownership, not present here. See to the same effect, <u>Bona Fide Demolition & Recovery LLC v. Crosby Court Co. of La., Inc.</u>, 690 F. Supp. 2d 435, 443 (E.D. La. 2010) (lack of "actual working control").

The Eastern District has repeatedly dismissed weak SBE claims on the pleadings even when (unlike here) several <u>Green</u> elements are correctly alleged. See <u>NUSSI US LLC v. Nola Motorsports Host Comm., Inc.</u>, 2016 U.S. Dist. LEXIS 99625 (E.D. La. July 29, 2016) at *51-78 (dismissal on pleadings when only 7 of 18 <u>Green</u> elements present, stating no cases support the contention of the SBE proponent "that the alter ego doctrine may be applied to an individual or entity who . . . has never been a shareholder, member or officer of the company whose veil the plaintiff seeks to pierce"); <u>Whitener v. PLIVA, Inc.</u>, 2012 U.S. Dist. LEXIS 54287 (E.D. La. 2012) at *21-22 (dismissed based on pleadings). See also <u>Cole v. P.S. Fisheries</u>, 2019 U.S. Dist. LEXIS 157565 (E.D. La. Sept. 16, 2019) at *10-11 (inadequate evidence).

<u>Complaint's Allegations Of SBE And "Alter Ego" Are Insufficient To State A Plausible Claim</u>. Arrowhead's Complaint shows no awareness of the <u>Green</u> elements or the SBE doctrine as developed by Louisiana courts. Instead, Arrowhead's Complaint allegations [¶89 repeated ¶94] are legal conclusions that are insufficient as a matter of law. As discussed above and as held in

---

[5] See also of the many cases rejecting SBE <u>Smith v. La. Farm Bureau Cas. Ins. Co.</u>, Nos. 45,013, 45,014 (La 2 Cir., April 23, 2010) 35 So.3d 463, 472; <u>Town of Haynesville, Inc. v. Entergy Corp.</u>, No. 42,019 (La 2 Cir., May 2, 2007), 956 So. 2d 192, 197-98.

Lee and Miller, the critical Green elements are those showing identity of ownership and complete dominance and control by a parent company, all of which are refuted conclusively by RJN Exs. 1, 2 and 4. Indeed, this Court gave leave to Arrowhead to file a supplemental brief on the SBE issue but that brief [Dkt. 135] does not cite or discuss Green or any of the Green elements, instead improperly attempting to shore up its failing effort to avoid the Louisiana prescriptive period.

The Arrowhead Complaint does not specifically allege any dominance or control by Mr. Hoffman of Debtor or Mrs. Hoffman's Real Property Assets granted to her in the Marital Settlement Agreement and Donation. Anyone who knows Mrs. Hoffman will testify to how preposterous that claims would be even if alleged with specificity. Arrowhead's Complaint must stand and fall on its legally insufficient allegations that somehow Mr. Hoffman magically became the owner of 100%？ More than 50%？ Of Debtor when Leeway transferred some Real Property Assets (not 900 Royal) to Debtor in 2011, somehow nullifying Mrs. Hoffman's Marital Settlement Agreement and Judgment of Legal Separation in the process.  As discussed above such a claim is not only a legal conclusion but objectively frivolous.

The eighteen subdivisions of Arrowhead's operation allegations [¶89] are largely repetitive and are each addressed on Schedule A attached hereto in order. Debtor repeats its argument above that Arrowhead's various claims of use of SAE or SAFELA funds to pay expenses or share losses associated with the Real Property Assets are false conclusions with no specific allegations of particular payment of a particular expense in a particular time period. Since Arrowhead's Opposition [Exs. 5 and 6] admits that no payments of any kind were made by either SAE or SAFELA to anybody after December 2016, Arrowhead's claims must fail.

Arrowhead's conclusory allegations that somehow SAE's Los Angeles office administered Debtor's business are equally unspecific and irrelevant since SAE had no office after it ceased

business at the end of 2016. Arrowhead's claim that staff of SAE provided at some undersigned time and in some undesignated amounts uncompensated services is as vague and conclusory as is its claim of "undocumented" transfers of cash between Debtor and SAE (which never happened in any event).

Arrowhead alleges that Debtor has no books and records and files no tax returns. However, Arrowhead does not allege and cannot allege that any results of operations of Debtor or Mrs. Hoffman real estate business are included in the books or tax returns of SAE. Debtor as a single member LLC is not permitted to file Federal tax returns. Its results are separately reported on Schedule C filed as part of Mrs. Hoffman's joint return.

A copy of Mrs. Hoffman's 2018 federal return (redacted) and SAE's last filed return for 2018 (redacted) are included in RJN Ex. 5 and the same reporting will be found for all years since Debtor's formation in 2011. These returns show the separate books of Debtor and Mrs. Hoffman's real estate business also maintained on QuickBooks which were not included in the accounts or tax returns of SAE. Those QuickBooks statements for 2018 and 2019 were delivered to the U.S. Trustee in October of 2019 and are included also in Exhibit 5.

In summary, as a matter of law, Mr. Hoffman or SAE could not legally control or dominate Debtor or Mrs. Hoffman's real estate business at any time both because Mr. Hoffman and SAE had no ownership interest of any kind in either but also because any ownership and control is nullified by the Marital Settlement Agreement and Judgment of Legal Separation. Arrowhead's Complaint fails to adequately allege any of the key Green elements discussed above which establish Mr. Hoffman's ownership, dominance and control of Debtor and Mrs. Hoffman's Real Property Assets.

Nor is there any basis in equity to even seek to apply SBE, no specific allegation of any "wrong, fraud or crime" by SAE or SAFELA in diversion of assets, available to SAE to pay the Arrowhead Judgment, to costs, expenses or losses of Debtor or the Real Property Assets. Despite Arrowhead's implications, it has made no specific allegations of transfer of money or property from SAE or SAFELA to Debtor and certainly not within any prescription period. There is thus no "need to use these corporate piercing doctrines to achieve equity." Peoples State Bank v. GE Capital Corp., 482 F.3d 319, 335 (5th Cir. 2007). Fundamentally, Arrowhead fails to show that its position has been harmed by anything that Debtor has done or received (as opposed to Arrowhead's [baseless] claims against Mr. Hoffman).

Conclusion. Based on the foregoing, Debtor respectfully requests that Arrowhead's Complaint be dismissed for failure to state a claim on which relief can be granted. Since Arrowhead has had sufficient opportunity to state a plausible claim and as failed to do so, it is futile to give Arrowhead an opportunity to amend.

Dated: April 22, 2020

_____

**STILLMAN & ASSOCIATES**
**PHILIP H. STILLMAN (Cal.152861)**
**3015 N. Bay Rd. Ste B**
**Miami Beach, FL 33140**
**Tel: (888) 235-4279**
**pstillman@stillmanassociates.com**

and

*/s/ Leo D. Congeni*

_____

**CONGENI LAW FIRM, LLC**
LEO D. CONGENI (#25626)
650 Poydras Street, Suite 2750
New Orleans, LA  70130
Telephone: 504-522-4848
Facsimile:  504-910-3055
Email:  leo@congenilawfirm.com

*Counsel for Royal Alice Properties, LLC*