**SCHEDULE A: RESPONSES TO COMPLANT ¶89**

(i) "substantial identity of ownership among Debtor and Seven Arts Companies" because allegedly Peter Hoffman was "the only owner of '50% or more' of Leeway (as set forth in the Louisiana tax returns which Peter Hoffman caused to be prepared, signed and filed for Leeway . . . and upon Leeway's transfer of all of its assets without consideration to Debtor, Peter Hoffman succeeded to and has an ownership of at least '50% or more' of Debtor."

Response: These allegations are all false because as discussed in the text. Mr. Hoffman never owned any interest in Leeway (a corporation) as shown in RJN Ex. 4 and cannot magically have "ownership of least '50% or more' of Debtor (an LLC of which he is not a member). The Leeway transfer to Debtor of its interest in the Real Property Assets occurred in 2011 and of course the "consideration to Debtor" was the real property itself. If Arrowhead meant to claim that Leeway received no consideration, that too is obviously false since Debtor assumed Leeway's obligations on the then existing first mortgages on the Real Property Assets, later refinanced in the AMAG Secured Claim in this case for which Debtor is most certainly liable and of which this Court can take judicial notice as requested in RJN No. 7.

Mr. Hoffman was an officer of Leeway, but Arrowhead does not and cannot allege that he magically became a member or manager of Debtor, as he clearly did not. Arrowhead makes the conclusory allegation that Mr. Hoffman is a "principal" of Debtor but in fact he is not. He is not a member or managing member of Debtor nor engaged for any role other than to assist in this Reorganization as is established by RJN No. 7.

But even if these preposterous claims were true, there is no basis in law for the conclusory allegation that Mr. Hoffman "succeeded to and has an ownership interest" of any kind whatsoever in Debtor, when he in fact and in law does not, merely because Leeway assigned its interest in property to Debtor. As stated above, Mr. Hoffman waived all of his interests in Mrs.

Hoffman's property included the Real Property Assets in a Marital Settlement in July 2003 reduced to a final Judgment of Legal Separation. Mr. Hoffman is not a member or owner of Debtor and Arrowhead does not and cannot allege he is.

As a result, the allegations of the Complaint do not and cannot allege the two most important <u>Green</u> elements of "identity or substantial identity of ownership" and "common officers and director."

(ii) "Debtor never had any bank accounts."

<u>Response.</u> This is not a <u>Green</u> element nor should it be. The relevant <u>Green</u> elements are nos. 5, 8, 10 and 17 which relate to the use of Debtor's funds to pay expenses or share losses of SAE/SAFELA (not even suggested by the Complaint) or to the use of SAE/SAFELA funds to pay expenses or share losses of Debtor (suggested but no specific allegations). As discussed in Part A of the text, Arrowhead has made no specific allegations of specific transfers of funds from SAE or SAFELA to Debtor or Mrs. Hoffman or from Debtor or Mrs. Hoffman to SAE or SAFELA related to the Real Property Assets (none happened).

This non-<u>Green</u> element could be probative of whether Debtor is an alter ego of Mrs. Hoffman but not whether it is in an SBE with SAE/SAFELA. Of course, all costs and expenses of Debtor, as a single member LLC, were paid by Mrs. Hoffman from her bank account. Arrowhead does not allege and cannot allege that any expenses of Debtor were paid from an account of SAE or SAFELA (indeed the statements produced by Arrowhead itself show no such expenses).

(iii) "all purported rental remuneration or other funds for Debtor were commingled with funds in bank accounts of the Hoffman's and Seven Arts Companies."

<u>Response</u>. This is the sort of misleading conclusory allegations that pepper the Complaint. First, the Complaint does not and cannot allege that any rental income from the Real

Schedule A – page 2

Property Assets was ever deposited in any account other than Mrs. Hoffman's personal account. Arrowhead makes no specific allegation that any rental income from the Real Property Assets was even deposited in any account of SAE, SAFELA or Mr. Hoffman (statements for such accounts being in Arrowhead's possession) and of course this never happened. The only relevant <u>Green</u> elements are 5, 8, 10 and 17, i.e. the use of one entity's funds to pay expenses or share losses of another entity. As stated in the text, Arrowhead has not and cannot allege that any such expense or loss sharing occurred between SAE or SAFELA, on the one hand, or Debtor or Mrs. Hoffman, on the other.

(iv) "Debtor never had any books and records or its own, nor any financial statements, nor filed any tax returns."

<u>Response</u>. Debtor is a single member LLC and as such it is not permitted to file separate tax returns. Its financial statements are and were maintained as part of Mrs. Hoffman's real estate business separately and correctly reported on her Schedule C to her joint tax return with Mr. Hoffman (married but separated) for every year since Debtor was formed in 2011. RJN Ex. 5 (2018 redacted). Result from operations of the Real Property Assets were never included in any SAE tax returns. RJN Ex. 5 (2018 redacted). QuickBooks accounts for the Real Property Assets were maintained and delivered to the U.S. Trustee as the outset of this proceeding. RJN No. 5. This element is also not listed in <u>Green</u> and would be relevant (if at all) only to whether Mrs. Hoffman is an alter ego of Debtor, not whether Debtor is in an SBE with SAE/SAFELA, which had their own books of account and bank accounts which include no transactions regarding the Real Property Assets.

(v) "Debtor and likewise SAFELA and other Seven Arts Companies did not, comply [sic] with corporate formalities."

Response. As a single member LLC, Debtor has no "corporate formalities" to "comply with." Nor did SAFELA. SAE as a public company kept meticulous books and reports and complied with all corporate formalities. These are the sort of conclusory allegations that are manifestly insufficient to alleged SBE.

(vi) "Debtor relied on the credit and funding provided to it and for it and the [Real Property Assets] by and through the Seven Arts Companies."

Response. This allegation is entirely false as proven by the actual source of Debtor's "credit," the AMAG Secured Claim, attached as RJN No. 6. This conclusory allegation is another "back door" attempt to avoid a specific allegation of specific funds allegedly provided by SAE or SAFELA to Debtor or Mrs. Hoffman with respect to the Real Property Assets, as discussed in more detail in Part A above.

(vii) "Debtor never had any employees of its own, but rather Debtor and [the Real Property Assets] . . . have been under the common management and control, of Peter Hoffman [sic] Peter Hoffman using staff of, and paid for by, Seven Arts Companies."

Response. This conclusory allegation is also false and insufficient. As discussed above, Mr. Hoffman is not a member of or owner of Debtor. Arrowhead makes no specific allegations of any "management" of the Real Property Assets by or through any employee of SAE. In fact, Mrs. Hoffman was very much fully in control of the management or her Real Estate Property in New Orleans, while SAE was in the business of producing and distributing motion pictures in Los Angeles. Debtor does have contractors that perform all required services (gardening, repair, insurance etc.) in New Orleans including Mrs. Hoffman herself, none of whom are or were ever on SAE's or SAFELA's staff or under either or their control. Mrs. Hoffman is not now and has never been an employee of SAE or SAFELA. Arrowhead does not and cannot allege otherwise on any of these issues.

(viii) "centralized and unified administrative operation, management and control over Debtor and Seven Arts Companies has been provided from the common Los Angeles, California offices of and through the Seven Arts Companies."

<u>Response</u>. Arrowhead now repeats and purports to restate the insufficient allegations contained in (i) through (vii) above, a practice it continues through to the end of its repetitive 18 allegations, as if bulk makes up for substance. This particular conclusory allegation is a restatement of (vii) above and insufficient for the same reasons. The LA office of a film production company provided "centralized and unified" management of real property in New Orleans? To state the allegation as such is to show it is preposterous and insufficient.

(ix) "Seven Arts Companies have been addressees of billings and other documents, and conduits [sic] through which payment has been made" for expenses of the Real Property Assets.

<u>Response</u>. This false, conclusory allegation is a restatement of allegation (vi) above and repeats the same conclusory false formulation that SAE or SAFELA paid expenses or shared losses with Debtor regarding the Real Property Assets which simply did not happen. It appears that Arrowhead is referring to some insurance bills still in the name of Mr. Hoffman from years in the past, but this allegation is not a <u>Green</u> element nor should it be. Arrowhead again fails to allege with specificity some costs or expense of the Real Property Assets paid by SAE or SAFELA. Such payments just did not occur.

(x) "the books and records of and for Debtor and the [Real Property Assets] have been and are maintained through centralized accounting at and through the common Los Angeles, California offices of the Seven Arts Companies."

<u>Response</u>. This false conclusory allegation is a restatement of allegation (vii) above and insufficient for the reasons stated above.

(xi) "financial materials for Debtor have been and are prepared under the direction and control of Peter Hoffman . . . through and with records maintained using the bookkeeping, accounting secretarial and other staff of the Seven Arts Companies."

Response. This false conclusory allegation is a restatement of allegations (iv) and (vii) above and insufficient for the reasons stated above. This element is not listed as a Green element nor should it be. The fact that some unspecified "financial materials," relating to an unspecified period of time (a decade ago?), might have been reviewed by Mr. Hoffman is not probative of the element of SBE.

(xii) "insurance for the [Real Property Assets] has been arranged through and addressed to Los Angeles offices of Seven Arts Companies, and for many years that insurance has listed the named insureds as Peter Hoffman and Susan Hoffman individually . . ."

Response. This allegation is a restatement of allegations (vi) and (ix) above and insufficient for the reasons stated above. Whether or nor Mr. Hoffman was a named insured on insurance policies in years past and copies of policies sent to his offices in Los Angeles is not a Green element and has no probative value in determination of an SBE.

(xiii) "Debtor and Seven Arts Companies share the same counsel [Mr. Stillman]."

Response. This allegation is a restatement of allegations (vi) and (vii) above. The fact that Mr. Stillman was admitted co-counsel for Debtor in this proceeding and just last month began representation of Picture Pro LLC is not a Green element and has no probative value in determination of an SBE.

(xiv) "Debtor and Seven Arts Companies have been inadequately capitalized and so unable to pay their obligations . . ."

Response. This factor relates to capitalization at the time the obligations were incurred, and Arrowhead makes no specific allegations that SAE's predecessor PLC had

Schedule A – page 6

inadequate capitalization when it incurred the indebtedness to Arrowhead's predecessor. The fair market value of Debtor's Real Property Assets are in excess of all its known liabilities. This allegation is also not a <u>Green</u> element unless there are allegations of sharing of expenses or losses between Debtor and Mrs. Hoffman, on the one hand, and SAE/SAFELA, on the other hand. For reasons stated in Response to allegations (ii) and (iii) above.

(xv) "undocumented transfers of funds between Debtor and Seven Arts Companies, all under the direction, management, and control of their common manager."

<u>Response</u>. Arrowhead yet again makes false conclusory allegations of transfers of funds "between" Debtor and SAE/SAFELA without the specificity required, as discussed in Part A of the text and in response to allegations (ii) an (iii) above. Arrowhead cannot achieve through SBE what is denied to it under its legally insufficient "fraud" and revocatory transfer claims.

(xvi) "Debtor and Seven Arts Companies have used each other's addresses and share facilities . . ."

<u>Response</u>. This allegation is a repetition of allegations (vi) and (ix) above and insufficient for the reasons stated above. Arrowhead makes no specific allegations of how Debtor and SAE "shared facilities" only that at some time in the (distant) past, some mail related to the Real Property Assets may have been sent to Mr. Hoffman at his then office in Los Angeles. This allegation is not a <u>Green</u> element and has no probative value in determination of SBE.

(xvii) "Because services and funding for Debtor and its properties have been provided by Seven Arts Companies without charge to or proper record-keeping for Debtor and because Debtor has provided facilities for the address and use of [sic] but without charge to or proper record-keeping for Seven Arts companies, the allocation of profits and losses between Debtor and Seven Arts Companies is unclear."

<u>Response</u>. Apparently running out of steam, Arrowhead repeats yet again allegations (iv), (vi), (vii) and (vii) and insufficient for the reasons stated above. If there was even a paradigm of a conclusory insufficient allegation, this allegation would qualify. When were these "facilities for the address as use" provided? What exactly was provided other than an address? Was this the only address? What staff of SAE at what time performed any function for Mrs. Hoffman's personal business? This Court has no sufficient allegations of any loss to SAE or SAFELA by reason of this alleged value given to Debtor (it wasn't). Should Debtor be responsible for the entire Arrowhead Judgment as a result of these conclusory allegations? No, of course not.

(xviii) "Transfers of proceeds required to be held 'in trust for and as the sole and exclusive property of' Arrowhead have instead been disbursed by Seven Arts Companies for and with respect to the [Real Property Assets]. . . ."

<u>Response</u>. Arrowhead finishes with yet another repackaging of the same conclusory allegations of (ii), (iii) (iv), (vi), (vii) and (viii). Arrowhead has made no specific claims of how any monies whether or not held "in trust" for Arrowhead (they were not) were used for the benefit of the Real Property Assets, none of the "what, where, when, why and how" that is required for such inflammatory allegations. This allegation fails for the same reason as all the others.