# EXHIBIT 6(A) TO REQUEST FOR JUDICIAL NOTICE

# ADVERSARY PROCEEDING 20-01022

## LOAN AGREEMENT

THIS LOAN AGREEMENT ("**Agreement**") is entered into as of this 31st day of July 2013 ("**Effective Date**"), by and among AMAG, INC., a California corporation and Finance Lender ("**Lender**"), located at 233 Wilshire Blvd, Suite 200, Santa Monica, California 90401, and SUSAN H. HOFFMAN, an individual, and ROYAL ALICE PROPERTIES, LLC, a Louisiana limited liability company, jointly and severally, ("**Borrowers**"), both located and domiciled at 900 Royal Street, New Orleans, Louisiana 70116.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.  LOAN: Lender has acquired the outstanding balance of loans owed by Susan H. Hoffman and Peter Hoffman to Whitney Bank, the successor-in-interest to Hancock Bank of Louisiana, and Lender has been induced by Borrowers to (i) amend the terms of such existing loans and (ii) to make additional loans to Borrower all as described hereunder, in an aggregate amount not to exceed the principal amount of $3,166,000.00 (the "**Loan**") to Borrowers, with such additional lending to be exclusively for the following purposes: (i) providing funds for Susan H. Hoffman to purchase 36,625 shares of Series A Convertible Exchangeable Preferred Stock of Seven Arts Entertainment, Inc. ("**Stock Purchase**"), and all other costs, expenses and fees required pursuant to this Agreement (collectively the "**Initial Advance**"). Lender has also agreed to provide additional advances, subject to the conditions set forth in this Agreement, to allow the Borrowers to obtain the removal of all liens, encumbrances, notices of lis pendens, judgments, orders and adverse filings, if any, currently being pursued by Jonesfilm against the property owned by Borrowers in the state of Louisiana and to provide funds to pay attorney fees, cost and other expenses to pursue certain litigation currently pending in England ("**Content Litigation**"), which additional advances are referred to in this Agreement as "**Additional Advances**". Borrowers warrant and represent that the Loan will be used exclusively for business and commercial purposes and is not being used for personal or household purposes.

    b.  This (i) Agreement, (ii) the Secured Promissory Note of even date herewith (the "**Note**"), (iii) the Mortgages being transferred pursuant to the Sale and Transfer of Note and Security Therefor Without Recourse by Whitney Bank, as successor-in-interest to Hancock Bank of Louisiana, to Lender, in the form attached to this Agreement as Exhibit A and incorporated by this reference, (the "**Mortgages**"), (iv) a Continuing Personal Guaranty from Peter M. Hoffman ("**Guaranty**") and (v) all other documents and agreements executed by Borrowers in connection with the Loan, all of which may hereinafter be referred to collectively as the "**Loan Documents.**"

2.  CONDITIONS OF FUNDING:

    Lender's obligation to make each and every advance of the Loan shall be subject to the occurrence of each of the following conditions:

    a.  Receipt by Lender of all original Loan Documents properly executed by each of the parties thereto in a form acceptable to Lender, including, but not limited to the following: (i) this Agreement, (ii) the Note, (iii) the Guaranty, (iv) the Stock Purchase Agreement in a form

LOAN AGREEMENT - Page 1

07616.0143.5938699.3

acceptable to the seller for the Stock Purchase, (v) the deposit of the fully executed Sale and Transfer of Note and Security Therefor Without Recourse between Whitney Bank, as successor-in-interest to Hancock Bank of Louisiana and Lender, and (vi) any other fully executed documents reasonably required to effectuate the terms of this Agreement in Lenders sole discretion;

    b.    Lender and Borrower have agreed the proceeds of the Loan shall only be used in accordance with the "**Loan Proceeds Schedule,**" attached to this Agreement as Exhibit B, and incorporated by this reference;

    c.    The issuance of certificates of insurance naming Lender as a "Loss Payee" and "Named Insured," in forms that are satisfactory to Lender; and

    d.    There has been no "**Event of Default**" as described below.

3.    REPAYMENT:

All amounts owed by Borrower pursuant to the Note and this Agreement are repayable on or before the Maturity Date as that term is defined in the Note ("**Maturity Date**").

    a.    Without limiting Lender's right to receive payment on the Maturity Date, Lender shall have the unconditional and irrevocable right to demand full or partial repayment upon the occurrence of any of the following events ("**Events of Default**"):

        i.    Borrowers fail to make any payment required pursuant to the Note;

        ii.    Borrowers sell, assign, convey, encumber, hypothecate, or otherwise transfer or alienate any of the real property encumbered by the Mortgages without the express written permission of Lender, which Lender may withhold in its sole discretion;

        iii.    Borrowers are unable to pay their debts within the meaning of the applicable bankruptcy laws or either of them files (or is subject to an involuntary filing) any sort of petition for bankruptcy relief;

        iv.    Borrowers suspends payments of its debts or commences negotiations for the readjustment or rescheduling of its debts;

        v.    Borrowers or Guarantor breaches any agreement, or fails to fulfill any obligation, contained in this Agreement, the Note, any other Loan Document; or

        vi.    Borrowers have given Lender false or misleading information or have failed to disclose material facts that might be relevant to Lender.

    b.    Upon the occurrence of any Event of Default, the following consequences shall occur:

      i. Lender may terminate making any further advances under this Agreement;

      ii. Lender may immediately commence enforcement of the Loan, including by foreclosing on the Mortgages and Lender may exercise all of the rights and remedies of a secured creditor under applicable law;

      iii. The Loan shall bear interest at the default rate of 18% per annum in accordance with the Note;

      iv. Lender shall be entitled to the appointment of a receiver to take immediate possession of the real property encumbered by the Mortgages; and

      v. Lender shall have the right to apply any amounts in reserve against the Loan.

4. INTEREST, LOAN FEE AND PROPERTY INSPECTION EXPENSES:

    a. As compensation to Lender for extending the Loan, Lender will be entitled to interest on the outstanding principal balance of the Loan that has been advanced by Lender and remains unpaid in accordance with the Note.

    b. At the time of closing, Borrowers shall pay to Lender a loan initiation fee ("**Loan Fee**") in the amount of $15,830.00, which is equal to one-half percent of the maximum potential principal amount being loaned of $3,166,000.00 pursuant to this Agreement, the Note and the other Loan Documents.

    c. At the time of closing, Borrowers shall reimburse Lender for all Property Inspection Expenses incurred by Lender related to the Loan.

5. ADDITIONAL ADVANCES:

    a. It is currently anticipated that the Borrowers will receive the Additional Advances described in this Agreement. Interest on the Additional Advances shall not begin to accrue until those amounts have been actually advanced.

    b. Because the lien claims being asserted by Jonesfilm may ultimately be determined to be valid encumbrances against the property owned by Borrowers and encumbered by the Mortgages to Lender's detriment, Lender shall have the right, in its sole discretion, to advance the funds necessary to remove those encumbrances, which advance shall be an Additional Advance under the terms of this Agreement. Before making such an advance, Lender shall consult with Borrowers about the reasons why Lender has concluded that the payment of those encumbrances is appropriate. Notwithstanding that requirement, the Lender shall have the right, its sole discretion, to make the determination that such Additional Advances will be made to remove the encumbrances.

    c. It is also anticipated that Borrowers may request additional advances pursuant to this Agreement to remove the Jonesfilm encumbrances. In the event that Borrowers request that such advances be made pursuant to this Agreement, Borrowers shall submit a written request to

Lender setting forth in detail how those advances will be used and shall provide Lender with a copy of each and every agreement with Jonesfilm or its successors and assigns regarding those encumbrances. However, Lender shall have no obligation to advance the requested funds if it determines, in Lender's sole discretion, that the requested Additional Advances should not be made.

(d)  As an additional inducement to cause Lender to make this Loan to Borrowers, Borrowers agree that a portion of the Additional Advances will be used to pay attorney fees, costs and other expenses to pursue the Content Litigation currently pending in England ("**Content Litigation Expenses**"), in which Lender has a part interest. Any amounts advanced to pay for the Content Litigation Expenses shall be conditional upon the approval of Lender and shall not exceed the lesser of (i) $250,000.00 or (ii) the difference between the maximum principal loan amount of $3,166,000.00 less the total of the Initial Advance and the other advances or principal made pursuant to the terms of this Agreement.

6. SECURITY INTEREST:

a. To secure the Obligation and all other amounts that may become owed to Lender pursuant to this Agreement, Lender shall receive the Mortgages and all other loan and collateral documents assigned to Lender from Whitney Bank to secure repayment the Obligation. The property in which the Lender shall receive a security interest to secure performance of the Obligation shall be collectively referred to herein as the "**Collateral.**" The Collateral shall be released upon payment in full of all amounts of the Obligations.

b. Until the Obligation is fully and finally repaid, Borrower shall not sell, assign, convey, encumber, hypothecate or otherwise transfer or alienate any of the Collateral, nor suffer, permit or authorize any person to file or record any Mortgage, or other public record purporting to create, perfect or give notice of any right, title, claim or interest of any such person in and to any of the Collateral. This agreement by Borrowers is fundamental to Lender's agreement to extend the Loan.

c. Except as Lender may otherwise agree in writing, Borrowers warrant that Lender shall be in a first priority position on all Collateral.

7. THIRD PARTY GUARANTY: In an Event of a Default, and without waiving any other rights or remedies, Lender shall have the right to repayment of the Obligation pursuant to Guaranty, which provides in part for repayment of all amounts owed pursuant to the Loan Documents.

8. ATTORNEY FEES AND ADDITIONAL COSTS: On the Effective Date, and as a draw against the Loan, Borrowers agree that Lender will draw against the Loan the actual amount of Lender's attorney fees for the preparation of all of the Loan Documents, and all costs (including legal costs) relating to the filing any Loan Documents. Borrowers shall pay all reasonable attorney fees and costs incurred by Lender in connection with any collection efforts by Lender including, without limitation, legal fees and costs. Borrowers agree to pay all wire transfer charges including, without limitation, wire transfer charges incurred by Lender in making the Loan and wire transfer charges incurred by Borrower in repaying the Obligation. Lender shall

have no obligation, liability or responsibility to any broker, finder and/or person claiming any sort of right or interest in receiving remuneration in connection with this transaction.

9. BENEFIT OF AGREEMENT:

 a. Lender may assign or transfer all or any part of its rights and benefits under this Agreement without the consent of Borrower.

 b. Borrowers may not assign any part of its rights and benefits under this Agreement without the prior written consent of Lender, which consent shall be in the sole and absolute discretion of Lender.

10. NOTICE: All notices which either party is required or may desire to give the other under the Agreement shall be in writing and shall be given either by personal delivery, telecopy (toll prepaid) or by registered or certified mail (postage prepaid) to the appropriate party as discussed in this paragraph. All notices to Borrowers shall be made to the attention of Susan H. Hoffman, 900 Royal Street, New Orleans, Louisiana, 70616. All notices to Lender shall be made to: AMAG, Inc., 233 Wilshire Blvd., Suite 200, Santa Monica, California, 90401, Attn: Steven C. Markoff, with copies the attention of John F. Kurtz, Jr., Hawley Troxell Ennis & Hawley LLP, 877 Main Street, Suite 1000, Boise, Idaho 83702, Fax No. (208) 954-5232, or such other addresses as requested by Lender in writing.

11. APPLICABLE LAW AND SEVERABILITY: This Agreement shall in all respects be governed by and construed in accordance with the laws of Louisiana applicable to agreements executed and to be wholly performed within Louisiana. Nothing contained herein shall be construed so as to require the commission of any act contrary to law, and whenever there is any conflict between any provision contained herein and any present or future statute, law, ordinance or regulation contrary to which the parties have no legal right to contract, the latter shall prevail and the provision of this document which is affected shall be curtailed and limited only to the extent necessary to bring it within the requirements of law.

12. VENUE AND JURISDICTION: Borrowers hereby agree (i) that any litigation, action or proceeding arising out of or relating to this Agreement may only be instituted in Orleans Parish, Louisiana, (ii) that Borrowers waive all objections which it might have now or hereafter have with regard to the venue of any such tribunal, (iii) that Borrowers irrevocably and unconditionally submits to the jurisdiction and venue of any such court, and (iv) that Borrowers hereby waive any claim or defense of inconvenient forum. **THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHT TO TRIAL BY JURY OF ANY CAUSE OF ACTION WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATED TO OR CONNECTED WITH THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT NOW OR HEREAFTER ENTERED INTO BETWEEN THE PARTIES UNDER CONTRACT, TORT OR ANY OTHER LEGAL THEORY.**

13. AUTHORIZATION: Susan H. Hoffman and Royal Alice Properties, LLC each represent and warrant that Susan H. Hoffman is the sole member of Royal Alice Properties, LLC and the authorized representative of Royal Alice Properties, LLC and that she has all requisite authority to bind Royal Alice Properties, LLC, and that Royal Alice Properties, LLC is in good

standing in Louisiana and in any other jurisdiction in which it is required to be qualified; that Susan H. Hoffman and Royal Alice Properties, LLC each have the power and authority to own their properties and to transact the business in which it is engaged in all places at which they engage in business; that they have each taken all actions required to be taken in connection herewith; and that upon execution of this Agreement by them, this Agreement will constitute a legal, valid and binding obligation of them and will be enforceable against them as set forth herein.

14. PROTECTION OF COLLATERAL:  So long as Borrowers owes Lender any amount pursuant to this Agreement, Borrowers shall not enter into any agreement relating to the Collateral without first obtaining the express written permission of Lender.

15. POWER OF ATTORNEY:  Borrowers hereby irrevocably appoints Lender as their true and lawful attorney-in-fact with full and irrevocable power of attorney on behalf of Borrowers, to execute any and all documents (including the endorsement of checks), or to take any actions reasonably necessary in Lenders good-faith sole discretion to enforce any of the provisions of this Agreement or any of the other Loan Documents, including its rights to the Collateral.

16. RIGHT TO INSPECT:  Borrower shall maintain complete and accurate books and records relating to the Collateral, and Lender shall have the unlimited right to inspect and copy such books and records, including access to all computer hardware or software necessary to inspect any books and records kept on computers. Lender shall also have the right to inspect any of the Collateral at any time. Upon request of Lender, Borrower shall furnish Lender with any information as Lender may request from time to time.

17. MISCELLANEOUS:  This Agreement with the Loan Documents embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof; and no failure to exercise, and no delay in exercising any right, power or remedy hereunder or under any agreement referred to herein shall impair any right, power or remedy which Lender may have, nor shall any such delay be construed to be a waiver of any of such rights, powers or remedies or an acquiescence in any breach or default under this Agreement or any agreement referred to herein nor shall any waiver of any breach or default of Borrowers hereunder be deemed a waiver of any default or breach subsequently occurring. The rights and remedies herein specified are cumulative and not exclusive of any rights or remedies which Lender would otherwise have, at law or in equity.

IN WITNESS WHEREOF the parties have executed this Agreement as of the date set forth above.

"BORROWERS"

Royal Alice Properties, LLC                    Susan H. Hoffman, an individual

By: *Susan H Hoffman*                          *Susan H Hoffman*
Name: Susan H. Hoffman
Title: Managing Member


"LENDER"

AMAG, INC.

By: *[signature]*
Name: Robert Freck
Title: Controller

# EXHIBIT 6(B) TO REQUEST FOR JUDICIAL NOTICE

# ADVERSARY PROCEEDING 20-01022

## SECURED PROMISSORY NOTE

$ 3,166,000.00 – Principal Amount                                      July 31, 2013

FOR VALUE RECEIVED, **SUSAN H. HOFFMAN**, an individual, and **ROYAL ALICE PROPERTIES, LLC**, a Louisiana limited liability company, jointly and severally, (each of which is hereinafter referred to as "**Maker**"), hereby promises to pay to **AMAG, INC.**, a California corporation, or to its order ("**Payee**"), at such place as Payee may designate, the principal sum of Three Million One Hundred Sixty-Six Thousand Dollars ($3,166,000.00), or the principal amount then outstanding of advances that Payee makes hereunder to Maker, whichever amount is less, plus interest on the principal sum and all unpaid balances and all other amounts owed by Maker to Payee at the interest rate set forth below, payment of principal and interest to be made in lawful money of the United States, as follows:

       (a)     Interest on the outstanding principal balance of this Note, shall be calculated at the rate of ten percent (10%) per annum of the outstanding principal amount loaned, during the first two year period commencing from the date of this Secured Promissory Note ("**Note**"), with interest increasing thereafter to twelve percent (12%) per annum. Interest shall be due and payable to Payee monthly on the 1st day of each calendar month, with the first payment due on September 1, 2013 and thereafter on the 1st day of the next calendar month. Said interest will be calculated based on a 365-day year, for the exact number of days, said principal is outstanding under this Note. The aforesaid interest rate is subject to increase as set forth below. Payee may send Maker notice of interest due under this Note, provided that the failure to send such notice or any inaccuracy therein shall not affect the obligation of Maker under this Note.

       (b)     So long as no event of default occurs as a result of which Payee declares this Note immediately due and payable, including but not limited to an Event of Default as defined under the Loan Agreement (defined below) or any of the Loan Documents, all amounts of unpaid accrued interest and unpaid principal shall be due and payable in full on the earlier of thirty-six (36) months from the date of this Note ("**Maturity Date**").

       (c)     This Note may be prepaid in whole or in part at any time without penalty.

       (d)     Payment will be applied first to accrued but unpaid interest then due, and then to principal. The receipt of any check or other item of payment by Payee, at its option, shall not be considered a payment on account until such check or other item of payment is honored when presented for payment at the drawee bank.

       (e)     Maker shall pay all amounts due under this Note to: AMAG, Inc., 233 Wilshire Boulevard, Suite 200, Santa Monica, California 90401, or such other office as may be designated by Payee from time to time.

       (f)     All amounts owed by Maker pursuant to this Note shall be collectively referred to herein as the "**Obligation**" of Maker.

SECURED PROMISSORY NOTE - 1 of 4

07816.0143.5938678.4

In addition, the following provisions shall govern this Note:

1. **LOAN AGREEMENT AND LOAN DOCUMENTS:** This Note is made and delivered to Payee pursuant to and is subject to all terms and conditions set forth in the Loan Agreement entered into by Maker, and Payee as of the date of this Note (the "**Loan Agreement**"). This Note is secured by certain collateral, as evidenced by the Loan Documents, as that term is in the Loan Agreement, covering the real and personal property described therein. Capitalized terms used in this Note and not otherwise defined herein shall have the meanings set forth in the Loan Agreement.

2. **LINE OF CREDIT:** This Note evidences a non-revolving line of credit under the terms of which the principal amount available to be advanced by Payee under this Note shall be reduced by the amount of each advance and shall not be increased as a result of payments or prepayments which reduce the unpaid principal balance. All advances hereunder shall be subject to that certain Loan Agreement dated July 31, 2013, between Maker and Payee, the terms and conditions of which, as the same may be amended from time to time, are incorporated herein by reference and are a part of the terms and conditions of this Note.

3. **DEFAULT, CROSS-DEFAULT AND ACCELERATION:** Time is of the essence. If Maker fails to make any payment of principal, interest or any other amount on the date the same is due and payable under this Note, the Loan Agreement, any of the Loan Documents, or any other agreement between Maker and Payee, or Maker or any other party fails to meet or perform any other obligation under any term or condition of this Note, the Loan Agreement, any of the Loan Documents, or any other agreement between Maker and Payee, or an Event of Default occurs under the Loan Agreement or any of the Loan Documents, then this Note shall be in default. Upon default, Payee shall provide written notice to Maker specifying the nature of the default and directing that it be remedied within thirty (30) days (except that for a monetary default, the cure period shall be five (5) days. Upon default, the interest rate provided for in this Note shall immediately increase to eighteen percent (18%) per annum ("**Default Rate**"), unless and until cured by Maker, and upon Maker's failure to cure any default, the entire unpaid amount of this Note shall be immediately due and payable without further notice or demand from Payee. Until cured, interest shall accrue daily after default with accrued interest being added to principal at the end of each calendar month and thereafter compounded to calculate interest on the amounts owed pursuant to this Note, and Maker shall thereafter be liable for all costs of collection, including reasonable attorneys' fees and the costs, in addition to the payment of principal, interest and any other amount.

4. **COSTS, FEES AND COMPENSATION:** Maker further promises to pay all amounts owed under this Note, the Loan Agreement and the other Loan Documents and shall pay all such amounts as specified therein.

5. **WAIVER:** Maker and all endorsers, guarantors and all persons liable or to become liable on this Note, waive presentment, demand; notice of dishonor; notice of default or delinquency; notice of acceleration; notice of nonpayment; notice of costs, expenses or losses

SECURED PROMISSORY NOTE - 2 of 4

07616.0143.6938678.4

and interest thereon; and any and all other notices or matters of a like nature, other than notices required pursuant to this Note, the Loan Agreement or the Loan Documents.

6. SUCCESSOR AND ASSIGNS: The terms of this Note shall apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, personal representatives, successors and assigns.

7. CUMULATIVE REMEDIES: Upon the occurrence of any default under this Note, the Loan Agreement, or any of the Loan Documents, Payee shall have all rights specified therein and as provided under relevant law. No remedy or election hereunder shall be deemed exclusive but shall wherever possible, be cumulative with all other remedies at law or equity.

8. GUARANTY: This Note and all obligations thereunder are guaranteed by Peter Hoffman (the "**Guarantor**") pursuant to his Continuing Personal Guaranty, entered into in association with this Note by and between Payee and Guarantor.

9. VENUE AND JURISDICTION: Maker hereby agrees: (a) that any litigation, action or proceeding arising out of or relating to this Note may be instituted in any state or federal court located in the Parish of Orleans, in the State of Louisiana; (b) that it waives all objections which it might now or hereafter have with regard to the venue of any such tribunal; (c) that it irrevocably and unconditionally submits to the jurisdiction and venue of any such court; and (d) that it hereby waives any claim or defense of inconvenient forum.

10. AUTHORIZATION: Susan H. Hoffman and Royal Alice Properties, LLC each represent and warrant that Susan H. Hoffman is the sole member of Royal Alice Properties, LLC and the authorized representative of Royal Alice Properties, LLC and that she has all requisite authority to bind Royal Alice Properties, LLC, and that Royal Alice Properties, LLC is in good standing in Louisiana and in any other jurisdiction in which it is required to be qualified; that Susan H. Hoffman and Royal Alice Properties, LLC each have the power and authority to own their properties and to transact the business in which it is engaged in all places at which it engages in business; that they have each taken all actions required to be taken in connection herewith; and that upon execution of this Note by the them, this Note will constitute a legal, valid and binding obligation of them and will be enforceable against them as set forth herein.

11. ATTORNEY FEES AND COSTS OF COLLECTION: Maker shall pay Payee all reasonable expenses, attorney fees and costs incurred by Payee to enforce the terms of this Note, the Loan Agreement and/or any of the Loan Documents, including, without limitation, all reasonable expenses, attorney fees and costs on appeal.

12. PRIOR NOTES: This is a renewal of the promissory note from Susan H. Hoffman and Peter Hoffman dated April 3, 2007 in the original principal amount of $2,200,000.00 and the promissory note from Susan Hoffman and Peter Hoffman dated April 26, 2012 in the original principal amount of $648,863.19, as assigned to Lender on July 31, 2013. This Note constitutes an extension, but not a novation, of the amount of the unpaid and continuing indebtedness, and all rights held by Payee under the earlier notes shall continue in full force and effect.

SECURED PROMISSORY NOTE - 3 of 4

07616.0143.5938678.4

13. MISCELLANEOUS PROVISIONS:

(a) No delay or omission on the part of Payee in exercising any rights hereunder or under the terms of any security agreement or any document given to secure this Note, or any guaranty made to guarantee payment of this Note, shall operate as a waiver of such rights or of any other right hereunder or under said agreements.

(b) The invalidity or unenforceability of any provision hereof, of this Note, the Loan Agreement or any of the Loan Documents, or of any other instrument, agreement or document now or hereafter executed in connection with the loan made pursuant thereto shall not impair or vitiate any other provision of any of such instruments, agreements and documents, all of which provisions shall be enforceable to the fullest extent now or hereafter permitted by law.

(c) This Note, the Loan Agreement and the Loan Documents may only be amended, terminated, extended or otherwise modified by a writing signed by the party against which enforcement is sought. In no event shall any oral agreements, promises, actions, inactions, knowledge, course of conduct, course of dealing, or the like be effective to amend, terminate, extend or otherwise modify any of same.

(d) This Note and the rights and remedies provided for herein may be enforced by Payee or any subsequent holder hereof. Wherever the context permits, each reference to the term "holder" herein shall mean and refer to Payee or the then subsequent holder of this Note.

(e) Maker agrees that the holder of this Note may, without notice to Maker and without affecting the liability of Maker, accept security for this Note and any additional or substitute security, if any, or release any security or any party liable for this Note, including any guarantor, or extend or renew this Note.

IN WITNESS WHEREOF, the parties have executed and delivered this Note as of the date first set forth above.

MAKER:

SUSAN H. HOFFMAN, an individual

*/s/ Susan H. Hoffman*

MAKER:

ROYAL ALICE PROPERTIES, LLC,
a Louisiana limited liability company

By: */s/ Susan H. Hoffman*
Name: Susan H. Hoffman
Title: Managing Member

SECURED PROMISSORY NOTE - 4 of 4

07616.0143.5938678.4