# EXHIBIT 7(A) TO REQUEST FOR JUDICIAL NOTICE

## ADVERSARY PROCEEDING 20-01022



FILED

# United States of America
# State of Louisiana

## Tom Schedler
### SECRETARY OF STATE

*As Secretary of State of the State of Louisiana I do hereby Certify that*

the attached document(s) of

**ROYAL ALICE PROPERTIES, LLC**

are true and correct and are filed in the Louisiana Secretary of State's Office.

| | | | |
|---|---|---|---|
| 40671291K | ORIGF | 11/21/2011 | 7 page(s) |
| 41700094 | 14 AR | 11/19/2014 | 1 page(s) |

In testimony whereof, I have hereunto set my hand and caused the Seal of my Office to be affixed at the City of Baton Rouge on,

September 8, 2015

*Secretary of State*

WEB 40671291K

Certificate ID: 10634473#RKH62
To validate this certificate, visit the following web site, go to **Business Services, Search for Louisiana Business Filings, Validate a Certificate,** then follow the instructions displayed.
**www.sos.la.gov**

Page 1 of 1 on 9/8/2015 1:10:49 PM

**EXHIBIT**

## ARTICLES OF ORGANIZATION

### OF

### ROYAL ALICE PROPERTIES, LLC

The undersigned, a competent person of the full age of majority, availing himself of the provisions of the Limited Liability Company Law of the State of Louisiana, Louisiana Revised ("R") Statutes ("S") 12:1301 *et seq.*, does hereby organize a limited liability company in pursuance of said law, with the following Articles of Organization, to-wit:

### ARTICLE I

### NAME

The name of this limited liability company shall be:

### Royal Alice Properties, LLC

(hereinafter sometime referred to as the "Company").

### ARTICLE II

### OBJECT AND PURPOSE

The object and purpose of this Company is to engage in any lawful activity for which limited liability companies may be formed under the laws of the State of Louisiana.

1

*296*

NOV. 21. 2011  4:07PM    IMON PERAGINE SMITH                    NO. 0309  P. 4/9

### ARTICLE III

#### MANAGEMENT

The members of this limited liability company may elect an individual to serve as manager(s) of this Company.

A statement providing for the number and type of manager(s) for this Company is contained in its written operating agreement. This Company shall be managed by said manager(s) to the extent provided in said operating agreement.

### ARTICLE IV

#### LIMITATIONS OF AUTHORITY TO BIND

A statement of limitations on the authority of members to bind this Company is contained in the written operating agreement for this Company.

### ARTICLE V

#### AUTHORITY TO CERTIFY CERTAIN MATTERS

Guy W. Smith is hereby authorized to certify on behalf of this Company the following: (i) Membership of any member; (ii) authenticity of any records of this Company; and (iii) the authority of any person to act on behalf of this Company, including, but not limited to, the authority to take the actions referred to in R.S. 12:1318(B).

2

*297*

## ARTICLE VI

### DURATION

The existence of this Company shall commence on the date that the Secretary of State of Louisiana issues a certificate of organization for the Company and shall continue in existence until December 31, 2099, unless dissolved earlier pursuant to the terms of the written operating agreement of this Company.

## ARTICLE VII

### LIMITATIONS OF LIABILITY

The members and manager(s) of this Company claim the benefits of limitation of liability set forth in the provisions of R.S. 12:1314 and 12:1315, to the fullest extent allowed by law, as fully and completely as though said provisions were recited herein in full.

Thus done and signed this 21st day of November, 2011.

Guy W. Smith
Organizer

N:\DATA\M\2325601B\Royal Alice Properties, LLC\Articles of Organization.wpd

3

298

NOV. 21. 2011 4:08PM IMON PERAGINE SMITH NO. 0309 P. 8/9

## ACKNOWLEDGMENT

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, duly commissioned and qualified within and for the State and Parish aforesaid, personally appeared Guy W. Smith, to me known to be the identical person who executed the foregoing Articles of Organization of Royal Alice Properties, LLC, as Organizer, and who, having been duly sworn, deposed to me, Notary, in the presence of the two undersigned witnesses, that he executed such instrument as his free act and deed for the purposes and benefits therein expressed.

IN WITNESS WHEREOF, the appearer, witnesses and I, Notary, have hereunto affixed our signatures on this 21st day of November, 2011, in the aforesaid Parish and State.

WITNESSES:

_Beth M. Cable_
**BETH M. CABLE**

_Guy W. Smith_
Guy W. Smith
Organizer

_Marilyn S. Baroni_
**MARILYN S. BARONI**

_John F. Shreves_
Notary Public

N:\DATA\02335601\R\Royal Alice Properties, LLC\Acknowledgement.wpd JOHN F. SHREVES
Notary Public, State of Louisiana
La. Bar Roll No. 17189
My Commission is issued For Life.

299

NOV. 21. 2011  4:08PM    IMON PERAGINE SMITH                NO. 0309   P. 6/9

**INITIAL REPORT**                                        **STATE OF LOUISIANA**

**OF**

**ROYAL ALICE PROPERTIES, LLC**                           **PARISH OF ORLEANS**

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in and for the Parish and State aforesaid, personally appeared GUY W. SMITH, known to me as the organizer of ROYAL ALICE PROPERTIES, LLC (the "Company"), a Louisiana limited liability company, on November 21, 2011, submits herewith the initial report of said Company, as prescribed by R.S. 12:1305E of the Limited Liability Company Law of the State of Louisiana, as follows:

1.   The location and municipal address of the Company's registered office is:

    1100 Poydras Street, Suite 3000
    New Orleans, Louisiana 70163

2.   The full name and municipal address of the Company's registered agent is:

    Guy W. Smith
    1100 Poydras Street, Suite 3000
    New Orleans, Louisiana 70163

3.   The name and municipal address of the Company's first manager is:

    Guy W. Smith
    1100 Poydras Street, Suite 3000
    New Orleans, Louisiana 70163

*300*

NOV. 21. 2011 4:08PM    IMON PERAGINE SMITH                    NO. 0309   P. 7/9

IN WITNESS WHEREOF, the appearer, witnesses and I, Notary, have hereunto affixed our

signatures on this 21st day of November, 2011, in the aforesaid Parish and State.

WITNESSES:

_Beth M. Cable_

**BETH M. CABLE**

_Guy W. Smith_

Guy W. Smith
Organizer

_Marilyn S. Baroni_

**MARILYN S. BARONI**

_John F. Shreves_

Notary Public

**JOHN F. SHREVES**
Notary Public, State of Louisiana
La. Bar Roll No. 17130
My Commission is Issued For Life.

301

NOV. 21. 2011  4:08PM    JMON PERAGINE SMITH                    NO. 0309   P. 9/9

## AFFIDAVIT OF ACCEPTANCE OF APPOINTMENT
## BY DESIGNATED REGISTERED AGENT

To the Louisiana Secretary of State

State of Louisiana

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, a Notary Public, duly commissioned and qualified in and for the State and Parish aforesaid, appeared GUY W. SMITH, who, being duly sworn, acknowledged to me that he does hereby accept appointment as the Registered Agent of Royal Alice Properties, LLC, which is a limited liability company, authorized to transact business in the State of Louisiana, pursuant to the provisions of the Louisiana Limited Liability Company Law in Title 12, Chapter 22.

Guy W. Smith
Registered Agent

Sworn to and Subscribed before
me on the 21st day of November, 2011.

Notary Public
JOHN F. SHREVES
Notary Public, State of Louisiana
N:\DATA\0654000\0301.GWSLLC\Double B Recorded La. Bar Roll No. 17139
My Commission is Issued For Life.

302

# EXHIBIT 7(B) TO REQUEST FOR JUDICIAL NOTICE

# ADVERSARY PROCEEDING 20-01022

## ROYAL ALICE PROPERTIES LLC
## LIMITED LIABILITY COMPANY OPERATING AGREEMENT

This Limited Liability Company Operating Agreement (this "Agreement") is entered into as of this 22nd day of November 2011, by SUSAN HOFFMAN ("Managing Member") and ROYAL ALICE PROPERTIES LLC a Louisiana limited liability company (the "Company").

### PRELIMINARY STATEMENT

The Managing Member and the Individual Members (collectively the "Members") have agreed to organize and operate a limited liability company pursuant to the provisions of the laws of the State of Louisiana and in accordance with the terms and subject to the conditions set forth in this Agreement.  In consideration of the covenants and the promises made herein, the parties hereto hereby agree as follows:

### ARTICLE 1
### DEFINED TERMS

Certain of the terms used in this Agreement are defined in Article 13.  In order to fully understand the effects of this Agreement, reference must be made to such definitions.

### ARTICLE 2
### FORMATION OF COMPANY

2.1    Formation of Company.  The Managing Member has directed that Guy W. Smith, Esq. prepare, execute and file on its behalf the Articles of Organization of the Company with the Louisiana Secretary of State and such actions are hereby ratified and approved.  This Agreement constitutes the operating agreement for the management of the affairs and conduct of the business of the Company. This Agreement, along with the Articles of Organization of the Company, shall constitute the principal organizational documents of the Company.

2.2    Name.  The name of the Company is "Royal Alice Properties LLC." The business of the Company shall be conducted under such name or such other or additional names as the Member may deem necessary or desirable. The Managing Member shall cause such name to be registered under assumed or fictitious name statutes or similar laws of the states in which the Company operates, if required. The phrase "LLC" shall always appear as part of the name of the Company on all correspondence, stationery,

1

checks, invoices and any and all documents and papers executed by the Company, and as otherwise required by the Statute.

2.3   Principal Office.  The Company shall maintain its principal place of business at 1100 Poydras St., Suite 3000, New Orleans, LA 70163 or any other location within or without the State of Louisiana which the Member selects.

2.4   Registered Agent.  The name and address of the Company's registered agent for service of process are as follows: Guy Smith. 1100 Poydras St., Suite 3000, New Orleans, LA 70163.  The designation of such agent may be changed at any time in accordance with the provisions of the Statute.

2.5   Term.  The term of the Company shall commence on the date of the filing of the Articles of Organization with the Secretary of State of the State of Louisiana and shall continue until terminated by the Member, unless the Company is dissolved sooner in accordance with the provisions of this Agreement or the Statute.

2.6   Business and Purpose of the Company.  The business of the Company is to engage in any activity for which a limited liability company may be organized in the State of Louisiana.  The Company shall possess and may exercise all of the powers and privileges granted by the Statute or by this Agreement, together with any powers incidental thereto, so far as such powers and privileges are necessary or convenient to the conduct, promotion or attainment of the business purposes or activities of the Company.

### ARTICLE 3
### MEMBER AND CAPITAL CONTRIBUTIONS

3.1   Member.  The Managing Member shall be Susan Hoffman who replaces Guy W. Smith. Mrs. Hoffman's address for purposes of this Agreement is 900 Royal St. New Orleans, LA 70116.

3.2   Initial Capital Contribution.  The Managing Member shall own 1 Membership Unit for an initial capital contribution of $1,000. There are no other Members of the Company.

3.2   No Further Obligation to Contribute Capital.  No Member shall be required to contribute any additional capital to the Company.

3.4   Capital and Capital Accounts

A.   The capital of the Company shall be the aggregate amount of the Capital Contributions of the Members as set forth herein.  Except as specifically set forth herein, no Member shall have any right to make voluntary Capital Contributions to the Company. This Agreement may be amended from time to time to reflect the withdrawal or admission

2

of Members, any changes in the Interest held by a Member arising from the transfer of an Interest to or by such Member and any change in the amounts to be contributed or agreed to be contributed by any Member.

      B.    An individual Capital Account shall be established and maintained for each Member, including any additional or substituted Member who shall hereafter receive an interest in the Company.  The Capital Account of each Member shall be maintained in accordance with the following provisions:

          (i)    To each Member's Capital Account there shall be credited such Member's Capital Contributions, such Member's share of income as determined for Federal Income Tax Purposes ("Income") and any items in the nature of income or gain that are specially allocated-as set forth herein.

          (ii)    To each Member's Capital Account there shall be debited the amount of cash distributed to such Member pursuant to any provision of this Agreement, such Member's distributive share of losses as determined for Federal Income Tax Purposes ("Losses"), and any items in the nature of expenses or losses that are specially allocated as set forth herein.

      C.    The original Capital Account established for any substituted Member shall be in the same amount as, and shall replace, the adjusted Capital Account of the Member which such substituted Member succeeds, and, for the purposes of the Agreement, such substituted Member shall be deemed to have made the Capital Contribution, to the extent actually paid in, of the Member which such substituted Member succeeds.  To the extent a substituted Member received less than 100% of the Interest of a Member, his Capital Account and Capital Contribution of the Member who retains a partial interest in the Company shall continue, and not be replaced, in proportion to the Interest he retains.

      D.    The foregoing provisions and the other provisions of this Agreement relating to the maintenance of the Capital Accounts are intended to comply with the Allocation Regulations and shall be interpreted and applied in a manner consistent with such Allocation Regulations.  In the event that the Managing Member shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto, are computed in order to comply with the Allocation Regulations, the Managing Member may make such modification, with the advice of the certified public accountant retained by the Company and as approved by the Members.  The Managing Member shall adjust the amounts debited or credited to Capital Accounts with respect to (i) any property contributed to the Company or distributed to the Members, and (ii) any liabilities that are secured by such contributed or distributed property that are assumed by the Company or the Members, with the advice of the certified public accountant retained by the Company and as approved by the Members.

      E.    <u>Withdrawal of Capital</u>

Except as may be specifically provided for in this Agreement, (i) no Member shall have the right to withdraw from the Company all or any part of its Capital Contribution, (ii) no Member shall have any right to any Distribution or to demand and receive property of the Company in return for its Capital Contribution or with respect to its Interest, and (iii) no Members shall be entitled to demand a redemption or repurchase of its Interest. Any return of Capital Contributions to the Members pursuant to this Agreement shall be solely from Company assets, and the Managing Member shall not be personally liable for any such return.

3.5     Additional Members

A.     The Managing Member may admit new Members, and Additional Members as provided in Paragraph 5.6A. below.

B.     Any incoming Member shall, by its execution of this Agreement and, as a condition of receiving its Interest in the Company, agree to be bound by their admission documents and to this Agreement to the same extent the other Members.

C.     Upon the admission of any Additional Members, there shall be an amendment to this Agreement which shall reflect the names, addresses and Capital Contributions of such Additional Member, and shall set forth the agreement of such Additional Members to be bound by all the provisions of this Agreement.

## ARTICLE 4
## ALLOCATIONS OF NET PROFITS AND NET LOSSES
## AND DISTRIBUTIONS

4.1     Profits and Losses.  Profits and losses of the Company ("Profits" or "Losses") for each Fiscal Year shall be equal to the Company's taxable income or loss as determined under the Code and Regulations applicable to each Fiscal Year, "Code and Regulations" and other related defined terms shall have the meaning set forth in Article 13.

4.2     Allocation of Profits and Losses.  Except as set forth in Section 5.6A below relating to Additional Members, Profits and Losses shall be allocated among the Members in the same manner as Distributions pursuant to Section 4.3 below.

4.3     Distributions.  Except as set forth in Section 5.6A below, all Operating Cash defined herein as all monies received by the Company from whatever source as a result of the Company's operations, available for distribution at the end of each Fiscal Year shall be distributed to Managing Member.

4.4     Liquidation

4

A.    Upon the liquidation and dissolution of the Company, unless the business of the Company is continued pursuant to the provisions hereof, the Managing Member shall liquidate the assets of the Company and cause the business of the Company to be wound up in accordance with the Statute and cause the Articles to be cancelled in accordance with the provisions hereof.

B.    Subject to the provisions of Section 4.4C below, any Capital Proceeds from a terminating capital transaction remaining after payment of, or adequate provision for, the debts and obligations of the Company shall be distributed to those Members with positive Capital Account balances (after taking into account all Capital Account adjustments for the Company taxable year) in proportion to their positive Capital Account balances until such Capital Accounts have been reduced to zero.

C.    Except to the extent of its share of minimum gain or non-recourse debt minimum gain (which creates a deemed "Deficit Restoration Obligation" under the applicable provisions of the Code and the Allocation Regulations), if any, no Member shall have a Deficit Restoration Obligation nor shall any Member otherwise be required to restore any deficit balance in its Capital Account at any time. If any Member has a deficit balance in its Capital Account (after giving effect to all contributions, distributions and allocations for all taxable years, including the taxable year in which any liquidation of the Company or of such Member's interest in the Company occurs), such Member shall have no obligation to make any contribution to the capital of the Company with respect to such deficit, and such deficit shall not be considered to be a debt owed to the Company or to any other Person for any purpose whatsoever.

4.5.    Special Allocation Provisions. Notwithstanding anything to the contrary contained herein:

A.    In the event that any Member unexpectedly receives any adjustments, allocations or distributions described in Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6) of the Allocation Regulations, items of Company income and gain shall be specially allocated to each such Member in an amount and manner sufficient to eliminate, to the extent required by the Allocation Regulations, the adjusted capital account deficit of such Member as quickly as possible.  This Section is intended to constitute a "qualified income offset" provision within the meaning of the Allocation Regulations and shall be interpreted consistently therewith.

B.    In no event shall any Member be allocated Losses which would cause it to have an adjusted capital account deficit as of the end of any Company Fiscal Year.  Any Losses which are not allocated to a Member by reason of the application of the provisions of this Section shall be allocated to the other Members (to the extent otherwise permitted under the terms of this Section).  In the event that any Member has an adjusted capital account deficit at the end of any Company Fiscal Year, items of Company income and gain shall be specially allocated to each such Member in the amount of such adjusted capital deficit as quickly as possible.

5

C.    To the extent that interest on loans (or other advances which are deemed to be loans) made by any Member to the Company is determined to be deductible by the Company in excess of the amount of interest actually paid by the Company, such additional interest deduction(s) shall be allocated solely to such Member.

D.    If there is a net decrease in "Partnership Minimum Gain" for a Company Fiscal Year, the Members shall be allocated items of Company income and gain in accordance with the provisions of Section 1.704-2(f) of the Allocation Regulations.  If for any Fiscal Year the application of the minimum gain charge back provisions herein provided would cause a distortion in the economic arrangement among the Members and it is not expected that the Company will have sufficient other income to correct that distortion, the Managing Member may request a waiver from the Commissioner of the IRS of the application in whole or in part of any provisions hereof in accordance with Section 1.704-2(f)(4) of the Allocation Regulations.  Furthermore, if additional exceptions to the minimum gain charge back requirements of the Allocation Regulations have been provided through revenue rulings or other IRS pronouncements, the Managing Member is authorized to cause the Company to take advantage of such exceptions if to do so would be in the best interest of a majority of the Members.

E.    Any cancellation of debt income realized by the Company shall be allocated to the Members in the same proportions as the debt which was discharged was included in each Member's tax basis in accordance with the applicable provisions of the Allocation Regulations.

F.    Except as otherwise specifically provided in this Agreement, all items of Company income, gain, loss, deduction and other items not specifically provided for shall be allocated to and among the Members in the same manner as Profits and Losses are allocated pursuant to the provisions of this Section.

ARTICLE 5
MANAGEMENT

5.1.    Restrictions on Authority

The Managing Member shall not have any authority to do any of the following acts without the consent of all Members:

(i)    to confess a judgment against the Company in an amount in excess of $25,000; or

(ii)    to possess Company assets, or assign rights in specific Company assets, for other than a Company purpose; or

6

(iii)    to knowingly perform any act that would subject any Member to personal liability in any jurisdiction beyond the amount of its investment in the Company; or

(iv)    to cause the Company voluntarily to take any action that would cause a Bankruptcy of the Company; or

(v)    to replace, renew, cancel or materially amend this Operating Agreement; or

(vi)    to elect to dissolve the Company to the detriment of all Members.

### 5.2.  Compensation

The Managing Member shall not receive any compensation for its services as Managing Member.

### 5.3  Rights and Duties of Managing Member.

A.    The Managing Member shall have the exclusive right to manage the business of the Company and to be the Manager of the Company and, except as otherwise specifically provided herein, shall have all of the rights and powers granted to managers pursuant to the provisions of the Statute. No Member (except one who may also be a Managing Member, and then only in its capacity as a Managing member) shall (i) have any authority or right to act for or bind the Company, or (ii) except as set forth herein or as set forth by law, participate in or have any control over the Company business. The Members hereby consent to the exercise by the Managing Member of the powers conferred on it by this Agreement. Any action required or permitted to be taken by a corporate or other non-individual Managing Member hereunder may be taken by such of its proper officers or agents as it may validly designate for such purpose.

B.    The Managing Member is hereby authorized to execute and deliver in the name and on behalf of the Company all such documents and papers (including any required by any governmental authority) as such Managing Member deems to be necessary or desirable in carrying out such duties hereunder. Seven Arts Pictures Inc. is hereby designated as the initial Managing Member. In the event that it shall become unable to serve in such capacity or shall cease to be a Member, the remaining Members (if any) may, subject to any requisite approvals, from time to time designate from among themselves by consent, one or more substitute or additional Managing Members. If for any reason no designation is in effect, the powers of the Managing Member shall be exercised by the majority consent of any remaining Members. Any action required or permitted to be taken by a corporate or other non-individual Managing Member hereunder may be taken by such of its proper officers or agents as it shall validly designate for such purpose.

7

C.    Except as otherwise expressly provided in this Agreement or the Statute, neither the Members, nor their members, shareholders, directors, officers, employees, partners, agents, family members or affiliates, shall be prohibited or restricted from investing in or conducting, either directly or indirectly, businesses of any nature whatsoever, including the ownership and operation of businesses similar to or in the same geographical area as those held by the Company, except as otherwise provided in separate agreements; and any investment in or conduct of any such businesses by any such person or entity shall not give rise to any claim for an accounting by any Member or the Company or any right to claim any interest therein or the profits therefrom.

D.    The Managing Member shall use its best efforts to carry out the purposes, business and objectives of the Company, and shall devote to Company business such time and effort as shall be reasonably required, in its sole discretion, for the Company's welfare and success, including, without limitation, such of its time as may be necessary to (i) complete the Picture, (ii) prepare or cause to be prepared all reports of operations which are to be furnished to the Members or which are required to be furnished pursuant to the terms of the Operating Agreement or by any taxing bodies or any other governmental authorities, (iii) cause the Picture to be insured against risks covered by such insurance in the manner specified in the Operating Agreement, (iv) obtain and keep in force during the term of the Company all customary and usual business interruption, worker's compensation (if applicable) and public liability insurance for the benefit of the Company and its Members in amounts which satisfy the requirements specified in this Operating Agreement, (v) enforce all material contracts entered into for the benefit of the Company, and (vi) do all other things which may be necessary to manage the affairs and business of the Company. In addition, the Managing member shall promptly provide all Members or its representative with copies of such insurance policies upon request from time to time. The Managing Member shall review regularly all of the Company and Picture's insurance coverage, to ensure that it is adequate and consistent with industry custom and practice.

E.    The Managing Member shall take all actions which may be reasonably necessary or appropriate (i) for the continuation of the Company's valid existence as a limited liability company under the laws of the State of Louisiana and of each other jurisdiction in which such existence is necessary to protect the limited liability of the Members or to enable the Company to conduct the business in which it is engaged, and (ii) for the accomplishment of the Company's purposes, including the acquisition, development, preservation, use and operation of Company assets in accordance with the provisions of this Agreement and any applicable laws.

5.5.    Liability of Managing Member to Members

Except as otherwise specifically provided in this Agreement, neither the Managing Member nor any Affiliate thereof shall otherwise be liable, responsible or accountable for damages or otherwise to any Member for any act performed within the scope of the authority conferred by this Agreement, except for acts of gross negligence or intentional misconduct or for damages arising from any material misrepresentation or breach of any

8

covenant or warranty set forth herein.  In any instance in which the Managing Member or any Affiliate thereof is in doubt as to the propriety of any proposed action or omission under the terms of this Agreement, the Managing Member or such Affiliate may, but shall not be under any duty to, seek the ratification of such action or omission by the consent of a majority of Members; if such consent of a majority of Members is obtained thereto, the Managing Member or such Affiliate shall be fully protected in relying thereon, and actions or omissions in reliance thereon shall not be deemed to be a breach of any provisions of this Agreement.

## ARTICLE 6
## CERTAIN OPERATIONAL MATTERS

6.1    Title to Company Property.  All real and personal property acquired by the Company shall be acquired and held by the Company in the Company's name.

6.2    Company Expenses.  The Company shall pay directly, or reimburse the Members, as the case may be, for all of the reasonable costs and expenses of the Company's operations and the organizational expenses of the Company.

## ARTICLE 7
## BOOKS AND RECORDS

7.1.    Books and Reporting

A.    The Managing Member shall maintain or cause to be maintained for the term of the Company a complete and accurate set of books and supporting documentation of transactions with respect to the conduct of the Company's business. The books of the Company shall be kept on the accrual basis and shall at all times be maintained at the principal office of the Company.  Each Member and its duly authorized representatives shall have the right to examine the books of the Company and all other records and information concerning the production of the Projects from time to time without prior notice during regular business hours provided that such examination shall not unreasonably disrupt or interfere with the Company's business or operations.

B.    The books of the Company shall be reviewed in accordance with generally accepted accounting principles, consistently applied annually as of the end of each Fiscal Year of the Company by the Managing Member.  The Managing Member shall determine and prepare a balance sheet as of the end of each Fiscal Year.

C.    The Managing Member shall report the income and expenses of Company on her individual Federal and state tax returns so long as Company is required to do so pursuant to the rules and regulations of the Internal Revenue Service and otherwise shall

9

cause Federal and state returns to be prepared for Company based on the books and records of the Company.

### 7.2.  Bank Accounts

The bank accounts of the Company shall be maintained in such banking institutions authorized to do business in Louisiana and withdrawals shall be made on such signature or signatures as the Managing Member shall determine. The Company's funds shall not be commingled with the funds of any other Person and shall not be used except for the business of the Company. All deposits (including deposits and other funds required to be placed in escrow and other funds not needed in the operation of the Company's business) shall be deposited, to the extent permitted under the Operating Documents, in interest-bearing accounts or invested in obligations of or guaranteed by the United States, any state thereof, or any agency, municipality or other political subdivision of any of the foregoing, commercial paper (investment grade), certificates of deposit and time deposits in commercial banks with capital in excess of $50,000,000 and in mutual (money market) funds  investing in any or all of the foregoing.

### 7.3.  Tax Elections

Subject to the provisions of Section 7.4 hereof, all elections required or permitted to be made by the Company under the Code shall be made by the Managing Member in such manner as it determines to be most advantageous to all members. The Managing Member may consult with the Accountants in making such determination.

### 7.4.  Special Adjustments

A.    In the event of a Transfer of all or any part of the Interest of any Member, the Company shall elect, if required to do so by any Member, pursuant to Section 754 of the Code (or corresponding provisions of succeeding law) to adjust the basis of Company assets. Any adjustments made pursuant to Section 754 shall affect only the successor in interest to the transferring Member. Each Member will furnish the Company with all information necessary to give effect to such election.

B.    If, as a result of any adjustment made by the IRS and/or the Department of Revenue and accepted by the Company, any item shall be capitalized, then the depreciation or cost recovery for the amount so capitalized shall be appropriately allocated, as determined by the Accountants, to those Members affected by the adjustment.

### 7.5.  Fiscal Year

The Fiscal Year of the Company shall be the calendar year, or such other year as may be required by the Code.

## ARTICLE 8
## NO PERSONAL LIABILITY

8.1    No Personal Liability.  No Member, by virtue of his or its status as a
Member, shall be bound by or be personally liable for any judgment, decree or order of
a court against the Company, or for the debts, obligations, liabilities or contracts of the
Company.  No Member shall be liable, responsible, or accountable, in damages or
otherwise, to the Company for any act performed by him with respect to Company
matters, except for fraud or as otherwise provided herein.

## ARTICLE 9
## ASSIGNMENT OF MEMBERSHIP INTERESTS

9.1    Assignment.  Any Transfer of an interest in the Company by the Member
shall be by a written instrument of assignment, the terms of which are not in
contravention of any of the provisions of this Agreement, and which has been duly
executed by the Member. Concurrently with any such transfer, the Managing Member
will cause this Agreement to be amended to reflect the change in the ownership of the
Company.

9.2.    Restrictions on Transfer

A.    No Transfer of any Interest may be made except in compliance with the
Regulations. The Managing Member may require as a condition of any Transfer of such
Interest that the transferor furnish an opinion of counsel reasonably satisfactory to the
Managing Member that the proposed transfer will comply with applicable federal and state
securities law.

B.    If the Member is an entity (limited liability company or corporation) then any
transfer of interest in the Member entity is subject to the restrictions of this provision.

C.    Any Transfer in contravention of any of the provisions of this Section 10
shall be void and ineffective and shall not bind or be recognized by the Company.

## ARTICLE 10
## GENERAL PROVISIONS

10.1.  Notice.  Except as otherwise specifically provided herein, all notices,
demands or other communications hereunder shall be in writing and shall be deemed to
have been given when the same are (i) deposited in the United States mail and sent by
certified or registered mail, postage prepaid, (ii) delivered to a nationally recognized
overnight delivery service, (iii) sent by telecopier or other facsimile transmission,
answerback requested, or (iv) delivered personally, in each case, to the parties at the

addresses set forth below or at such other addresses as such parties may designate by notice to the Company:

(a)     If to the Company or Managing Member, at the principal office of the Company set forth in Section 2.

(b)     If to a Member, at its address as provided to Company.

10.2.   Binding Provisions

The covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the heirs, legal representatives, successors and assignees of the respective parties hereto, except in each case as expressly provided to the contrary in this Agreement.

10.3.   Applicable Law

This Agreement shall be construed and enforced in accordance with the internal laws of the State of Louisiana.

10.4.   Counterparts

This Agreement may be executed in several counterparts and all so executed shall constitute one agreement binding on all parties hereto, notwithstanding that all the parties have not signed the original or the same counterpart.

10.5.   Paragraph Titles

Paragraph titles and any table of contents herein are for descriptive purposes only and shall not control or alter the meaning of this Agreement as set forth in the text.

10.6.   Separability of Provisions; Rights and Remedies

A.      Each provision of this Agreement shall be considered separable and (a) if for any reason any provisions or provisions herein are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid, or (b) if for any reason any provision or provisions herein would cause the Members to be bound by the obligations of the Company under the laws of the State as the same may now or hereafter exist, such provision or provisions shall be deemed void and of no effect.

B.      Each of the parties hereto irrevocably waives during the term of the Company (including any periods during which the business of the Company is required to be continued under Section 10) any right that such party may have to maintain any action for partition with respect to the property of the Company.

12

C.      Unless otherwise specifically provided herein, the rights and remedies of any of the parties hereunder shall not be mutually exclusive, and the exercise of one or more of the provisions hereof shall not preclude the exercise of any other provisions hereof.  Each of the parties confirms that damages at law may be an inadequate remedy for breach or threat of breach of any provisions hereof.  The respective rights and obligations hereunder shall be enforceable by specific performance, injunction, or other equitable remedy, but nothing herein contained is intended to limit or affect any rights at law or by statute or otherwise of any party aggrieved as against the other parties for a breach or threat of breach of any provision hereof, it being the intention by this paragraph to make clear that under this Agreement the respective rights and obligations of the Members shall be enforceable in equity as well as at law or otherwise.

D.      To the extent permitted by law, each Member hereby irrevocably:

(i)     consents to any suit, action, or proceeding with respect to this Agreement being brought in any court of competent jurisdiction located in the State of Louisiana;

(ii)    waives any objection that it may have now or hereafter to the venue of any such suit, action or proceeding in any such court and any claim that any of the foregoing have been brought in any inconvenient forum;

(iii)   (a) acknowledges the competence of any such court, (b) submits to the jurisdiction of any such court in any such suit, action or proceeding, and (c) agrees that the final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon it and may be enforced in any court to the jurisdiction of which it is or may be subject by a suit upon such judgment, a certified copy of which shall be conclusive evidence of its liability;

(iv)    waives all claims of error by reason of any service effected in accordance with the provisions of subparagraph (iv) above and agrees that such service shall in every respect effect service upon it in any suit, action or proceeding and shall be taken and held to be valid personal service upon or personal delivery to it, to the fullest extent permitted by law.

10.7.   Effective Date of Admission

The original Members shall be deemed to have been admitted as of the effective date of this Operating Agreement, for all purposes of this Agreement, including the allocation of Profits and Losses under the relevant terms hereof.  New Members shall be deemed to have been admitted as of the effective date of their admission documents.

13

### 10.8. Amendment Procedure

This Agreement may be amended by the Managing Member, except as provided herein.

### 10.9. Consent of Members: Meetings

A.    Each Member, by signing this Agreement, has signified its consent to the specific consent provisions set forth herein.  However, whenever the Statute requires a higher percentage of consent than those specified in this Agreement, and if the consent evidenced by the signing of this Agreement is insufficient under the Statute to satisfy such requirement, such higher percentage of consent shall be obtained.

B.    Meetings of the Members shall not be required.  A meeting of the Members may be called at any time by the Managing Member or by those Members holding at least a majority of the percentage interests of the Members.  Meetings of Members shall be held at the Company's principal place of business or at any other place in Louisiana, designated by the Person calling the meeting.  Not less than (10) or more than ninety (90) days before each meeting, the Person calling the meeting shall give written notice of the meeting to each Member entitled to vote at the meeting.  The notice shall state the time, place, and purpose of the meeting.  Notwithstanding the foregoing provisions, each Member who is entitled to notice waives notice if before or after the meeting the Member signs a waiver of the notice which is filed with the records of Member's meetings or is present at the meeting in person or by proxy.  Unless this Agreement provides otherwise, at a meeting of Members, the presence in person or by proxy of Members holding not less than a majority of the outstanding units of the Members shall constitute a quorum.  A Member may vote either in person or by written proxy signed by the Member or by the Member's duly authorized attorney-in-fact.

C.    Except as otherwise provided in this Agreement, the affirmative vote of Members holding at least a majority of the outstanding units of the Members shall be required to approve any matter coming before the Members.

D.    In lieu of holding a meeting, the Members may vote or otherwise take action by a written instrument indicating the consent of Members holding all of the outstanding units of the Members.

### ARTICLE 11
### TERMINATION AND DISSOLUTION

11.1    Dissolution.  The Company shall be dissolved only upon the occurrence of any of the following events: (i) upon the retirement, resignation, or other withdrawal of the

14

Managing Member, as a Member herein; (ii) upon the decree of a court of competent jurisdiction ordering dissolution and winding up, subject to no further appeal; or (iii) upon the written decision of the Managing Member.

11.2    Conduct of Business.  Upon the dissolution of the Company, the Company shall cease to carry on its business, except insofar as may be necessary for the winding up of its business, but the Company's separate existence shall continue until a Certificate of Cancellation has been filed with the Secretary of State of the State of Louisiana or until a decree dissolving the Company has been entered by a court of competent jurisdiction.

11.3    Certificate of Cancellation.  When all debts, liabilities and obligations have been paid and discharged or adequate provisions have been made therefor and all of the remaining property and assets have been distributed to the Member, the Company shall promptly file a Certificate of Cancellation with the Secretary of State of the State of Louisiana.  If there is no remaining Member, then the Certificate may be filed by the legal or personal representatives of the Member.

ARTICLE 12
INDEMNIFICATION OF THE MEMBER
AND HIS AFFILIATES

12.1    Indemnification of the Member and His Affiliates.  The Company shall indemnify and hold harmless, to the fullest extent permitted by the Statute and all other applicable laws, each Member and his Affiliates and such Affiliates' respective officers, directors, employees, agents and principals (individually, an "Indemnitee") from and against any and all losses, claims, demands, costs, damages, liabilities, expenses of any nature (including reasonable attorneys' fees and current disbursements thereof), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, whether civil, criminal, administrative or investigative, in which the Indemnitee was involved or may be involved, or threatened to be involved, as a party or otherwise, arising out of or incidental to the business of the Company, regardless of whether the Indemnitee continues to be a Member or an Affiliate thereof, or an officer, director, employee, agent or principal of a Member at the time any such liability or expense is paid or incurred; provided, however, that the same was not the result of fraud, willful misconduct or gross negligence on the part of the Member or his principals or Affiliates.

12.2    Expenses.  Expenses incurred by an Indemnitee in defending any claim, demand, action, suit or proceeding subject to Section 12.1 shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Indemnitee to repay such amount if it shall be determined that such Person is not entitled to be indemnified as authorized in Section 12.1

15

12.3 <u>Indemnification Rights Non-Exclusive</u>. The indemnification provided by Section 12.1 shall be in addition to any other rights to which those indemnified may be entitled under any agreement, as a matter of law or equity or otherwise, both as to action in the Indemnitee's capacity as a Member or as an Affiliate thereof or as an officer, director, employee, agent or Principal of a Member and as to any action in another capacity, and shall continue as to an Indemnitee who has ceased to serve in such capacity and shall inure to the benefit of the heirs, successors, assigns and administrators of the Indemnitee.

12.4 <u>Assets of the Company</u>. Any indemnification under Section 12.1 shall be satisfied solely out of the assets of the Company. No Member shall be subject to personal liability or required to fund or to cause to be funded any obligation by reason of these indemnification provisions.

ARTICLE 13<br>DEFINITIONS

The following terms used in this Agreement have their initial letter capitalized (unless expressly provided herein or unless the content otherwise requires) shall have the following respective meanings:

"Affiliate" means, when used with reference to a specified Person, (a) the Principal of the Person, (b) any Person directly or indirectly controlling, controlled by or under common control with such Person, (c) any Person owning or controlling 10% or more of the outstanding voting interests of such Person, and (d) any relative or spouse of such Person.

"Agreement" means this Limited Liability Company Operating Agreement, as amended from time to time.

"Allocation Regulations" means Treasury Regulations (under the Code) Section 1.704 and all other Treasury Regulations governing allocation of Profits and Losses for federal income tax purposes.

"Articles of Organization" means the Articles of Organization filed with the Secretary of State of the State of Louisiana for the purpose of forming the Company.

"Capital Contributions" means, with respect to any Member, the amount of money and any property (other than money) contributed to the Company with respect to the interest in the Company held by such Person.

"Code" means the Internal Revenue Code of 1986 as amended.

"Company" means Royal Alice Properties, LLC, a Louisiana limited liability company.

16

"Distribution" means any money transferred without consideration to the Member with respect to its Interests in the Company.

"Interest" or "Membership Interest" means the Member's rights in the Company, any right to participate in the management of the Company, and any right to information concerning the business and affairs of the Company, together with the obligations of the Member to comply with all the terms and provisions of this Agreement.

"Member" means a Person who: (i) has been admitted to the Company as a Member in accordance with the Articles of Organization or this Agreement; and (ii) has not resigned, withdrawn or been expelled as a Member or, if other than an individual, been dissolved.

"Net Profits" and "Net Losses" shall mean the income, gain, loss, deductions, and credits of the Company in the aggregate or separately stated, as appropriate, determined in accordance with the method of accounting at the close of each fiscal year employed on the Company's information tax return filed for federal income tax purposes.

"Person" means a natural person, partnership, limited partnership, corporation, trust, estate, association, limited liability company, or other entity, whether domestic or foreign.

"Principal" means the natural Person which is in ultimate control of a Member or Affiliate, if any.

"Property" means any and all of such real and tangible or intangible personal property or properties as may be acquired by the Company.

"Regulation" means regulations issued by the Internal Revenue Service pursuant to the Code as such may be in effect from time to time.

"Statute" shall mean the Limited Liability Company Act of Louisiana, as now in effect, or as hereafter amended or revised.

"Transfer" means to sell, hypothecate, assign, dispose of, or otherwise transfer, by gift or otherwise.

**IN WITNESS WHEREOF**, the parties hereto have hereunto executed this Agreement as of the date first written above.

**MANAGING MEMBER**

SUSAN HOFFMAN

**COMPANY:**

ROYAL ALICE PROPERTIES, LLC
a Louisiana limited liability company

By: _Susan Hoffman_

18