UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CASE NO.: 19-12337 |
| | * | |
| ROYAL ALICE PROPERTIES, LLC | * | SECTION "A" |
| | * | |
| Debtor | * | CHAPTER 11 |
| ************************************** | | |
| ARROWHEAD CAPITAL FINANCE, LTD.,* | | |
| Plaintiff | * | Adv. Proc. No. 20-01022 |
| v. | * | |
| ROYAL ALICE PROPERTIES, LLC, | * | Scheduled Hearing Date |
| Defendant | * | May 13, 2020 at 2:00 p.m. |

**MEMORANDUM OF LAW OF PLAINTIFF ARROWHEAD CAPITAL
FINANCE, LTD. IN OPPOSITION TO DEFENDANT ROYAL ALICE
PROPERTIES, LLC'S MOTION TO DISMISS**

BARRY L. GOLDIN, ESQ. PEIFFER WOLF CARR & KANE
3744 Barrington Drive Daniel J. Carr, La. Bar # 31088
Allentown, PA  18104-1759 1519 Robert C. Blakes Sr. Drive, 1st Floor
Telephone: (610) 336-6680 New Orleans, Louisiana 70130
Fax: (610) 336-6678 Telephone:  (504) 586-5270  Fax:  (504) 523-2464
Email: barrygoldin@earthlink.net Email: dcarr@pwcklegal.com
*Attorneys for Arrowhead Capital Finance, Ltd.*

# TABLE OF CONTENTS

Page

I. STATEMENT OF FACTS     1

     1. The New York Contracts, Collection Account, Trust, and Choice of Law     1

     2. The Lawsuit Filed in 2010 in, and 2012 Judgment of, the New York State Court     2

     3. The 2014 Suit in, and 2018 Judgment of, the U.S. District Court in New York     3

     4. Refusal of Hoffman and Hoffman Affiliates to Account for The NY Trust Funds     4

     5. Arrowhead's Discovery of Debtor's Bankruptcy Filing and Related Documents     5

     6. Under Governing New York Penal Laws, Misappropriation of the NY Trust Funds and Related Collateral Constitutes "Embezzlement", "Larceny", and "Fraud"     6

     7. Peter Hoffman's Ownership and Control of Debtor's Predecessor Leeway and Debtor     7

     8. The Hoffman Felony Convictions for Wire Fraud, Mail Fraud, and Conspiracy     8

II. DISCUSSION     8

     1. Provisions Governing a Rule 12(b)(6) Motion     8

     2. New York Choice of Law and Governing New York Laws Apply     9

     3. The Complaint's First Count Properly Pleads Debtor Is Part of a "Single Business Entity" ("SBE") and So Liable for the Judgments and Obligations Owed to Arrowhead     10

         A. The Verified Complaint's First Count Properly Pleads All Elements of SBE Doctrine     10

         B. Applying the "SBE" Doctrine, Debtor Is Liable to Arrowhead for the Judgments Rendered against and Other Obligations of SAFELA and Other Seven Arts Companies     12

(i)

Page

4. Count II of the Verified Complaint Properly Pleads Debtor's "Alter Ego" Liability ............................................................................................. 13

5. Complaint Counts III, IV and V Properly Plead and Seek Relief for Embezzlement of the NY Trust Funds Required to Be Held in the NY Collection Account for Arrowhead .................................................................. 14

6. The Verified Complaint's Third Count Properly Asserts All Elements of a Breach of Trust Claim Seeking an Accounting and Damages for NY Trust Funds Disbursed for Debtor's Predecessor Leeway, Debtor, and the Royal Street Properties ............................................................................................. 16

7. The Complaint's Fourth Count Properly Asserts All Elements of a Claim for Nullity under Louisiana Civil Code Articles 2030, 2031 for the Embezzled Trust Funds .............................................................................. 16

8. The Complaint's Fifth Count Properly Asserts a Claim That Debtor Never Acquired a Right to or Interest in the Embezzled Trust Funds ................... 17

9. The Verified Complaint's Sixth Count Properly Asserts a Claim for Simulation ............................................................................................... 18

10. The Seventh Count Pleads Fraudulent Transfers of NY Trust Funds under NY Debtor & Creditor Law §273-A, under Which the Statute of Limitations Cannot Have Run ................................................................................ 19

11. The Complaint's Eighth Count for Fraudulent Transfers from the Seven Arts Companies Also Is Properly Pleaded and Not Time Barred ............... 21

12. The Ninth Count for Unjust Enrichment Is Properly Pleaded and Not Time Barred ....................................................................................... 22

13. The Verified Complaint's Tenth Count for Fraud/Fraudulent Concealment Is Properly Pleaded and Not Time Barred ........................... 22

14. The Federal Court Previously Rejected the Similar Argument (Repeated by Debtor) That Debtor Was Required to Be Added as a Party to Arrowhead's New York Actions ............................................................. 23

15. Leave to Amend to Cure Any Deficiency and to Reflect Newly Obtained Documents and Information ..................................................... 25

III. CONCLUSION .................................................................................... 25

**TABLE OF AUTHORITIES**

Page

Cases

*Arrowhead Capital Finance, Ltd. v. Seven Arts Entertainment, Inc.*,
2016 WL 4991623 (SDNY 2016)                                    24

*Arrowhead Capital Finance, Ltd. v. Seven Arts Entertainment, Inc.*,
739 Fed. Appx. 701 (2d Cir. 2018)                              4

*Arrowhead Capital Finance, Ltd. v. Seven Arts Pictures*,
110 A.D. 3d 514, 973 NYS 2d 899 (1st Dept. 2013)                3

*Boes Iron Works, Inc. v. Gee Cee Group, Inc.*,
206 So. 3d 938 (La. 4 Cir. 2016), *writ den.* (Feb. 10, 2017)  10

*Boyd v. Boyd*,
57 So. 3d 1169 (1 Cir. 2011)                                   15

*Camel v. Waller*,
526 So. 2d 1088 (La. 1988)                                     7, 18

*Commissioners of State Ins. Fund v. P.S.G. Const. Co., Inc.*,
91 A.D. 3d 643, 937 NYS 2d 83  (2d Dept. 2012)                 21

*Danos Tree Service, LLC v. Proride Trailers, LLC*,
255 So. 3d 1078 (La. App. 1 Cir. 2018)                         13

*Dishon v. Ponthie*,
918 So. 2d 1132 (La. 3 Cir. 2005), *writ den.* 927  So. 2d 317 (2006)   12

*First Keystone Consultants, Inc. v. Schlesinger Electrical Contractors, Inc.*,
871 F.Supp. 2d 103 (E.D. NY 2012)                              20

*Funk v. Clement*,
925 So. 2d 717 (La. App. 3 Cir. 2006)                          17

*GBB Properties Two,  LLC v. Stirling Properties, Inc.*,
230 So. 3d 225 (La. App. 3 Cir. 2017)                          11

*Green v. Champion Ins. Co.*,
577 So. 2d 249 (La. 1 Cir.),  *writ den.* 580 So. 2d 668 (1991)   10

*Hallowell v. Orleans Regional Hosp. LLC*,
217 F.3d 379 (5th Cir. 2000)                                  11, 13

(iii)

|  | Page |
|---|---|
| *Harris Trust and Savings Bank v. Salomon Smith Barney Inc.*,<br>530 U.S. 238 120 S. Ct. 2180 (2000) | 17 |
| *Haynesville Oil Co., Inc. v. Beach*,<br>159 La. 615, 105 So. 790 (1925) | 10, 17 |
| *In re Mirant Corp.*,<br>675 F.3d 530 (5ᵗʰ Cir. 2012) | 10 |
| *Jimenez v. Sun Life Assurance Co. of Canada*,<br>486 Fed. Appx., 398 (5ᵗʰ Cir. 2012) | 10 |
| *Joyner v. S.F.L. & S.I.L.*,<br>485 B.R. 538 (W.D. La. 2013) | 17, 19, 22 |
| *Lormand v. US Unwired, Inc.*,<br>565 F.3d 228 (5ᵗʰ Cir. 2009) | 8 |
| *Medive Energy Ventures LLC v. Warhourse Oil & Gas LLC*,<br>2018 WL 7051038 (W.D. La.),<br>magistrate judge's report adopted 2019 WL 303122 (2019) | 13, 23 |
| *Ner and Zwi Levy Family Sprinkling Trust*,<br>112 A.D. 3d 429, 975 NYS 2d 868 (1ˢᵗ Dept. 2013) | 15 |
| *Nicholson Mgmt & Consultants, Inc. v. Bergman* (La. 4 Cir. 1996),<br>681So. 2d 471, 476, *writ den.* 685 So. 2d 126  (1996) | 5 |
| *Onstott v. Certified Capital Corporation*,<br>950 So. 2d 744 (1 Cir. 2006) | 22 |
| *People v. Felber*,<br>264 A.D. 181, 184, 34 NYS 2d 609 (1st Dept. 1942) | 6 |
| *People v. Horney*,<br>103 A.D. 2d 891, 893, 478 NYS 2d 184 (3rd Dept. 1984) | 6 |
| *People v. Jennings*, 69 NY 2d 103,<br>512 NYS 2d 652 (1986) | 6 |
| *People v. Lyon*,<br>82 A.D. 2d 516, 442 NYS 2d 538) | 6 |
| *People v. Prince*,<br>110 Misc. 2d 55, 441 NYS 2d 586 (Sup. Ct. Queens Co. 1981) | 6 |

Page

*People v. Stuart,*
51 A.D.3d 547, 858 NYS 2d 158 (1st Dept. 2008)                                            6

*Russell v. SunAmerica Sec., Inc.,*
962 F.2d 1169 (5th Cir. 1992)                                                            24

*Schmidt v Skolas,*
770 F.3d 241 (3d Cir. 2014)                                                               9

*Seaman v. Fichet-Bauche N. Am., Inc.,*
575 NYS 2d 122 (2d Dept. 1991)                                                           24

*Setters v. A1 Properties and Developments (USA) Corp.,*
139 A.D. 3d 492, 32 NYS 3d 87 (1st Dept. 2016)                                           20

*Seven Arts Pictures, Inc. v. Jonesfilm,*
2013 WL 3270603 (E.D. La.)                                                               19

*Succession of Onorato,*
219 La. 1, 51 So. 2d 804 (1951)                                                       10, 17

*U.S.A. v. Peter Hoffman et al,*
2015 WL 8306094, *affirmed*, 901 F.3d 523 (5th Cir. 2018),
*cert. den.* 139 S.Ct. 2615 (2019)                                                        8

Statutes and Rules
Federal Rules of Civil Procedure:
    Rule 8                                                                                 8
    Rule 12                                                                                8
    Rule 15                                                                               25

Louisiana Civil Code:
    Art. 1849                                                                             19
    Art. 2025                                                                             19
    Art. 2026                                                                             19
    Art. 2298                                                                             22
    Art. 2030                                                                             16
    Art. 2031                                                                             16
    Art. 2032                                                                             16
    Art. 2480                                                                             19
    Art. 3338                                                                          7, 18
    Art. 3349                                                                             22
    Art. 3501                                                                             13
    Art. 3515                                                                             10

|  | Page |
|---|---|
| Art. 3542 | 10 |
| Art. 3543 | 10 |
| Art. 3544 | 10 |
| Art. 3546 | 10 |
| La. Rev. St. 9:2234 | 15 |
| New York Civil Practice Law and Rules: | |
| Rule 211 | 13 |
| Rule 213 | 22 |
| Rule 3002 | 24 |
| New York Debtor and Creditor Law: | |
| §273-A | 19, 20 |
| §273 | 21 |
| §274 | 22 |
| §276 | 22 |
| New York Penal Law: | |
| §155.00 | 6 |
| §155.05 | 6, 23 |
| §185.05 | 6, 23 |
| §185.10 | 6, 23 |

Treatises

| *Rest. of the Law of Trusts 3d* §82 | 14 |

Plaintiff Arrowhead Capital Finance, Ltd. ("Arrowhead") submits this Memorandum in

Opposition to the Motion of Defendant Royal Alice Properties, LLC ("Debtor" or "Royal

Alice") which improvidently seeks dismissal of Arrowhead's Verified Complaint, as:

> (i) Debtor ignores the standards governing a Rule 12(b)(6) motion to dismiss;

> (ii) Debtor fails to apply proper conflict of law analysis to Arrowhead's efforts to
> enforce judgments rendered under New York contract provisions and debtor-
> creditor law by NY courts against Hoffman affiliates for funds required to be
> deposited in a designated account at Chase Manhattan Bank, New York and held
> in "trust for and as the sole and exclusive property of" Arrowhead (the "NY Trust
> Funds"); transfer of those NY Trust Funds constitutes larceny, embezzlement and
> fraud under NY penal laws; and trustees (Hoffman and affiliates) fail to account
> for, and instead withhold and conceal, receipt and disbursement of those NY Trust
> Funds for which they have been held in contempt they never purged;

> (iii) Debtor lacked independent substance (no bank account, books or records,
> financial statement or tax return and no employee or office) but rather was under
> dominion and control of felon Peter Hoffman and his affiliates;

> (iv) each Complaint Count has been properly pleaded under governing law; and

> (v) Debtor cannot and does not properly assert an affirmative defense of statute of
> limitations (under New York law) or "prescription" (under Louisiana law).

## I. **STATEMENT OF FACTS**.

1. The New York Contracts, Collection Account, Trust, and Choice of Law.

During December 2006, Arrowhead (through predecessor Arrowhead Consulting

Group, Inc.) entered into a financing/refinancing for Peter Hoffman affiliates (known as

"Seven Arts Companies") of certain motion pictures for which those Seven Arts

Companies issued to Arrowhead a Secured Term Loan Promissory Note (the "Arrowhead

Note") and related "Master Agreement" each signed by Hoffman as their chief executive

officer/principal  [ECF Doc. No. 3 (Complaint ¶18) and Exhibits 2B and 3 thereto].

In the Arrowhead Note each Seven Arts obligor agreed in capitalized letters for

itself, its legal representatives and successors, "all matters" as to "enforcement" and

"effect" are governed in "all respects" "by the internal laws" of New York" [Ex. 2B]:

1

"THIS NOTE, AND ALL MATTERS RELATED HERETO, AND/OR ARISING HEREFROM, **SHALL BE GOVERNED AND CONTROLLED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK** AS TO INTERPRETATION, **ENFORCEMENT**, VALIDITY, CONSTRUCTION, **EFFECT, AND IN ALL OTHER RESPECTS**, INCLUDING, WITHOUT LIMITATION, THE LEGALITY OF THE INTEREST RATE AND OTHER CHARGES, and shall be binding upon the Undersigned and the Undersigned's legal representatives or successors." [emphasis added]

In the Arrowhead Note, each obligor also irrevocably agreed all proceedings "shall be litigated in courts having situs within", and "consents and submits to the jurisdiction of", the state and federal courts of New York, New York, and "waives any objection based on forum non-conveniens". The Arrowhead Note further states (on p.1 thereof) it is:

"issued in connection with, … [and] created under, and is delivered pursuant to that certain Master Agreement bearing even date herewith, … together with all exhibits thereto, among Lender [Arrowhead], and is entitled to all of the benefits and security of the [Master] Agreement. All of the terms, covenants and conditions of the [Master] Agreement are hereby made a part of the Note and are deemed incorporated herein in full."

The Master Agreement requires all proceeds of Pictures or other Collateral be deposited in a designated Collection Account at Chase Manhattan Bank, New York, "in trust for and as the sole and exclusive property of" Arrowhead (the "NY Trust Funds"), and remitted to Arrowhead [Complaint Ex. 3 (Master Agreement §5.1, last sentence)]:

"If the Borrowers [Obligors] or any Affiliated Person or any shareholder, officer, director, employee or agent of the Borrowers or any Affiliated Person, or any other Person acting for or in concert with the Borrowers shall receive any monies, checks, notes, drafts or other payments relating to or as proceeds from the exploitation of any of the Pictures or other Collateral, **the Borrowers and each such Person shall receive all such items in trust for, and as the sole and exclusive property of, [Arrowhead] and, immediately upon receipt thereof, shall remit the same (or cause the same to be remitted) in kind to the Collection Account**." [emphasis added]

2. The Lawsuit Filed in 2010 in, and 2012 Judgment of, the New York State Court.
On May 5, 2010, Arrowhead filed an action in New York state court against the obligors (all Hoffman-affiliated companies) for failure to pay and other defaults under the

Arrowhead Note, Master Agreement and related documents, entitled *Arrowhead Capital*

*Finance, Ltd. v. Seven Arts Pictures*, PLC, Index No. 601199/2010 (the "NY State Court

Action").   The Court entered October 10, 2012 judgment against Seven Arts Company

debtors, *affirmed* 110 A.D. 3d 514, 973 NYS 2d 899 (1st Dept. 2013) and then

domesticated in Louisiana and recorded with the Orleans Parish Clerk of Court, but

remaining unpaid in the amount of more than $1.9 million [Complaint ¶¶26-27, Ex. 1].

3. The 2014 Suit in, and 2018 Judgment of, the U.S. District Court in New York.
    While the NY State Court Action was pending, Peter Hoffman arranged transfer

to his newer affiliates of the assets of the judgment debtors, leaving them unable to

satisfy that State Court Judgment or other obligations due Arrowhead.   Thus, Arrowhead

on July 18, 2014 filed an action in NY state court, *Arrowhead Capital Finance, Ltd. v.*

*Seven Arts Entertainment, Inc*., which was removed to the U.S. District Court for the

Southern District of New York, 14-cv-6512 (the "District Court Case") [Complaint ¶¶26-

30].

    The District Court rendered summary judgment against Seven Arts Entertainment,

Inc. ("SAE"); in light of disobedience of Hoffman and his affiliates of discovery

obligations and orders; also struck the answer of co-defendant Seven Arts Filmed

Entertainment Louisiana, LLC ("SAFELA", a Louisiana company); held Hoffman and

his affiliates in contempt; and entered judgment for Arrowhead that SAE and SAFELA

were jointly and severally liable for the NY state court judgment [Complaint ¶¶40-43].

That Judgment also decreed Arrowhead [Complaint Ex. 2B (2018 Judgment at pp. 3-4)]:

    "has valid, first priority and superior Copyright Mortgages and security interests
    in the Collateral (as defined in the Master Agreement) and is entitled to enforce
    all Arrowhead's rights and remedies with respect to the Collateral (whether under
    the Arrowhead Note, Master Agreement, Financing and Security Agreements,

3

related agreements, June 12, 2012 Decision, October 2012 [State Court] Judgment, or otherwise."

That District Court Judgment was affirmed, *Arrowhead Capital Finance, Ltd. v. Seven Arts Entertainment, Inc.*, 739 Fed. Appx. 701 (2d Cir. 2018), domesticated in Louisiana and recorded with the Orleans Parish Clerk of Court, and also remains unpaid in the amount of more than $1.9 million [Complaint ¶43, Ex. 2A].

4. Refusal of Hoffman and Hoffman Affiliates to Account for The NY Trust Funds.

Throughout the litigation in New York state and federal courts, Arrowhead sought from Hoffman/Hoffman affiliates an accounting and discovery as to the NY Trust Funds. Instead, Hoffman and his affiliates refused to account; disobeyed discovery obligations and orders; were held in contempt they never purged; and kept Arrowhead "in the dark" as to receipt and disbursement of the NY Trust Funds [Complaint ¶¶36-49, 80-87].

As the Court of Appeals observed, *supra*, 739 Fed. Appx. at 704, that refusal to account and disregard of discovery and other obligations was and is consistent with the misconduct of Hoffman and Hoffman affiliates in other litigation, observing they:

"have engaged in similar misconduct before other tribunals. *See Seven Arts Pictures PLC v. Jonesfilm*, 311 Fed. Appx. 962, 965 (9th Cir. 2009); *Seven Arts Pictures, Inc. v. Jonesfilm*, 512 F. Appx. 419 (5th Cir. 2013); *Seven Arts Filmed Entertainment Ltd. v. Jonesfilm*, 538 Fed Appx. 444 (5th Cir. 2013); App. 1371 (violation of arbitration order); *Hoffman v. Salke*, 2008 WL 2895966 (Cal. Ct. App. July 29, 2008) (unpublished state court decision sanctions). Here, defendants engaged in a pattern of obstructionism that prevented Arrowhead from effectively litigating its claims."

During March 2020, Arrowhead again served Hoffman and Hoffman affiliates in that District Court Action with post-judgment discovery as to receipt and disbursement of the NY Trust Funds – including funds so disbursed since May 5, 2010 to Susan Hoffman or for the properties located at 900-902, 906, and 910-12 Royal Street (the "Royal Street Properties"). Hoffman and Hoffman affiliates again refused to produce any accounting

4

or other discovery as to the NY Trust Funds; the federal court in New York issued an April 20, 2020 Order compelling them to answer Arrowhead's discovery requests; but no discovery has been received. [Complaint ¶¶80-87; Request for Judicial Notice Ex. 1].

5. Arrowhead's Discovery of Debtor's Bankruptcy Filing and Related Documents.

Debtor misleadingly asserts that the Arrowhead Judgment was dated September 16, 2016, although that Judgment clearly states it was entered June 5, 2018 [Complaint Ex. 2B]. Debtor then mistakenly argues Arrowhead "is deemed to be on inquiry notice of any claims against Debtor no later than that Judgment date, citing *Nicholson Mgmt & Consultants, Inc. v. Bergman* (La. 4 Cir. 1996), 681So. 2d 471, 476, *writ den.* 685 So. 2d 126 (1996). But Debtor cites no reason why Arrowhead would be on inquiry notice of claims against Debtor, which was not a party to the New York litigation – particularly as the other defendants therein were required, refused, and held in contempt for refusal to produce the very documents which would have identified the recipients of the NY Trust Funds. *Nicholson* (at 476) is also easily distinguished as defendant there was previously named as co-defendant "in the same suit" with, and so clearly known, to plaintiff.

Nor was Arrowhead in its New York litigation on notice of documents filed by an unrelated plaintiff (Jonesfilm) in unrelated litigation in Louisiana. Rather, only after Arrowhead's counsel November 2019 discovery (in an unrelated Internet search) of a bankruptcy filing by Peter Hoffman affiliate Debtor, did Arrowhead retrieve court filings from prior litigation of that other creditor (Jonesfilm) against Debtor and Debtor's predecessor Leeway, and recognize from those filings that embezzled NY Trust Funds had been transferred through Hoffman and Seven Arts Companies for the benefit of Debtor's predecessor Leeway, Debtor, and the Royal Street Properties.

5

6. <u>Under Governing New York Penal Laws, Misappropriation of the NY Trust Funds and Related Collateral Constitutes "Embezzlement", "Larceny", and "Fraud".</u>

As described above, the Arrowhead Note, Master Agreement and related

documents are governed by NY law, including NY Penal Laws (Complaint ¶¶47-48).

Penal Law §155.00 defines "Property" to include "any money, personal property, …", so

including the NY Trust Funds and other Collateral. Under Penal Law §155.05, transfer of

NY Trust Funds to anyone (other than Arrowhead) is "embezzlement/larceny":

> "1. A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.
> 2. Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed … (a) By conduct heretofore defined or known as …embezzlement, ….:"[1]

Transfer of NY Trust Funds and other Arrowhead Collateral [Master Agreement

§§2.7 & 5.1] also violates NY Penal Law §185.05 ("Fraud Involving Security Interest"):

> "A person is guilty of fraud involving a security interest when, having executed a security agreement creating a security interest in personal property securing a monetary obligation owed to a secured party, and … (2) having under the security agreement no right of … disposition of the property, he knowingly secretes, withholds, or disposes of such property in violation of the security agreement.[2]

Under Penal Law §185.10 ("Fraudulent Disposition of Mortgaged Property"), a person is:

> "guilty of fraudulent disposition of fraudulent property when … he assigns or disposes of any …of the property … with intent …to defraud the mortgagee …"[3]

---

[1] *See for instance People v. Stuart*, 51 A.D. 3d 547, 858 NYS 2d 158 (1st Dept. 2008) grand larceny conviction affirmed as victim had right of possession to funds in her corporation's bank account superior to that of defendant; *People v. Horney*, 103 A.D. 2d 891, 893, 478 NYS 2d 184 (3rd Dept. 1984) affirmed grand larceny conviction and sentence up to five years on each count for failing to remit funds as "defendant must be considered a bailee, agent or trustee of such funds …, … larceny by embezzlement was completed by defendant's conversion of such funds", citing *People v. Yannett*, 49 NY 2d 296, 303, 425 NYS 2d 300, *People v. Lyon*, 82 A.D. 2d 516, 442 NYS 2d 538); *People v. Felber*, 264 A.D. 181, 184, 34 NYS 2d 609 (1st Dept. 1942) states that fraudulent conversion of monies collected by agent or trustee constitutes larceny.
[2] *See People v. Jennings*, 69 NY 2d 103, 125-126, 512 NYS 2d 652 (1986).
[3] *See People v. Prince*, 110 Misc. 2d 55, 441 NYS 2d 586 (Sup. Ct. Queens Co. 1981).

6

7. Peter Hoffman's Ownership and Control of Debtor's Predecessor Leeway and Debtor.

Debtor now asserts Peter Hoffman entered into a Marital Settlement dated July 2003 and a California Judgment of Legal Separation with Susan Hoffman entered on July 16, 2007. But, those documents were not filed in Louisiana, and so under Louisiana's "public records doctrine" are ineffective as to Louisiana real estate. *See* Louisiana Civil Code Art. 3338; *Camel v. Waller*, 526 So. 2d 1088 (La. 1988).

Debtor also asserts conveyances with respect to Royal Street Properties by Peter Hoffman by Donation Inter Vivos dated February 2, 1997; Conveyance to Leeway Properties, Inc. ("Leeway") dated July 7, 2003; and Deed of Transfer from Leeway to Debtor dated November 2011. But, as alleged in Arrowhead's Complaint and confirmed in its exhibits, each of those documents is belied by Hoffman's later documents continuing to hold himself out as direct and indirect owner and beneficiary of the Royal Street Properties – by (among other things) holding himself out as the recipient of Leeway's rental income; reporting his ownership of Leeway in his personal financial statements; signing, as President, Leeway's Louisiana tax returns holding himself out as the owner of "100%" (last page of 2008 tax return) and the only owner of "50% or more" (last page of 2009, 2010, and 2011 tax returns) of the shares of Leeway; and signing with Susan Hoffman insurance applications and obtaining insurance listing himself as owner of the Royal Street Properties  [Complaint ¶¶51-66, Ex.s 10-20].

Peter Hoffman's dominion and control over Leeway was so complete that Susan Hoffman testified to knowing "almost nothing concerning the activities of Leeway" [Complaint ¶11 (citing Judge Knowles's opinion)]. Judge Knowles then issued an April 2013 Order which referenced Hoffman's history of stone-walling and misrepresentation; described Hoffman's transfer of "millions of dollars to and through" Leeway and other

affiliates; and found that less than a week after Hoffman and his affiliates were held in

contempt for disobeying garnishment and discovery orders [Complaint ¶69]:

> "Hoffman and Leeway created [Debtor] Royal Alice Properties, LLC, to which they transferred all assets of Leeway.  Leeway, thus became nothing more than an empty shell.  Leeway received  nothing for the transfer."

Upon transfer of all Leeway assets without consideration to Debtor, Peter Hoffman's

ownership of Leeway converted into his ownership of Debtor [Complaint ¶¶12, 76, 77].

8. The Hoffman Felony Convictions for Wire Fraud, Mail Fraud, and Conspiracy.
　　Meanwhile, Peter and Susan Hoffman have been convicted of multiple wire fraud,

mail fraud, and conspiracy felonies with respect to their false tax credit applications filed

with the State of Louisiana relating to Esplanade Avenue, New Orleans real estate; *U.S.A.*

*v. Peter Hoffman et al*, 2015 WL 8306094, *affirmed* 901 F.3d 523 (5th Cir. 2018), *cert.*

*den.* 139 S.Ct. 2615 (2019).  He has been sentenced to a 20-month prison term; ordered to

report to prison on July 20, 2020; and upon release from prison must serve another two

years of supervised release.  [Complaint ¶13; Request for Judicial Notice, Ex. 2].

## II.  DISCUSSION.

1. Provisions Governing a Rule 12(b)(6) Motion.
　　As described in *Lormand v. US Unwired, Inc*., 565 F.3d 228, 532 (5th Cir. 2009):

> "Motions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.' … When faced with a rule 12(b)(6) motion to dismiss… courts must … accept all factual allegations in the complaint as true [and] also draw all reasonable inferences in the plaintiff's favor." [citations omitted]

*Lormand* then observed (*Id.* at 257) that a complaint is only required to allege enough

facts to raise a reasonable expectation that discovery will reveal that the elements of the

claim existed, citing *Bell Atl. v. Twombly*, 127 S. Ct. 1955 at 1965 (2007).

Under Rule 8, statute of limitations (or prescription) is an affirmative defense.

However, a complaint need not anticipate or overcome affirmative defenses,  and so does

8

not fail because it omits facts that would defeat a statute of limitations defense. *Schmidt v Skolas*, 770 F.3d 241, 248 (3d Cir. 2014), citing *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) ("[L]itigants need not try to plead around defenses"). Thus, a dismissal motion cannot challenge a complaint on statute of limitation grounds except insofar as clearly time-barred on its face and then only if no equitable tolling may apply.

In the case at hand, the statute of limitations (or prescription) cannot and does not apply to Counts I [Single Business Entity ("SBE")] or II ["Alter Ego"]. Nor does it bar the other Counts relating to embezzlement of and failure to account for the NY Trust Funds (whether for breach of trust, fraudulent concealment, unjust enrichment or otherwise and whether applying the equitable tolling doctrine or otherwise).

Moreover, Debtor is not permitted in its dismissal motion to introduce evidence, other than documents as to which judicial notice may be taken or documents referenced in and central to the complaint which cannot be disputed. But, Debtor (recognizing the insufficiency of its dismissal motion) has filed an improper Request for Judicial Notice for documents ineligible for judicial notice (as they are not official documents, would be disputed, and in any event are irrelevant) and filled its Memorandum with factual assertions as to which Debtor cannot and does not cite any supporting evidence.

2. New York Choice of Law and Governing New York Laws Apply.

The Arrowhead Note and Master Agreement state their "effect" and "enforcement" is governed by the "internal laws" of New York; the diversion of the NY Trust Funds constitutes embezzlement, larceny, and fraud under New York penal laws; an accounting and discovery as to those proceeds has repeatedly been sought by Arrowhead in New York state and federal courts (including discovery to which Debtor's special counsel, acting for Hoffman affiliates, improperly objected and so sought to

9

withhold and conceal); and the federal court in New York recently issued a post-judgment order requiring production to Arrowhead of those documents and information. Thus, New York law applies to recovery of those embezzled and otherwise misappropriated funds. *In re Mirant Corp.*, 675 F.3d 530, 537 (5th Cir. 2012) (using conflict of law analysis, applies New York law as best promoting protection of creditors from fraudulent transfers); *Jimenez v. Sun Life Assurance Co. of Canada*, 486 Fed. Appx., 398, 408-9 (5th Cir. 2012) (applies choice of law provisions in the contract).

Likewise, Louisiana's Supreme Court has confirmed Louisiana has no interest in protecting an embezzlement or other misappropriation.[4] Thus, with a proper conflict of law analysis, New York (rather than Louisiana) law should apply in enforcing recovery of those embezzled and misappropriated NY Trust Funds for which Debtor's manager Peter Hoffman and Hoffman affiliates continue to refuse to account.[5]

3. The Complaint's First Count Properly Pleads Debtor Is Part of a "Single Business Entity" ("SBE") and So Liable for the Judgments and Obligations Owed to Arrowhead.

A. The Verified Complaint's First Count Properly Pleads All Elements of SBE Doctrine.
    In *Green v. Champion Ins. Co.*, 577 So. 2d 249, 257-58 (La. 1 Cir.) *writ den.* 580 So. 2d 668 (1991) ["*Green*"], the court listed 18 factors to be considered in determining whether a company falls within the "SBE" doctrine. *See also Boes Iron Works, Inc. v. Gee Cee Group, Inc*., 206 So. 3d 938, 949 (La. 4 Cir. 2016) observing that the *Green* factors for an SBE are "similar to" Louisiana's factors in "piercing the veil" cases; so

---

[4] *Succession of Onorato*, 219 La. 1, 30-33, 51 So. 2d 804 (1951); *Haynesville Oil Co., Inc. v. Beach*, 159 La. 615, 618-20, 105 So. 790 (1925).
[5] See also La. Civ. Code art. 3543 and 3544 (applying the law of the state where the injury occurred -- here New York for diversion of the NY Trust Funds from the NY Collection Account). See also Civil Code art. 3515, 3542 ("the policies of deterring wrongful conduct and of repairing the consequences of injurious acts"), and 3546 ("the policies of another state would be more seriously injured if its law were not applied").

affirming an affiliate's liability under the SBE doctrine for contractual obligations of another affiliate; and thus holding plaintiff's claims had not prescribed; *GBB Properties Two, LLC v. Stirling Properties, Inc*., 230 So. 3d 225 (La. App. 3 Cir. 2017), holding SBE doctrine sufficiently pleaded and liability could be asserted against defendant Stirling for obligations of a company owned or controlled by Stirling (as that other company had no employees or offices of its own, was operated from Stirling's offices, communications were sent to Stirling, and decisions were made through Stirling's management); *Hallowell v. Orleans Regional Hosp. LLC*, 217 F.3d 379, 388-390 (5th Cir. 2000) affirms jury verdict of SBE liability in light of defendant's disregard for corporate separateness (common management and employee sharing).

As Debtor's Memorandum of Law admits [Doc. 11 p. 23] "Dominance and control are the controlling factors in this inquiry".  Arrowhead's Complaint pleads in detail those *Green* factors, including Hoffman's dominance and control over Debtor [Complaint ¶¶69-72].  Peter Hoffman so testified as Debtor's "manager" at Debtor's 341 hearing, during which he swore that during the approximately eight years of Debtor's purported existence Debtor had no bank accounts, no books and records, no bookkeeping, no employees, no financial statements, and no tax returns [Complaint ¶¶71-72, 89].

Peter Hoffman arranged for his Seven Arts companies to transfer millions of dollars to and through  Debtor's predecessor Leeway (of which he purported to be sole shareholder) and then, in order to evade compliance with garnishment and discovery orders, arranged Leeway's transfer of all its assets to Debtor without consideration to Leeway (leaving Leeway "an empty shell") [Complaint ¶¶35, 69, 70, 89].

11

Debtor had no bank account, funds, or capital of its own. All its properties were mortgaged.  Hoffman arranged for bills with respect to Royal Street Properties to be addressed to, paid by and through the Los Angeles offices and using funds of, his Seven Arts Companies – including so paying utility, insurance, real estate and other taxes, mortgages, and other obligations with respect to Debtor's Royal Street properties.  He and his Seven Arts staff arranged for him (not Debtor) to be named insured on insurance on the Real Estate Properties. [Complaint ¶¶61-62, 89].

Peter Hoffman also arranged for Debtor to lease substantially all its property to his affiliates – including below-market leases to his affiliate Royal Street Bistro, LLC (purportedly owned by a trust in the name of his daughters) and a "sham" lease to his affiliate PicturePro (of which he is managing member but which has no apparent assets or income) he signed shortly before Debtor's bankruptcy filing [Complaint ¶73-77, 89].

In short, during the nearly eight years after the Hoffman-arranged transfer of Royal Street Properties by his affiliate Leeway to his affiliate Debtor, Debtor had no independent substance; rather as the Complaint alleges, Debtor was part of an SBE over which Hoffman exercised dominion and control through and using staff and funds from his other Seven Arts Companies.  Thus, the SBE doctrine has been properly pleaded.

B. Applying the "SBE" Doctrine, Debtor Is Liable to Arrowhead for the Judgments Rendered against and Other Obligations of SAFELA and Other Seven Arts Companies.

Under the SBE doctrine, Debtor is liable to judgment creditor Arrowhead for the obligations of Debtor's fellow SBE judgment debtors (including SAFELA and other Seven Arts Companies) under the 2014 NY state court and 2018 federal court judgments (domesticated in Louisiana) [Complaint Ex.s 1 & 2].  *Dishon v. Ponthie*, 918 So. 2d 1132 (La. 3 Cir. 2005), *writ den*. 927  So. 2d 317 (2006) (affirms judgment holding

defendant liable under SBE doctrine for unsatisfied judgment against defendant's affiliate). The statute of limitations on those judgments, for which Debtor is liable, is 20 years under New York, and 10 years under Louisiana, law.[6] Thus, Debtor cannot have a valid affirmative defense of statute of limitation or prescription.

4. Count II of the Verified Complaint Properly Pleads Debtor's "Alter Ego" Liability.
        Courts in Louisiana and elsewhere have several times found Peter Hoffman affiliates to be alter ego's [Complaint ¶93].

        Under Louisiana law, a court may find "alter ego" status or pierce the veil of a limited liability company whose controlling person used it to commit fraud or deceit on a third party or conducted its business so disregarding formalities that it and its controlling person(s) become indistinguishable. *Danos Tree Service, LLC v. Proride Trailers, LLC*, 255 So. 3d 1078, 1084 (La. App. 1 Cir. 2018). *See Medve Energy Ventures LLC v. Warhourse Oil & Gas LLC,* 2018 WL 7051038 at *6 (W.D. La.), denying motion to dismiss corporate veil and alter ego claims, after observing Louisiana's Supreme Court listed factors for alter ego analysis that include but are not limited to:

> "1. Commingling of corporate and shareholder funds; (2) failure to follow statutory formalities for incorporating and transacting corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder and director meetings.
> *Akers Solutions, Inc. v. Shamrock Energy Solutions, LLC*, 2016 WL 4529828 at *3 (E.D. La. 2016); … *Hollowell, supra*, 217 F.3d at 387."

Arrowhead has sufficiently pleaded those "alter ego" elements, including that Debtor had no bank account (its funds being commingled), no bookkeeping records, no financial

---

[6] NY CPLR Rule 211(b) ("A money judgment is presumed to be … satisfied after the expiration of 20 years from the time when the party recovering it was first entitled to enforce it") and La. Civil Code 3501 ("An action to enforce a money judgment rendered by a court of another state… is barred by the lapse of ten years from its rendition").

statements, and no tax returns; had no employees or staff and no office of its own; did not observe corporate formalities; and was undercapitalized, unable to satisfy its mortgages and other debts, and is now bankrupt [Count II ¶¶69-72, 94].

Tellingly, Debtor ignores Count II and the "alter ego" doctrine, as Debtor refers to the "alter ego" doctrine only once [Debtor's Memorandum at p.24]; cites no case law; and so implicitly concedes application of the "alter ego" doctrine to Debtor.

Because Debtor is an "alter ego" of judgment debtors (SAFELA and other Seven Arts Companies), Debtor is liable to Arrowhead under the judgments rendered against them in New York and domesticated in Louisiana; the statute of limitations for judgments under New York law is 20 years and under Louisiana law is 10 years [see fn. 6 above]; and so Debtor cannot have an affirmative defense of statute of limitation or prescription.

5. Complaint Counts III, IV and V Properly Plead and Seek Relief for Embezzlement of the NY Trust Funds Required to Be Held in the NY Collection Account for Arrowhead
Arrowhead's Third Count (¶¶97-106), Fourth Count (¶¶107-112), and Fifth Count (¶¶113-116) each pleads that the NY Trust Funds required to be deposited in the New York Collection Account and held "in trust for and as the sole and exclusive property of" Arrowhead, were instead embezzled by Peter Hoffman and his affiliates and transferred (without consideration) to and for the benefit of Debtor's predecessor Leeway, Debtor, and the Royal Street Properties (whether to pay utilities, condominium fees, taxes, insurance premiums, mortgage payments or otherwise).

Pursuant to *Rest. of the Law of Trusts 3d* §82, a trustee has a duty "to keep … beneficiaries reasonably informed of changes involving the trusteeship and about other significant developments concerning the trust and its administration" and in particular "material information needed by beneficiaries for the protection of their interests".

14

Under governing New York law, plaintiff *cestui que trust* has a six year period to commence an action for an accounting and damages for breach of trust; but that six year statute does not run until the trustee turns over, and provides an accounting as to, the trust assets.[7]

Likewise under Louisiana law, an action for trustee failure to turn over trust funds does not begin to run until two years after fiduciary delivers the required accounting.[8]

Arrowhead has succeeded in obtaining from court filings in other litigation, and so pleaded in and attached to its Complaint, documents confirming, transfer of more than $3 million to Debtor's predecessor Leeway, for which Hoffman and the Seven Arts Companies, Debtor's predecessor Leeway, and Debtor have never accounted to Arrowhead [Complaint ¶65, Ex. 20].

The Complaint also pleads Arrowhead's repeated requests for an accounting as to receipt and disbursement of the NY Trust Funds in both the New York State and Federal Court Actions; Peter Hoffman and his affiliates refused to provide that accounting and related discovery, for which they have been held in contempt, never purged; during March 2020 Arrowhead again propounded discovery for an accounting as to those NY Trust Funds disbursed for Susan Hoffman, Leeway, Debtor, and the Royal Street Properties; but Hoffman and the Seven Arts Companies again refused to provide any discovery (their most recent objection being made by Philip Stillman, serving

---

[7] *See Ner and Zwi Levy Family Sprinkling Trust*, 112 A.D. 3d 429, 975 NYS 2d 868 (1st Dept. 2013).

[8] La. Rev. St. 9:2234, the burden being on the trustee to show when he made an accounting sufficient to trigger the 9:2234 time period, *Boyd v. Boyd*, 57 So. 3d 1169, 1175 (La. 1 Cir. 2011).

concurrently as special counsel for Debtor and as counsel for Hoffman and Hoffman affiliates) [Complaint ¶¶36-42, 80-81, Ex.s 23E & 23G].[9]

6. The Verified Complaint's Third Count Properly Asserts All Elements of a Breach of Trust Claim Seeking an Accounting and Damages for NY Trust Funds Disbursed for Debtor's Predecessor Leeway, Debtor, and the Royal Street Properties.
        As described above, Arrowhead is permitted under both New York and Louisiana

law to pursue an accounting and damages for the embezzled NY Trust Funds against

whomever received those funds without paying fair value therefore.

        The Third Count so alleges all required averments for Arrowhead's pursuit of a

claim for accounting and damages with respect to those NY Trust Funds which the Seven

Arts Companies and Peter Hoffman as trustees and fiduciaries of those NY Trust Funds

disbursed for (and without receipt of fair value from) Debtor's predecessor Leeway,

Debtor, and the Royal Street Properties [Complaint ¶¶97-106].

        As also described above, that breach of trust claim is tolled and the NY statute of

limitations and Louisiana prescription do not begin to run until after the trustee has

provided the *cestui que trust* an accounting [see fn.s 7 & 8 above]. As no accounting has

been provided to Arrowhead, the statute of limitation cannot have begun to run under

New York law and prescription cannot have occurred under Louisiana law.

 7. The Complaint's Fourth Count Properly Asserts All Elements of a Claim for Nullity under Louisiana Civil Code Articles 2030, 2031 for the Embezzled Trust Funds.
        Arrowhead's Fourth Count [Complaint ¶¶107-112] pleads transfer and receipt of

the embezzled NY Trust Funds is a nullity under La. CC Art. 2030 (absolute nullity that

under Art. 2032 "does not prescribe") or 2031 (relative nullity). Article 2030 states:

        "A contract is absolutely null when it violates a rule of public order, as when the
        object of a contract is illicit or immoral."

_____

[9] In the Federal Court Action, Judge Failla has issued an Order for Hoffman's affiliates to answer that discovery by May 22, 2020 [Arrowhead Request for Judicial Notice, Ex. 1].

The transfer of funds by breaching trustee/embezzler is "illicit or immoral", under New York Penal Laws (as described above), Louisiana law, and federal law and so does not prescribe. *Joyner v. S.F.L. & S.I.L.*, 485 B.R. 538, 556-57 (W.D. La. 2013); *Funk v. Clement*, 925 So. 2d 717, 721 (La. App. 3 Cir. 2006).

Debtor argues Arrowhead's claims with respect to the embezzled NY Trust Funds instead are "at best a claim of relative nullity" under Art. 2031 (and so prescribe under Art. 2032 for transfers made more than five years prior to Debtor's August 2019 bankruptcy filing). However, Debtor's argument fails as Art. 2030 (rather than 2032) applies to penal acts such as embezzlement, larceny and fraud. Moreover, even if Art. 2031 (and a five-year prescription period) did apply, Arrowhead would still be permitted to assert its claims for embezzled NY Trust Funds transferred within five years of Debtor's August 2019 bankruptcy filing.

8. The Complaint's Fifth Count Properly Asserts a Claim That Debtor Never Acquired a Right to or Interest in the Embezzled Trust Funds.
Arrowhead's Fifth Count (¶¶113-116) asserts that Debtor's predecessor Leeway, Debtor, never acquired any lawful or proper interest in the embezzled NY Trust Funds.

The Complaint (¶114) cites governing case law confirming that none of those persons or entities could have acquired or hold any lawful right to or interest in the embezzled or misappropriated Trust Funds, so citing *Harris Trust and Savings Bank v. Salomon Smith Barney Inc*., 530 U.S. 238, 250, 120 S. Ct. 2180, 2189 (2000) ("that a transferee was not the 'original wrongdoer' does not insulate him from liability"); *Succession of Onorato, supra*, 219 La. at 24-33 (recovery of proceeds of embezzlement); *Haynesville Oil Co., Inc. v. Beach (Beach Drilling Co., Inc.), supra,* 159 La. at 618-20.

17

Debtor's Memorandum ignores and so implicitly concedes Arrowhead's Fifth Count and the case law cited by Arrowhead therein -- that Debtor could not have acquired any lawful right to or interest in the embezzled or misappropriated Trust Funds and that Arrowhead's claims with respect to those embezzled or misappropriated Trust Funds could not, and did not, prescribe.

9. The Verified Complaint's Sixth Count Properly Asserts a Claim for Simulation.

Debtor argues that the Sixth Count for "Simulation" (Complaint ¶¶117-118) is barred by an unrecorded Separation Agreement between Peter Hoffman and his wife and by recorded donations of his interests in certain of the Royal Street Properties. However, that Separation Agreement was not recorded with the Clerk of Orleans Parish; thus is ineffective under Louisiana's "public records doctrine" to show any transfer of real or immovable property; and so is irrelevant. *See* La. Civil Code Art. 3338; *Camel v. Waller*, 526 So. 2d 1088 (La. Sup. 1988).

Likewise, Peter Hoffman's purported 1997 "Donation Inter Vivos" transfer to Susan Hoffman of 900 Royal Street is belied by (among other things) his later filings. He subsequently (among other things) (i) issued a 2007 monthly statement of his cash flow and 2009 monthly statement of his rental income from the Royal Street Properties; (ii) reported his investment in Leeway (then owner of 906 and 910-912 Royal Street Properties) as $2,880,383.48 as of December 31, 2009; (iii) signed as Leeway's President its Louisiana 2008 through 2011 tax returns which state he is owner of 100% and the only owner of "50% or more" of the shares of Leeway; (iv) signed, together with Susan Hoffman, the insurance applications in which he and she are both listed as the owners of the Royal Street Properties; and (v) transferred himself and through his Seven Arts Companies more than $3 million (including NY Trust Funds) for, but without receipt of

18

fair value from, Leeway, Debtor and the Royal Street Properties [Complaint ¶¶51-65, 118; Ex.s 10 through 20].[10]

Previously another judgment creditor (Jonesfilm) filed an action alleging a claim for "simulation" against Debtor, Leeway, and Peter and Susan Hoffman – that the "property payments, property transfers, the RAP sale [2011 transfer to Debtor], and the Peter Acknowledgement are simulated contracts for an illicit or immoral purpose."  In that case, *Seven Arts Pictures, Inc. v. Jonesfilm*, 2013 WL 3270603 (E.D. La.), Judge Milazzo held Jonesfilm (though not a party to the payments or transfers) had standing to bring the simulation claims, as she observed (*Id.* *4):

> "A simulation occurs and [i]s absolute when the parties intend that their contract shall produce no effect between them.  La Civ. Code Art. 2026.  An absolute simulation can, therefore, have no effects between the parties. *Id.* In the end, a judgment creditor has standing to bring  a simulation claim under Louisiana law. *See, e.g. Joyner v. S.F. L. & S. I. L., LLC*, 485 B.R. 538, 555 (WD La. 2013); *Fritscher v. Justice*, 472 So. 2d 105, 107 (5th Cir. 1985); *Mills. Int'l Mgmt. Consultants, Inc.*, 425 So. 2d 825, 826-27 (La. App. 5 Cir. 1982)."

Similarly, "simulation" applies against the same parties in the case at hand with respect to transfer of the properties and embezzled NY Trust Funds.  Because that simulation is "absolute" under CC art.s 2025 and 2026, Arrowhead's claim cannot have prescribed.

10. The Seventh Count Pleads Fraudulent Transfers of NY Trust Funds under NY Debtor & Creditor Law §273-A, under Which the Statute of Limitations Cannot Have Run.

---

[10] Debtor argues the purported real estate transfers cannot be a "presumed simulation" under La. Civ. Code Art. 2480 because Susan Hoffman is "in possession"; but possession by Susan Hoffman does not preclude possession also by Peter Hoffman; and the above-referenced documentary evidence demonstrates his "possession".

Debtor also cites La. Civ. Code Art. 1849 that "between the parties, a counterletter is required to prove that an act purporting to transfer immovable property is an absolute simulation".  That Article does not apply because Arrowhead was not a party to the real estate transfers and so need not show a counterletter.  Moreover, documents referenced above (including insurance applications signed by both Peter and Susan Hoffman) constitute such counterletters [Complaint ¶¶ 55-60, Ex.s 13A and 14A].

Arrowhead's Seventh Count (¶¶119-127) cites the Arrowhead Note provisions
under which "internal laws of New York" govern "effect" and "enforcement" of that
Note, Master Agreement, and related documents; pursuant to Master Agreement §5.1, the
NY Trust Funds were required to be deposited in the NY Collection Account and held "in
trust for and as the sole and exclusive property of" and remitted to Arrowhead; the New
York State Court Action was filed on May 5, 2010 and the Federal District Court Action
was filed on July 14, 2014; and those state and federal courts granted Arrowhead
Judgment in those actions against the respective Seven Arts Companies.

Pursuant to New York Debtor and Creditor Law §273-A, every conveyance made
without "fair consideration" by an obligor Seven Arts Company after May 5, 2010 filing
of the New York State Court action and after July 14, 2014 filing of the District Court
case is a fraudulent conveyance.  That statute states:

> "Every conveyance made without fair consideration when the person making it is
> a defendant in an action for money damages or a judgment in such an action has
> been docketed against him, is fraudulent as to the plaintiff in that action without
> regard to the actual intent of the defendant if, after final judgment for the plaintiff,
> the defendant fails to satisfy the judgment."

*First Keystone Consultants, Inc. v. Schlesinger Electrical Contractors, Inc.*, 871 F.Supp.
2d 103, 118-119 (E.D. NY 2012).

The statute of limitations for such fraudulent transfers is six years, but does not
begin to run until after the date the judgment became "final"; appeal of the New York
State Court judgment was not denied until October 17, 2013; appeal of the Federal Court
judgment was not denied until 2018; and thus the fraudulent transfer claims are not time-
barred.  *Setters v. A1 Properties and Developments (USA) Corp.*, 139 A.D. 3d 492, 32

20

NYS 3d 87 (1st Dept. 2016); *Commissioners of State Ins. Fund v. P.S.G. Const. Co., Inc.*, 91 A.D. 3d 643, 937 NYS 2d 83 (2d Dept. 2012).

Accordingly, every conveyance of the NY Trust Funds by Hoffman and Seven Arts Companies without fair consideration after May 5, 2010 (the date Arrowhead commenced its New York State Action against Seven Arts Companies) and after July 14, 2014 (the date Arrowhead commenced the Federal Court Action against other Seven Arts Companies SAE and SAFELA) is a fraudulent conveyance as to which the statute of limitations has not run.   Thus, the statute of limitations has not run as to any such transfer of NY Trust Funds for Debtor's predecessor Leeway, Debtor, or for any of the Royal Street Properties [Complaint ¶¶125-127].

Debtor does not dispute, and so implicitly concedes, application of that fraudulent transfer statute under which Arrowhead properly so seeks relief.

11.  The Complaint's Eighth Count for Fraudulent Transfers from the Seven Arts Companies Also Is Properly Pleaded and Not Time Barred.
      The Complaint's Eighth Count (¶¶128-139) pleads a claim for fraudulent transfer of funds received by or for Debtor's predecessor Leeway, Debtor or the Royal Street Properties -- each of them being managed by, and under dominion and control of Peter Hoffman, who knew the funds were being transferred for them without receipt of fair consideration; knew the transferor Seven Arts Companies were insolvent at the time of transfer (as they owed among other things more than $1.9 million dollars to Arrowhead under the NY state and federal courts judgements they never paid); and knew the transferors were rendered more insolvent after and as a result of the transfers.

New York's Debtor and Creditor Law includes as fraudulent transfer statutes:

"273. Every conveyance made … is fraudulent as to creditors without regard to his actual intent if the conveyance is made… without a fair consideration."

21

"274. Every conveyance made without fair consideration when the person making it is engaged … in a business .. for which the property remaining his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors … without regard to his actual intent."

"276. Every conveyance made … with actual intent, … to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

The statute of limitations for constructive fraud is six years [CPLR 213(1)], but for actual fraud is the greater of six years from the fraudulent transfer or two years after the fraud was or reasonably could have been discovered [213(8)]. Those statutes thus apply to transfers of funds by and through the Seven Arts Companies for Debtor's predecessor Leeway, Debtor or Royal Street Properties at least as far back as 2013.

12. The Ninth Count for Unjust Enrichment Is Properly Pleaded and Not Time Barred.

The Ninth Count (¶¶140-146) properly pleads that Debtor's predecessor Leeway, Debtor, and the Royal Street Properties have been unjustly enriched by NY Trust Funds which were embezzled or otherwise misappropriated from Arrowhead. See La. Civil Code Art. 2298 "a person who has been enriched without cause at the expense of another person is bound to compensate that person". A claim for trust funds wrongfully transferred by which Debtor has been so unjustly enriched is subject to a "liberative prescription of ten years" [Civ. Code Art. 3499]. *See Onstott v. Certified Capital Corporation*, 950 So. 2d 744, 747 (1 Cir. 2006), citing *Gulfsteam Services, Inc. v. Hot Energy Services, Inc.*, 907 So. 2d 96, 100 (2005), *writ den.*, 904 So. 2d 706 (2005). *See also Joyner v. S.F.L. & S.I. L., LLC, supra*, 485 B.R. at 559-600.

Debtor does not dispute and so implicitly concedes, the allegations of this Count.

13. The Verified Complaint's Tenth Count for Fraud/Fraudulent Concealment Is Properly Pleaded and Not Time Barred.

22

As described in the Complaint (¶¶80-87) and repeated in the Tenth Count (¶¶147-155), the Seven Arts Companies and Debtor were required to hold NY Trust Funds as trustees for Arrowhead; were required (but have refused) to account to Arrowhead for the NY Trust Funds; but have knowingly, intentionally, and fraudulently withheld and concealed documents and information as to NY Trust Funds received and disbursed.

As also described in the Complaint (¶¶47-48), transfer of the NY Trust Funds and other property mortgaged as "Collateral" to Arrowhead [Master Agreement §§2.7 & 5.1] violates (among other things) NY Penal Laws §§155.05 ("Larceny/Embezzlement"), 185.05 ("Fraud Involving a Security Interest") and 185.10 (Fraudulent Disposition of Mortgaged Property).

The federal district Court has now ordered Seven Arts Companies SAE/SAFELA to answer Arrowhead's post-judgment discovery requests with respect thereto by May 22, 2020 [Arrowhead Request for Judicial Notice, Ex. 1].

Rule 9(b) pleading requirements for fraud/fraudulent concealment "are relaxed where the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge". *Medve Energy Ventures, LLC v. Warhorse Oil & Gas, LLC, supra*, 2018 WL 7051038 at *3 citing a string of Fifth Circuit case law.

Tellingly, Debtor motion papers do not point to any element of fraud/fraudulent concealment which Arrowhead failed to plead; rather, Arrowhead has properly pleaded the elements of fraud/fraudulent concealment. In light of refusal of the trustees of the NY Trust Funds to account for and provided discovery with respect to the embezzled Trust Funds, that Tenth Count cannot be and is not time-barred.

14. The Federal Court Previously Rejected the Similar Argument (Repeated by Debtor) That Debtor Was Required to Be Added as a Party to Arrowhead's New York Actions.

Debtor now argues that it is in privity with the Seven Arts Companies and so should have been (but was not) named as a defendant in the actions in New York state and federal courts against the Seven Arts Companies, citing *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169 (5th Cir. 1992). However, it is highly improper for Hoffman affiliate Debtor to so argue to this Court without disclosing that a similar argument was previously made by the Seven Arts Companies to, and rejected by, the federal Courts in New York. *See Arrowhead Capital Finance, Ltd. v. Seven Arts Entertainment, Inc.*, 2016 WL 4991623 at *16 (S.D. NY 2016), *affirmed* 739 Fed. Appx. 701 (2018), which held:

(i) *Russell* distinguishable because plaintiff Arrowhead is not arguing that Debtor owes more than the Seven Arts Companies, but rather "simply trying to collect the money that those defendants owe under the" existing judgments against Seven Arts Companies; and

(ii) under New York law governing "effect" and "enforcement" of the Arrowhead Note and related documents (and so under NY CPLR Rule 3002), plaintiff who may maintains an action and obtains judgment against one defendant, is not barred from thereafter pursuing an action against, or for conversion of property by, another, citing *Seaman v. Fichet-Bauche N. Am., Inc.*, 575 NYS 2d 122, 124 (2d Dept. 1991).[11]

---

[11] CPLR Rule 3002 states:

(a) "Where causes of action exist against several persons, the commencement or maintenance of an action against one, or the recovery against one of a judgment which is unsatisfied, shall not be deemed an election of remedies which bars an action against the others.

(c) Where causes of action exist against several persons for the conversion of property …, the commencement or maintenance of an action against one, or the recovery against one of a judgment which is unsatisfied, … for the conversion … shall not be deemed an election of remedies which bars an action against the others … for the conversion…"

15. <u>Leave to Amend to Cure Any Deficiency and to Reflect Newly Obtained Documents and Information.</u>

As set forth in Rule 15(a)(2) "The court should freely give leave [to amend a pleading] when justice so requires.  "Justice so requires" in the case at hand as preparation of *cestui que trust* Arrowhead's Complaint has been impeded, impaired and prejudiced by refusal  to provide to, and withholding and concealment from, Arrowhead of accountings, documents and information in violation of trust and discovery obligations and discovery orders.  Meanwhile, federal Judge Failla's April 2020 Order requires Hoffman affiliates SAE and SAFELA answer Arrowhead's discovery requests by May 22, 2020 and so produce missing documents and information relating to (among other things) receipt and transfer of the NY Trust Funds and related matters [Arrowhead's Request for Judicial Notice Ex. 1].

Accordingly, if this Court finds pleading any of the Counts insufficient, Arrowhead requests leave to amend to cure any deficiency and to reflect any documents so obtained and information provided.

## III. <u>CONCLUSION.</u>

WHEREFORE, plaintiff Arrowhead respectfully requests that defendant Debtor's Motion for dismissal of this Adversary Proceeding be DENIED.

Respectfully submitted,

/s/Barry L. Goldin         and    PEIFFER WOLF CARR & KANE
BARRY L. GOLDIN, ESQ.           BY:  /s/Daniel J. Carr
3744 Barrington Drive           1519 Robert C. Blakes, Sr. Drive, 1st Floor
Allentown, PA 18104-1759        New Orleans, Louisiana 70130
Telephone: (610) 336-6680       Telephone: (504) 586-5270
Fax: (610) 336-6678             Fax: (504) 523-2464
Email: barrygoldin@earthlink.net   Email: dcarr@pwcklegal.com
             *Attorneys for Arrowhead Capital Finance, Ltd.*
                                    ARR000426.1OPPRAPDISM

25