UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CASE NO.: 19-12337 |
| | * | |
| ROYAL ALICE PROPERTIES, LLC | * | SECTION "A" |
| | * | |
| Debtor | * | CHAPTER 11 |
| ******************************************* | | |
| ARROWHEAD CAPITAL FINANCE, LTD., | * | |
| | * | |
| Plaintiff | * | Adv. Proc. No. 20-01022 |
| v. | * | |
| | * | |
| ROYAL ALICE PROPERTIES, LLC, | * | |
| | * | |
| Defendant | * | |
| | * | |

**DEBTOR ROYAL ALICE PROPERTIES LLC'S REPLY TO ARROWHEAD CAPITAL
FINANCE LTD.'S OPPOSITION TO DEBTOR'S MOTION TO DISMISS
ARROWHEAD'S COMPLAINT**

Introduction.  The Opposition ("Opposition") [Dkt. 15] of Arrowhead Capital Finance Ltd.

("Arrowhead") to Debtor Royal Alice Properties LLC's ("Debtor") Motion To Dismiss ("MTD")

[Dkt. 11], Arrowhead's Complaint ("Complaint") [Dkt. 1] concedes that all its claims for alleged

revocatory or fraudulent transfer of money or property from its judgment debtors SAE and

SAFELA[1] to Debtor or in connection with Real Property Assets are prescribed under Louisiana

law.  Arrowhead's Complaint does not begin to meet the standards of FRCP 9(b) or Life Partners,

---

[1] Seven Arts Entertainment, Inc. as well as Seven Arts Filmed Entertainment Louisiana
LLC pursuant to the Arrowhead Judgment [Complaint Ex. 2B]. All defined terms used herein shall
have the meanings assigned in the MTD. The Arrowhead Judgment was based on a First Amended
Complaint filed on October 7, 2014 by Arrowhead in the second New York action ("Arrowhead
New York Complaint") which Arrowhead notably did not attach to its Complaint in this action but
is included as Exhibit 8 in Debtor's Supplemental Request For Judicial Notice filed herewith
("Supp. RJN").

1

926 F.3d at 116-17, as discussed in the MTD at 7-9, for specificity of allegations of any alleged revocatory or fraudulent transfer (or any re-titled versions thereof) not prescribed under Louisiana law.  All the many "undocumented transfers" referenced by Arrowhead are a "many digited sum which solves to zero" as the poet wrote.

As best Debtor can ascertain, Arrowhead's Complaint now hangs on three raveling threads all of which sever themselves on analysis of Arrowhead's Opposition:

1.      <u>New York Statute Of Limitations Does Not Apply To Arrowhead's Claims Barred By Claim Preclusion</u>.  Arrowhead argues New York statutes of limitation applies to its claim of "embezzlement" (really alleged revocatory transfers) in this proceeding because the underlying loan documents with SAE's transferee, PLC, chose New York law, for purposes of the actions on those loan documents which led to the Arrowhead Judgment.  However, Arrowhead nowhere alleges that Debtor agreed to that choice of law clause and it did not. As set forth in Part A below, only Louisiana law of prescription and preemption applies to Arrowhead's revocatory claims alleged in its Complaint whether entitled "embezzlement," "accounting," "fraudulent concealment," or "fraudulent transfer."

Despite two court decisions in its favor in New York, Arrowhead can point to no decision holding that any funds were "embezzled" by SAE or SAFELA and of course none were, as stated in the MTD at 6-7 and 11.  The Arrowhead Judgment itself only holds [Complaint Ex. 2B] that SAE and SAFELA liable on the original New York judgment by reason of a "de facto" merger (even though that claim was not even alleged) but refused to grant relief on the passel of other claims, including "embezzlement," raised by Arrowhead in its New York Complaint [Supp. RJN Ex. 8]. As argued in Part B below, all Arrowhead's claims of "embezzlement" are barred by claim preclusion arising from the final Arrowhead Judgment, as are all Arrowhead's other attempted re-

titling of revocatory claims as claims for "accounting," "unjust enrichment," "fraudulent concealment" or "fraudulent transfers," none of which are alleged with the specificity required by Rule 9(b) and <u>Life Partners.</u>

      2.    <u>Arrowhead's SBE And Other Claims Are Barred By Claim Preclusion, Prescription And Are Legally Insufficient On Their Face</u>.  In perhaps in its most revealing faux pas, Arrowhead claims that it was "highly improper" for the Debtor to fail to advise the Court that the Second Circuit (in an opinion cited in the MTD) rejected SAE's argument based on <u>Russell</u> (MTD at 20-21) that claim preclusion barred that new suit.  Indeed, the Second Circuit did rule against SAE on that issue but, as discussed in Part B below, for reasons that establish application of <u>Russell</u> in this case, not just barring SBE claims but all other claims, "embezzlement" and the like, alleged in Arrowhead's New York Complaint against SAE and SAFELA for which no relief was granted.

      3.    <u>Arrowhead's Allegations Of Nullity And Simulation Are Insufficient As A Matter Of Law</u>.  Recognizing that its claims or revocatory or fraudulent transfer are all prescribed if not perempted, Arrowhead seeks to apply the doctrines of "simulation" and "nullity" to resurrect claims almost a decade old which are not themselves sufficiently alleged.  But Arrowhead fails to even address the arguments in the MTD (at 15-18):  as a matter of law no claim for absolute simulation can lie to contradict public property records or without a "counter letter."  Nor is a conclusory allegation of "embezzlement" sufficient to make a transfer of funds an absolute nullity as an entire void contract.  Arrowhead seems to have abandoned any claims of relative simulation or nullity.  The legal insufficiency of Arrowhead's "hail mary" pass at avoiding prescription by conclusory allegations of absolute simulation and nullity are knocked down in Part C below.

**ARGUMENT**

A.    <u>New York Statutes Of Limitation Do Not Apply To any Claim Of "Embezzled"</u>
      <u>Funds Not Paid To Debtor</u>.

It is fundamental law that a party (here Debtor) is not bound by a "choice of law" clause
unless the party agreed to it.  Arrowhead does not claim that Debtor executed any contract under
which it agreed to application of New York law to any dispute and it did not.  See <u>Resolution Trust</u>
<u>Corp. v. Northpark Joint Venture</u>, 958 F.2d 1313, 1318 (5th Cir. 1992).  Arrowhead attempts to
slide away from that baseless claim by citing an inapplicable case applying "conflict of laws"
analysis, not enforcement of "choice of law" clauses.  Arrowhead appears to argue for application
of the Federal "most significant contacts" analysis as a basis for applying New York <u>statutes of</u>
<u>limitations</u> yet Arrowhead's Complaint neither alleges nor argues any contacts at all by Debtor or
the Real Property Assets to New York (there are none).  And any such reference to "most
significant contacts" is in any event rejected by LA. CIV. CODE Art. 3549A.

As argued in the MTD (at 14) Louisiana law determines the prescriptive and preemption
periods applicable to claims in Louisiana courts of improper or even illegal transfers of funds from
a judgment debtor to the Debtor, a Louisiana LLC, for use in connection with the Real Property
Assets located in Louisiana.  Arrowhead does not address any of those controlling authorities.  All
claims against Debtor, as the alleged recipient of Arrowhead (fantastical) claims of "embezzled
funds," must be determined based on Louisiana law and hence the Louisiana prescriptive period
applies.  All such claims are therefore prescribed and preempted whether characterized as
"embezzlement," "accounting," "fraudulent concealment" or "fraudulent transfer" because

Arrowhead alleges no specific transfer within the Louisiana prescriptive period sufficient under Rule 9(b) and Life Partners.

As a result, the prescriptive period applicable to such claims asserted against Debtor is determined by Louisiana law, not New York law. Neither Debtor, SAE (a California company), the senior lender (a UK company), payors of the funds (to PLC's UK bank accounts) or the Real Property Assets have any contacts with New York. The Complaint is thus fatally deficient even under the (inapplicable) "most significant contacts" analysis because it alleges no contacts with New York other than a collection account which Arrowhead acknowledges was never used.

Arrowhead cites In re Mirant, 675 F.3d 530, 537 (5th Cir. 2012) but that case decided whether Georgia or New York law applied to a fraudulent transfer claim brought in a Texas court. The Court applied the "most significant contacts" test and found that George has little interest in enforcing a repealed law. Here, none of Debtor, Mrs. Hoffman or even SAE have any contacts at all with New York. While SAE was held bound by the choice of law clause in the loan documents for the three Pictures in the New York actions, the money it collected was in the UK and California. Nothing ever touched New York, which is Arrowhead's (baseless) complaint.[2]

In a footnote (at 10 n. 5), Arrowhead cites to LA. CIV. CODE Arts. 3543 and 3544 dealing with choice of law in cases of injury, claiming that Arrowhead's "injury" occurred in New York. Neither Article purports to over-rule or could affect application of LA. CIVL CODE Art. 3549A applicable to the issue here before the Court: the Louisiana law of prescription and peremption. Article 3549A requires this Court to apply Louisiana law which prescribes and preempts the insufficiently alleged fraudulent transfer claims made by Arrowhead.

---

[2] Arrowhead's other cite to a non-precedential ruling is even further afield, addressing whether the policies of ERISA should override a choice of law clause executed by the parties. Jimenez v. Sun Life Assurance Co. of Canada, 486 Fed. Appx 398, 408-09 (5th Cir. 2012).

B.   Arrowhead's Claims Of SBE Are Barred By Claim Preclusion And Insufficient

Alleged.

It is certainly true that SAE asserted claim preclusion against Arrowhead based on the

principles of Russell in the second Federal action against it by reason of the prior judgment against

PLC in state court and that the Second Circuit rejected that claim for two reasons.  Arrowhead

Capital Finance Ltd. v. Seven Arts Entertainment, Inc. et al., 739 Fed. Appx 701, 703 (2d Cir.

2018) holding SAE and SAFELA bound to the original state court judgment  of the New York

Supreme Court affirmed in Arrowhead Capital Finance Ltd. v. Seven Arts Pictures plc, 110 A.D.

23d 514, 973 N.Y.S.2d 899 (1st Dept. 2013) ("Original Judgment").

The first reason stated by the Second Circuit was a provision of New York law, permitting

seriatum suits against joint obligors. That reason is not relevant here because (a) New York law

does not apply, (b) that rule does not apply to derivative liability against a party which did not

itself incur the obligation, and (c) even if Debtor were a "co-obligor", the New York limitation

period has long since expired for alleged breaches of contract in 2008 or the other defalcations

alleged in the Arrowhead New York Complaint [Supp. RJN Ex. 8].

The second reason offered by the Second Circuit is the one of importance to this case:

"Additionally, at the time the state suit was filed [May 2010] Arrowhead
did not have claims against SAE and SAFELA because SAE and SAFELA
did not receive PLC's assets [June 2010] until after Arrowhead brought its
initial claim."

The Second Circuit does not mention that the transfer of assets to SAE (nothing was ever

transferred to SAFELA) occurred in June 2010, one month after the state suit was filed, and the

Original Judgment in the state suit was entered on September 2012, long after the transfer to SAE

was publicly announced.  But even the Second Circuit's mightily constrained interpretation of the Russell rule, and of the claim preclusion protection given to privies in the Restatement, establishes that claim preclusion bars all Arrowhead's SBE and other claims against Debtor in this case.

Following that logic of the Second Circuit, when Arrowhead filed its New York Complaint on October 7, 2014 [Supp. RJN Ex. 8], Arrowhead had all the same claims against Debtor (formed at the end of 2011) and Mr. Hoffman that Arrowhead now asserts, and indeed did assert such claims against SAE and SAFELA in the Arrowhead New York Complaint, although none were adjudicated in the Original Judgment.  Arrowhead waxes *in extremis* regarding the "millions" expended by Leeway Properties all prior to February 2011 when Leeway ceased business. Arrowhead never alleges with specificity that any of those sums were expended for the Real Property Assets after October 7, 2014 (none were) but whatever claims Arrowhead had regarding any SBE or "alter ego" among Leeway, Debtor, Mr. Hoffman and Mrs. Hoffman were available to it and by its own allegation known to its counsel on October 7, 2014 when the action that led to the Arrowhead Judgment was filed.

As a result, any SBE or alter ego claim against Debtor based on such derivative liability is barred by claim preclusion as held in Russell.  Any such claims are also prescribed and preempted, an argument Arrowhead declines to address as set forth in the MTD (at 21-22).  Further, claim preclusion and prescription applies not just to Arrowhead's SBE claims but also to all its other conglomeration of revocatory claims entitled "embezzlement," "accounting," "fraudulent concealment," and "fraudulent transfer." Arrowhead had previously made all these same types of claims against PLC, SAE and SAFELA both in the original state court action and in the second Federal action, yet obtained no relief on these claims in any judgment as is clear from the Original

Judgment and the Arrowhead Judgment [Complaint Ex. 2A] itself which merely holds SAE and SAFELA liable under the Original Judgment.

In its New York Complaint, Arrowhead alleged against SAE and SAFELA claims for breach of contract, breach of duty to account, breach of trust, conversion ("embezzlement"), replevin and foreclosure on collateral [Supp RJN Ex. 8]. However, Arrowhead obtained no relief in the final Arrowhead Judgment on any of these Causes of Action, which were of course barred by claim preclusion arising from the Original Judgment which included no relief on those claims. The Arrowhead Judgment dismissed *sub silencio* Arrowhead's Third through Eighth Causes of Action, alleging the same defalcations now alleged against Debtor, presumably because it acknowledged all such claims were barred by claim preclusion.

Arrowhead waived those claims against SAE and SAFELA in order to obtain the final Arrowhead Judgment on its first two causes of action for declaratory relief, which the District Court "reinterpreted" as claims based on "de facto" merger (which in fact were never alleged). The District Court thus entered a monetary judgment based on the allegations of those two declaratory relief causes of action and nothing else.

But even beyond claim preclusion or prescription, Arrowhead's claims of an SBE are woefully insufficient under Green. As stated in the MTD, Arrowhead's claim is premised on the magical transformation of Mr. Hoffman into a controlling owner of Unit C 912 Royal and Unit E 906 Royal (but not 900 Royal) through donation by Leeway Properties of those Units to Debtor in December of 2011, filed in the Orleans Parish property records and certified by an authentic act. The Opposition's scant three pages of response to the MTD's extensive discussion of the SBE doctrine (at 22-26) and its requirements does not address the seminal case law demonstrating that Arrowhead's allegations are legally insufficient to allege an SBE.

Once Arrowhead's fantastical attribution of ownership of Debtor's assets is discarded, the Complaint is reduced to a series of conclusory allegations that do not show a "unified administrative control of corporations whose business functions are similar or supplementary" or one corporation "using property of another corporation as its own " or businesses that "functioned as a single economic activity." Obviously, Debtor and Mrs. Hoffman's Real Estate Assets in New Orleans and SAE's film production business have nothing in common, were not managed together and do not represent a "single interest."  Some common managers (even if established) is not sufficient as a matter of law.

Debtor cannot be an alter ego of SAE or vice versa when in fact there was no common ownership at all.  Mrs. Hoffman's and Debtor's Real Property Assets are theirs alone, managed by her in New Orleans and not managed by Mr. Hoffman in Los Angeles. SAE's film business in Los Angeles was not managed by Mrs. Hoffman from New Orleans.  Arrowhead doesn't even allege any facts contradicting such clearly evident facts.

C.    <u>Arrowhead's Allegations Of Absolute Nullity And Absolute Simulation Are Insufficient As A Matter Of Law</u>.

As its wont, Arrowhead declines to address the arguments and authorities presented in the MTD (at 14-18) showing that as a matter of law no transaction alleged by Arrowhead could be an absolute simulation. Louisiana "public records" protection applies to all transfers of the Real Property Assets to Mrs. Hoffman or Debtor, confirmed by authentic acts, as provided in LA. CIV, CODE Art. 2035.  Second, Arrowhead can produce no "counter letter" as required by LA. CIV. CODE Art. 1849 intended to weed out bogus claims of simulation such as those made by Arrowhead.  And Arrowhead does not allege that the various donations or transfer of any assets

are not exactly what the parties intended and therefore cannot be simulations, even if arguably revocatory transfers barred by prescription (they are not).

Recognizing that any claim of relative nullity is barred by the prescriptive period of LA. CIV. CODE Art. 2032, Arrowhead finally resorts to a claim that the alleged transfer of "embezzled" funds or of certain Real Property Assets are an absolute nullity as a void illegal contract, without even alleging any of these "embezzled" funds were ever paid to Debtor. As stated repeatedly above, Arrowhead does not allege which exact funds were "embezzled" or where that "embezzlement" took place or when such "embezzlement" occurred. Arrowhead has no judgment of "embezzlement" despite two court victories in New York despite so alleging the same bogus claims in the New York actions. What exactly is the transfer/contract that is an absolute nullity? Apparently only the donation of two Units from Leeway to Debtor which was done pursuant to an authentic act and not illegal per se.

Arrowhead cites no Louisiana law or authority that a valid donation confirmed by an authentic act is nevertheless an absolute nullity, a contention absurd on its face. Arrowhead fails to cite the leading authority on the determination of the difference between a void absolute nullity and a voidable relative nullity. Radcliff 10, LLC v. Burger, 219 So.3d 296, 300 (La. 2017). There the Court stated that an absolute nullity is a contract which violates a "rule of public order" where the "object of a contract is illicit or immoral" as opposed to a contract arguably violating a provision of law "intended for the protection of private parties." Here even the fantastical claims of Arrowhead do not rise to claims of "illicit or immoral" contracts that violate a "rule of public order."

Arrowhead's claim of absolute nullity is no more than a back-door claim against a revocatory transfer barred by prescription. Arrowhead cites a pre-Radcliff case that has dicta

supporting its position. <u>Funk v. Clemson</u>, 925 So. 2d 717, 921 (La. 3d Cir. 2006).  <u>Funk</u> was decided based on a claim of relative nullity and the dicta is inconsistent with a later unreported post-<u>Radcliff</u> decision decided by the Third Circuit.  <u>Holland v. Holland</u>, 2017 La. App. Unpub. LEXIS 341 (La. 3d Cir. Nov. 2, 2017) at *10.  See <u>Crute v. Crute</u>, 226 So. 3d 1161, 1173 (1st Cir. 2017).  The other Federal case cited by Arrowhead (2013) does not support Arrowhead's argument or discuss <u>Radcliff</u>.

In sum, Arrowhead's claims of absolute simulation or nullity are not plausible claims under Louisiana law and may not be asserted to avoid the clear prescription and preemption of all of Arrowhead's insufficiently alleged claims of revocatory or fraudulent transfers (none of which ever occurred).

<u>Conclusion</u>.  Based on the foregoing, Debtor respectfully requests this Court to dismiss the Arrowhead Complaint without leave to amend.

Dated: May 11, 2020

_____

**STILLMAN & ASSOCIATES**
**PHILIP H. STILLMAN (Cal.152861)**
**3015 N. Bay Rd. Ste B**
**Miami Beach, FL 33140**
**Tel: (888) 235-4279**
**pstillman@stillmanassociates.com**

and

*/s/ Leo D. Congeni*

_____

**CONGENI LAW FIRM, LLC**
LEO D. CONGENI (#25626)
650 Poydras Street, Suite 2750
New Orleans, LA  70130
Telephone: 504-522-4848

Facsimile:  504-910-3055
Email:  leo@congenilawfirm.com

***Counsel for Royal Alice Properties, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Reply* was filed electronically on May 11, 2020, resulting in service via the Court's CM/ECF system on the following persons:

Leo D. Congeni on behalf of Defendant Royal Alice Properties, LLC
leo@congenilawfirm.com, michelle@congenilawfirm.com

Barry L Goldin, I on behalf of 3rd Party Plaintiff Arrowhead Capital Finance, Ltd.
barrygoldin@earthlink.net

Barry L Goldin, I on behalf of Plaintiff Arrowhead Capital Finance, Ltd.
barrygoldin@earthlink.net

*/s/ Leo D. Congeni*
_____

**Leo D. Congeni**