# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO: 19-12337 |
| | § | |
| ROYAL ALICE PROPERTIES, LLC, | § | CHAPTER 11 |
| | § | |
| DEBTOR. | § | SECTION A |
| | § | |

| | | |
|---|---|---|
| | § | |
| ARROWHEAD CAPITAL FINANCE, LTD, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | ADV. NO. 20-1022 |
| V. | § | |
| | § | |
| ROYAL ALICE PROPERTIES, LLC, | § | |
| | § | |
| DEFENDANT. | § | |

## ORDER & REASONS

Before the Court is **(1)** *Debtor Royal Alice Properties LLC's Motion and Incorporated Memorandum To Dismiss Complaint of Arrowhead Finance Capital Ltd.* (the "Motion To Dismiss"), [ECF Doc. 11], the Opposition filed thereto by Arrowhead Finance Capital Ltd. ("Arrowhead"), [ECF Doc. 15], the Reply Brief filed by Royal Alice Properties, LLC (the "Debtor" or "Defendant") in support of the Motion To Dismiss, [ECF Doc. 22], and *Objections of Plaintiff Arrowhead Capital Finance, Ltd. to Unsupported and False Purported "Fact" Statements in Debtor Royal Alice Properties, LLC's Reply Memorandum*, (the "Sur-Reply"), [ECF Doc. 25 & 50]; **(2)** *Debtor Royal Alice Properties LLC Request for Judicial Notice* (the "Debtor's Request for Judicial Notice"), [ECF Doc. 12], and the Opposition filed thereto by Arrowhead, [ECF Doc. 19], as well as *Plaintiff Arrowhead Capital Finance, Ltd.'s Request for Judicial Notice* ("Arrowhead's Request for Judicial Notice"), [ECF Doc. 17], and *Debtor Royal Alice Properties LLC's (A) Supplemental Request for Judicial Notice; (B) Response to Objection of Arrowhead*

*Capital Finance to Debtor's Request for Judicial Notice and (C) Response to Arrowhead's Request for Judicial Notice*, [ECF Doc. 21]; and **(3)** *Debtor Royal Alice Properties LLC's Motion To Strike Improper Sur-Reply Filed by Arrowhead Capital Finance Ltd*. (the "Motion To Strike") [ECF Doc. 28], and the Opposition filed thereto by Arrowhead, [ECF Doc. 33 & 37].

This Court heard oral argument on the above-listed motions on July 8, 2020. Having considered the pleadings, the arguments of the parties, and applicable law, the Court GRANTS IN PART and DENIES IN PART the Debtor's Request for Judicial Notice and GRANTS IN PART and DENIES IN PART Arrowhead's Request for Judicial Notice; GRANTS IN PART and DENIES IN PART the Motion To Dismiss, and GRANTS the Debtor's Motion To Strike.

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334(b). The matters presently before the Court constitute core proceedings commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure that this Court may hear and determine on a final basis under 28 U.S.C. §§ 157(b)(2)(A), (H), (K) & (O). The venues of Royal Alice Property, LLC's chapter 11 case and the related adversary proceeding are proper under 28 U.S.C. §§ 1408 and 1409(a).

## PROCEDURAL HISTORY

The Debtor filed a voluntary petition for bankruptcy relief under chapter 11 of the Bankruptcy Code on August 29, 2019. [Case No. 19-12337, ECF Doc. 1]. The Debtor's only assets consist of three real estate properties in the French Quarter neighborhood in New Orleans, Louisiana: (a) 900–902 Royal Street; (b) 906 Royal Street, Unit E; and (c) 910–912 Royal Street, Unit C. [Case No. 19-12337, ECF Doc. 2]. Only two creditors have filed proofs of claim against the Debtor's estate. One of those creditors, Arrowhead, filed a proof of claim for $1 million and

2

also initiated the above-captioned adversary proceeding, alleging in both that the Debtor is liable under alter-ego and/or single-business-enterprise theories, among others, for the unsatisfied obligations of several non-debtor affiliates of the Debtor against which Arrowhead has obtained money judgments.[1]

The Debtor filed the Motion To Dismiss on April 22, 2020, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and filed Debtor's Request for Judicial Notice, asking this Court to take judicial notice of seven exhibits attached to its Motion To Dismiss. Arrowhead opposed the Debtor's Motion To Dismiss, as well as the Debtor's Request for Judicial Notice, and filed its own Request for Judicial Notice, asking this Court to take judicial notice of two exhibits attached to its opposition to the Motion To Dismiss. The Debtor filed a reply brief in support of its own Request for Judicial Notice and responding to the Arrowhead Request for Judicial Notice. After the Debtor filed a Reply Brief in support of its Motion To Dismiss, [ECF Doc. 22], Arrowhead filed the Sur-Reply. The Debtor filed its Motion To Strike the Sur-Reply filed by Arrowhead, which Arrowhead opposed.

## FACTS AS ALLEGED BY ARROWHEAD IN THE COMPLAINT

### A. Arrowhead Obtained Judgments Against the Seven Arts Companies

On April 13, 2020, Arrowhead filed a 61–page Verified Complaint, attaching 39 exhibits. [ECF Doc. 3]. The Complaint seeks to hold the Debtor liable for debts owed to Arrowhead by

---

[1]    On March 5, 2020, the Debtor objected to Arrowhead's Proof of Claim No. 1 (the "Contested Matter"). [Case No. 19-12337, ECF Doc. 104]. Arrowhead filed a response to the Debtor's claim objection, [Case No. 19-12337, ECF Doc. 122], and the Debtor filed a Reply Brief, [Case No. 19-12337, ECF Doc. 124]. This Court held a hearing on the Contested Matter on April 8, 2020, allowed Arrowhead the opportunity to file a sur-reply, and took the matter under advisement. [Case No. 19-12337, ECF Doc. 129]. On April 16, 2020, this Court issued an Order pursuant to Federal Rule of Civil Procedure 42 and Bankruptcy Rule 7042, consolidating the Contested Matter and the adversary proceeding initiated by Arrowhead, finding that the transactions, facts, and circumstances underlying the Contested Matter arise from the same common nucleus of operative fact and factually and legally overlap substantially, if not entirely, with the claims alleged in the adversary proceeding. [Case No. 19-12337, ECF Doc. 151].

certain non-debtor affiliates of the Debtor (collectively, the "Seven Arts Companies"). Specifically, Arrowhead obtained two money judgments: (i) one awarded by the Supreme Court of the State of New York, New York County against Seven Arts Filmed Entertainment Limited, Seven Arts Pictures Inc., Deal Investments LLC, Deal Productions LLC, Rectifier Productions LLC, and Pool Hall Productions LLC in the amount of $2,496,159.50, plus 9% interest per annum from October 10, 2012, until paid (the "NY State Court Judgment"); and (ii) the second by the U.S District Court for the Southern District of New York ("SDNY") against Seven Arts Entertainment Inc. and Seven Arts Filmed Entertainment Louisiana LLC in the amount of $1,933,809, plus 9% interest per annum from January 3, 2020, until paid (the "NY Federal Court Judgment") (together with the NY State Court Judgment, the "Judgments"). Arrowhead recorded the NY State Court Judgment in Louisiana on May 2, 2014, and the NY Federal Court Judgment in Louisiana on January 31, 2020. *See* Compl. ¶¶ 27 & 43 & Exs. 1 and 2A.

The Judgments stemmed from the business relationship between Arrowhead's predecessor, Arrowhead Consulting Group, Inc. ("ACG") and certain of the Seven Arts Companies, all of which are affiliates of and are controlled by Peter Hoffman, who is married to Susan Hoffman, the sole member of the Debtor, and who, Arrowhead alleges, actually controls the Debtor. *See* Compl. ¶¶ 11–12, 15–18, 32. Memorialized in a promissory note and a Master Agreement, ACG agreed to finance movie productions of the Seven Arts Companies and, in exchange, each of the Seven Arts Companies granted a continuing first priority perfected security interest in certain collateral, including, but not limited to: distribution fees payable in connection with certain films; the Seven Arts Companies' rights, title, and interest in and to certain screenplays, scripts, and domestic and foreign copyrights; 8.1 million shares of one of the Seven Arts Companies; and a junior security interest in an affiliate's film library (collectively, the "Collateral"). *See* Compl. ¶¶ 18, 22–23 &

Exs. 2B & 3 (the "Master Agreement").  Pursuant to the Master Agreement, all proceeds of the Collateral ("Collateral Proceeds") were to be deposited by the Seven Arts Companies in an account at Chase Manhattan Bank, New York, in trust for the sole benefit ACG, and, later, Arrowhead (the "Trust Account").  *See* Compl. ¶¶ 19, 24 & Ex. 3, § 5.3.  The Master Agreement contained a choice-of-law provision, indicating that it "shall be governed by and construed in accordance with the laws of the State of New York," and a venue provision that stated that the parties to the agreement "irrevocably submit to the jurisdiction of the state and federal courts located in the Borough of Manhattan, The City of New York, in the State of New York, for the resolution of any and all disputes arising hereunder."  Master Agreement, § 9.5.5.

In time, the relationship soured and on May 5, 2010, Arrowhead filed suit in New York state court, alleging breach of and default under the promissory note, the Master Agreement, and related documents for failing to pay monies due and payable to Arrowhead (the "NY State Court Action").  *See* Compl. § 26.  Throughout the NY State Court Action and afterward, the Seven Arts Companies refused to provide Arrowhead an accounting or other information regarding the Collateral Proceeds that they were required to hold in trust and remit to Arrowhead.  *See* Compl. § 28.  Ultimately, Arrowhead obtained the NY State Court Judgment; however, while the NY State Court Action progressed, Peter Hoffman transferred or arranged the transfer of the assets of certain of the Seven Arts Companies to a newly created affiliate, Seven Arts Entertainment, Inc., leaving the parties to the Master Agreement judgment proof.  *See* Compl. ¶ 29.

In July 2014, Arrowhead filed suit in the SDNY (the "SDNY Action") against Seven Arts Entertainment, Inc., and, thereafter, Seven Arts Entertainment, Inc. transferred its assets to its affiliate, Seven Arts Filmed Entertainment Louisiana, LLC, of which Peter Hoffman was the sole managing member.  *See* Compl. ¶¶ 30–33 & Ex. 8.  Arrowhead then joined Seven Arts Filmed

Entertainment Louisiana, LLC in the suit against Seven Arts Entertainment, Inc., and eventually obtained the NY Federal Court Judgment, in which the SDNY found that Arrowhead had proven "de facto merger[s]" between Seven Arts Entertainment, Inc., *see* Compl. ¶ 31, and at least one of the Seven Arts Companies as well as between Seven Arts Entertainment, Inc. and Seven Arts Filmed Entertainment Louisiana, LLC, *see* Compl. ¶¶ 43–44 & Ex. 2B. The SDNY held those defendants jointly and severally liable with certain of the Seven Arts Companies that were parties to the Master Agreement and judgment debtors under the NY State Court Judgment. *See* Compl. ¶¶ 43–44 & Ex. 2B.

As with the NY State Court Action, the defendants to the SDNY Action, all entities controlled by Peter Hoffman, refused to provide bank statements or other records that would account for the Collateral Proceeds that were to be deposited in trust and paid to Arrowhead under the Master Agreement. *See* Compl. ¶ 37. The SDNY held Peter Hoffman, Seven Arts Entertainment, Inc., and Seven Arts Filmed Entertainment Louisiana, LLC in contempt for failure to provide an accounting and ordered that they pay sanctions to Arrowhead. *See* Compl. ¶ 40. Arrowhead alleges that Peter Hoffman and the Seven Arts Companies have never paid any of the Judgments or sanctions, nor have they purged their contempt. *See* Compl. ¶ 40. Relying on bank statements obtained through Arrowhead's own efforts, the SDNY found that funds held by Seven Arts Entertainment, Inc., and Seven Arts Filmed Entertainment Louisiana, LLC, included Collateral Proceeds that should have been placed in trust and paid to Arrowhead, but had instead been used by Peter Hoffman for his own benefit. *See* Compl. ¶¶ 37–42.

Through post-judgment discovery of third parties, Arrowhead discovered that the Seven Arts Companies (now including Seven Arts Entertainment, Inc and Seven Arts Filmed Entertainment Louisiana LLC) continued to earn income from their interests in the Collateral, *see*

Compl. ¶ 50 & Exs. 7–9D, but they did not deposit those proceeds in the Trust Account or otherwise pay Arrowhead pursuant to the Judgments, *see* Compl. ¶¶ 46.  To date, none of the Seven Arts Companies or their affiliates, such as another of Peter Hoffman's companies, PicturePro, LLC ("PicturePro"), have provided financial information or an accounting of the Collateral Proceeds that were to be deposited in trust and paid to Arrowhead; rather, Arrowhead alleges that Peter Hoffman, his family members, and representatives have stymied all requests for information and an accounting.  *See* Compl. ¶¶ 80–87.

### B. Peter Hoffman and His Family Have Diverted Proceeds of the Collateral Owed to Arrowhead for Their Own Benefit

According to the Complaint, Peter Hoffman and his immediate family have exercised dominion and control over the Seven Arts Companies, as well as other non-debtor affiliates.  *See* Compl. ¶¶ 32–36 & Ex. 8.  They have not observed corporate formalities among those affiliates, have commingled funds among the accounts of the affiliates, and have paid their personal expenses and other obligations from Collateral Proceeds that should have been deposited in trust for the benefit of Arrowhead.  *See* Compl. ¶¶ 34–36, 46.

One of those non-debtor affiliates that received transfers from the Seven Arts Companies is Leeway Properties, Inc. ("Leeway"), a Louisiana corporation.  *See* Compl. ¶¶ 8, 65.  As reported on his Louisiana state tax returns, as of 2008, Peter Hoffman owned 100% of the interest in Leeway; from 2009 to 2011, Peter Hoffman reported holding at least a 50% interest in Leeway. *See* Compl. ¶¶ 10, 62, 64 & Ex. 19A.  Since 2008, Peter Hoffman served as Leeway's President, Vice President, Secretary, and bank signatory; he and the staff of the Seven Arts Companies, located in Los Angeles, maintained Leeway's books and records and managed its business.  *See* Compl. ¶¶ 9, 62 & Exs. 19B–19D.

At some time prior to 2009, Peter and/or Susan Hoffman began purchasing various properties located on Royal Street in New Orleans (the "Royal Street Properties") and owned them individually.  *See* Compl. ¶¶ 51–52, 55–60 & Exs. 10–16.  The Seven Arts Companies paid for all expenses for the Royal Street Properties.  *See* Compl. ¶ 61.  At some point, as creditors pursued claims against Peter Hoffman, the Hoffmans transferred their ownership of the Royal Street Properties to Leeway to disguise Peter's personal ownership of those Properties.  *See* Compl. ¶ 62.  Despite transferring their ownership interests of the Royal Street Properties, the Hoffmans and the Seven Arts Companies continued to manage those Properties and Leeway and the Hoffmans, as co-directors of Leeway, authorized Leeway to borrow money and grant mortgages on those Properties.  *See* Compl. ¶¶ 62 & n.7, 63 & Ex. 18.  During the period of August 2008 through January 2011, Peter Hoffman transferred or caused to be transferred more than $3 million from the Seven Arts Companies to Leeway.  *See* Compl. ¶ 65–66 & Ex. 20.

Another of those non-debtor affiliates that received transfers from the Seven Arts Companies is PicturePro, of which Peter Hoffman and Seven Arts Entertainment, Inc., are members.  *See* Compl. ¶¶ 17, 50 & Ex. 8.  At some point between January 1, 2016, and December 31, 2017, Seven Arts Entertainment, Inc. transferred all of its rights and interests to PicturePro.  *See* Compl. Ex. 8.  On January 1, 2019, Peter Hoffman, as the authorized representative of Seven Arts Entertainment, Inc., and Seven Arts Filmed Entertainment Louisiana LLC, instructed that certain Collateral Proceeds be remitted by the distributor to PicturePro instead of Seven Arts Entertainment, Inc., and Seven Arts Filmed Entertainment Louisiana LLC.  *See* Compl. ¶¶ 17, 50 & Ex. 8.

8

### C. The Debtor Has Received Transfers of Collateral Proceeds Owed to Arrowhead

During the period between August 2008 and January 2011 when Peter Hoffman transferred or caused to be transferred more than $3 million from the Seven Arts Companies to Leeway, *see* Compl. ¶ 65, the operation of Leeway by Peter and Susan Hoffman became the subject of litigation in the U.S. District Court for the Eastern District of Louisiana (the "EDLA"). Jonesfilm, a judgment creditor of Peter Hoffman and NTTS Productions Ltd. (another of Hoffman's affiliated entities) learned through SEC filings that Hoffman and his co-judgment corporate debtors (controlled by Hoffman) owned and controlled several Louisiana limited liability companies and that Hoffman had transferred millions of dollars to and through the Louisiana companies. *See* Compl. ¶¶ 66–67, 69 & Ex. 22. Jonesfilm filed suit in the EDLA to enforce its California judgments that had been recognized in Louisiana against assets of Peter Hoffman and the co-judgment corporate debtors. *See* Compl. ¶¶ 66–67, 69 & Ex. 22.

In November 2011, the EDLA held Hoffman, his co-judgment corporate debtors, and their affiliated garnishees—including Leeway—in contempt and ordered Hoffman and Leeway to turn over approximately $174,000 of garnished funds that Leeway had wrongfully transferred to and for Hoffman and his co-judgment corporate debtors. *See* Compl. ¶¶ 67, 69 & Ex. 22. A week after the EDLA issued those orders, Peter and Susan Hoffman created Royal Alice Properties, LLC, the Debtor in this bankruptcy proceeding, to which they transferred all assets of Leeway, including certain Royal Street Properties. *See* Compl. ¶¶ 63, 68–70 & Ex. 22. That transfer was made without consideration, rendering Leeway judgment proof. *See* Compl. ¶¶ 68–70 & Ex. 22. The Hoffmans' transfer of Leeway's assets to the newly formed Royal Alice Properties, LLC, occurred as of November 23, 2011, and was recorded in the mortgage records of Orleans Parish, Louisiana, on December 5, 2011. *See* Compl. ¶ 68 & Ex. 21.

**D. Peter Hoffman and His Family Have Operated the Seven Arts Companies, Leeway, the Debtor, PicturePro, and Other Affiliated Companies as One Entity**

Peter Hoffman has or had a substantial membership interest in and controlled each of the Seven Arts Companies (including Seven Arts Entertainment, Inc., and Seven Arts Filmed Entertainment Louisiana, LLC). *See* Compl. ¶¶ 32–36 & Ex. 2B (signing promissory note in favor of Arrowhead obligating each of the Seven Arts Companies), Ex. 3 (signing Master Agreement and Letter of Direction as manager or CEO of each Seven Arts Company) & Ex. 8 (signing as the sole managing member of Seven Arts Filmed Entertainment Louisiana, LLC and as the Authorized Officer of Seven Arts Entertainment, Inc.).

As identified in state tax returns, Peter Hoffman owned 100% of the interest in Leeway in 2008 and from 2009 to 2011, he reported holding at least a 50% interest in Leeway. *See* Compl. ¶¶ 10, 62 & 64. Since 2008, Peter Hoffman served as Leeway's President, Vice President, Secretary, and bank signatory; he and the staff of the Seven Arts Companies maintained Leeway's books and records and managed its business. *See* Compl. ¶¶ 9, 62. Prior to 2008, Peter Hoffman served as a director of Leeway. *See* Compl., Ex. 17. In November 2011, Leeway transferred all of its assets to the newly organized Royal Alice Properties, LLC, the Debtor in this case, for no consideration. *See* Compl. ¶¶ 8, 63, 68–70 & Exs. 20 & 22. Although Susan Hoffman is listed as the sole managing member of the Debtor, Peter Hoffman testified at the Debtor's § 341 meeting of creditors as the designated "authorized representative" of the Debtor on the basis that he has knowledge of the Debtor's financial affairs, prepared the Debtor's bankruptcy documents, and deals with all matters relating to the financing of the Royal Street Properties. *See* Compl. ¶ 77 (citing § 341 meeting transcript, No. 19-12337, ECF Doc. 109). Peter Hoffman is also the managing member and authorized representative of PicturePro. *See* Compl, Ex. 8.

10

Arrowhead's Complaint asserts that Peter Hoffman and members of his family have operated the Seven Arts Companies, Leeway, the Debtor, PicturePro and other affiliated companies as a single entity and failed to observe corporate formalities.  *See* Compl. ¶¶ 33–35. Hoffman, having no personal accounts of his own, has commingled funds of and paid for personal expenses as well as the expenses of other affiliates from the funds of the Seven Arts Companies and their affiliated companies.  *See* Compl. ¶¶ 42, 61–62.  The Debtor had no accounts of its own prior to the filing of this bankruptcy case (revenues were deposited directly into Susan Hoffman's bank account), has never had employees or financial statements of its own, has never kept its own books and records, and has never filed tax returns.  *See* Compl. ¶¶ 71–72 (citing § 341 meeting transcript, No. 19-12337, ECF Doc. 109).  The Hoffmans caused the Debtor to enter into a long-term lease prepetition with affiliate Picture Pro, backdated to January 2018, for use of one of the Royal Street Properties, but has never collected rent pursuant to that lease.  *See* Compl. ¶¶ 74–75 (citing § 341 meeting transcript, No. 19-12337, ECF Doc. 109).  Additionally, the Debtor, controlled by the Hoffmans, has never collected rent from Susan Hoffman for her own use of the same Royal Street Property as a residence.  *See* Compl. ¶¶ 75–76 (citing § 341 meeting transcript, No. 19-12337, ECF Doc. 109).

Based on the allegations identified above, Arrowhead's Complaint alleges ten legal theories that seek to hold the Debtor liable for the judgment debts of the Seven Arts Companies.

| Count I: | Debtor is Liable for the Obligations to Arrowhead of the Seven Arts Companies under the "Single Business Entity" Doctrine |
|---|---|
| Count II: | Debtor is Liable for the Obligations to Arrowhead of the Seven Arts Companies and Peter Hoffman under the "Alter Ego" or "Piercing the Corporate Veil" Doctrines |
| Count III: | Breach of Trust/Request for Accounting and Damage Remedies |
| Count IV: | Nullity for Misappropriation of Embezzled Trust Funds |

11

| Count V: | Debtor Never Acquired a Right to or Interest in Embezzled Proceeds or Transfers Thereof |
|---|---|
| Count VI: | Simulation |
| Count VII: | Receipt of Fraudulent Transfers after Commencement of the New York State Court Action and the District Court Case |
| Count VIII: | Receipt of Fraudulent or Voidable Transfers from the Seven Arts Companies although Knowing the Seven Arts Companies Were Insolvent and with Intent to Deprive Arrowhead of Proceeds Required to be Held in "Trust for and as the Sole and Exclusive Property of" Arrowhead |
| Count IX: | Unjust Enrichment |
| Count X: | Fraud/Fraudulent Concealment[2] |

[ECF Doc. 3].  In response to the Complaint, the Debtor filed the Motion To Dismiss, asserting that Arrowhead has not pleaded its fraud claims with particularity or cannot state a claim against the Debtor as a matter of applicable state law, and that the claims alleged by Arrowhead have prescribed. *See* Motion To Dismiss, at 10–27.

## CONCLUSIONS OF LAW

### A.  Legal Standard for a Motion To Dismiss

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).   A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th

---

[2]   The Complaint mistakenly numerates this claim also as Count IX, but the Court will refer to it as Count X for clarity.

Cir. 1982) (internal quotations and citations omitted). In deciding a Rule 12(b)(6) motion, this Court must "accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff." *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502 (5th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court, however, does not accept as true legal conclusions or mere conclusory statements; indeed, "threadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient. *Id*. (internal quotations and citations omitted).

But "[a]sking for plausible grounds to infer the [the elements of a claim] does not impose a probability requirement at the pleadings stage." *Lombard v. U.S. Unwired, Inc*., 565 F.3d 228, 257 (5th Cir. 2009) (emphasis omitted). Rather, the Court must simply determine whether, "under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations and citations omitted); *see also Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) ("Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." (internal quotations and citations omitted)). Indeed, "[c]ourts do not make plausibility determinations in a vacuum; it is a 'context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.'"  *Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings LLC)*, 420 B.R. 112, 132 (Bankr. S.D.N.Y. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Lastly, "[t]he Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient.'"  *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 372 (S.D.N.Y. 2003) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

### B.  The Requests for Judicial Notice Filed by the Debtor and Arrowhead

In resolving a Rule 12(b)(6) motion to dismiss, it is well established that a court may not look outside of the complaint; that is, the court should only look to the pleadings and to any documents or exhibits attached to the pleadings.  *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).  It is true that "[n]ormally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint[;] [h]owever, courts may also consider matters of which they may take judicial notice*." Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996) (citing FED. R. EVID. 201(f)).

"Federal Rule of Evidence 201 allows a court to take judicial notice of an 'adjudicative fact' if the fact is not subject to reasonable dispute in that it is (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to resources whose accuracy cannot be questioned."  *Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) (citation omitted).  "A court may take judicial notice of 'a document filed in another court . . . to establish the fact of such litigation and related filings,' but generally cannot take notice of the findings of fact from other proceedings because those facts are

usually disputed and almost always disputable." *Id.* (internal quotations and citation omitted). But this Court will not take judicial notice of or consider documents that are irrelevant to a motion to dismiss. *See Hoffman v. Bailey*, No. 13-5153, 2016 WL 409631, at *8 (E.D. La. Feb. 3, 2016) (citing 21B CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 5104 (2d ed.)). The Fifth Circuit also allows a court to consider documents attached to the motion to dismiss, but only those documents "which were referred to in the complaint and central to Plaintiff's claim." *Mitchem v. Fed. Nat'l Mortg. Ass'n*, 571 F. App'x 298, 299 (5th Cir. 2014) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000)).

The Debtor filed the Motion To Dismiss and attached an exhibit identified as "Schedule A" which appears to consist of additional legal argument related to Arrowhead's allegations in paragraph 89 of the Complaint. It is unsigned and refers to seven exhibits attached to the separately filed Debtor's Request for Judicial Notice (the "RA Exhibits"). The Debtor requests that this Court take judicial notice of the RA Exhibits. Arrowhead objects to the Court's consideration of some of those exhibits. The Court considers each request individually:

> 1. *RA Exhibit 1: (a) Letter from Peter M. Hoffman to Susan Hoffman, dated July 15, 2003, and (b) Copy of a consent judgment of legal separation filed in Los Angeles Superior Court on July 16, 2007*

Neither of these documents were referenced in the Complaint nor are they central to Arrowhead's claim. Arrowhead objects to this Court taking judicial notice of both of them. [ECF Doc. 19]. The Court declines to take judicial notice of the letter between the Hoffmans as it is neither generally known within this District nor is it capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

As to the copy of the consent judgment, as a general matter, "even though a court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and

15

related filings, a court cannot take judicial notice of the factual findings of another court." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998) (internal quotations and citations omitted).  "This is so because (1) such findings do not constitute facts 'not subject to reasonable dispute' within the meaning of Rule 201; and (2) were [it] permissible for a court to take judicial notice of a fact merely because it had been found to be true in some other action, the doctrine of collateral estoppel would be superfluous."  *Id.* (internal quotations and citations omitted). Therefore, the Court declines to take judicial notice of the copy of the consent judgment as well.

> 2.  *RA Exhibit 2:  (a) Donation Inter Vivos of 900 Royal St., New Orleans, dated Feb. 2, 1997 and recorded in the Orleans Parish Conveyance Records in 1997; (b) Conveyance of Units D, E, and G of 906 Royal St. and Units A–E and H of 910-912 Royal St. to Leeway, recorded in the Orleans Parish Conveyance Records on Sept. 1, 2006; and (c) Conveyance of Units D & E of 906 Royal Street and Units A–C and H of 910-912  Royal St. to Royal Alice Properties, LLC, recorded in the Orleans Parish Conveyance Records on Dec. 5, 2011*

The transfers documented in RA Exhibit 2 are referenced in the Complaint and are central to Arrowhead's claim.  Arrowhead has no objection to this Court taking judicial notice of these documents.  Courts may take judicial notice of matters of public record.  *See Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).  Therefore, this Court will take judicial notice of the documents in RA Exhibit 2 to the Debtor's Request for Judicial Notice.

### 3.  *RA Exhibit 3: Loan Workout Agreement*

The Loan Workout Agreement is not referenced in the Complaint and is not central to Arrowhead's claim.  Arrowhead objects to this Court taking judicial notice of it.  [ECF Doc. 19]. The Court declines to take judicial notice of the Loan Workout Agreement as it is neither generally known within this District nor is it capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

4.  *RA Exhibit 4:  (a) Articles of Incorporation for Leeway; (b) Leeway's By-Laws; and (c) Unanimous Written Consent of Leeway Board of Directors*

These documents are not referenced in the Complaint and are not central to Arrowhead's claim.  Nothing within the exhibits indicates that any of them were filed with the Louisiana Secretary of State.  Arrowhead objects to this Court taking judicial notice of them.  [ECF Doc. 19]. The Court declines to take judicial notice of the Leeway documents as they are not publicly available and are neither generally known within this District nor capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

5.  *RA Exhibit 5:  (a) Redacted copy of 2018 federal joint tax return of the Hoffmans and (b) 2017 federal tax return of Seven Arts Entertainment, Inc.*

These documents are not referenced in the Complaint and are not central to Arrowhead's claim.  They are unsigned and nothing within the exhibits indicates that either of them were filed with the Internal Revenue Service.  Arrowhead objects to this Court taking judicial notice of them. [ECF Doc. 19].  The Court declines to take judicial notice of the tax documents as they are not publicly available, and are neither generally known within this District nor capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

6.  *RA Exhibit 6:  Loan Agreement and Secured Promissory Note between Susan Hoffman/Royal Alice Properties, LLC and AMAG, Inc.*

These documents are not referenced in the Complaint and are not central to Arrowhead's claim.  Nothing within the exhibits indicates that either of them were filed into public records. Arrowhead objects to this Court taking judicial notice of them.  [ECF Doc. 19].  The Court declines to take judicial notice of the loan documents are they are not publicly available, and neither generally known within this District nor are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

17

7.  *RA Exhibit 7:  (a) Articles of Organization of Royal Alice Properties, LLC and (b) Operating Agreement of Royal Alice Properties, LLC*

These documents are not referenced in the Complaint and are not central to Arrowhead's claim.  Arrowhead objects to this Court taking judicial notice of only the Operating Agreement of Royal Alice Properties, LLC.  [ECF Doc. 19].  Courts may take judicial notice of matters of public record.  *See Norris v. Hearst Tr.*, 500 F.3d 454, 461 (5th Cir. 2007).  Because the Articles of Organization of Royal Alice Properties, LLC appear to have been filed with the Louisiana Secretary of State, this Court will take judicial notice of that document.

But nothing within the exhibits indicates that the Operating Agreement was filed into public records.  The Court declines to take judicial notice of the Operating Agreement as it is not publicly available, and is neither generally known within this District nor capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

For the foregoing reasons, the Debtor's Request for Judicial Notice is granted in part and denied in part.

Arrowhead also asks this Court to take judicial notice of two documents.  [ECF Doc. 17]. The first is a letter request from Arrowhead to the SDNY dated April 17, 2020, four days after Arrowhead filed the Complaint, requesting (and receiving) an order compelling post-judgment discovery from Seven Arts Entertainment, Inc., and Seven Arts Filmed Entertainment Louisiana, LLC.  The Debtor does not object to this request; however, the document post-dates the filing of the Complaint and, therefore, is unsuitable for judicial notice.  *See Durgin v. Sharer*, No. 07-3001, 2017 WL 2214618, at *3 (C.D. Cal. Jan. 10, 2017) (citing *Gerritsen v. Warner Bros. Entm't, Inc.*, 112 F. Supp. 3d 1011, 1025 (C.D. Cal. 2015)); *City of Los Angeles v. Bankrate, Inc.*, No. 14-CV-81323, 2015 WL 11438106, at *4 (S.D. Fla. Nov. 23, 2015) (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1263 (11th Cir. 2006)).

The second document is a March 20, 2020 Order issued by the judge in the EDLA who presides over Peter Hoffman's criminal proceeding.  The Debtor objects to this Court taking judicial notice of this document.  [ECF Doc. 21].  In the Complaint, Arrowhead makes only one reference to Hoffman's criminal convictions, so it is unclear to what degree that information is central to its claims.  *See* Compl. ¶ 13.  Nevertheless, this Court takes judicial notice of the EDLA judge's March 20, 2020 Order only to establish the fact of such litigation and related filings.  *See Ferguson v. Extraco Mortg. Co*., 264 F. App'x 351, 352 (5th Cir. 2007) (citation omitted).

For the foregoing reasons, the Arrowhead Request for Judicial Notice is granted in part and denied in part.

In sum, this Court will consider for purposes of resolving the Debtor's Motion To Dismiss, any documents of which the Court has indicated above that it takes judicial notice.

### C.  Arrowhead Has Stated a Plausible Claim Against the Debtor Under Louisiana's Single Business Enterprise Theory

Arrowhead's first claim for relief asserts that the Debtor is liable for the NY State Court Judgment and the NY Federal Court Judgment, both recognized and recorded in Louisiana.  The Debtor contends that this claim is time-barred and that Arrowhead's allegations fail to state a claim under Louisiana law.  When resolving state law claims that do not implicate federal policy, bankruptcy courts apply the choice-of-law rules of the forum in which they sit.  *See ASARCO LLC v. Americas Mining Corp*., 382 B.R. 49, 60–61 (S.D. Tex. 2007) (citations omitted).  Therefore, this Court applies the choice-of-law rules of Louisiana.

Louisiana Civil Code article 3501 governs prescription and revival of money judgments and states, in relevant part:

> An action to enforce a money judgment rendered by a court of another state or a possession of the United States, or of a foreign country, is barred by the lapse of ten years from its rendition; but such a judgment is not enforceable in this state if it

is prescribed, barred by the statute of limitations, or is otherwise unenforceable under the laws of the jurisdiction in which it was rendered.

LA. CIV. CODE art. 3501. Arrowhead obtained the NY State Court Judgment on October 10, 2012, and obtained the NY Federal Court Judgment on January 3, 2020. Neither judgment is prescribed by New York state law, *see* N.Y. C.P.L.R. 211(b) (providing for a twenty-year prescription on money judgments), but Louisiana's ten-year prescriptive period could still bar enforcement pursuant to article 3501. Because recognition of a foreign judgment by a Louisiana court results in the rendition of a separate, stand-alone Louisiana judgment, the prescription period provided for in article 3501 begins to run on the Louisiana judgment from the date of its rendition. *See Bridgewater v. Worthy*, 420 So.2d 1171, 1173 (La. App. 5 Cir. 1982).

Here, a Louisiana court recognized the NY State Court Judgment on May 2, 2014, and recognized the NY Federal Court Judgment on January 31, 2020. Applying the ten-year prescription period under article 3501, this Court finds that enforcement of the NY State Court Judgment and the NY Federal Court Judgment is not time-barred. Therefore, if Arrowhead could show that the Debtor is one member of a single business enterprise with the Seven Arts Companies, any attempt to enforce the NY Judgments—now stand-alone Louisiana judgments—against the Debtor would not be prescribed.

The Debtor contends alternatively that, even if Arrowhead's first claim for relief under the single business enterprise theory is not time-barred, it should be dismissed for failure to state a claim. "Under Louisiana's choice-of-law rules, the law of the state of incorporation governs a request to pierce the corporate veil." *Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings)*, 491 B.R. 747, 784 (Bankr. W.D. La. 2013) (citing *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 647 (5th Cir. 2002); *Lone Star Indus., Inc. v. Redwine*, 757 F.2d 1544, 1548 n.3 (5th Cir. 1985)). The Debtor was organized under Louisiana law; therefore, the Court will apply Louisiana

law in determining whether Arrowhead has sufficiently pled a cause of action under the single business enterprise theory.

"Corporations function as distinct legal entities, separate from the individuals who own them, and their shareholders are not generally liable for the debts of the corporation." *Hollowell v. Orleans Regional Hosp. LLC*, 217 F.3d 379, 385 (5th Cir. 2000) (citation omitted).  But "the legal fiction of a distinct corporate entity may be disregarded when a corporation is so organized and controlled as to make it merely an instrumentality or adjunct of another corporation." *Green v. Champion Ins. Co.*, 577 So.2d 249, 257 (La. App. 1991).  "The single business enterprise doctrine is a theory for imposing liability where two or more businesses act as one." *Khoobehi Props., LLC v. Baronne Dev. No. 2, L.L.C.*, 216 So.3d 287, 298 (La. App. 5 Cir. 2017 (citing *Green*, 577 So.2d at 257).  "When corporations represent precisely the same single interest, the court is free to disregard their separate corporate identity." *Green*, 577 So.2d at 257 (citing *Brown v. Benton Creosoting Co.*, 147 So.2d 89, 94 (La. App. 2 Cir. 1962)).

In *Green*, a landmark case on this theory of recovery, Louisiana's First Circuit Court of Appeal identified eighteen factors that courts could consider when determining whether a single business enterprise had been formed:

1.    Corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;

2.    Common officers or directors;

3.    Unified administrative control of corporations whose business functions are similar or supplementary;

4.    Directors and officers of one corporation act independently in the interest of that corporation;

5.    Corporation financing of another corporation;

6.    Inadequate capitalization ("thin incorporation");

21

7.      Corporation causing the incorporation of another affiliated corporation;

8.      Corporation paying the salaries and other expenses or losses of another corporation;

9.      Receiving no business other than that given to it by its affiliated corporations;

10.     Corporation using the property of another corporation as its own;

11.     Noncompliance with corporate formalities;

12.     Common employees;

13.     Services rendered by employees of one corporation on behalf of another corporation;

14.     Common offices;

15.     Centralized accounting;

16.     Undocumented transfers of funds between corporations;

17.     Unclear allocation of profits and losses between corporations; and

18.     Excessive fragmentation of a single enterprise into separate corporations.

577 So. 2d at 257–58. This list "is illustrative and is not intended as an exhaustive list of relevant factors." *Id*. at 258. As the *Green* court explained, "[n]o one factor is dispositive of the issue of 'single business enterprise.'" *Id.* "Federal district courts considering the *Green* factors have found that single business enterprise existed where some, but far from all, of the factors were present." *See Aker Solutions, Inc. v. Shamrock Energy Solutions, L.L.C*., No. 20-30054, 2020 WL 3579984, at *3 (5th Cir. July 1, 2020) (citing *Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of La*., 690 F. Supp. 2d 435, 448 (E.D. La. 2010); *Cargill, Inc. v. Clark*, No. 14-00233-BAJ-SCR, 2015 WL 4715010, at *12 (M.D. La. Aug. 7, 2015)). Indeed, not only is the eighteen-factor test non-exhaustive, but "the Court must still consider the 'totality of the circumstances' in each case."

22

*Bona Fide Demolition & Recovery, LLC*, 690 F. Supp. 2d at 444 (citing *Green*, 577 So.2d at 251–53).

Further, "[a] showing of fraud is not required to succeed under a single business claim in Louisiana." *Aker Solutions, Inc.,* 2020 WL 3579984, at *3 (citing *Green*, 577 So.2d at 259 ("Upon finding that a group of corporations constitute a 'single business enterprise,' the court may disregard the concept of corporate separateness to extend liability to each of the affiliated corporations to prevent fraud *or to achieve equity*.")).

This Court examines Arrowhead's allegations in light of the *Green* factors to determine whether Arrowhead has alleged sufficient facts to state a cause of action against the Debtor for liability for the debts owed by the Seven Arts Companies under the Judgments using a single business enterprise theory:

> 1.   *Corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control*

This factor requires the Court to inquire into the companies' legal ownership, "that is, ownership of sufficient stock to give actual working control." *Green*, 577 So.2d at 257. The Complaint identifies Peter Hoffman as having substantial membership interest in and control over the Seven Arts Companies, *see* Compl. ¶¶ 32–36, Ex. 2B, Ex. 3 & Ex. 8, as well as Leeway, *see* Compl. ¶¶ 10, 62 & 64. Arrowhead alleges that although Susan Hoffman is the sole member of the Debtor, Peter Hoffman has full control over the Debtor, as is evidenced by the fact that Peter Hoffman testified at the Debtor's § 341 meeting of creditors as the designated "authorized representative" of the Debtor on the basis that he has knowledge of the Debtor's financial affairs, prepared the Debtor's bankruptcy documents, and deals with all matters relating to the financing of the Royal Street Properties. *See* Compl. ¶ 77 (citing § 341 meeting transcript, No. 19-12337, ECF Doc. 109). Arrowhead also alleges that Peter Hoffman is the actual or beneficial owner of at

23

least 50% of the Debtor, as he transferred all of the assets of Leeway (in which he was at least 50% owner) to the Debtor for no consideration. *See* Compl. ¶¶ 8, 12, 68 & 76–77. The Fifth Circuit has affirmed the application of veil-piercing theories to closely held companies where ownership and working control of a company or companies floated among family members. *See, e.g.*, *United States v. Newman*, 100 F. App'x 958, 958–59 (5th Cir. 2004) (per curiam); *Century Hotels v. United States*, 952 F.2d 107, 110–111 (5th Cir. 1992). Taking those allegations as true, the Court finds that this factor weighs in favor of Arrowhead establishing a plausible claim under the single business enterprise theory of recovery.

### 2. Common officers or directors

Arrowhead alleges in its Complaint that the Seven Arts Companies, Leeway, PicturePro, and the Debtor each have had Peter and/or Susan Hoffman as their officers and/or directors for the duration of its their existence. *See* Compl. ¶¶ 31–32 & Exs 3 & 8 (Seven Arts Companies); ¶¶ 9, 17, 62, Exs. 19B–19D & RA Exhibit 2 (Leeway); ¶ 50 & Ex. 8 (PicturePro); ¶ 77 (Debtor). Taking those allegations as true, the Court finds that this factor weighs in favor of Arrowhead establishing a plausible claim under the single business enterprise theory of recovery.

### 3. Unified administrative control of corporations whose business functions are similar or supplementary

Arrowhead has alleged in its Complaint that Leeway and PicturePro are operated and managed from the Seven Arts Companies' headquarters in California, *see* Compl. ¶¶ 61–63, 65 & Ex. 18, and that the books and records for the properties owned by the Debtor are also kept in California by a bookkeeper who also prepares the Hoffmans' personal tax returns, *see* Compl. ¶ 72. Taking those allegations as true, the Court finds that this factor weighs in favor of Arrowhead establishing a plausible claim under the single business enterprise theory of recovery.

       4.      *Directors and officers of one corporation act independently in the interest of that corporation*

Arrowhead has not alleged any facts in support of this factor.

       5.      *Corporation financing of another corporation*

Arrowhead has not alleged any facts in support of this factor.

       6.      *Inadequate capitalization ("thin incorporation")*

Arrowhead has not alleged any facts in support of this factor.

       7.      *Corporation causing the incorporation of another affiliated corporation*

Arrowhead has not alleged any facts in support of this factor.

       8.      *Corporation paying the salaries and other expenses or losses of another corporation*

Arrowhead has alleged in its Complaint that the Seven Arts Companies paid all of the expenses of the Royal Street Properties when Leeway owned them.  *See* Compl. ¶¶ 61–62. Arrowhead also alleges that, since its organization through the date of its bankruptcy filing, the Debtor has never had bank accounts of its own, but, rather, its receipts were deposited into and commingled with Susan Hoffman's personal account and the accounts of the Seven Arts Companies.  *See* Compl. ¶¶ 71 & 89.  Taking those allegations as true, the Court finds that this factor weighs in favor of Arrowhead establishing a plausible claim under the single business enterprise theory of recovery.

       9.      *Receiving no business other than that given to it by its affiliated corporations*

Arrowhead has alleged in its Complaint that Peter Hoffman and/or the Seven Arts Companies transferred more than $3 million to Leeway between August 2008 and January 2011 and that Leeway transferred its assets, which included the Royal Street Properties, to the Debtor in 2011.  *See* Compl. ¶¶ 63, 65–66 & Ex. 21.  Arrowhead also alleges that all of the Debtor's

25

income derives from insiders in the form of "sham" leases, for which rent goes uncollected. *See* Compl. ¶¶ 73–76. Taking those allegations as true, the Court finds that this factor weighs in favor of Arrowhead establishing a plausible claim under the single business enterprise theory of recovery.

### 10. *Corporation using the property of another corporation as its own*

Arrowhead alleges that PicturePro and Peter Hoffman, as well as Susan Hoffman, have used the property of the Debtor as their own. *See* Compl. ¶¶ 75–76, 79. PicturePro has a lease to use property of the Debtor, but neither Susan Hoffman nor PicturePro has remitted rent pursuant to that lease. *See* Compl. ¶¶ 73–76. Taking those allegations as true, the Court finds that this factor weighs in favor of Arrowhead establishing a plausible claim under the single business enterprise theory of recovery.

### 11. *Noncompliance with corporate formalities*

Arrowhead alleges that the Seven Arts Companies have operated "as a 'single business entity' without corporate formalities," Compl. ¶ 35, and that the Debtor and the Seven Arts Companies "did not comply with corporate formalities," Compl. ¶ 89. But using the terms are not enough. Arrowhead alleges no facts that would support those conclusory statements, such as, for example, the absence of regular board meetings and minutes. *See Twombly*, 550 U.S. at 555 (stating that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Thus, Arrowhead has alleged no facts in support of this factor.

### 12. *Common employees*

Arrowhead alleges that the Debtor has no employees. *See* Compl. ¶ 71. As a result, it can have no common employees with the Seven Arts Companies, Leeway, or PicturePro. This factor

weighs against Arrowhead stating a plausible claim under the single business enterprise theory of recovery.

> 13.   *Services rendered by employees of one corporation on behalf of another corporation*

Arrowhead has not alleged any facts to support this factor.

> 14.   *Common offices and*

> 15.   *Centralized accounting*

Arrowhead alleges that the Seven Arts Companies and PicturePro share the same offices in Los Angeles, California (the same address as Peter Hoffman) and are operated and managed from those headquarters.  *See* Compl. ¶¶ 61–63, 65 & Exs. 8 & 18.  Although Leeway and the Debtor are listed as having the same mailing address of 900 Royal Street, New Orleans (Susan Hoffman's residence), *see* Compl. ¶¶ 6–7 & RA Exhibit 2, all insurance documents and utility bills are sent to the address of Peter Hoffman and the Seven Arts Companies in California to be paid by the Seven Arts Companies, *see* Compl. ¶¶ 55–61.  The books and records for the properties owned by the Debtor are also kept in California by a bookkeeper who also prepares the Hoffmans' personal tax returns.  *See* Compl. ¶ 72.  Taking those allegations as true, the Court finds that these factors weigh in favor of Arrowhead establishing a plausible claim under the single business enterprise theory of recovery.

> 16.   *Undocumented transfers of funds between corporations and*

> 17.   *Unclear allocation of profits and losses between corporations*

Arrowhead has alleged in its Complaint that, under the Master Agreement between it and the Seven Arts Companies, Collateral Proceeds upon which it held first-position liens were supposed to be held in trust for the sole benefit of, and paid to, Arrowhead.  *See* Compl. ¶¶ 19, 24 & Ex. 3, § 5.3.  It alleges that the Seven Arts Companies never paid Arrowhead the amounts due

27

nor provided an accounting of the Collateral Proceeds that were to be held in trust, despite the fact that Arrowhead reduced its claims to judgment, *i.e.*, the NY State Court Judgment and the NY Federal Court Judgment.  *See* Compl. ¶¶ 28, 37, 80–87.  Arrowhead alleges that, through post-judgment discovery of third parties and bank statements, it nevertheless discovered that the Seven Arts Companies have continued to earn income from their interests in the Collateral, did not deposit those proceeds into the Trust Account, and that, instead, Peter Hoffman used those proceeds for his own benefit.  *See* Compl. ¶¶ 37–42, 46, 50 & Exs. 7–9D.

Arrowhead also alleges that the Debtor never had accounts of its own from the date of its organization until its bankruptcy filing.  *See* Compl. ¶¶ 71–72.  But its predecessor, Leeway, received transfers of more than $3 million from the Seven Arts Companies between August 2008 and January 2011.  *See* Compl. ¶¶ 65–66 & Ex. 20.  Even after transferring some of the Royal Street Properties individually owned by the Hoffmans to Leeway prior to 2009, the Seven Arts Companies continued to pay the expenses on those properties.  *See* Compl. ¶¶ 51–52 & Ex. 10–16.  Then, in November 2011, Leeway transferred all of its interests to the Debtor after receiving an adverse order from the EDLA ordering Peter Hoffman, his co-judgment corporate debtors to a California judgment, and their affiliated garnishees, including Leeway, to turn over approximately $174,000 of garnished funds that Leeway had wrongfully transferred to and for Hoffman and his co-judgment debtors.  *See* Compl. ¶¶ 63, 67–70 & Exs. 21–22.  The Complaint alleges that during the period of August 2008 through January 2011, Peter Hoffman transferred or caused to be transferred more than $3 million from the Seven Arts Companies to Leeway.  *See* Compl. ¶ 65.  Arrowhead alleges that the Debtor's management (who also manages the Seven Arts Companies and managed Leeway) disbursed proceeds of the Collateral to and for the benefit of Leeway and the Debtor, has actively refused to provide an accounting of the proceeds of the Collateral, and has

28

intentionally concealed financial information regarding transactions between and among the Seven Arts Companies, Leeway, and the Debtor.  *See* Compl. ¶¶ 80–87 & Exs. 4, 23A–23H.

Taking those allegations as true, the Court finds that these factors weigh in favor of Arrowhead establishing a plausible claim under the single business enterprise theory of recovery.

18.     *Excessive fragmentation of a single enterprise into separate corporations.*

Arrowhead has not alleged any facts to support this factor.

Applying the *Green* factors to the allegations contained in the Complaint, and considering the totality of the circumstances, the Court finds that Arrowhead has alleged facts that, when taken as true and viewed in the light most favorable to it, could entitle Arrowhead to relief under a single business enterprise theory.  The facts as alleged are sufficient to suggest that the corporate form of the Debtor has been used to achieve an inequitable result that has harmed Arrowhead.  *See Aker Solutions, Inc.*, 2020 WL 3579984, at *3 (citing *Green*, 577 So.2d at 259).  Therefore, the Court denies the Motion To Dismiss as to Count I.

**D.     Arrowhead Has Not Stated a Plausible Claim for Relief Under Louisiana's Alter-Ego Theory**

As discussed above, the single business enterprise theory described by the *Green* court provides a method for "disregarding the legal distinctions between separate corporate entities and imposing personal liability for the debtors of one corporation on a separate, but affiliated company," that is, where "no shareholder relationship" exists between the two companies. *Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*, 491 B.R. 747, 785 (Bankr. W.D. La. 2013) (citing *Riggins v. Dixie Shoring Co.*, 590 So.2d 1164, 1168 (La. 1991)).  But that theory is "a new distinct doctrine" from the more traditional alter-ego liability theory.  *Id.*  "Traditional veil-piercing doctrines are generally limited to cases where the separate existence of the corporation has been abused and where the court finds that piercing the corporate veil is necessary

29

to remedy fraud, illegality, or other inequitable conduct **by the corporation's shareholders**." *Id.* (citing *Riggins*, 590 So.2d at 1168–69) (emphasis added).   "The alter ego doctrine allows courts to disregard corporate formalities 'to the extent that the corporation ceases to be distinguishable **from its shareholders**.'" *Id.* (citing *Riggins*, 590 So.2d at 1168–69) (emphasis added).

The fatal flaw in Arrowhead's alter-ego theory of liability is its failure to allege that the Debtor is a shareholder of any of the Seven Arts Companies or vice versa.  The Debtor cannot be held liable for the acts and/or omissions of the Seven Arts Companies under an alter-ego theory of liability if the Debtor is not a shareholder of the Seven Arts Companies.  The Court finds that Arrowhead has not alleged facts that, when even viewed in the light most favorable to it, could entitle Arrowhead to relief under an alter-ego liability theory; therefore, the Court grants the Motion To Dismiss as to Count II.

### E.  Arrowhead Has Stated a Plausible Claim for Breach of Trust

Arrowhead's claim for relief in Count III seeks damages and an accounting of the Collateral Proceeds under a breach-of-trust theory.  As an initial matter, if the Debtor is adjudged to be part of a single business enterprise with the Seven Arts Companies, then it would stand in the shoes of the Seven Arts Companies for purposes of the claim alleged in Count III, would be considered to have been a defendant in the NY State Court Action and the NY Federal Court Action,  and, subsequently, would be considered to be a judgment debtor at the same time that the Seven Arts Companies were defendants and judgment debtors.  *See Bona Fide Demolition & Recovery, LLC v. Crosby Constr. Co. of La.*, 690 F. Supp. 2d 435, 451 (E.D. La. 2010) ("Put simply, when part of a [single business enterprise], a corporation ceases to have legal status of its own.  The cognizable legal entity is the [single business enterprise]." (citation omitted)); *Hillman Lumber Prods., Inc. v. Webster Mfg.*, No. 06-1204, 2007 WL 1266124, at *2–3 (W.D. La. Apr.

27, 2007) (finding a company that was organized after a judgment was obtained against sister company could be liable for that judgment under single business enterprise theory).[3]

Arrowhead's breach-of-trust claim depends on whether the Master Agreement established a trust that imposed a fiduciary duty upon the Seven Arts Companies in favor of Arrowhead regarding the Collateral Proceeds. The Master Agreement is "governed by and construed in accordance with the laws of the State of New York." Compl., Ex. 3, § 9.5.5. New York law instructs that "a conventional business relationship does not create a fiduciary relationship in the absence of additional factors." *Feigen v. Advance Capital Mgmt. Corp.*, 541 N.Y.S.2d 797, 799 (N.Y. App. Div. 1989) (citation omitted). "In the absence of a formal fiduciary relationship, a plaintiff must allege special circumstances or other peculiar facts that effectively transformed the parties' relationship into a fiduciary one." *Am. Int'l Grp., Inc. v. Greenberg*, 877 N.Y.S.2d 614, 624 (N.Y. Sup. Ct. 2008) (citations omitted). Additionally, "[t]he right to an accounting rests on the existence of a trust or fiduciary relationship regarding the subject matter of the controversy at issue." *Akkaya v. Prime Time Transp., Inc.*, 845 N.Y.S.2d 827, 828 (N.Y. App. Div. 2007). For that reason, "whether a fiduciary relationship exists is fact-specific to the particular action." *Id.* (citations omitted).

Arrowhead has alleged that the Master Agreement created a trust for the sole benefit of Arrowhead, required the Collateral Proceeds to be segregated into a separate account, and transferred ownership of the Collateral Proceeds to Arrowhead. *See* Compl. ¶¶ 24 & Ex. 3. Some courts have found that the presence of those facts would be consistent with the creation of an express trust under New York law. *See, e.g.*, *LFD Operating, Inc. v. Ames Dept. Stores, Inc. (In*

---

[3]     Similarly, if the Debtor is adjudged to be part of a single business enterprise with the Seven Arts Companies, then it may also stand in the shoes of the Seven Arts Companies for purposes of the remaining claims.

*re Ames Dept. Stores, Inc.)*, 274 B.R. 600, 623–24 (Bankr. S.D.N.Y. 2002) (citing cases). At this stage in the litigation, this Court must simply accept all well-pleaded facts as true in determining whether Arrowhead has asserted plausible claims. Therefore, accepting as true Arrowhead's allegations regarding the fiduciary nature of the relationship between it and the Seven Arts Companies as created by the Master Agreement, this Court finds that the allegations in the complaint are sufficient to allow the claim to proceed and be tested by more substantive means— if it is not prescribed, as the Debtor asserts.

As stated above, in resolving state law claims that do not implicate federal policy, bankruptcy courts apply the choice-of-law rules of the forum in which they sit. *See ASARCO LLC v. Americas Mining Corp.*, 382 B.R. 49, 60–61 (S.D. Tex. 2007) (citations omitted). Therefore, this Court applies the choice-of-law rules of Louisiana. Article 3549 of the Louisiana Civil Code governing liberative prescription states in relevant part:

> When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and preemption law of this state applies, except as specified below:
>
> (1) If the action is barred under the law of this state, the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice.
>
> (2) If the action is not barred under the law of this state, the action shall be maintained unless it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.

LA. CIV. CODE art. 3549(B).

Count III is a claim alleged by Arrowhead as beneficiary of a trust against the Seven Arts Companies for breach of duty regarding that trust, and a request for damages and an accounting of the trust funds. *See* Compl. ¶¶ 97–106. Under Louisiana law, the prescription period for such a

32

claim is two years (with actions to be filed within three years of disclosure).  *See* LA. REV. STAT. § 9:2234; *Cook v. Cook*, 888 So.2d 1061, 1062–63 (La. App. 4 Cir. 2004).  But "the prescriptive periods provided for in La. R.S. 9:2234 are triggered by an accounting by the trustee."  *Cook*, 888 So.2d at 1063.

Here, Arrowhead alleges that it has never received an accounting of the proceeds of the Collateral that are held in trust by the Seven Arts Companies.  *See* Compl. ¶¶ 103, 106.  Therefore, taking Arrowhead's allegations as true, Arrowhead's claim has not prescribed in Louisiana; in fact, the prescription period has not even begun to accrue.  Similarly, under New York law, "[i]t is a well settled principal that the statute of limitations on enforcement of a trustee's obligations begins to run from the time the trustee repudiates such obligations."  *In re Sing*er, 818 N.Y.S.2d 417, 420 (N.Y. Surr. Ct. 2006) (citation omitted); *see also* N.Y. C.P.L.R. 213.  "A trust relationship is 'repudiated' where the putative fiduciary denies having had, or having retained, any fiduciary obligation with respect to the property in question, including the duty to account."  *In re Singer*, 818 N.Y.S.2d at 420 (citations omitted).  Again, taking as true Arrowhead's allegation that no accounting has been provided, Arrowhead's claim has not prescribed under New York law.

Pursuant to the liberative prescription analysis required by article 3549 of the Louisiana Civil Code, Count III has not prescribed and may proceed.  The Court finds that Arrowhead has alleged facts in Count III that, when viewed in the light most favorable to it, could entitle Arrowhead to relief; therefore, the Court denies the Motion To Dismiss as to Count III.

### F.  Arrowhead Has Stated a Plausible Claim for Breach of Contract

In Count IV, Arrowhead alleges that transfers of the Collateral Proceeds that were to be held in trust for Arrowhead's benefit, but were instead transferred directly or indirectly to the Debtor, constitute a breach of the Master Agreement and resulted in damages to Arrowhead.  *See*

33

Compl. ¶¶ 107–112.[4]  Arrowhead alleges in Count V that the Debtor acquired no rights in the alleged direct or indirect transfers of the Collateral Proceeds it describes in Count IV.  *See* Compl. ¶¶ 113–116.  Count V does not appear to assert a cause of action independent of that in Count IV; however, in construing the factual allegations of the Complaint in the light most favorable to the nonmoving party, this Court interprets the allegations in Count IV and V together to state a claim for breach of contract.  The Master Agreement is "governed by and construed in accordance with the laws of the State of New York."  Compl., Ex. 3, § 9.5.5.  The allegations in Count IV/V are sufficient to state a claim for breach of contract under New York law.  *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245–46 (2d Cir. 2000).  The Debtor asserts that this claim has prescribed.  *See* Motion To Dismiss, at 2 & 12–15.

As identified in the analysis of Count III, Louisiana's choice-of law rule, article 3549 of the Louisiana Civil Code governing liberative prescription, applies.  Under Louisiana law, "[a]ll personal actions, including actions to enforce contractual obligations, are generally subject to a liberative prescription of ten years, unless otherwise provided by legislation."  *Gallant Invs., Ltd. v. Ill. Centr. R.R. Co.*, 7 So.3d 12, 17 (La. App. 1 Cir. 2009) (citing LA. CIV. CODE art. 3499).[5]  That prescriptive period runs from the date of the breach.  *See Hawthorne Land Co. v. Occidental*

---

[4]    Although Arrowhead uses the word "nullity" to describe its cause of action in Count IV, its allegations convey its desire to characterize certain alleged direct or indirect transfers from the Seven Arts Companies to the Debtor as a breach of the agreements and duties under the Master Agreement; it doesn't allege that the Master Agreement itself is a nullity under New York or Louisiana law.

[5]    Delictual actions, which sound in tort, are subject to a liberative prescription of one year, running from the day injury or damage is sustained.  *See* LA. CIV. CODE art. 3492.  "The classic distinction between damages *ex contractu* and damages *ex delicto* is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons."  *Gallant Invs., Ltd.*, 7 So.3d at 17.  Here, Arrowhead makes allegations in its Complaint that the obligation of the Seven Arts Companies to segregate Collateral Proceeds in a separate account for the sole benefit of Arrowhead flowed from the Master Agreement and Note.  *See* Compl. ¶¶ 109–111.  Accepting Arrowhead's allegations as true, the Court characterizes the nature of Arrowhead's cause of action against the Debtor as contractual.

*Chem. Corp.*, 431 F.3d 221, 228 (5th Cir. 2005). Under New York law, a breach-of-contract cause of action is subject to a six-year statute of limitation. *See* N.Y. C.P.L.R. 213(2). "[I]t is well settled that [under New York law] the statute of limitation for breach of contract begins to run from the day the contract was breached, not from the day the breach was discovered, or should have been discovered." *V.E.C. Corp. of Del. v. Hilliard*, 896 F. Supp. 2d 253, 260 (S.D.N.Y. 2012) (quoting *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997)).

In its Complaint, Arrowhead does not allege specific dates when the Seven Arts Companies transferred to the Debtor, Leeway, or any of the Royal Street Properties the Collateral Proceeds that should have been segregated and paid to Arrowhead. But Arrowhead alleges that it filed the NY State Court Action in May 2010 for default under the Master Agreement, including "failure to pay monies due and payable to Arrowhead." Compl. ¶ 26. Arrowhead filed this adversary proceeding in April 2020. Based upon those allegations, and generously assuming that the breach of the Master Agreement—that is, transfers of the Collateral Proceeds to entities other than Arrowhead—occurred in May 2010, Arrowhead timely filed its claim for breach of contract just within Louisiana's ten-year prescriptive period, but that claim has prescribed under New York's six-year statute of limitations.

According to article 3549(B)(2) of the Louisiana Civil Code governing liberative prescription, because Court IV/V is timely filed in Louisiana but time-barred in New York, it "shall be maintained unless . . . maintenance of the action in this state is not warranted [i] by the policies of this state and its relationship to the parties or the dispute nor [ii] by any compelling considerations of remedial justice." This Court is not without guidance in evaluating those two considerations. When determining whether maintenance of Count IV/V is warranted by Louisiana policies, this Court examines "the relationship, if any, that this state has with the parties or their

35

dispute." LA. CIV. CODE art. 3549, Revision Cmt. (i).  For example, if neither party here were a Louisiana domiciliary, "and neither they nor their dispute are related to this state in any other significant way, the policies of this state would not be served by imposing on its overburdened courts the adjudication of a dispute which, but for the existence of jurisdiction, is essentially a foreign dispute." *Id*.  But here, the Debtor is a Louisiana domiciliary and so "there would seem to be less of a concern about forum shopping by the plaintiff and less of an argument of unfair surprise by the defendant." *Id*.  "These two factors would suggest that allowing the action would be warranted by the policies of this state, but whether or not this would actually be so should be determined by the court by examining all the circumstances surrounding the particular case." *Id*. That brings this Court to evaluating "any compelling consideration of remedial justice."  That consideration looks to whether, as examples, alternative forums are available and, if so, whether those forums "although not impossible would be extremely inconvenient for the parties." LA. CIV. CODE art. 3549, Revision Cmts. (f), (j).

Here, this Court observes that Arrowhead filed suit against the Debtor in the state of its own organization and principal place of business, so no forum-shopping or unfair-surprise concerns exist.  But, perhaps more importantly, because the Debtor has voluntarily sought bankruptcy relief in this Court, this forum is now the only forum available to Arrowhead to seek redress of its alleged grievance against the Debtor.  Therefore, this Court finds that, pursuant to article 3549(B)(2), this Court will maintain Count IV/V as timely filed under Louisiana's prescriptive period, even though it may be time-barred under New York's statute of limitations. *See Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 491–93 (5th Cir. 2001) (observing "article 3549's high standards for displacing Louisiana's law of prescription" and allowing Tennessee plaintiffs to proceed with action against Louisiana defendant).

36

The Court finds that Arrowhead has alleged facts in Count IV/V that, when viewed in the light most favorable to it, could entitle Arrowhead to relief; therefore, the Court denies the Motion To Dismiss as to Count IV/V.

### G. Arrowhead Has Stated a Plausible Claim for Simulation

In Count VI, citing articles of the Louisiana Civil Code dealing with simulations,[6] Arrowhead seeks to categorize all alleged direct or indirect transfers to the Debtor of the Collateral Proceeds belonging to Arrowhead as "simulations."   *See* Compl. ¶ 118.   That theory of recovery is a state law claim grounded in Louisiana law and thus this Court will apply Louisiana substantive law in determining whether Arrowhead has sufficiently pled a claim for relief.   *See* LA. CIV. CODE art. 3515.

"Under Louisiana law, a simulation is a contract that by mutual consent does not express the true intent of the parties."   *Joyner v. S.F.L. & S.I.L., LLC*, 485 B.R. 538, 555 (W.D. La. 2013) (citing LA. CIV. CODE art. 2025; *Succession of Terral*, 312 So.2d 296, 299 (La. 1975) (holding that a simulated contract has no existence in fact and may be declared a sham)).   "An absolute simulation has no effect between the parties because they intend that their contract produce no effects between them."   *Id*. (citing LA. CIV. CODE art. 2026).   "A relative simulation is a transaction in which the parties intend that their agreement produce effects between them that differ from those recited in the contract."   *Id*. (citing LA. CIV. CODE art. 2027).   Further "[w]hen the thing sold remains in the corporeal possession of the seller the sale is presumed to be a simulation, and, where the interest of heirs and creditors of the seller is concerned, the parties must show that their contract is not a simulation."   LA. CIV. CODE art. 2480.

---

[6]    Arrowhead has invoked Louisiana law as the basis for Count VI and the Debtor has not challenged that invocation; therefore, for purposes of this motion, this Court proceeds on the assumption that Louisiana law applies.

Here, Arrowhead alleges that transfers of the Collateral Proceeds that belong to Arrowhead from the Seven Arts Companies directly or indirectly to the Debtor constituted simulations because the person that controlled all of those companies, Peter Hoffman, "maintain[ed] dominion and control" over the Collateral Proceeds. *See* Compl. ¶ 118. Arrowhead also alleges in its Complaint that the transfers were made in an attempt to place the Collateral Proceeds out of Arrowhead's reach. *See* Compl. ¶¶ 81, 117. Taking those accusations as true, this Court finds that Arrowhead has alleged a plausible claim for simulation. Although the Debtor argues reasons for those transfers and attempts to present evidence of a "counterletter" as a defense to the claim of simulation, *see* Motion To Dismiss, at 16–17, "[t]he Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient.'" *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 372 (S.D.N.Y. 2003) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

The Debtor also claims that Count VI is prescribed. But "[t]he jurisprudence discussing prescription for claims of simulations has indicated that an action to establish the contract as a simulation does not prescribe." *Scott v. Sneed*, 210 So.3d 872, 877 (La. App. 2 Cir. 2016) (citation omitted). The Court finds that Arrowhead has alleged facts in Count VI that, when viewed in the light most favorable to it, could entitle Arrowhead to relief; therefore, the Court denies the Motion To Dismiss as to Count VI.

### H.   Arrowhead Has Failed To State Plausible Claims for Constructive and Actual Fraudulent Conveyance as Well as for Fraudulent Concealment

> *1.   Does the Master Agreement's choice-of-law provision apply to Arrowhead's fraudulent conveyance and fraudulent concealment claims?*

In Counts VII and VIII, Arrowhead seeks to avoid allegedly fraudulent conveyances of the Collateral Proceeds.   In Count X, Arrowhead alleges that the Seven Arts Companies (and the Debtor as a member of the single business enterprise) fraudulently concealed transfers of the Collateral Proceeds that were to be held in trust and paid to Arrowhead.   Claims for fraudulent conveyance and fraudulent concealment sound in tort; the initial question is whether the Master Agreement's § 9.5.5 choice-of-law provision indicating that the agreement "shall be governed by and construed in accordance with the laws of the State of New York" applies to Arrowhead's fraud claims.

Under Fifth Circuit law, when "there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice of law analysis." *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005).   No conflict exists as to whether the Master Agreement's choice-of-law provision applies here.   "Under New York law, in order for a choice-of-law clause to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties." *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996).   Likewise, under Louisiana law, "choice of law provisions that refer narrowly to the contract govern only matters of contract interpretation and enforcement." *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, No. 15-1720, 2015 WL 7281618, at *11 (E.D. La. Nov. 16, 2015) (citing cases).   In each of those cases, the courts found that narrow choice-of-law provisions,

similar to the one here, that refer only to how to interpret the contract itself and that do not purport

to encompass all disputes between the parties do not apply to tort claims. *See Krock*, 97 F.3d at

645; *Wright's Well Control Servs., LLC*, 2015 WL 7281618, at *11. This Court finds that § 9.5.5

likewise applies only to claims requiring interpretation of the Master Agreement itself and does

not apply to claims sounding in tort.

### 2. *Does New York or Louisiana fraudulent conveyance/concealment law apply?*

Because the New York choice-of-law provision in the Master Agreement does not apply

to Arrowhead's fraudulent conveyance or fraudulent concealment claims, this Court applies

Louisiana's choice-of-law rules to determine whether New York or Louisiana fraudulent

conveyance /concealment law applies. *See ASARCO LLC v. Americas Mining Corp.*, 382 B.R. 49,

60–61 (S.D. Tex. 2007) (citations omitted). Articles 3515 to 3549 of the Louisiana Civil Code

deal with conflict of laws as they apply to negligent and intentional torts. By way of background

provided by Judge Morgan in *Babin v. Caddo East Estates I, Ltd*.:

> In 1984–1988, the Louisiana State Law Institute prepared a *Projet for the Codification of the Louisiana Law of Conflict of Laws* ("Projet"), which was adopted by the Louisiana Legislature during the 1991 session, to be effective January 1, 1992. The articles added to the Civil Code by the Projet were placed in the newly formed Book IV of the Civil Code, Conflict of Laws. . . . Professor Symeon C. Symeonides, formerly the Albert Tate Professor of Law at the LSU Law Center, was the Reporter for the Projet and has written extensively about choice-of-law issues in Louisiana.

517 B.R. 649, 652 (E.D. La. 2014). Professor Symeonides provided the foundation for the

organization of the articles as such:

> The Section on Torts, or, in civilian terminology, "Delictual and Quasi-Delictual Obligations," begins with another general article, Article [35]42, which restates in slightly more specific terms the general approach of Article [35]15, and then descends gradually to narrower presumptive rules for different categories of issues. Article [35]43 provides some specific rules for "issues of conduct and safety"; Article [35]44 establishes specific rules for "issues of loss distribution and financial protection"; Article [35]45 provides the rule for products liability cases, regardless

40

of whether the particular issue at stake pertains to conduct or loss distribution; Article [35]46 enunciates a special rule for punitive damages applicable to both products and non-products cases; Article [35]47 provides an "escape valve" for the rules of Articles [35]43–[35]46; and finally, Article [35]48 contains a special rule with regard to the domicile of juridical persons.

*Id.* at 352–63 (quoting Symeon C. Symeonides, *Problems and Dilemmas in Codifying Choice of Law for Torts:  The Louisiana Experience in Comparative Perspective*, 38 AM. J. COMP. L. 431, 433–34 (1990) [hereinafter Symeonides, *Choice of Law for Torts*]).

"Thus, Article 3542 provides a general rule for choice-of-law in all Louisiana tort cases but it applies only if there is no more specific article or when the escape valve of Article 3547 applies."  *Id*. at 653.  Under articles 3515 and 3542, "the ultimate question is not which state has the most 'significant interest' in the dispute, but rather which state's *policies* would be *most seriously impaired* if its law were not applied to the issue." *Marchesani v. Pellerin-Milnor Corp*., 269 F.3d 481, 488 (5th Cir. 2001).  In other words, this Court would seek to identify the "'state which, in light of its relationship to the parties and the dispute and its policies rendered pertinent by that relationship, would bear the most serious legal, social, economic, and other consequences if its law were not applied.'" *Id*. (quoting LA. CIV. CODE art. 3515, Revision Cmt. (b)).  But article 3543 provides a more specific rule for issues of conduct and safety in all Louisiana non-product liability tort cases; therefore, article 3543 has already determined the state whose policies would be most seriously impaired if its law were not applied. *Caddo East Estates I, Ltd*., 517 B.R. at 653.

Article 3543 states that "[i]ssues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct." Therefore, "Article 3543 discounts domicile and focuses instead on the place of conduct and the

place of injury." *Caddo East Estates I, Ltd*., 517 B.R. at 653. As explained by Professor Symeonides:

> Based on the premise that conduct-regulating rules are territorially oriented, Article [35]43 discounts domicile as a connecting factor and focuses instead on the place of conduct and the place of injury. When these two contacts coincide in the same state, or when they are located in different states that adhere to the same standard of conduct and safety, there is no actual conflict. In interest-analysis terminology, these cases would easily be classified as "false conflicts" in which the state of conduct would be the only interested state. This is why in these cases the first paragraph of Article [35]43 calls for the application of the law of the place of the conduct, without any further qualifications and without regard to whether the standard prescribed by that law is higher or lower than, for instance, the standard prescribed by the law of the domicile of either or both parties.

*Id.* (quoting Symeonides, *Choice of Law for Torts*, at 444).

Tracking the analysis employed by the court in *Caddo East Estates I, Ltd*., *see id*. at 654, Arrowhead asserts tort claims for fraudulent conveyance and fraudulent concealment, alleging that the Seven Arts Companies' conduct occurred in New York, *see* Compl. ¶¶ 119–139; 147–155. New York law provides causes of action for fraudulent conveyance, *see* N.Y. DEBT & CRED. LAW §§ 270–281, and fraudulent concealment, *see Katen & Sons, Inc. v. Alleghency Trucks, Inc*., No. 3:16-CV-01124, 2018 WL 4689089, at *4 (N.D.N.Y. Sept. 28, 2018). Likewise, Louisiana law does as well. *See* LA. CIV. CODE art. 2036; *Terrebonne Concrete, LLC v. CEC Enters., LLC*, 76 So.3d 502 509 (La. App. 1 Cir. 2011). Thus, a false conflict exists and, under article 3543, New York fraudulent conveyance and fraudulent concealment law applies. *See Caddo East Estates I, Ltd*., 517 B.R. at 654 (finding a false conflict where both Louisiana and Texas provide cause of action for alleged tortious actions and applying law of state where tortious actions occurred per article 3543).

> 3. *Has Arrowhead stated claims for constructive and actual fraudulent conveyance as well as fraudulent concealment?*

In Count VII, Arrowhead specifically invokes section 273-a of New York's Uniform Fraudulent Conveyance Act, which is one of several types of constructive fraud under New York law. *See* Compl. ¶ 125.[7]  To state a valid claim under section 273-a, Arrowhead must allege: "(1) the conveyance was made without fair consideration; (2) at the time of the transfer, the transferor was a defendant in an action for money damages or a judgment in such action had been docketed against him; and (3) a final judgment has been rendered against the transferor that remains unsatisfied." *Berkshire Bank v. Tedeschi*, No. 11-CV-0767, 2016 WL 1029526, at \*3 (N.D.N.Y. Mar. 15, 2016) (quoting *Neshewat v. Salem*, 365 F. Supp. 2d 508, 518 (S.D.N.Y. 2005)). Arrowhead has alleged a claim for constructive fraud under New York law. *See* Compl. ¶¶ 123–124, 126.

Likewise, in Count VIII, Arrowhead alleges a claim of actual fraudulent conveyance under section 276 of New York's Uniform Fraudulent Conveyance Act, as it alleges that the transfers at issue were made with actual intent to hinder, delay, or defraud Arrowhead. *See* Compl. ¶¶ 134–138; *see also Berkshire Bank*, 2016 WL 1029526, at \*3 ("A plaintiff may additionally establish a fraudulent conveyance pursuant to § 276, where it is alleged that the conveyance was made 'with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors.'" (quoting N.Y. Debt. & Cred. Law § 276)).

In Count X, however, Arrowhead has failed to state a claim for fraudulent concealment. Under New York law, to prove a claim for fraudulent concealment, a plaintiff must show (1) the

---

[7]  On December 6, 2019, New York's Legislature repealed N.Y. Debtor & Creditor Law § 273-a and replaced the law with provisions of the Uniform Voidable Transaction Act.  But the new law will only be applicable to transfers made on or after April 4, 2020.  *See* N.Y. Debt. & Cred. Law § 273 (McKinney) (effective Apr. 4, 2020).

defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, (4) the plaintiff suffered damage as a result of such reliance, and (5) the defendant had a duty to disclose the information withheld.  *See Katen & Sons, Inc.*, 2018 WL 4689089, at *3–4.  Arrowhead alleges that the Seven Arts Companies (and, by extension, the Debtor) through their principals owed a duty of disclosure to Arrowhead, and made material false representations with intent to defraud Arrowhead.  But it fails to allege the other requisite elements of fraudulent concealment under New York law; that is to say, it fails to allege that it reasonably relied on the representations and that it suffered damage as a result of its reliance.  *See* Compl. ¶¶ 147–155.

Although the Debtor erroneously argues that Louisiana's fraudulent conveyance law applies, it nevertheless makes two arguments regarding Arrowhead's allegations:  (i) Counts VII and VIII fail to satisfy Federal Rule of Civil Procedure 9(b)'s pleading standards and (ii) any claim has prescribed.  *See* Motion To Dismiss, at 8–9, 11–12.  Examining the Debtor's second argument of prescription, this Court applies article 3549(B) of the Louisiana Civil Code governing liberative prescription.  New York fraudulent conveyance law applies to Counts VII and VIII; therefore, this Court must ascertain the limitations periods for those claims under both Louisiana and New York law to determine whether the claims are prescribed.

In Louisiana, "it is evident that there are two possible prescriptive dates and one peremptive date for bringing a revocatory action."  *London Towne Condominium Homeowner's Ass'n v. London Towne Co.*, 939 So.2d 1227, 1233 (La. 2006).  "An action must be brought:  (1) within one year from the time the obligee learned or should have learned of the act of the obligor that the obligee seeks to annul; (2) within one year from the time the obligee learned or should have learned of the result of the failure to act of the obligor that the obligee seeks to annul; or (3) never after

three years from the date of the act or the result of the failure to act." *Id.*; *see also* La. Civ. Code art. 2041.  As discussed above, Arrowhead does not allege in its Complaint specific dates when the Seven Arts Companies transferred to the Debtor, Leeway, or any of the Royal Street Properties the Collateral Proceeds that should have been segregated and paid to Arrowhead.  But Arrowhead alleges that it filed the NY State Court Action in May 2010 for default under the Master Agreement, including "failure to pay monies due and payable to Arrowhead."  Compl. ¶ 26. Arrowhead filed this adversary proceeding in April 2020.  Based upon those allegations, and generously assuming that the breach of the Master Agreement, that is, transfers of the Collateral Proceeds to entities other than Arrowhead and Arrowhead's discovery of those transfers, occurred at the latest in May 2010, Arrowhead has not timely filed its claim for constructive or fraudulent conveyance under Louisiana law.  Therefore, pursuant to article 3549 of the Louisiana Civil Code, "the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice."  La. Civ. Code. art. 3549(B)(1).

Under New York law, a plaintiff must commence a fraudulent conveyance claim "within either six years from the date of the fraud, or two years from the date of her discovery of the fraud." *Leone v. Sabbatino*, 652 N.Y.S.2d 628, 629 (N.Y. App. Div. 1997) (interpreting N.Y. C.P.L.R. 213 to require constructive fraud claims to be commenced within six years and actual fraud claims where the defendants is alleged to have intentionally participated in the transfer for the purpose of hiding assets from the plaintiff to be commenced within two years of discovery of the allegedly fraudulent transfers).  Based upon the timeline alleged in the Complaint, Arrowhead must have commenced its action for constructive fraudulent conveyance by May 2016 and actual fraudulent

conveyance by May 2012; therefore Counts VII and VIII are prescribed; there is no need to examine the sufficiency of its pleading of those Counts.

Based on the foregoing, this Court grants the Debtor's Motion To Dismiss as to Counts VII and VIII for constructive and actual fraudulent conveyance as prescribed, and Count X for fraudulent concealment for failure to state a claim.

## I.   Arrowhead's Claim for Unjust Enrichment Must Be Dismissed

Finally, in Count IX, Arrowhead asserts that the Debtor has been unjustly enriched by receiving transfers of the Collateral Proceeds that should have been segregated and paid to Arrowhead under the Master Agreement.  *See* Compl. ¶¶ 140–146.  For the reasons discussed *supra*, Part H.1., the choice-of-law provision in the Master Agreement does not apply to Arrowhead's claim of unjust enrichment, so this Court must determine whether the law of Louisiana or the law of New York applies to Arrowhead's unjust enrichment claim.

Article 3544 of the Louisiana Civil Code provides the choice-of-law rules for issues of "loss distribution and financial protection."  In pertinent part, article 3544 provides:

> Issues pertaining to loss distribution and financial protection are governed, as between a person injured by an offense or quasi-offense and the person who caused the injury, by the law designated in the following order:
>
> > (1)      If, at the time of the injury, the injured person and the person who caused the injury were domiciled in the same state, by the law of that state. **Persons domiciled in states whose law on the particular issue is substantially identical shall be treated as if domiciled in the same state** . . . .

LA. CIV. CODE art. 3544 (emphasis added).  Louisiana, New York—and even Bermuda, where Arrowhead is domiciled, *see* Compl. ¶ 5—all recognize a claim for unjust enrichment.  *See* LA. CIV. CODE art. 2298; *Minyard v. Curtis Prods., Inc.*, 251 La. 624, 649 (1967) ("There is a general concept of quasi contractual obligations; it is a concept based upon the principle that were there is

an unjust enrichment of one at the expense or impoverishment of another, then the value of that enrichment or else, in some cases, the amount of the impoverishment, must be restituted." (citations omitted)); *Cohen v. BMW Inv. L.P.*, 144 F. Supp. 3d 492, 500 (S.D.N.Y. 2015); *Capital Sec. Ltd. v. Woodruff*, No. 2017-370, slip op. at 8 (Sup. Ct. Bda. Apr. 16, 2018) ("It is well known and established law that a Plaintiff must prove on the facts that the Defendant has received a benefit before it can be said that there has been any enrichment. That enrichment must be shown to have been at the expense of the Plaintiff and its retention by the Defendant unjust without a meritorious defence to support a claim of unjust enrichment. Unjust enrichment may arise in varying forms. Its existence is not restricted to the receipt of a tangible benefit such as money but may also arise where the defendant has been unfairly spared from an expense otherwise owing."). Thus, a false conflict exists and the law of the forum, here, Louisiana, applies. *See Fietz v. Southland Nat'l Ins. Co.*, 484 F. Supp. 2d 535, 546 (W.D. La. 2007) (citing *Schneider Nat'l Transport v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary.").

But assuming that Arrowhead has stated a claim for unjust enrichment under Louisiana law, it is precluded from seeking recovery under that theory of relief. The statute codifying the doctrine of unjust enrichment in Louisiana provides:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person . . . . **The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.**

LA. CIV. CODE art. 2298 (emphasis added). "[F]or a party to move forward with a claim of unjust enrichment, he or she must have no other remedy under the law." *Brees v. Houser*, No. 13-4760. 2014 WL 3587333, at *5 (E.D. La. July 21, 2014) (citing *Walters v. MedSouth Record Mgmt., LLC*, 38 So.3d 241, 241 (La. 2010)); *see also JP Mack Indus. LLC v. Mosaic Fertilizer, LLC*, 970

F. Supp. 2d 516, 521 (E.D. La. 2013); *Gen. Accident Ins. Co. of Am. v. Aggreko, LLC*, No. 11-1682, 2012 WL 6738217 (W.D. La. Dec. 28, 2012).  Because Arrowhead has other remedies against the Debtor, it is precluded from pursuing a recovery under a theory of unjust enrichment. For that reason, this Court grants the Motion To Dismiss as it relates to Count IX.

## CONCLUSION

For the foregoing reasons and as stated herein, the Court GRANTS IN PART and DENIES IN PART the Debtor's Request for Judicial Notice, GRANTS IN PART and DENIES IN PART Arrowhead's Request for Judicial Notice, GRANTS IN PART and DENIES IN PART the Motion To Dismiss, and GRANTS the Debtor's Motion To Strike.[8]

New Orleans, Louisiana, August 28, 2020.

MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

---

[8]     It is the policy of this Court to require leave prior to filing reply briefs and sur-reply briefs.  The Court did not consider Arrowhead's Sur-Reply in its resolution of the Motion To Dismiss.