# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: | § § § | CASE NO: 19-12337 |
| ROYAL ALICE PROPERTIES, LLC, | § § | CHAPTER 11 |
| DEBTOR. | § § § | SECTION A |
| ARROWHEAD CAPITAL FINANCE, LTD, | § § § | |
| PLAINTIFF, | § § | ADV. NO. 20-1022 |
| V. | § § | |
| ROYAL ALICE PROPERTIES, LLC, | § § | |
| DEFENDANT. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following matters:

(i)     *Motion for Summary Judgment and Incorporated Memorandum of Law* (the "Trustee MSJ"), [ECF Doc. 113], and the *Trustee's Statement of Uncontested Material Facts in Support of His Motion for Summary Judgment* (the "SUMF"), [ECF Doc. 114], filed by Dwayne Murray, Chapter 11 Trustee (the "Trustee");

(ii)    the *Memorandum of Law of Plaintiff Arrowhead Capital Finance, LTD. in Opposition to the Chapter 7 Trustee's Summary Judgment Motion*, as amended (the "Opposition"), [ECF Doc. 160 (amending ECF Docs. 155 & 159)]; a response to the Trustee's statement of uncontested facts (the "SUMF Response"), [ECF Doc. 156]; the Affidavit of Barry L. Goldin attaching exhibits filed in support of the Opposition (the "Goldin Affidavit"), [ECF Doc. 157]; all filed by Arrowhead Capital Finance, Ltd., ("Arrowhead"); and

(iii)   the Reply Brief filed in support of the Trustee MSJ, [ECF Doc. 168], filed by the Trustee.

Also before the Court are:

(i)     *Intervenor Susan Hoffman's Motion for Summary Adjudication* (the "Hoffman MSJ"), [ECF Doc. 96] with a corresponding memorandum in support, [ECF Doc. 97], and statement of uncontested facts, [ECF Doc. 98];

(ii)    the *Memorandum of Law of Plaintiff Arrowhead Capital Finance, Ltd. in Opposition to Intervenor Susan Hoffman's Summary Judgment Motion*, [ECF Doc. 126], a response to Hoffman's statement of uncontested facts, [ECF Doc. 127]; the Affidavit of Barry L. Goldin attaching exhibits filed in support of Arrowhead's opposition to the Hoffman MSJ, [ECF Doc. 128];

(iii)   the Reply Brief filed in support of the Hoffman MSJ, [ECF Doc. 153], filed by Hoffman;

(iv)    *Request for Judicial Notice as to May 6, 2021 Report and Recommendation of U.S. Magistrate Judge Jean Rosenbluth To Enforce Document Subpoena of Arrowhead Capital Finance, Ltd. ("Arrowhead") on PicturePro LLC and To Order PicturePro LLC and Its Counsel Phillip H. Stillman, Esq. To Pay Arrowhead Sanctions in the Amount of $11,972.50* ("Request for Judicial Notice of May 2021 Order"), [ECF Doc. 134], (relates only to Hoffman MSJ); and

(v)     *Request for Judicial Notice as to June 10, 2021 Report and Recommendation of U.S. Magistrate Judge Jean Rosenbluth To Enforce Document Subpoena of Arrowhead Capital Finance, Ltd. ("Arrowhead") on PicturePro LLC and To Order PicturePro LLC and Its Counsel Phillip H. Stillman, Esq. To Pay Arrowhead Sanctions in the Amount of $11,972.50* ("Request for Judicial Notice of June 2021 Order"), [ECF Doc. 162], filed by Arrowhead (relates only to Hoffman MSJ).

For the reasons discussed below, the Court GRANTS the Trustee MSJ, dismissing all remaining claims in the Complaint filed in the above-captioned adversary proceeding and sustaining the objection filed by the Debtor to the proof of claim filed by Arrowhead.[1] The Court further DENIES AS MOOT the Hoffman MSJ as well as the Request for Judicial Notice of May 2021 Order and the Request for Judicial Notice of June 2021 Order.

---

[1]    On March 5, 2020, the Debtor objected to Arrowhead's Proof of Claim No. 1 (the "Contested Matter"). [No. 19-12337, ECF Doc. 104]. Arrowhead filed a response to the Debtor's claim objection, [No. 19-12337, ECF Doc. 122], and the Debtor filed a Reply Brief, [No. 19-12337, ECF Doc. 124]. This Court held a hearing on the Contested Matter on April 8, 2020, allowed Arrowhead the opportunity to file a sur-reply, and took the matter under advisement. [No. 19-12337, ECF Doc. 129]. On April 16, 2020, this Court issued an Order pursuant to Federal Rule of Civil Procedure 42 and Bankruptcy Rule 7042, consolidating the Contested Matter and the above-captioned adversary proceeding initiated by Arrowhead, finding that the transactions, facts, and circumstances underlying the Contested Matter arise from the same common nucleus of operative fact and factually and legally overlap substantially, if not entirely, with the claims alleged in the adversary proceeding. [No. 19-12337, ECF Doc. 151].

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334(b).  The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. §§ 157(b)(2)(A), (B), (K) & (O).  The venues of the Debtor's chapter 11 case and the related adversary proceeding are proper under 28 U.S.C. §§ 1408 and 1409(a).

## BACKGROUND

The Debtor, a Louisiana limited liability company, filed a voluntary petition for bankruptcy relief under chapter 11 of the Bankruptcy Code on August 29, 2019.  [No. 19-12337, ECF Doc. 1].  The Debtor's only assets consist of three real estate properties in the French Quarter neighborhood in New Orleans, Louisiana:  (a) 900–902 Royal Street; (b) 906 Royal Street, Unit E; and (c) 910–912 Royal Street, Unit C.  [No. 19-12337, ECF Doc. 2].  Only two creditors have filed proofs of claim against the Debtor's estate.  One of those creditors, Arrowhead, filed a proof of claim against the estate for $1 million, and also initiated the above-captioned adversary proceeding, alleging in both that the Debtor is liable under alter-ego and/or single-business-enterprise theories for the unsatisfied obligations of several non-debtor affiliates of the Debtor (the "Seven Arts Companies").

The facts alleged and claims asserted in the Complaint have been fully detailed in this Court's Order of August 28, 2020.  [ECF Doc. 55].  In that Order, the Court granted in part the Debtor's motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and dismissed several of Arrowhead's claims.  Thus, the remaining claims are:  Count I (single business enterprise), Count III (breach of trust/fiduciary duty), Counts IV & V (construed by the Court as breach-of-contract claims), and Count VI (simulation).  As discussed below, it is

undisputed that Arrowhead obtained money judgments against the Seven Arts Companies in New York courts and later obtained recognition of those judgments by a Louisiana court.  Arrowhead obtained those judgments as a result of a contractual dispute with the Seven Arts Companies emanating from a 2006 Master Agreement executed among Cheyne Specialty Finance, L.P. ("Cheyne") as Senior Lender, Arrowhead as Subordinated Lender, and the Seven Arts Companies as the Borrowers to finance the production of three films.  As observed by this Court in the August 28, 2020 Order, to hold the Debtor liable for the New York judgments against the Seven Arts Companies—now independent Louisiana judgments—Arrowhead must show that the Debtor is one member of a single business enterprise with the Seven Arts Companies.    Indeed, the success of all of the remaining claims alleged in the Complaint are contingent upon Arrowhead prevailing on Count I, its claim that the Debtor and the Seven Arts Companies are operated as a single business entity, a Louisiana legal theory that allows "the legal fiction of a distinct corporate entity [to] be disregarded when a corporation is so organized and controlled as to make it merely and instrumentality or adjunct of another corporation."  *Green v. Champion Ins. Co*., 577 So. 2d 249, 257 (La. App. 1 Cir. 1991).

## DISCUSSION

The Trustee seeks summary judgment of all remaining claims against the estate alleged in the Complaint.  He argues that summary judgment is warranted because Arrowhead cannot show a common business purpose between the Debtor and the Seven Arts Companies, as is required for the single-business-enterprise theory to apply here.  The Court agrees.

### A.  Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *see also* FED. R. BANKR. P. 7056. Indeed, "[s]ummary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial." *In re Betteroads Asphalt, LLC*, 594 B.R. 516, 541 (Bankr. D.P.R. 2018) (citing *Celotex Corp.*, 477 U.S. at 322).

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *See Sossamon v. Lone Star State of Tex.,* 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *See Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party. *See City & Cnty. of S.F., Cal. v. Sheehan*, 575 U.S. 600, 603 (2015). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. *See* FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. *See* FED. R. CIV. P. 56(c)(3). The Court may not make credibility determinations or weigh the

evidence in the course of its summary judgment analysis.  *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  "A court ultimately must be satisfied that 'a reasonable jury could not return a verdict for the nonmoving party.'"  *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, No. 14-2722, 2020 WL 4939482, at *3 (E.D. La. Aug. 24, 2020) (quoting *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008)).

### B.  Single-Business-Enterprise Theory

"A bedrock principle of corporate law is that 'a parent corporation ... is not liable' for actions taken by its subsidiaries." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)).  But if a group of affiliated entities acts as a single business, "a court may disregard the concept of corporate separateness and extend liability to each of the affiliated corporations for purposes of preventing fraud or achieving equity." *People's State Bank v. Gen. Elec. Capital Corp. (In re Ark-La-Tex Timber Co.)*, 482 F.3d 319, 335 (5th Cir. 2007).  "[W]hen corporations integrate their resources in operations to achieve a common business purpose, each business may be held liable for wrongful acts done in pursuit of that purpose." *Brown v. ANA Ins. Grp.*, 994 So. 2d 1265, 1266 n.2 (La. 2008) (citing *Green*, 577 So. 2d at 249).

Courts look to eighteen factors, first elucidated in *Green v. Champion Insurance. Co.*, as a guide to whether affiliated entities operate as a single business enterprise under Louisiana law.[2]  577 So. 2d at 257–58.  No one factor is dispositive and the Court must consider the totality

---

[2]      The *Green* factors are: (1) common ownership, (2) common directors and officers, (3) common employees, (4) common offices, (5) unified administrative control, (6) similar or supplementary business functions, (7) one corporation financing the other, (8) inadequate capitalization, (9) one corporation's creation of the other, (10) one corporation paying the salaries, expenses, or losses of the other corporation, (11) one corporation receiving no business other than that given to it by the affiliated corporation, (12) shared property, (13) noncompliance with corporate formalities, (14) services rendered by the employees

of the circumstances. *See Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of La.*, 690 F. Supp. 2d 435, 444 (E.D. La. 2010) (citing *Green*, 577 So. 2d at 251–53).   But courts that have applied the single-business-enterprise theory of liability have all been presented with companies that existed contemporaneously and were engaged either in the same industry or were used to effect a common business purpose. *See, e.g.*, *Aker Solutions, Inc. v. Shamrock Energy Solutions, LLC*, No. 16-2560, 2019 WL 4981912 (E.D. La. Oct. 8, 2019); *Duhon v. Petro "E," LLC*, 251 So. 3d 481, 483 (La. App. 3 Cir. 2018); *Boes Iron Works, Inc. v. Gee Cee Grp., Inc.*, 209 So. 3d 938 (La. App. 4 Cir. 2016); *Oracle 1031 Exch., LLC v. Bourque*, 85 So. 3d 736 (La. App. 3 Cir. 2012); *Dishon v. Ponthie*, 918 So. 2d 1132 (La. App. 3 Cir. 2005); *Holly & Smith Architects, Inc. v. St. Helena Congregate Facility*, 872 So. 2d 1147 (La. App. 1 Cir. 2004); *Mitchell v. Indus. Fill Materials, Inc.*, 859 So. 2d 36 (La. App. 1 Cir. 2003); *Berg v. Zummo*, 851 So. 2d 1223 (La. App. 4 Cir. 2003); *Duhe v. Texaco, Inc.*, 779 So. 2d 1070 (La. App. 3 Cir. 2001); *Grayson v. R.B. Ammon & Assocs., Inc.*, 778 So. 2d 1 (La. App. 1 Cir. 2000); *Brown v. Auto. Cas. Inc. Co.*, 644 So. 2d 723 (La. App. 1 Cir. 1994); *Green*, 577 So. 2d at 252.

### C. The Undisputed Evidence Reveals that the Debtor Did Not Exist Contemporaneously With the Seven Arts Companies, and Did Not Engage in the Same Industry and Was Not Used To Effect a Common Business Purpose With the Seven Arts Companies

The undisputed facts before this Court show:

### 1. The Seven Arts Companies' formation, business, and litigation with Arrowhead

In December 2006, Arrowhead and senior lender, Cheyne, amended a 2004 Master Agreement to refinance the production of three films[3] by certain Seven Arts Companies borrowers,

---

of one corporation on behalf of another corporation, (15) centralized accounting, (16) undocumented transfer of funds between corporations, (17) unclear allocation of profits and losses between corporations, and (18) excessive fragmentation of a single enterprise into separate corporations.  577 So. 2d at 257–58.

[3]      Those films were named *Deal*, *Noise*, and *Pool Hall Prophets*.  *See* SUMF, ¶ 1 & Ex. 1.

a group of film industry-related companies affiliated through Peter Hoffman, namely:  Seven Arts Pictures PLC; Seven Arts Filmed Entertainment, Ltd.; Deal Investments, LLC; Deal Productions, LLC; Seven Arts Pictures, Inc.; Seven Arts Future Flows I; Rectifier Productions, LLC; and Pool Hall Productions, LLC.  *See* SUMF, ¶ 1 & Ex. 1.  Seven Arts Pictures, Inc. was organized in Nevada in 2002.  *See* SUMF, ¶ 66 & Exs. 11 & 58.  Seven Arts Pictures PLC was an existing entity that was purchased by Peter Hoffman in the United Kingdom, who changed its name in 2004.  *See* SUMF, ¶ 63 & Exs. 11, 54 & 55.  Seven Arts Pictures PLC formed and wholly owned Seven Arts Filmed Entertainment, Ltd. in 2004.  *See* SUMF, Ex. 67 & Ex. 11 & 58.  Deal Investments, LLC, Deal Productions, LLC, and Pool Hall Productions, LLC were all formed in Louisiana in 2005 as special-purpose production companies and were owned by Seven Arts Pictures, Inc.  *See* SUMF, ¶ 68 & Exs. 61–63.  Similarly, Rectifier Productions, LLC was formed in New York in 2006 as a special-purpose production company and was owned by Seven Arts Pictures, Inc.  *See* SUMF, ¶ 69 & Ex. 64.

After those Seven Arts Companies defaulted under the Master Agreement and related financing documents, Arrowhead sued those parties in New York state court in 2010, asserting claims for breach of contract, replevin, foreclosure of security interests, attorneys' fees and costs, and conversion.  *See* SUMF, ¶ 12 & Ex. 5.  In a Judgment & Order dated September 12, 2012, the New York state court ruled in favor of Arrowhead in part and entered judgment only on its breach-of-contract claim against every borrower to the Master Agreement, except for Seven Arts Future Flows I and Seven Arts Pictures, PLC (the "<u>NY State Court Judgment</u>").  *See* SUMF, ¶ 13 & Ex.

6.[4]  Thereafter, in May 2014, Arrowhead obtained a judgment in Louisiana state court making the NY State Court Judgment executory in Orleans Parish.  *See* SUMF, ¶ 14 & Ex. 7.[5]

In June 2018, Arrowhead obtained a judgment from a New York federal court, adding two other Seven Arts Companies as additional judgment debtors jointly and severally liable under the NY State Court Judgment:  (i)  Seven Arts Entertainment, Inc., formed in Nevada in 2010; and (ii) Seven Arts Filmed Entertainment Louisiana, LLC, formed in Louisiana in 2008 (the "SDNY Judgment").  *See* SUMF, ¶¶ 15–20 & 70–71 & Exs. 8–13, 65 & 66.  In January 2020, Arrowhead obtained a judgment in Louisiana state court making the SDNY Judgment executory in Orleans Parish.  *See* SUMF, ¶ 21 & Ex. 14.

### 2.   *The formation and business of Leeway Properties*

Between 1990 and 1997, Peter and Susan Hoffman purchased the French Quarter properties located at 900 Royal Street and 910 Royal Street.  *See* SUMF, ¶¶ 25 & 27 & Ex. 17 & 19.  In 1997, Peter Hoffman donated his 50% interest in 900 Royal Street to Susan.  *See* SUMF, ¶ 26 & Ex. 18.  In 2000, Susan Hoffman purchased 906 Royal Street.  *See* SUMF, ¶ 28 & Ex. 20.  In June 2003, Leeway Properties, LLC ("Leeway") was formed in Louisiana.  *See* SUMF, ¶ 29 & Ex. 21.  A month after Leeway's formation, in July 2003, Susan and Peter Hoffman transferred their interests in 906 and 910 Royal Street to Leeway.  *See* SUMF, ¶¶ 32–33 & Ex. 27.

---

[4]   The New York state court stated that it did not enter judgment against Seven Arts Pictures, PLC because it had been notified of a bankruptcy stay in effect with respect to that entity.  *See* SUMF, ¶ 13 & Ex. 6.

[5]   In June 2014, Arrowhead sued Cheyne entities in New York state court asserting claims arising out of the Master Agreement including:  breach of duty to account; breach of trust; aiding and abetting breach of trust; conspiracy to breach trust; breach of fiduciary duties; aiding and abetting breach of fiduciary duties; conspiracy to breach fiduciary duties; and breach of contract.  *See* SUMF, ¶¶ 22–23 & Ex. 15.  A stipulation of dismissal with prejudice of the action against the Cheyne entities was signed by counsel for the parties in January 2020.  *See* SUMF, ¶ 24 & Ex. 16.

In April 2007, Peter and Susan Hoffman executed a promissory note for a $2.3 million loan from Hancock Bank and executed a Multiple Indebtedness Mortgage that granted Hancock Bank a mortgage on 900 Royal Street.  *See* SUMF, ¶ 34 & Ex. 28.  At that time, Susan Hoffman also executed a Commercial Security Agreement and Multiple Indebtedness Mortgage on behalf of herself personally and on behalf of Leeway, granting Hancock Bank a security interest in 906 and 910 Royal Street.  *See* SUMF, ¶ 35 & Exs. 29 & 30.

Leeway was not a party to the Master Agreement or a named party liable under the NY State Judgment or the SDNY Judgment.  *See* SUMF, ¶ 56 & Exs. 1, 6 & 12.

### 3.   The formation and business of the Debtor

The Debtor, Royal Alice Properties, LLC, was not formed until November 2011.  *See* SUMF, ¶ 37 & Ex. 33.  Susan Hoffman is the managing member of the Debtor.  *See* SUMF, ¶ 38 & Ex. 34.  In November 2011, Leeway transferred its interests in 906 Royal Street and 910 Royal Street to the Debtor; both properties remained encumbered by the mortgage in favor of Hancock Bank.  *See* SUMF, ¶¶ 39–41 & Exs. 33 & 35.  Two years later, in July 2013, Susan Hoffman and the Debtor refinanced the Hancock Bank debt with AMAG, Inc.  *See* SUMF, ¶ 42 & Exs. 36 & 37.  Between December 2014 and June 2018, the Debtor either sold voluntarily or forfeited via foreclosure action the following properties:  910 Royal Street, Units A, B & H, and 906 Royal Street, Unit D.  *See* SUMF, ¶¶ 43–44 & 46 & Exs. 38–40 & 42.  On August 23, 2019, Susan Hoffman conveyed her interest in 900 Royal Street to the Debtor.  *See* SUMF, ¶ 47 & Ex. 43.

The Debtor was not formed at the time that the Master Agreement was executed or amended and is not a named party liable under the NY State Judgment or the SDNY Judgment. *See* SUMF, ¶ 55 & Exs. 1, 6 & 12.  Nothing in the record indicates that the Debtor has engaged in any business related to the film production industry or the Seven Arts Companies.  Rather, the

Hoffmans' tax returns for the years 2012, 2016, and 2018 show rental income from the Royal Street properties.  *See* SUMF, ¶ 51 & Exs. 46–48.

### D.  Arrowhead's Response

#### 1.  The Court may not consider Arrowhead's newly asserted claim based on successor liability theory

Arrowhead's Opposition to the Trustee MSJ and its SUMF Response do not dispute the above facts in any material way.  Rather, Arrowhead spends a majority of its response discussing Leeway, asserting for the first time that *Leeway* was a member of the single business enterprise with the Seven Arts Companies.  *See* Opposition, at 26–31.  After analyzing and applying the *Green* factors to Leeway, Arrowhead concludes that Leeway, as a member of the Seven Arts Companies' single business enterprise, is liable for the obligations of other single business enterprise members, including the Seven Arts Companies judgment debtors.  Citing *Hollowell v. Orleans Regional Hospital, LLC*, 217 F.3d 379, 390–91 (5th Cir. 2000), and other cases discussing successor liability theory, Arrowhead concludes that "Royal Alice was merely a continuation, and so liable for the obligations to Arrowhead, of Royal Alice's predecessor Leeway."  *Id*. at 32–33.

Arrowhead did not assert a claim for successor liability in its Complaint.  "A claim which is not raised on the complaint but, rather, is raised only in a response to a motion for summary judgment is not properly before the court."  *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).  Accordingly, the Court will not consider this newly minted argument advanced by Arrowhead.

>    2.  *The Court finds that additional discovery is not likely to produce the facts
>        needed by Arrowhead to defeat the Trustee MSJ*

In its Opposition, Arrowhead also requests this Court to deny the Trustee MSJ pursuant to

Rule 56(d), due to the alleged "refusal of Royal Alice, the Hoffman's [sic] and their affiliates to

provide discovery." Opposition, at 39.  Under Rule 56(d), "[i]f a nonmovant shows by affidavit

or declaration that, for specified reasons, it cannot present facts essential to justify its opposition,

the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or

declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d).

Rule 56(d) motions are "broadly favored and should be liberally granted." *Culwell v. City of Fort

Worth*, 468 F.3d 868, 871 (5th Cir. 2006).  But a request to stay summary judgment under Rule

56(d) must "set forth a plausible basis for believing that specified facts, susceptible of collection

within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced,

will influence the outcome of the pending summary judgment motion." *Raby v. Livingston*, 600

F.3d 552, 561 (5th Cir. 2010) (citation  and quotations omitted).  The Fifth Circuit "has long

recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary

judgment is not unlimited, and may be cut off when the record shows that the requested discovery

is not likely to produce the facts needed by the plaintiff to withstand a motion for summary

judgment." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).  Indeed, "[i]f it

appears that further discovery will not provide evidence creating a genuine issue of material fact,

the district court may grant summary judgment."  *Access Telecom, Inc. v. MCI Telcomm. Corp.*,

179 F.3d 694, 720 (5th Cir. 1999).

Although Rule 56(d) motions are "broadly favored," this Court finds such relief is not

warranted here.  The Goldin Affidavit lists categories of discovery that Arrowhead asserts is

relevant and essential to Arrowhead's ability to oppose the Trustee MSJ:

(i)     *Lease documents for Royal Street properties*:  Arrowhead asserts that obtaining documents regarding the drafting and signing of leases will "show dominion and control exercise over the real estate and related leasing by Seven Arts CEO Peter Hoffman and his staff from their centralized offices in Los Angeles," and will further "show that tenant PicturePro is the vehicle through which the Seven Arts affiliates have been diverting NY Trust Funds to pay . . . obligations for the Royal Alice Properties." Goldin Affidavit, ¶ 89(i).

(ii)    *Insurance documents*:  Arrowhead asserts that obtaining insurance documents for the Royal Street properties will "show dominion and control by Seven Arts CEO Peter Hoffman," and will "confirm that Peter Hoffman and his affiliates are the actual beneficial owners of Royal Alice and the Royal Street Properties and that the purported transfers of title are mere simulations." Goldin Affidavit, ¶ 89(ii).

(iii)   *Identification of Leeway's directors and officers*:  Arrowhead asserts that obtaining information on Leeway's directors and officers is relevant "to support Arrowhead's claims of dominion and control of Leeway through common Seven Arts directors and officers." Goldin Affidavit, ¶ 89(iii).

(iv)    *Bookkeeping, accounting for, and maintenance of records of Leeway, Royal Alice, and Royal Street properties through Seven Arts offices in Los Angeles*:  Specifically, Arrowhead seeks "identification of the person or entity who made hundreds of thousands of dollars of payments" for expenses related to Royal Alice properties in order to "identify witnesses having records which support Arrowhead's causes of action" and "who can testify as to money transfers." Goldin Affidavit, ¶ 89(iv).

(v)     *Banking and other documents with respect to transfers and disbursements by, or, or through Leeway*:  Arrowhead asserts that such documents are "relevant and essential to Arrowhead's proof of the dominion and control of Seven Arts CEO Peter Hoffman and Seven Arts affiliates through their central Los Angeles offices." Goldin Affidavit, ¶ 89(v).

As stated above, the Court will not consider Arrowhead's claim of successor liability related to Leeway asserted for the first time in its Opposition to summary judgment.  Therefore, any discovery related to Leeway's newly alleged role in a single business enterprise with the Seven Arts Companies and the Debtor's alleged successor status vis-à-vis Leeway will not serve to influence the outcome of the Trustee MSJ.

Further, the Court finds that the Trustee has met his burden of demonstrating the absence of genuine disputes of material fact.  Specifically, the Trustee has cited an overwhelming volume of case law that shows that the Louisiana single-business-enterprise theory cannot be extended to

an entity that did not engage in the same industry or was not used to promote common business purposes with the defendants accused of operating a single business enterprise—and did not even exist at the time the liability arose. *See, e.g.*, *Andrus v. Scully's Metal Fabrication, Inc. (In re Scully's Aluminum Crafts, Inc.)*, 352 B.R. 783, 786–87 (Bankr. W.D. La. 2006) ("In the instant case, the Defendants never operated at the same time as the Debtor. The Debtor never did any business with, nor was ever associated in business enterprises with, any of the Defendants. The Defendants never functioned as affiliates or branches of the Debtor. For that reason, the court finds that the single business enterprise doctrine is not applicable to the fact of the instant case.").

In light of the undisputed facts before it, this Court is unconvinced that further discovery would produce the facts needed by the plaintiff to defeat a motion for summary judgment. Considering the evidence in the light most favorable to Arrowhead, even if Arrowhead could show that its alleged collateral proceeds were used to pay expenses of the Debtor, that alone would still not justify the extension of the single-business-enterprise theory here. As observed by Judge Vance:

> *Green*'s eighteen-factor test is difficult to apply, as it provides no guidance as to the weight to be given any of the eighteen factors or whether any, all or some of the factors must be present to find a [single business enterprise]. Further, some of the factors are perfectly consistent with legitimate, efficient business operations, such as common control, common employees, officers, and directors, share offices, and some form of centralized accounting. This suggests that the doctrine should be applied with care so as not to discourage business development.

*Bona Fide Demolition & Recovery, LLC v. Crosby Constr. Co. of La., Inc.*, 690 F. Supp. 2d 435, 445 (E.D. La. 2010).

Accordingly, the Court denies Arrowhead's request to delay ruling on the Trustee MSJ pursuant to Rule 56(d).

## CONCLUSION

As explained here and in this Court's Order of August 28, 2020, granting in part and denying in part the Debtor's motion to dismiss, the success of all of the remaining claims alleged in the Complaint are contingent upon Arrowhead prevailing on its claim under a single-business-enterprise theory.  The Court finds that no genuine disputes of material fact exist and the Trustee is entitled to summary judgment.

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment and Incorporated Memorandum of Law*, [ECF Doc. 113], filed by Dwayne Murray, Chapter 11 Trustee, is **GRANTED**;

**IT IS FURTHER ORDERED** that *Intervenor Susan Hoffman's Motion for Summary Adjudication*, [ECF Doc. 96], is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that the Debtor's objection to Arrowhead's Proof of Claim No. 1, [No. 19-12337, ECF Doc. 104], is **SUSTAINED**;

**IT IS FURTHER ORDERED** that the *Request for Judicial Notice as to May 6, 2021 Report and Recommendation of U.S. Magistrate Judge Jean Rosenbluth To Enforce Document Subpoena of Arrowhead Capital Finance, Ltd. ("Arrowhead") on PicturePro LLC and To Order PicturePro LLC and Its Counsel Phillip H. Stillman, Esq. To Pay Arrowhead Sanctions in the Amount of $11,972.50*, [ECF Doc. 134], filed by Arrowhead, is **DENIED AS MOOT**; and

**IT IS FURTHER ORDERED** that *Request for Judicial Notice as to June 10, 2021 Report and Recommendation of U.S. Magistrate Judge Jean Rosenbluth To Enforce Document Subpoena of Arrowhead Capital Finance, Ltd. ("Arrowhead") on PicturePro LLC and To Order PicturePro LLC and Its Counsel Phillip H. Stillman, Esq. To Pay Arrowhead Sanctions in the Amount of $11,972.50*, [ECF Doc. 162], is **DENIED AS MOOT**.

A separate judgment on the Complaint filed in the above-captioned Adversary Proceeding consistent with this Memorandum Opinion and Order will be entered contemporaneously and in accordance with Bankruptcy Rules 7054 and 9021.

New Orleans, Louisiana, September 23, 2021.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE